1 **GUTRIDE SAFIER LLP**
ADAM J. GUTRIDE (State Bar No. 181446)
2 SETH A. SAFIER (State Bar No. 197427)
MARIE MCCRARY (State Bar No. 262670)
3 KRISTEN G. SIMPLICIO (State Bar No. 263291)
4 835 Douglass Street
San Francisco, California 94114
5 Telephone: (415) 639-9090
Facsimile:  (415) 449-6469
6

7 Attorneys for Plaintiff, ROHINI KUMAR

8                     UNITED STATES DISTRICT COURT

9                     NORTHERN DISTRICT OF CALIFORNIA

10 | ROHINI KUMAR, an individual, on behalf | CASE NO.
11 | of herself, the general public and those simi-<br>larly situated, | 
12 | | CLASS ACTION COMPLAINT FOR VIOLA-<br>TION OF THE CALIFORNIA CONSUMERS<br>LEGAL REMEDIES ACT; FALSE ADVER-<br>TISING; BREACH OF CONTRACT;
13 | Plaintiff, | 
14 | v. | BREACH OF THE COVENANT OF GOOD<br>FAITH AND FAIR DEALING; FRAUD, DE-<br>CEIT, AND/OR MISREPRESENTATION;
15 | SALOV NORTH AMERICA CORP.; and<br>ITALFOODS, INC., | AND UNFAIR BUSINESS PRACTICES
16 | | 
17 | Defendants. | JURY TRIAL DEMANDED

18

19

20

21

22

23

24

25

26

27

28

-1-

Rohini Kumar, by and through her counsel, brings this Class Action Complaint against Defendants Salov North America Corp. and Italfoods, Inc., on behalf of herself and those similarly situated, for violations of the Consumer Legal Remedies Act, false advertising, unfair trade practices, breach of contract, breach of the covenant of good faith and fair dealing, and fraud, deceit and/or misrepresentation.  The following allegations are based upon information and belief, including the investigation of Plaintiff's counsel, unless stated otherwise.

## **INTRODUCTION**

1.      This case concerns Defendants' false and deceptive marketing and sale of olive oil.

   a.   First, Defendants identically represent that all of their olive oil products are "**IMPORTED FROM ITALY**."  This leads consumers to reasonably believe that Defendants' olive oil products are made from olives grown, or at a minimum pressed, in Italy.  In truth, Defendants' olive oil is made from olives that are not grown, or even pressed, in Italy.  Rather, Defendants' olive oil is pressed (from olives grown) in other countries, and (at best) is trucked or shipped to Italy, bottled and then exported.

   b.   Second, Defendants label their products as a particular grade of olive oil, namely "**Extra Virgin" Olive Oil**.  This representation is also false and misleading because, among other things, Defendants mix refined oil in with their extra virgin olive oil and/or bottle their olive oil in clear, non-ultraviolet protective bottles. The use of clear bottles exposes the oil to sunlight and heat and causes chemical reactions inside the oil and causes it to oxidize, degrade and degenerate.  These inferior bottles, which are used by Defendants for all of their extra virgin olive oil, do not preserve the oil as "extra virgin."  Rather, the oil degrades during shipping and while it is on retailer shelves.  Even if the oil is "extra virgin" at the time of bottling, Defendants know tha the oil will not qualify (and cannot be defined) as "extra virgin" at the time it is sold to consumers.  Defendants' deception is compounded by providing a "**Best By**" date on each bottle that is approximately a year to 18 months after the date of bottling, even though they know that the oil

sold in their defective bottles will not be "extra virgin" through the period specified.

## PARTIES

2.     Rohini Kumar ("Plaintiff") is an individual and has been a resident of Berkeley, California since 2011.  At all other times since the beginning of the class period, Plaintiff was a resident of El Cerrito, California.

3.     Defendant Salov North America Corp. ("Salov") is a corporation incorporated under the laws of the State of New York, having its principal place of business in Lyndhurst, New Jersey.  Salov is a wholly owned subsidiary of Salov S.p.A.

4.     Defendant Italfoods, Inc. ("Italfoods") is a corporation incorporated under the laws of the State of California, having its principal place of business in San Francisco, California.

5.     Salov and Italfoods are collectively referred to hereafter as "Defendants."

6.     At all times herein mentioned, each of the Defendants was the agent, servant, representative, officer, director, partner or employee of the other Defendants and, in doing the things herein alleged, was acting within the scope and course of his/her/its authority as such agent, servant, representative, officer, director, partner or employee, and with the permission and consent of each Defendant.

7.     At all times herein mentioned, Defendants, and each of them, were members of, and engaged in, a joint venture, partnership and common enterprise, and acting within the course and scope of, and in pursuance of, said joint venture, partnership and common enterprise.

8.     At all times herein mentioned, the acts and omissions of Defendants, and each of them, concurred and contributed to the various acts and omissions of each and all of the other Defendants in proximately causing the injuries and damages as herein alleged.

9.     At all times herein mentioned, Defendants, and each of them, ratified each and every act or omission complained of herein.  At all times herein mentioned, the Defendants, and each of them, aided and abetted the acts and omissions of each and all of the other Defendants in proximately causing the damages, and other injuries, as herein alleged.

**JURISDICTION AND VENUE**

10.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2), because the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action in which at least one member of the class (Plaintiff) is a citizen of a State different from at least one Defendant (Salov).

11.     This Court has subject matter jurisdiction over the Defendants because they regularly conduct and/or solicit business in, engage in other persistent courses of conduct in, and/or derive substantial revenue from products and/or services provided to persons in this District and in this State.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in the State of California, including this District.  Defendants, in fact, sell more olive oil in the State of California that in any other state in the United States.

13.     In accordance with California Civil Code Section 1780(d), Plaintiff concurrently files herewith a declaration establishing that, at various times throughout the class period, she purchased bottles of Filipoo Berio Extra Virgin Olive Oil in Berkeley, California.  (Plaintiff's declaration is attached hereto as Exhibit A.)

14.     Plaintiff accordingly alleges that jurisdiction and venue are proper in this Court.

**SUBSTANTIVE ALLEGATIONS**

**A.     The Defendants**

15.     Defendants are importers, marketers, distributors, and sellers of Mediterranean food products in the United States.

16.     Defendants import, market, distribute, and sell, in the United States, the Filippo Berio brand of olive oil.

**B.     Defendants' False and Deceptive Product Packaging**

17.     This case concerns Defendants' marketing and sale of their Filippo Berio brand olive oil products.  The specific products as issue in this case are:

a.     Filippo Berio Robusto Extra Virgin Olive Oil;

b.   Filippo Berio Extra Virgin Olive Oil;

c.   Filippo Berio Delicato Extra Virgin Olive Oil;

d.   Filippo Berio Organic Extra Virgin Olive Oil;

e.   Filippo Berio Olive Oil; and

f.   Filippo Berio Extra Light Olive Oil.

These products are collectively referred to as the "Mock Italian Products" or simply the "Products."

18.   The subset of the Products that are marketed and sold as "Extra Virgin Olive Oil"—namely those listed in subparagraphs (a), (b), (c), and (d)—are collectively referred to herein as the "Mock EVOO Products."

19.   This case focuses on Defendants' representations (1) on all the Products, that the oil is "**IMPORTED FROM ITALY**" and (2) on all the Mock EVOO Products, that the oil qualifies (or is graded) as "**EXTRA VIRGIN**."

20.   Through Defendants' use of intentional misrepresentations and selective omission, each of the above representations deceives and misleads consumers.

a.   First, by stating "IMPORTED FROM ITALY," Defendants lead consumers to believe that these Products are made from Italian olives or, at a minimum, are pressed in Italy.  This is false and deceptive.   In fact, none of the Mock Italian Products are made from olives grown in Italy.  Nor are they pressed in Italy. Rather, the Mock Italian Products are made from oil pressed in many different countries, trucked or shipped to Italy, mixed with oil from other countries, bottled and then exported.

b.   Second, Defendants mislead and deceive consumers by representing (and labelling) the Mock EVOO Products as "EXTRA VIRGIN"—i.e., the highest grade/quality of olive oil—when they know that, due to their use of substandard, clear (non-light protective) bottles, unprotected transport methods and storage procedures, the oil invariably degrades, and does not qualify as (or can be defined as) "extra virgin" olive oil at the time of sale and/or well before the "Best By"

date. All of Defendants' Mock EVOO Products are deceptively misbranded.

**(1)      Defendants' False Origin Representations**

21.      Part 134, Chapter 1 of Title 19 of the Code of Federal Regulations sets forth regulations implementing the country of origin marking requirements and exceptions of section 304 of the Tariff Act of 1930, as amended (19 U.S.C. 1304), together with certain marking provisions of the Harmonized Tariff Schedule of the United States (19 U.S.C. 1202).

22.      19 C.F.R. § 134.46 requires that:

In any case in which…the name of any foreign country or locality other than the country or locality in which the article was manufactured or produced appear on an imported article or its container, and those words, letters or names may mislead or deceive the ultimate purchaser as to the actual country of origin of the article, there shall appear legibly and permanently in close proximity to such words, letters or name, and in at least a comparable size, the name of the country of origin preceded by "Made in," "Product of," or other words of similar meaning.

23.      All of Defendants' Products are marketed with labels in bold font that states "IMPORTED FROM ITALY," when the oil is, in fact, the product of countries other than Italy. Yet, Defendants, in violation of 19 C.F.R. § 134.46, do not include on the Products, "in close proximity" to the ""IMPORTED FROM ITALY" representation, any indication of the true country of origin of the olive oil preceded by "Made in," "Product of," or other words of similar meaning. Instead, Defendants state only on the back of the Mock Italian Products, in much smaller font, the notation: "Packed in Italy with select extra virgin olive oils from Italy, Spain, Greece & Tunisia."

24.      The United States Food and Drug Administration (the "FDA") has also promulgated regulations governing misbranding of food and providing that food is misbranded if its label expresses or implies a geographical origin of the food or any ingredient of the food except when such representation is "[a] truthful representation of geographical origin." *See* 21 CFR § 101.18. Because the "IMPORTED FROM ITALY" representation is not truthful, Defendants' labels violate 21 CFR § 101.18, which has been independently adopted as part of the Sherman Food, Drug and Cosmetic Law, California Health and Safety Code ("Cal. Health & Saf. Code") § 109875, *et. seq. See* Cal. Health & Saf. Code §§ 110100(a), 110380, 110505 (adopting FDA standards).

25.     Though Defendants may contend that in some instances the Products contain some olive oil from Italy, U.S. Customs and Border Protection ("CBP"), Department of Homeland Security, has consistently held that a manufacturer cannot claim that a product is "from" a particular country if it merely blends some product from that country with the same product from another country, as that process does not constitute a "substantial transformation" of the product from the other country which would justify a "country of origin" claim based on the manufacturing location.  With specific regard to olive oil, in HQ 560944, dated April 27, 1998, CBP determined that the blending of Spanish olive oil with Italian olive oil in Italy does not result in a "substantial transformation" of the Spanish product that would allow it to become an Italian product.

26.     The country of origin claims Defendants make on the Mock Italian Product bottles mislead consumers, as they misled Plaintiff, by prominently making an Italian origin claim on the front of the bottle, while placing in small print on the back of the bottle, cryptic information as to the actual non-Italian origin of the olive oil.  The disclaimer on the back of the bottle does not lessen Defendants' deception because, as the Ninth Circuit has stated, "reasonable consumers…should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the…small print on the side of the box." *Williams v. Gerber Products Co.,* 552 F.3d 934, 939 (9th Cir. 2008).

**(2)     Defendants' False "Extra Virgin" Respresentations**

27.     "Extra Virgin" olive oil is widely understood to mean the best (or highest) grade/quality of olive oil.  The term "Extra Virgin" is defined by the International Olive Council ("IOC"),[1] the United States Department of Agriculture ("USDA"), and the State of California, the United States' largest domestic olive oil producer.  The IOC, USDA, and State of California

---

[1] The IOC — an intergovernmental organization based in Madrid, Spain, with 16 member states plus the European Union — promotes olive oil around the world by tracking production, defining quality standards, and monitoring authenticity.  The IOC officially governs 95% of international production and holds great influence over the rest.  The USDA's olive oil standards are generally based upon the IOC's standards.

established chemistry and sensory standards for "extra virgin" olive oil.  Under each of these standards, "extra virgin" olive oil must have zero sensory defects and greater than zero fruitiness.  Defendants' Mock EVOO Products inevitably fail each of these standards for "extra virgin" olive oil at the time of sale to consumers and/or prior to the "best by" date on the bottle.

28.     The IOC defines "Extra Virgin Olive Oil" as: virgin olive oil which has a free acidity, expressed as oleic acid, of not more than 0.8 grams per 100 grams.  The IOC utilizes a protocol for its sensory testing, which includes, but is not limited to, perception, sensation, and sensitivity.

29.     Since 1948, the USDA has regulated olive oil grades and, like the IOC, utilizes both chemical and sensory standards to determine quality.  USDA standards define "U.S. Extra Virgin Olive Oil" as: "virgin olive oil which has excellent flavor and odor (median of defects equal to zero and median of fruitiness greater than zero) and a free fatty acid content, expressed as oleic acid, of not more than 0.8 grams per 100 grams."  The USDA additionally requires that the oil meets the additional requirements outlined in the United States Standards for Grades of Olive Oil and Olive-Pomace Oil, 75 FR 22363 (April 28, 2010), which sets forth the criteria to ascertain the grades of the oil using both chemical and sensory standards.

30.     The State of California defines "Extra Virgin Olive Oil" as: "virgin olive oil that has excellent flavor and odor expressed as a median of defects equal to zero and a median of fruitiness greater than zero, has a free fatty acid content, expressed as oleic acid, of not more than 0.8 grams per 100 grams oil, has a peroxide value of not more than 20 milliequivalent peroxide oxygen per kilogram oil" and meets the additional chemical and sensory requirements for 'United States Extra Virgin Olive Oil' outlined in the United States Standards for Grades of Olive Oil and Olive-Pomace Oil published in the Federal Register that are in effect on October 25, 2010."  Cal. Health & Safety Code §§ 112877(a).[2]

---

[2] Other states similarly define "extra virgin."  *See, e.g.,* Connecticut (Regs. Conn. State Agencies § 21a-100-8 (stating "'extra virgin olive oil' means virgin olive oil which has a free acidity, expressed as oleic acid, of not more than 0.8 grams per hundred grams.")); New York (N.Y. Agric. & Mkts. Law § 204-a stating "'extra virgin olive oil' means virgin olive oil which has a free acidity, expressed as oleic acid, of not more than 0.8 grams per hundred grams.")); Oregon (ORS 2011 vol. 13, § 616716 (adopting USDA standard).)

31.     In March of 2014, Plaintiff's counsel had several bottles of Defendants' Mock EVOO Products tested by an independent, IOC-accredited laboratory and organoleptic evaluation panel.  Each bottle was purchased at well-known California retail stores, packed, and immediately shipped to an IOC-accredited laboratory and sensory panel for analysis.  The olive oil was tested prior to the "best by" date indicated by Defendants on the bottles.

32.      The IOC-accredited laboratory and organoleptic evaluation panel determined that, contrary to Defendants' representations, none of the bottles of olive oil tested contained oil that qualified as "extra virgin," under both the chemical analysis and sensory assessment.  Each bottle tested contained an inferior grade of olive oil that did not qualify as "extra virgin" under the IOC, USDA, or State of California definitions.

33.     Defendants know, or should have known, that the Mock EVOO Products they sell and market, and which are labeled as "extra virgin," do not meet the state, national, or international standards for "extra virgin" when sold to consumers and/or during the entire "best by" period indicated on the bottles.

34.     Defendants have been aware of the fact that their olive oils are not adequately preseved and do not maintain the quality of "extra virgin" since at least June of 2010, when the University of California at Davis' Olive Oil Center released its report entitled "Tests indicate that imported 'extra virgin' olive oil often fails international and USDA standards" (the "Report").  The Report[3] evaluated olive oils, including those sold by Defendants, based on standards and testing methods established by the IOC and USDA, as well as several newer standards and testing methods adopted in Germany and Australia.  The Report went on to note that the "samples failed extra virgin standards for reasons that include one or more of the following:

- •     oxidation by exposure to elevated temperatures, light, and/or aging;

- •     adulteration with cheaper refined olive oil;

- •     poor quality oil made from damaged and overripe olives, processing flaws, and/or

---

[3] The tests relied upon in the Report were conducted by scientists at UC Davis and at the Australian Oils Research Laboratory, a governmental research center accredited by the IOC (the "Australian Laboratory").

improper oil storage."

35.     With specific regard to the Filippo Berio brand olive oil that was tested, the Report found that two of the three samples tested by UC Davis failed the sensory qualifications for "extra virgin" olive oil.

36.     In April of 2011, UC Davis released a follow-up study.  UC Davis again worked with the Australian Laboratory to evaluate the quality of extra virgin olive oils sold on retail shelves in California.  UC Davis and the Australian Laboratory evaluated the oils based on the standards and testing methods established by the IOC.  Additionally, the two laboratories analyzed the oils using two testing methods adopted in Germany and Australia.  The Australian Olive Association adopted these tests to help detect extra virgin olive oils that were old and oxidized and not up to "extra virgin" olive oil standards.  The follow-up study found that 39% of the 18 samples of Filippo Berio extra virgin olive oil tested failed at least one chemical test for "extra virgin" and 83% of the samples failed both sensory assessments.

37.     It is a well-known in the olive oil industry that all olive oil must be stored in a cool and dark environment to preseve "extra virgin" qualities.  Heat and light cause chemical reactions inside the oil and causes it to degenerate into undesirable chemical products, thereby adulerating and degrading the oil.  For example, a 2007 study by researchers at the National Agricultural Research Foundation, Institute of Technology of Agricultural Products, Greece and the Higher Technical Educational School, Department of Food Science, Thermi, Thessaloniki, Greece, which Defendants are aware of, concluded that olive oil exposed to light had significantly lower tocopherol, carotenoid and chlorophyll contents than did the same oils kept in the dark.  Overall, the results obtained showed that the shelf life of the oils exposed to light is shorter than that of oils kept in the dark, and that after only *two months* of exposure to light the oils examined could no longer be considered as "extra virgin."

38.     Defendants continue to pack their olive oil in clear bottles and do not take steps to adequately protect the Mock EVOO Products from light degradation once they reach stores.  Indeed, Defendants do not have a policy for removing the Mock EVOO Products from store shelves after they have become degraded by light or other conditions.  Further, Defendants

indicate a "best by" date on the Mock EVOO Products that is a year to eighteen months after the oil is bottled – well beyond the two months it takes oil exposed to light to degrade such that it is no longer "extra virgin." Defendants know that the Mock EVOO Products are not "extra virgin" when they are sold to consumers and/or through the entire "best by" period indicated the bottles, but they label and price the oil as "extra virgin" and include the "best by" date even though they know it to be untrue.

**C.     Defendants Compound Their Deception With Targeted Marketing and Advertising Campaigns**

39.     Over the past twenty years, extra virgin olive oil has become increasingly popular among consumers. The media has reported extensively on the health benefits of olive oil, with numerous media outlets covering studies suggesting that olive oil can lower cholesterol and risks of cancer. Often these articles advise consumers that *extra virgin* olive oil is healthier than other kinds of olive oil. *See, e.g.* http://www.npr.org/blogs/thesalt/2013/09/30/226844915/to-get-the-benefits-of-olive-oil-fresh-may-be-best and http://www.mindbodygreen.com/0-12906/6-great-reasons-to-fall-in-love-with-olive-oil.html, last accessed April 21, 2014.

40.     Because real extra virgin olive oil has a distinct flavor profile, chefs and food writers often recommend it for cooking over regular olive oil. Its popularity surged over the last two decades, in part, because of the popularity of the Food Network channel, and the fact that many chefs appearing on that channel recommend it. For example, Rachel Ray, a well known celebrity chef famous for easy to prepare meals, uses extra virgin olive oil so frequently in her television programs that she was credited with coining the "EVOO" acronym. *See* http://en.wikipedia.org/wiki/Rachael_Ray, last accessed April 21, 2014. Giada De Laurentiis, another popular Food Network host and celebrity chef, uses Italian extra virgin olive oil in her recipes, and regularly advises viewers and home cooks to buy *Italian extra virgin olive oil* in order to recreate her Italian dishes at home. Mario Batali, a former Food Network chef, cookbook author, and current host of a popular daytime talk show, The Chew, has stated in his cookbooks and in numerous television programs that the best olive oil in the world comes from Italy. He accordingly counsels consumers to only use extra virgin olive oil from Italy when cooking.

41.     Extra virgin olive oil is so frequently recommended by chefs that a search for "extra virgin olive oil" on www.foodnetwork.com, the website operated by the Food Network, brings up more than 8,500 recipes that call for extra virgin olive oil as an ingredient in the recipe. http://www.foodnetwork.com/search/search-results.recipes.html?searchTerm=%22extra+virgin+olive+oil%22&lastFilter=tab&_charset_=UTF-8, last accessed April 21, 2014.  Other popular recipe websites, such as allrecipes.com and epicurious.com similarly feature thousands of recipes calling for "extra virgin olive oil."

42.     Defendants unfairly and unlawfully attempt to capitalize on consumers' desire for Italian and extra virgin olive oil.  Defendants, in fact, have employed a variety of long-term marketing and advertising campaigns and strategies to deceive consumers into believing that that Products are Italian and the Mock EVOO Products are high quality extra virgin olive oil.  For example, Defendants have a partnership with a popular Italian celebrity chef Mary Ann Esposito. Esposito has designed recipes and cooking videos for Defendants' consumers to encourage them to use the (more expensive) "Extra Virgin Olive Oil" in recipes, particularly those for Italian food.

43.     Defendants also rely on their website, to further their deception.  For example, their website includes a tab titled "Our Olive Grove."  They inform their consumers, falsely, that Defendants' Products come from an olive grove in Italy:



The largest olive grove in Italy, La Traversagna is located at the foot of the Tuscan hills in the Lucca Province near Pisa. Nestled in this picturesque, sun-drenched valley, La Traversagna is the site of our family's century-old farmhouse, the epicenter of the Filippo Berio® tradition.

A walk through La Traversagna is like a step back in time, when olives were grown and hand picked in much the same way they are today. Our trees enjoy full and prosperous flowering due to year-round care, which allows the olives to reach optimal size and maturity just before harvesting.

With 45,000 olive trees planted across 250 acres of beautiful green meadows, La Traversagna is truly an olive oil paradise.

**D.     Defendants' Conduct Differs From That Of Their Competitors**

    **(1)     Defendants' Competitors' Disclosures Related to the Origin of Their Products**

      44.     Unlike Defendants who claim their Products are "IMPORTED FROM ITALY," certain of their competitors state that their olive oil products are "PACKED IN ITALY" or "BOTTLED IN ITALY" or make no claim on the front of the package about the place of manufacture.  For example, one of Defendants' competitors in the olive oil market is Violi brand olive oil.  Violi sells its olive oil for lower prices that Defendants' comparable products.  It states "PACKED IN ITALY" on its bottles.  Trader Joe's bottles of olive oil, which the company also sells for a lower cost than Defendants' olive oils, too state "PACKED IN ITALY."  Other of Defendants' olive oil competitors, including Rizzoli, state on bottles that the olive oil is "BOTTLED IN ITALY."  Other companies, such as Star brand olive oil, make no reference on the front of the package of the geographic origin of their olive oil, unless the oil is, in fact, made from olives that are grown and pressed in that country, state or region.  Other of Defendants' competitors, like Pompeian olive oil, simply state, on the primary label panel, that the olive oil is "IMPORTED" without reference to any geographical region.

    **(2)     Defendants' Competitors Use Bottles Designed to Prevent Degradation of Their Olive Oil**

      45.     Unlike Defendants, many of their competitors bottle their olive oils in bottles that are designed to better maintain the quality of the oil inside the bottles.  For example, California Olive Ranch olive oils are bottled in green glass to prevent exposure to light.  Castillo de Piñar Olive Oil is bottled in violet glass bottles, which preserve the "organoleptic qualities" of the company's olive oils.  And, Colavita, a large manufacturer of olive oil, and one of Defendants' main competitors, bottles its olive oil in dark greenish glass.  Indeed, following the release of the results of the UC Davis Report, Colavita, unlike Defendants, made the decision to change to dark glass bottles, even if it cost them more and reduced sales.  Its CEO, Enrico Colavita, stated: "Even if consumers want to see the color of the olive oil, we are moving to all dark bottles."  *See* http://www.oliveoiltimes.com/olive-oil-basics/world/colavita-davis-olive-oil-study/7186 (last visited, April 21, 2014.)

**PLAINTIFF'S EXPERIENCE**

46.    Plaintiff regularly purchases extra virgin olive oil for home use.  At various times throughout the class period, she purchased Defendants' Filippo Berio Extra Virgin Olive Oil at a Safeway in Berkeley, California.

47.    Prior to purchasing Defendants' Filippo Berio brand extra virgin olive oil, Plaintiff reviewed the packaging to satisfy herself that she was purchasing extra virgin olive oil from Italy.  Plaintiff specifically reviewed Defendants' statements on the package that the product was "extra virgin" and "Imported from Italy."  Plaintiff relied on Defendants' affirmative disclosures to believe she was purchasing olive oil that was both extra virgin and made from olives that were grown and pressed in Italy.  Plaintiff also relied on Defendants' failure to adequately disclose that by "Imported from Italy" it meant that it was "packed" or "bottled" in Italy and that it was not either pressed in or made (exclusively) from olives that had been grown in Italy.

48.    Plaintiff purchased Defendants' Filippo Berio extra virgin olive oil from a Safeway supermarket in Berkeley, California for approximately $6 a bottle.

49.    Plaintiff later learned that the product she purchased was not extra virgin.  Plaintiff also later learned that the product she purchased was not made from olives grown and pressed in Italy.  Had Defendants not misrepresented (by omission and commission) the true nature of the olive oil, Plaintiff would not have purchased Defendants' product or, at a very minimum, she would have paid less for the product that she purchased.

50.    Plaintiff intends to make additional purchases of olive oil, including brands that are or may be owned by Defendants.  Plaintiff has no way to determine prior to her purchases whether oil sold by Defendants was made from olives grown and/or pressed in Italy and whether oils labelled "extra virgin" actually meet the standards of that grade.  Thus, in the absence of the injunctive relief requested in this Complaint, Plaintiff is likely to be deceived in the future and to suffer additional harm.

**CLASS ALLEGATIONS**

51.    Plaintiff brings this action against Defendants on behalf of herself and all others similarly situated, as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure,

section 382 of the California Code of Civil Procedure, and section 1781 of the California Civil Code.  Plaintiff seeks to represent the following groups of similarly situated persons, defined as follows:

> All persons who, between May 23, 2010 and the present, purchased, in California, any of Defendants' Mock Italian Products (the "California Italian Class");

> All persons who, between May 23, 2010 and the present, purchased, in the United States, any of Defendants' Mock EVOO Products (the "EVOO Class"); and

> All members of the EVOO Class who made their Fake EVOO Product purchases in California (the "California EVOO Subclass").

52.     This action has been brought and may properly be maintained as a class action against Defendants pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure, California Code of Civil Procedure section 382 because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable.

53.     Numerosity:  Plaintiff does not know the exact size of the classes or subclass, but it is estimated that each is composed of more than 100 persons.  The persons are so numerous that the joinder of all such persons is impracticable and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the courts.

54.     Common Questions Predominate:  This action involves common questions of law and fact to the potential classes and subclass because each class and subclass member's claim derives from the deceptive, unlawful and/or unfair statements and omissions that led Defendants' customers to believe that the Products were (or at a minimum contained olives) from Italy, and/or extra virgin.  The common questions of law and fact predominate over individual questions, as proof of a common or single set of facts will establish the right of each member of the classes and subclass to recover.  Among the common questions of law and fact are:

a)     Whether Defendants' Products were pressed in Italy and/or made from Italian olives;

b)     Whether Defendants' Mock EVOO Products qualify as "extra virgin olive oil" as that term is commonly understood and/or legally defined;

c)     Whether Defendants unfairly, unlawfully and/or deceptively failed to inform class

members that their Products were not Italian or "extra virgin," as of the purchase date and/or the "best by" date on the labels;

d)      Whether Defendants misled class members by, *inter alia*, representing that their Products were "Imported from Italy" and "Extra Virgin" Olive Oil;

e)      Whether Defendants' advertising and marketing regarding their Products sold to class members was likely to deceive class members or was unfair;

f)      Whether Defendants' bottles for distributing the Mock EVOO Products were inadequate or defective to preseve the "extra virgin" quality of the oil;

g)      Whether Defendants engaged in the alleged conduct knowingly, recklessly, or negligently;

h)      The amount of revenues and profits Defendants received and/or the amount of monies or other obligations lost by class members as a result of such wrongdoing;

i)      Whether class members are entitled to injunctive and other equitable relief and, if so, what is the nature of such relief; and

j)      Whether class members are entitled to payment of actual, incidental, consequential, exemplary and/or statutory damages plus interest thereon, and if so, what is the nature of such relief.

55.      Typicality:  Plaintiff's claims are typical of the class and subclass members because, in California, throughout the class period, she purchased at least one of Defendants' Products, Defendants' Filippo Berio Extra Virgin Olive Oil, in reliance on Defendants' misrepresentations and omissions that it was "extra virgin" and "Imported from Italy."  Thus, Plaintiff and the class members sustained the same injuries and damages arising out of Defendants' conduct in violation of the law.  The injuries and damages of each class member were caused directly by Defendants' wrongful conduct in violation of law as alleged.

56.      Adequacy:  Plaintiff will fairly and adequately protect the interests of all class members because it is in her best interests to prosecute the claims alleged herein to obtain full compensation due to her for the unfair and illegal conduct of which she complains.  Plaintiff also has no interests that are in conflict with or antagonistic to the interests of class and subclass

members. Plaintiff has retained highly competent and experienced class action attorneys to represent her interests and that of the classes and subclass. By prevailing on her own claim, Plaintiff will establish Defendants' liability to all class and subclass members. Plaintiff and her counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiff and counsel are aware of their fiduciary responsibilities to the class and subclass members and are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for class members.

57. Superiority: There is no plain, speedy, or adequate remedy other than by maintenance of this class action. The prosecution of individual remedies by members of the classes and subclass will tend to establish inconsistent standards of conduct for the Defendants and result in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions world engender. Furthermore, as the damages suffered by each individual member of the class may be relatively small, the expenses and burden of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.

58. Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

59. Plaintiff does not plead, and hereby disclaims, causes of action under the Food Drug and Cosmetic Act ("FDCA") and regulations promulgated thereunder by the FDA. If failure to do so would cause any of her claims to be preempted, Plaintiff also disclaims causes of action under the Tariff Act and regulations promulgated by the USDA, IOC and/or CBP. Plaintiff relies on these regulations only to the extent such laws and regulations have been separately enacted as state law or regulations or provide a predicate basis of liability under the

state and common laws cited in the following causes of action.

## PLAINTIFF'S FIRST CAUSE OF ACTION

**(Violation of the Consumers Legal Remedies Act, California Civil Code § 1750, *et. seq.*)**
**On Behalf of Herself and the California Italian Class and the California EVOO Subclass**

60.     Plaintiff realleges and incorporates the paragraphs of this Class Action Complaint as if set forth herein.

61.     This cause of action is brought pursuant to the California Consumers Legal Remedies Act, California Civil Code § 1750, *et. seq.* ("CLRA").

62.     Defendants' actions, representations and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale or lease of goods or services to consumers.

63.     Plaintiff and other California Subclass members are "consumers" as that term is defined by the CLRA in California Civil Code § 1761(d).

64.     The Products that Plaintiff (and others similarly situated class members) purchased from Defendants were "goods" within the meaning of California Civil Code § 1761(a).

65.     By engaging in the actions, representations and conduct set forth in this Class Action Complaint, Defendants have violated, and continue to violate, § 1770(a)(2), § 1770(a)(4), § 1770(a)(5), § 1770(a)(7), and § 1770(a)(9) of the CLRA.  In violation of California Civil Code §1770(a)(2), Defendants' acts and practices constitute improper representations regarding the source, sponsorship, approval, or certification of the goods they sold.  In violation of California Civil Code §1770(a)(4), Defendants' acts and practices constitute improper representations representations or designations of geographic origin in connection with goods or service.  In violation of California Civil Code §1770(a)(5), Defendants' acts and practices constitute improper representations that the goods they sell have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities, which they do not have.  In violation of California Civil Code §1770(a)(7), Defendants' acts and practices constitute improper representations that the goods they sell are of a particular standard, quality, or grade, when they are of another. In violation of California Civil Code §1770(a)(9), Defendants have advertised goods or services with intent not to sell them as advertised.

66.     Specifically, Defendants' acts and practices led customers to falsely believe that that their Products were Italian and "extra virgin" when they knew all such representations to be false and/or misleading.  Plaintiff requests that this Court enjoin Defendants from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to California Civil Code § 1780(a)(2).  If Defendants are not restrained from engaging in these types of practices in the future, Plaintiff and the other members of the California Italian Class and California EVOO Subclass swill continue to suffer harm.

67.     CLRA § 1782 NOTICE.  **Irrespective of any representations to the contrary in this Class Action Complaint, Plaintiff specifically disclaims, at this time, any request for damages under any provision of the CLRA**.  Plaintiff, however, hereby provides Defendants with notice and demand that within thirty (30) days from that date, Defendants correct, repair, replace or otherwise rectify the unlawful, unfair, false and/or deceptive practices complained of herein.  Defendants' failure to do so will result in Plaintiff amending this Class Action Complaint to seek, pursuant to California Civil Code § 1780(a)(3), on behalf of herself and those similarly situated class members, compensatory damages, punitive damages and restitution of any ill-gotten gains due to Defendants' acts and practices.

68.     Plaintiff also requests that this Court award her costs and reasonable attorneys' fees pursuant to California Civil Code § 1780(d).

**PLAINTIFF'S SECOND CAUSE OF ACTION**
**(False Advertising, Business and Professions Code § 17500, *et. seq.* ("FAL"))**
**On Behalf Of Herself and the California Italian Class and the California EVOO Subclass**

69.     Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

70.     Beginning at an exact date unknown to Plaintiff, but within three (3) years preceding the filing of the Class Action Complaint, Defendants made untrue, false, deceptive and/or misleading statements in connection with the advertising and marketing of their Products.

71.     Defendants made representations and statements (by omission and commission) that led reasonable customers to believe that they were purchasing olive oil that: (1) orginated in Italy and (2) was "extra virgin" grade or quality at the time of sale and up until the "best by" date

on the bottle.  Defendants deceptively failed to inform Plaintiff, and those similarly situated, that their Products did not actually originate in Italy, and because the Mock EVOO Products were packaged in defective bottles, they would not quality as "extra virgin" at the time of sale and/or up until the "best by" date.

72.     Plaintiff and those similarly situated relied to their detriment on Defendants' false, misleading and deceptive advertising and marketing practices, including without limitation each of the misrepresentations and omissions set forth in paragraphs 1, 20-43 and 47, above.  Had Plaintiff and those similarly situated been adequately informed and not intentionally deceived by Defendants, they would have acted differently by, without limitation, refraining from purchasing Defendants' Products, paying less for them or purchasing smaller quantities.

73.     Defendants' acts and omissions are likely to deceive the general public.

74.     Defendants engaged in these false, misleading and deceptive advertising and marketing practices to increase their profits.  Accordingly, Defendants have engaged in false advertising, as defined and prohibited by section 17500, *et. seq.*, of the California Business and Professions Code.

75.     The aforementioned practices, which Defendants used, and continue to use, to their significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendants' competitors as well as injury to the general public.

76.     Plaintiff seeks, on behalf of those similarly situated, full restitution of monies, as necessary and according to proof, to restore any and all monies acquired by Defendants from Plaintiff, the general public, or those similarly situated by means of the false, misleading and deceptive advertising and marketing practices complained of herein, plus interest thereon.

77.     Plaintiff seeks, on behalf of those similarly situated, an injunction to prohibit Defendants from continuing to engage in the false, misleading and deceptive advertising and marketing practices complained of herein.  The acts complained of herein occurred, at least in part, within three (3) years preceding the filing of this Class Action Complaint.

78.     Plaintiff and those similarly situated are further entitled to and do seek both a declaration that the above-described practices constitute false, misleading and deceptive

advertising, and injunctive relief restraining Defendants from engaging in any such advertising and marketing practices in the future.  Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to Plaintiff and the general public and the loss of money and property in that the Defendants will continue to violate the laws of California, unless specifically ordered to comply with the same.  This expectation of future violations will require current and future customers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendants to which Defendants are not entitled. Plaintiff, those similarly situated and/or other consumers nationwide have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

79.     As a direct and proximate result of such actions, Plaintiff and the other members of the California Italian Class and the California EVOO Subclass have suffered, and continue to suffer, injury in fact and have lost money and/or property as a result of such false, deceptive and misleading advertising in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

**PLAINTIFF'S THIRD CAUSE OF ACTION**
**(Breach of Contract)**
**On Behalf of Herself and the EVOO Class (and the California EVOO Subclass)**

80.     Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

81.     At various times throughout the class period, Plaintiff entered into a contract with Defendants for the purchase of Defendants' Filippo Berio Extra Virgin Olive Oil.

82.     The terms of the contract were contained on the labels of the olive oil and specified, *inter alia*, that Defendants' olive oil was "extra virgin" and that it would remain so for approximately eighteen months.  Persons similarly situated to Plaintiff entered into contracts with the same language, other than varying best by dates, when purchasing olive oil from Defendants.

83.     Defendants breached the contract by providing to Plaintiff, and those similarly situated, olive oil that, due to Defendants' low quality, defective bottles, was not "extra virgin" at the time of purchase and/or would not remain "extra virgin" (i.e., best in flavor and quality) for

the period stated.

84.     As a direct and proximate result of the breaches set forth herein, Plaintiff, and those similarly situated, have suffered, and continue to suffer, damages in an amount which will be proven at trial, but which are in excess of the jurisdictional minimum of this Court.

**PLAINTIFF'S FOURTH CAUSE OF ACTION**
**(Breach of the Covenant of Good Faith and Fair Dealing)**
**On Behalf of Herself and the California EVOO Subclass**

85.     Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

86.     The written agreement entered into between Plaintiff and Defendants included an implied covenant of good faith and fair dealing. The same implied covenant existed in the agreement between Defendants and the members of the California EVOO Subclass, as they made their purchases in California.

87.     Defendant breached the covenant of good faith and fair dealing by knowingly and intentionally providing to Plaintiff, and those similarly situated, olive oil that, due to Defendants' low quality, defective bottles, was not "extra virgin" at the time of sale and/or would not remain "extra virgin" (i.e., best in flavor and quality) for the period stated.

88.     As a direct and proximate result of the breaches set forth herein, Plaintiff, and those similarly situated, have suffered, and continue to suffer, damages in an amount which will be proven at trial, but which are in excess of the jurisdictional minimum of this Court.

**PLAINTIFF'S FIFTH CAUSE OF ACTION**
**(Fraud, Deceit and/or Misrepresentation)**
**On Behalf of Herself and the EVOO Class (and the California EVOO Subclass)**

89.     Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

90.     At various times throughout the class period, Defendants fraudulently and deceptively led Plaintiff to believe that Defendants' olive oil was of a certain quality or grade—i.e., extra virgin—when it was sold and would maintain its quality until the "best by" date. Defendants failed to inform Plaintiff that due to their use of defective and low-quality bottles: (a) the olive oil's quality would degrade; (b) the olive oil did not qualify as "extra virgin" at the time

of sale and/or would not qualify as "extra virgin" up until the "best by" date; (c) and the olive oil would not maintain the "extra virgin" flavor and quality until the "best by" date.

91.     These omissions were material at the time they were made.  They concerned material facts that were essential to the analysis undertaken by Plaintiff as to whether to purchase Defendants' olive oil.

92.     Defendants made identical misrepresentations and omissions to members of the EVOO Class regarding Defendants' Mock EVOO Products.

93.     In not so informing Plaintiff and the members of the EVOO Class, Defendants breached their duty to them.  Defendants also gained financially from, and as a result of, their breach.

94.     Plaintiff and those similarly situated relied to their detriment on Defendants' fraudulent omissions.  Had Plaintiff and those similarly situated been adequately informed and not intentionally deceived by Defendants, they would have acted differently by, without limitation, not purchasing (or paying less for) Defendants' Mock EVOO Products.

95.     Defendants had a duty to inform class members at the time of their purchase of that the Mock EVOO Products that the product they were purchasing were not "extra virgin" quality, were best used sooner, and would degrade to a lower quality or grade over a short time. Defendants failed to to provide this information to class members.  Class members relied to their detriment on Defendants' omissions.  These omissions were material to the decisions of the class members to purchase Defendants' Mock EVOO Products.  In making these omissions, Defendants breached their duty to class members.  Defendants also gained financially from, and as a result of, their breach.

96.     By and through such fraud, deceit, misrepresentations and/or omissions, Defendants intended to induce Plaintiff and those similarly situated to alter their position to their detriment.  Specifically, Defendants fraudulently and deceptively induced Plaintiff and those similarly situated to, without limitation, to purchase their Mock EVOO Products.

97.     Plaintiff and those similarly situated justifiably and reasonably relied on Defendants' omissions, and, accordingly, were damaged by the Defendants.

98.     As a direct and proximate result of Defendants' misrepresentations, Plaintiff and those similarly situated have suffered damages, including, without limitation, the amount they paid for the Mock EVOO Products.

99.     Defendants' conduct as described herein was willful and malicious and was designed to maximize Defendants' profits even though Defendants knew that it would cause loss and harm to Plaintiff and those similarly situated.

**PLAINTIFF'S SIXTH CAUSE OF ACTION**
**(Unfair, Unlawful and Deceptive Trade Practices, Business and Professions Code § 17200, et. seq.)**
**On Behalf of Herself and the California Italian Class and the California EVOO Subclass**

100.     Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

101.     Within four (4) years preceding the filing of this Class Action Complaint, and at all times mentioned herein, Defendants have engaged, and continue to engage, in unfair, unlawful and deceptive trade practices in California by engaging in the unfair, deceptive and unlawful business practices outlined in this Class Action Complaint.   In particular, Defendants have engaged, and continue to engage, in unfair, unlawful and deceptive trade practices by, without limitation, the following:

a.     deceptively representing to Plaintiff, and those similarly situated, the Products were "Imported From Italy," therey implying that they contained Italian olive oil and/or were pressed in Italy;

b.     deceptively representing to Plaintiff, and those similarly situated, the Mock EVOO Products were of a certain quality or grade—i.e., extra virgin—at the time of sale and would remain "extra virgin" until the "best by" date;

c.     failing to adequately inform Plaintiff, and those similarly situated, that the Products were not and did not exclusively contain oil from Italian olives;

d.     failing to adequately inform Plaintiff, and those similarly situated, that the Products were not and did not exclusively contain oil that was pressed in Italy;

e.     failing to adequately inform Plaintiff, and those similarly situated, that the

Products were merely bottled or packed in Italy;

      f.      failing to inform Plaintiff, and those similarly situated, that due to Defendants' defective and inferior bottles, the Mock EVOO Products were not the represented quality or grade—i.e., they were no longer extra virgin oilve oil—at the time of sale and/or would not maintain "extra virgin" quality until the "best by" date on the bottle;

      g.      engaging in fraud, deceit, and misrepresentation as described herein;

      h.      violating the CLRA as described herein;

      i.      violating the FAL as described herein;

      j.      violating the California Health and Safety Act §§ 112875, *et. seq.*; and

      k.      violating the Sherman Food, Drug and Cosmetic Act, Cal. Health & Saf. Code, including, without limitation, sections 110300, 110380, 110385, 110390, 110395, 110398, 110400, 110660, 110680, 110760, 110765, and 110770.

      102.      Plaintiff and those similarly situated relied to their detriment on Defendants' unfair, deceptive and unlawful business practices.  Had Plaintiff and those similarly situated been adequately informed and not deceived by Defendants, they would have acted differently by not purchasing (or paying less for) Defendants' Products.

      103.      Defendants' acts and omissions are likely to deceive the general public.

      104.      Defendants engaged in these unfair practices to increase their profits. Accordingly, Defendants have engaged in unlawful trade practices, as defined and prohibited by section 17200, *et. seq.* of the California Business and Professions Code.

      105.      The aforementioned practices, which Defendants have used to their significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendants' competitors as well as injury to the general public.

      106.      Plaintiff seeks, on behalf of those similarly situated, full restitution of monies, as necessary and according to proof, to restore any and all monies acquired by Defendants from Plaintiff, the general public, or those similarly situated by means of the unfair and/or deceptive trade practices complained of herein, plus interest thereon.

      107.      Plaintiff seeks, on behalf of those similarly situated, an injunction to prohibit

1    Defendants from continuing to engage in the unfair trade practices complained of herein.

2        108.    The acts complained of herein occurred, at least in part, within four (4) years

3    preceding the filing of this Class Action Complaint.

4        109.    Plaintiff and those similarly situated are further entitled to and do seek both a

5    declaration that the above-described trade practices are unfair, unlawful and/or fraudulent, and

6    injunctive relief restraining Defendants from engaging in any of such deceptive, unfair and/or

7    unlawful trade practices in the future.  Such misconduct by Defendants, unless and until enjoined

8    and restrained by order of this Court, will continue to cause injury in fact to the general public

9    and the loss of money and property in that Defendants will continue to violate the laws of

10   California, unless specifically ordered to comply with the same.  This expectation of future

11   violations will require current and future customers to repeatedly and continuously seek legal

12   redress in order to recover monies paid to Defendants to which Defendants are not entitled.

13   Plaintiff, those similarly situated and/or other consumers nationwide have no other adequate

14   remedy at law to ensure future compliance with the California Business and Professions Code

15   alleged to have been violated herein.

16       110.    As a direct and proximate result of such actions, Plaintiff and the other members of

17   the Class and Subclasses have suffered and continue to suffer injury in fact and have lost money

18   and/or property as a result of such deceptive, unfair and/or unlawful trade practices and unfair

19   competition in an amount which will be proven at trial, but which is in excess of the jurisdictional

20   minimum of this Court.   Among other things, Plaintiff and the Class and Subclasses lost the

21   amount they paid for the Products.

22       111.    As a direct and proximate result of such actions, Defendants have enjoyed, and

23   continue to enjoy, significant financial gain in an amount which will be proven at trial, but which

24   is in excess of the jurisdictional minimum of this Court.

25                                    **PRAYER FOR RELIEF**

26       WHEREFORE, Plaintiff prays for judgment as follows:

27       A.      On Cause of Action Number 1 against Defendants and in favor of Plaintiff and the

28                other members of the California Italian Class and the California EVOO Subclass:

1.      for restitution and injunctive relief pursuant to California Civil Code sec-
tion 1780;

2.      [Reserved]; and

3       [Reserved].

B.      On Causes of Action Numbers 2 and 6 against Defendants and in favor of Plaintiff
and the other members of the California Italian Class and the California EVOO
Subclass:

1.      for restitution pursuant to, without limitation, the California Business &
Professions Code §§ 17200, *et. seq.* and 17500, *et. seq.*; and

2.      for injunctive relief pursuant to, without limitation, the California Business
& Professions Code §§ 17200, et seq. and 17500, *et. seq.*

C.      On Cause of Action Number 3 against Defendants and in favor of Plaintiff and the
other members of the EVOO Class (including the California EVOO Subclass):  an
award of compensatory damages, the amount of which is to be determined at trial.

D.      On Cause of Action Number 4 against Defendants and in favor of Plaintiff and the
other members of the California EVOO Subclass:  an award of compensatory
damages, the amount of which is to be determined at trial.

E.      On Cause of Action Number 5 against Defendants and in favor of Plaintiff and the
other members of the EVOO Class (including the California EVOO Subclass):

1.      an award of compensatory damages, the amount of which is to be deter-
mined at trial; and

2.      an award of punitive damages, the amount of which is to be determined at
trial.

F.      On all causes of action against Defendants and in favor of Plaintiff, class members
and the general public:

1.      for reasonable attorneys' fees according to proof pursuant to, without limi-
tation, the California Legal Remedies Act and California Code of Civil
Procedure § 1021.5;

2.      for costs of suit incurred; and

3.      for such further relief as this Court may deem just and proper.

### JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated:  May 22 2014                    **GUTRIDE SAFIER LLP**

_____

Adam J. Gutride, Esq.
Seth A. Safier, Esq.
Marie McCrary, Esq.
Kristen G. Simplicio, Esq.
835 Douglass Street
San Francisco, California 94114

Attorneys for Plaintiff

Class Action Complaint

# Exhibit A