1   Mark E. Haddad (SBN 205945)
    mhaddad@sidley.com
2   Sean A. Commons (SBN 217603)
    scommons@sidley.com
3   Nitin Reddy (SBN 229451)
    nreddy@sidley.com
4   Collin P. Wedel (SBN 278461)
    cwedel@sidley.com
5   **SIDLEY AUSTIN LLP**
    555 West Fifth Street, Suite 4000
6   Los Angeles, California 90013
    Telephone:  (213) 896-6000
7   Facsimile:  (213) 896-6600

8

    Attorneys for Defendant
9   SALOV NORTH AMERICA CORP.

10              **UNITED STATES DISTRICT COURT**

11             **NORTHERN DISTRICT OF CALIFORNIA**

12                   **OAKLAND DIVISION**

13

14   ROHINI KUMAR, an individual, on behalf of         Case No. 4:14-CV-02411 YGR
     herself, the general public and those similarly
15   situated,                                          **DEFENDANT'S NOTICE OF MOTION
                                                        AND MOTION TO DISMISS
16              Plaintiff,                              PLAINTIFF'S COMPLAINT;
                                                        MEMORANDUM OF POINTS AND
17        vs.                                           AUTHORITIES IN SUPPORT**

18
     SALOV NORTH AMERICA CORP.,                         Date:      September 9, 2014
19                                                      Time:      2:00 p.m.
                Defendant.                              Judge:     Hon. Yvonne Gonzalez Rogers
20

21

22

23

24

25

26

27

28

1

## NOTICE OF MOTION AND MOTION

2    **PLEASE TAKE NOTICE** that on September 9, 2014, at 2:00 p.m., or at such other date

3    and time as the Court may set, at the United States District Court for the Northern District of

4    California, located at Oakland Courthouse, 1301 Clay Street, Oakland, California, before the

5    Honorable Yvonne Gonzalez Rogers, in Courtroom 5, on the Second Floor, Defendant Salov North

6    America Corp. ("SNA") will and hereby does move the Court for an order dismissing Plaintiff's

7    Complaint under Rules 8(a), 9(b), 12(b)(1), and 12(b)(6) of the Federal Rules of Civil Procedure on

8    the grounds that Plaintiff lacks standing to assert the claims alleged, has failed to state a plausible

9    claim of deception, and has failed to allege fraud with the requisite particularity.

10    This motion is based on this Notice of Motion and Motion, the accompanying Memorandum

11    of Points and Authorities, the complete files and records of this action, and such other and further

12    matters as the Court may properly consider.

13

14    Dated:  July 22, 2014                          Respectfully submitted,

15                                                 SIDLEY AUSTIN LLP
                                                   Mark E. Haddad
16                                                 Sean A. Commons
                                                   Nitin Reddy
17                                                 Collin P. Wedel

18

19                                                 By:  /s/ Nitin Reddy_____
                                                     Nitin Reddy
20                                                   Attorneys for Defendant
                                                     SALOV NORTH AMERICA CORP.

21

22

23

24

25

26

27

28

1

**ISSUES TO BE DECIDED**

I.    "Imported From Italy" Claims

    A.    Does Plaintiff lack standing to allege that she was deceived by the phrase "Imported from Italy" on the front of the label, where her allegations establish that she read the back label, which fully discloses the countries of origin of the oils in the bottle?

    B.    Has Plaintiff alleged sufficient facts to make it plausible that a reasonable consumer would interpret "Imported from Italy" to mean that a bottle contains olive oils "exclusively" extracted from olives grown in Italy, particularly when the labeling discloses the country of origin for each of the olive oils in the bottle?

    C.    May Plaintiff manufacture an injury by alleging Defendant violated the Tariff Act, 19 U.S.C. § 1304, which does not allow private enforcement and has not been violated in any event?

II.   "Best By Date" Claims Relating to Extra Virgin Olive Oils

    A.    Does Plaintiff lack standing to pursue claims over the labeling of products as extra virgin when she cannot allege—and offers no plausible way to determine—that a bottle she herself purchased did not contain extra virgin olive oil?

    B.    Does Plaintiff lack standing to assert extra virgin claims on behalf of consumers who purchased other lots and other types of products?

    C.    Has Plaintiff pleaded her claims about Defendant's extra virgin olive oils with the particularity required by Rule 9(b)?

III.  Can Plaintiff pursue claims for breach of contract or breach of the implied covenant when she cannot allege the formation of a contract between herself and Defendant based on a food label, including because she cannot allege adequate consideration to Defendant?

IV.   Can Plaintiff pursue claims under California law on behalf of a putative nationwide class against an out-of-state Defendant for conduct that allegedly occurred outside of California?

# **TABLE OF CONTENTS**

INTRODUCTION .................................................................................................1

FACTUAL BACKGROUND...................................................................................2

ARGUMENT.........................................................................................................3

    I.     Plaintiff's "Imported from Italy" Claims Fail as a Matter of Law. ........................4

          A.    Plaintiff lacks standing to seek monetary or injunctive relief based on the use of the phrase "Imported from Italy." ................................................4

          B.    Plaintiff has not plausibly alleged that a reasonable consumer is likely to confuse "Imported from Italy" to mean "Exclusively Italian Ingredients."................................................................................8

          C.    Plaintiff cannot manufacture an injury by invoking the Tariff Act. ..........10

    II.    Plaintiff's "Extra Virgin" Claims Fail as a Matter of Law....................................13

          A.    Plaintiff lacks standing because she has not suffered a cognizable, concrete injury in fact. ................................................................13

          B.    Plaintiff lacks standing to assert claims on behalf of consumers who purchased other lots and other types of products........................................15

          C.    Plaintiff has not pleaded fraud with particularity. ....................................17

    III.    SNA's Labeling Does Not Create a Contract with Consumers............................18

    IV.    Plaintiff Cannot Assert California-State-Law Claims on Behalf of a Nationwide Class. ..................................................................................19

CONCLUSION....................................................................................................21

i

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

**CASES**

3

4

*Allstate Ins. Co. v. Hague*,
   449 U.S. 302 (1981).......................................................................................................19

5

6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).........................................................................................................3

7

*Astra USA, Inc. v. Santa Clara Cnty.*,
   131 S. Ct. 1342 (2011).............................................................................................11, 12

8

9

*Banga v. Allstate Ins. Co.*,
   No. S-08-1518 LKK-EFB-PS, 2010 WL 1267841 (E.D. Cal., Mar. 31, 2010) .....................12

10

11

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).........................................................................................................3

12

*Benay v. Warner Bros. Entm't, Inc.*,
   607 F.3d 620 (9th Cir. 2010) .........................................................................................18

13

14

*Berclain Am. Latina v. Baan Co.*,
   74 Cal. App. 4th 401 (1999) .........................................................................................18

15

16

*Bias v. Wells Fargo & Co.*,
   942 F. Supp. 2d 915 (N.D. Cal. 2013) ..........................................................................17

17

*Buckland v. Threshold Enters., Ltd.*,
   155 Cal. App. 4th 798 (2007) .......................................................................................15

18

19

*Burr v. Sherwin Williams Co.*,
   42 Cal. 2d 682 (1954) ...................................................................................................18

20

21

*Campion v. Old Rep. Home Protection Co.*,
   861 F. Supp. 2d 1139 (S.D. Cal. 2012)...........................................................................7

22

*Carrea v. Dreyer's Grand Ice Cream*,
   C 10-01044 JSW, 2011 WL 159380 (N.D. Cal. Jan. 10, 2011) ...........................7, 16

23

24

*Castagnola v. Hewlett-Packard Co.*,
   No. C 11-05772 JSW, 2012 WL 2159385 (N.D. Cal. June 13, 2012) ...................7

25

*Cattie v. Wal-Mart Stores, Inc.*,
   504 F. Supp. 2d 939 (S.D. Cal. 2007)..............................................................................7

26

27

*CDF Firefighters v. Maldonado*,
   158 Cal. App. 4th 1226 (2008) .....................................................................................18

28

ii

*Clapper v. Amnesty Int'l USA*,
    133 S. Ct. 1138 (2013)............................................................................................15

*Colgan v. Leatherman Tool Grp.*,
    135 Cal. App. 4th 663 (2006) ...............................................................................9

*Cooper v. Pickett*,
    137 F.3d 616 (9th Cir. 1997) ...........................................................................3, 17

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006)...............................................................................................4

*Doe v. Nat'l Bd. of Med. Examiners*,
    199 F.3d 146 (3d Cir. 1999) ................................................................................10

*Edwards v. First Am. Corp.*,
    610 F.3d 514 (9th Cir. 2010) ...............................................................................10

*Freeman v. Time, Inc.*,
    68 F.3d 285 (9th Cir. 1995) ...............................................................................5, 7

*Frezza v. Google, Inc.*,
    No. 5:12-cv-00237-RMW, 2013 WL 1736788 (N.D. Cal. Apr. 22, 2013) ...........21

*Garcia v. Sony Computer Entm't Am.*,
    859 F. Supp. 2d 1056 (N.D. Cal. 2012) ..............................................................8

*Hairston v. S. Beach Bev. Co.*,
    No. 1429 JFW, 2012 WL 1893818 (C.D. Cal. May 18, 2012)..............................8

*Hartless v. Clorox Co.*,
    No. 06CV2705 JAH (CAB), 2007 WL 3245260 (S.D. Cal. Nov. 2, 2007) ...........12

*Hodgers-Durgin v. de la Vina*,
    199 F.3d 1037 (9th Cir. 1999) ..............................................................................7

*In re GlenFed, Inc. Sec. Litig.*,
    42 F.3d 1541 (9th Cir. 1994) (en banc) ..............................................................17

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (2009) ...........................................................................................8

*Japan Line, Ltd. v. Cnty. of L.A.*,
    441 U.S. 434 (1979)...............................................................................................10

*Jones v. ConAgra Foods, Inc.*,
    912 F. Supp. 2d 889 (N.D. Cal. 2012) .................................................................18

*Just Film, Inc. v. Merchant Servs.*,
    No. 10-cv-1993 CW, 2010 WL 4923146 (N.D. Cal. Nov. 29, 2010) ...................18

iii

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ........................................................................16, 17

*Kwikset Corp. v. Super. Ct.*,
  51 Cal. 4th 310 (2011) ...................................................................................5, 15

*Lanovaz v. Twinings N. Am.*,
  No. C-12-2646-RMW, 2013 WL 675929 (N.D. Cal. Feb. 25, 2013)....................16

*Larsen v. Trader Joe's Co.*,
  No. 11-cv-5188–SI, 2012 WL 5458396 (N.D. Cal. June 14, 2012).......................16

*Lavie v. Procter & Gamble Co.*,
  105 Cal. App. 4th 496 (2003) ..........................................................................8, 9

*Lierboe v. State Farm Mut. Auto. Ins. Co.*,
  350 F.3d 1018 (9th Cir. 2003) .........................................................................4, 13

*Lopez v. Smith*,
  203 F.3d 1122 (9th Cir. 2000) ..............................................................................3

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)...............................................................................4, 13, 15

*Mason v. Coca-Cola Co.*,
  774 F. Supp. 2d 699 (D.N.J. 2011) ......................................................................11

*Mazza v. Am. Honda Motor Co., Inc.*,
  666 F.3d 581 (9th Cir. 2012) ................................................................................20

*McGhee v. Arabian Am. Oil Co.*,
  871 F.2d 1412 (9th Cir. 1989) ..............................................................................20

*McKinnis v. Kellogg USA*,
  No. 07-2611-ABC, 2007 WL 4766060 (C.D. Cal. Sept. 19, 2007) ...................8, 10

*Mead Johnson & Co. v. Abbott Labs.*,
  201 F.3d 883 (7th Cir. 2000) ..................................................................................9

*Miller v. Ghirardelli Chocolate Co.*,
  912 F. Supp. 2d 861 (N.D. Cal. 2012)...................................................................16

*Moss v. U.S. Secret Serv.*,
  572 F.3d 962 (9th Cir. 2009) .....................................................................3, 14, 15

*Mugwotld, Inc. v. G.G. Marck & Associates*,
  563 F. Supp. 2d 659 (E.D. Tex. 2007)...................................................................11

*N. Y. City Health & Hosp. Corp. v. WellCare of N.Y.*,
  801 F. Supp. 2d 126 (S.D.N.Y. 2011) ...................................................................11

iv

*Nat'l Family Planning & Reproductive Health Ass'n v. Gonzales*,
    468 F.3d 826 (D.C. Cir. 2006) ................................................................. 15

*Neal v. Quality Loan Serv. Corp.*,
    301 F. App'x 679 (9th Cir. 2008) ............................................................. 18

*Norwest Mortgage, Inc. v. Super. Ct.*,
    72 Cal. App. 4th 214 (1999) .................................................................... 19

*Paduano v. Am. Honda Motor Co.*,
    169 Cal. App. 4th 1453 (2009) .................................................................. 7

*Parkinson v. Hyundai Motor Am.*,
    258 F.R.D. 580 (C.D. Cal. 2008) ............................................................ 19

*Pernod Ricard USA LLC v. Bacardi U.S.A. Inc.*,
    702 F. Supp. 2d 238 (D. Del. 2010) .......................................................... 9

*Piazza's Seafood World LLC v. Odom*,
    448 F.3d 744 (5th Cir. 2006) ..................................................................... 9

*Pirozzi v. Apple Inc.*,
    913 F. Supp. 2d 840 (N.D. Cal. 2012) ........................................... 9, 13, 16

*Potter v. Toei Animation Inc.*,
    839 F. Supp. 2d 49 (D.D.C. 2012) ........................................................... 10

*Smith v. City & Cnty. of S.F.*,
    225 Cal. App. 3d 38 (1990) ..................................................................... 19

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) ................................................................................ 10

*Surzyn v. Diamond Foods, Inc.*,
    No. C 14-0136 SBA, 2014 WL 2212216 (N.D. Cal. May 28, 2014) ....... 17

*Thomas v. Costco Wholesale Corp.*,
    No. C 12-02908 EJD, 2013 WL 1435292 (N.D. Cal. April 9, 2013) ....... 18

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ....................................................... 4, 13, 16, 17

*Von Koenig v. Snapple Beverage Corp.*,
    713 F. Supp. 2d 1066 (E.D. Cal. 2010) ..................................................... 6

*Wang v. OCZ Tech. Grp.*,
    276 F.R.D. 618 (N.D. Cal. 2011) ............................................................... 7

*Warner v. Wells Fargo Bank*,
    11-cv-00480 DOC (PLAx), 2011 WL 2470923 (C.D. Cal. June 21, 2011) ........................... 12

v

*Wash. Mut. Bank v. Super. Ct.*,
 24 Cal. 4th 906 (2001) ...................................................................................20

*Werbel v. PepsiCo, Inc.*,
 No. 09-04456 SBA, 2010 WL 2673860 (N.D. Cal. July 2, 2010) ...........................10

*Williams v. Gerber Prods.*,
 552 F.3d 934 (9th Cir. 2008) ...............................................................................7

*Williams v. Gerber Prods. Co.*,
 439 F. Supp. 2d 1112 (S.D. Cal. 2006).................................................................8

*Williams v. Oberon Media, Inc.*,
 No. cv-09-8764-JFW, 2010 WL 8453723 (C.D. Cal. Apr. 19, 2010)....................21

*York Grp. v. Horizon Casket Grp.*,
 459 F. Supp. 2d 567 (S.D. Tex. 2006)..................................................................11

*Yumul v. Smart Balance, Inc.*,
 733 F. Supp. 2d 1117 (C.D. Cal. 2010) ...............................................................18

**STATUTES**

19 U.S.C. § 1304......................................................................................................10

19 U.S.C. § 1304a....................................................................................................10

CAL. BUS. & PROF. CODE §§ 17200-17208 ("UCL") ...................................................3

CAL. BUS. & PROF. CODE § 17500 ("FAL") .................................................................3

CAL. CIV. CODE § 1550................................................................................................18

CAL. CIV. CODE § 1750..................................................................................................3

**OTHER AUTHORITIES**

19 C.F.R. § 134.46....................................................................................................12

19 C.F.R. § 177.9(c) .................................................................................................12

64 Fed. Reg. 46,754, 46,758 (Aug. 26, 1999) ....................................................2, 16

75 Fed. Reg. 22,363, 22,366 (Apr. 28, 2010) ...........................................................2

AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (4th ed. 2000)...........8

MERRIAM-WEBSTER ONLINE DICTIONARY, http://www.m-w.com................................9

OXFORD ENGLISH DICTIONARY ONLINE, www.oed.com ...........................................8

vi

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2    Defendant Salov North America Corp. ("SNA") respectfully submits this memorandum in

3    support of its motion to dismiss the complaint under Rules 8(a), 9(b), 12(b)(1), and 12(b)(6).

4

**INTRODUCTION**

5    Plaintiff seeks to leverage her purchase of one bottle of extra virgin olive oil into state and

6    nationwide claims covering four different varieties of extra virgin olive oil and two non-extra virgin

7    products.  But Plaintiff has not actually suffered a cognizable injury in fact and thus lacks standing.

8    Moreover, she has not alleged facts in compliance with Rules 8(a) to plausibly suggest that absent

9    class members suffered injuries either, let alone with the particularity required by Rule 9(b).

10    Plaintiff's first theory is that the term "Imported from Italy" used on the front label of

11    SNA's bottles is false or misleading.  But Plaintiff's own allegations confirm that she lacks standing

12    to assert this claim because the back label—which Plaintiff concededly read—contains the exact

13    disclosure Plaintiff contends should have been made:  "Packed in Italy with select extra virgin olive

14    oils from Italy, Spain, Greece & Tunisia."  *Compare* Compl. ¶¶ 23, 25 *with id.* ¶ 44.  Equally fatal,

15    there is nothing false or misleading about the phrase "Imported from Italy."  The phrase simply

16    reflects the country from which the bottle was brought to the United States, and Plaintiff admits her

17    bottle was "exported" from Italy.  Compl. ¶¶ 1a, 20a.  Plaintiff's geographic origin claims thus fail.

18    Plaintiff's second theory is that SNA's extra virgin olive oils degrade after being packed and

19    shipped due to exposure to light, and thus are often (but not always) no longer "extra virgin" by the

20    time they are consumed.  Plaintiff lacks standing to assert this claim because she does not allege

21    that this happened to her.  She nowhere states that she noticed any defect in the oil she bought, or

22    that her bottle was tested and found to contain oil that was not extra virgin; she thus does not allege

23    an injury.  The defects she alleges in the bottles her lawyers bought do not suffice to give Plaintiff

24    standing.  Plaintiff has not alleged any facts that make it plausible that her bottle was exposed to the

25    same amount of light as those bottles, particularly where Plaintiff has provided absolutely no

26    description of the color of the oil in her bottle and the tested bottles, the  "Best By" dates of her

27    bottle and the test bottles, the lot codes of her bottle and the tested bottles, or any details about the

28

1

storage and handling of any bottles referenced in her complaint prior to their selection for purchase and testing.  Absent such facts, she provides the Court no basis for finding that the bottles her lawyers bought are representative of the one she bought (let alone of those consumers typically buy), and thus that she has suffered an injury or stated a claim.

Not all cases have merit and not all alleged frauds are real.  This case falls squarely in the implausible camp.  For these reasons and the ones below, the Court should dismiss Plaintiff's complaint with prejudice.

## FACTUAL BACKGROUND

"Unlike other oils that are relatively uniform in characteristics, all extra virgin olive oils . . . have different flavor characteristics."  64 Fed. Reg. 46,754, 46,758 (Aug. 26, 1999).  These natural variations explain why USDA evaluates extra virgin olive oils on a "lot by lot basis."  75 Fed. Reg. 22,363, 22,366 (Apr. 28, 2010).

Plaintiff alleges that she purchased a bottle Filippo Berio Extra Virgin Olive Oil at a Safeway in Berkeley, California, at some point between May 2010 and the present.  Compl. ¶ 46.  She discloses no other details about that transaction—such as the color of the bottle, the date of purchase, the lot code of the bottle, its manufacture date, or how far in advance of the "Best By" date she consumed the oil.  She does claim, however, that she purchased the bottle after "review[ing] the packaging to satisfy herself that she was purchasing extra virgin olive oil from Italy."  *Id.* ¶ 47.  Although the Complaint identifies certain website statements allegedly made by Defendant, *id.* ¶¶ 39-43, Plaintiff does not allege reliance on any statements other than those on the product labels. Plaintiff further alleges that her lawyers purchased other bottles of other kinds of SNA's extra virgin olive oils from other California stores and submitted those bottles for testing, which allegedly showed that *those* bottles—but not the bottle Plaintiff purchased—were not extra virgin olive oil.  *Id.* ¶¶ 31-32.  Plaintiff is silent about the particular product formulations, prices paid, lot codes, colors, dates and place of purchase, or the "Best By" dates of those other bottles as well.

1    Based on her purchase of Filippo Berio Extra Virgin Olive Oil, and unspecified "testing,"

2  Plaintiff asserts claims regarding six products:  Filippo Berio Extra Virgin Olive Oil, Filippo Berio

3  Delicato Extra Virgin Olive Oil, Filippo Berio Robusto Extra Virgin Olive Oil, Filippo Berio

4  Organic Extra Virgin Olive Oil, Filippo Berio Olive Oil, and Filippo Berio Extra Light Olive Oil.

5  Compl. ¶ 17.  Plaintiff alleges that all of these products were deceptively labeled as "Imported from

6  Italy," arguing that the label should describe the bottles as "Packed in Italy" because they do not

7  contain olive oils exclusively extracted from olives grown in Italy.  *Id.* ¶ 20a.  She further alleges

8  that all bottles of the four varieties of extra virgin products sold by SNA since May 2010 were

9  mislabeled because they are stored in clear containers and, due to a purported combination of

10  factors relating to the packaging, shipping, and handling of the bottles, their exposure to light causes

11  them to fall below the standard for extra virgin sometime before the "Best By" date.  *Id.* ¶ 20b.

12    On behalf of herself and three different California putative classes, Plaintiff asserts the

13  following claims for relief:  (1) violation of the Consumers Legal Remedies Act ("CLRA"), CAL.

14  CIV. CODE § 1750; (2) false advertising under CAL. BUS. & PROF. CODE § 17500 ("FAL");

15  (3) common law breach of contract; (4) breach of the covenant of good faith and fair dealing;

16  (5) common law fraud; (6) a violation of CAL. BUS. & PROF. CODE §§ 17200-17208 ("UCL").

17  Plaintiff also asserts common law fraud on behalf of a putative nationwide class.

18                                    **ARGUMENT**

19    Plaintiff has not pleaded, nor could she plead, facts establishing a plausible claim for relief.

20  To survive a motion to dismiss under Rules 8(a) and 12(b)(6), "[f]actual allegations must be enough

21  to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

22  (2007).  Stripped of conclusory or implausible allegations, the remaining "non-conclusory 'factual

23  content,' and reasonable inferences from that content, must be plausibly suggestive of a claim

24  entitling the plaintiff to relief."  *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009)

25  (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Dismissal without leave to amend is merited

26  if the defects cannot be cured by amendment.  *Lopez v. Smith,* 203 F.3d 1122, 1129 (9th Cir. 2000).

27  Additionally, where a plaintiff proceeds on theories of fraud, as here, she must allege "the who,

28

what, when, where, and how" of the alleged fraudulent conduct, *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997), with enough "specific[ity] . . . to give defendants notice of the particular misconduct alleged," *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).  None of Plaintiff's claims satisfies these standards.

## I.     Plaintiff's "Imported from Italy" Claims Fail as a Matter of Law.

Plaintiff asserts that the phrase "Imported from Italy" on the front of SNA's olive oil products is false and misleading under the CLRA, FAL, and UCL, and that the labeling should instead have said that the product was merely "packed in Italy."  This theory fails as a matter of law for three reasons: (1) Plaintiff was not harmed by the use of "Imported from Italy" on the front of the label because she admittedly read and relied on the back of the label, which disclosed that the bottle was "Packed in Italy with select extra virgin olive oils from Italy, Spain, Greece and Tunisia"; (2) even if she had standing under Article III and California law, Plaintiff has not plausibly alleged that any reasonable consumer could interpret the admittedly true phrase "Imported from Italy" to mean that a bottle contains oils "exclusively" extracted from Italian olives; and (3) Plaintiff cannot manufacture supposed consumer confusion by reference to the Tariff Act, which does not authorize private rights of action and, in any event, was not violated.

### A.     Plaintiff lacks standing to seek monetary or injunctive relief based on the use of the phrase "Imported from Italy."

Plaintiff lacks standing to seek monetary or injunctive relief based on use of the phrase "Imported from Italy" because she cannot plausibly allege the phrase has caused or will cause her harm.  Plaintiff must establish standing for every form of relief sought in the Complaint. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).  To establish Article III standing, "there must be a causal connection between the injury and the conduct complained of." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992) (quotations omitted).  In the class action context, the named plaintiff must show that she personally has suffered an injury, not just that other members of the putative class suffered the injury. *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf

4

of himself or any other member of the class.").  The UCL, FAL, and CLRA have standing

requirements.  Plaintiff must allege and prove that she lost "money or property" (under the UCL and

FAL) or suffered damages (under the CLRA) "as a result" of actual reliance on the message that

"Imported from Italy" means "exclusively" made from olives grown in Italy.  *Kwikset Corp. v.

Super. Ct.*, 51 Cal. 4th 310, 322-23 (2011).

Here, Plaintiff's theory of consumer fraud is that SNA uses the phrase "Imported from Italy"

on its products' front label instead of "Packed in Italy" or "Bottled in Italy."  *Compare* Compl. ¶ 23

(discussing "Imported from Italy" phrase), *with id*. ¶ 44 (alleging that "Packed in" and "Bottled in"

phrases used by competitor products would not be misleading).  But Plaintiff cannot possibly have

suffered an injury due to the use of this phrase on the front label:  Plaintiff admits that the phrase

"Packed in Italy" would have dispelled her supposed confusion, *id.* ¶ 44, and that exact phrase, ***was

used*** on the back label, *id.* ¶¶ 23, 25 (acknowledging that back label reveals that the products are

"Packed in Italy with select extra virgin olive oils from Italy, Spain, Greece & Tunisia").

Furthermore, Plaintiff cannot ignore this dispositive disclosure due to its placement on the

back label.  Plaintiff purports to have "review[ed] the packaging" prior to her purchase to ascertain

whether the extra virgin olive oil was from Italy.  *Id.* ¶ 47.  Accepting the allegations in Plaintiff's

Complaint as true, Plaintiff ***necessarily read the back label before purchasing***—she relied upon

other language on the back label (the "Best By" date) as an "essential" aspect of her contract and

fraud claims.  *Id.* ¶ 82 ("The terms of the contract were contained on the labels of the olive oil and

specified, *inter alia*, that Defendants' olive oil was 'extra virgin' and that it would remain so for

approximately eighteen months."); *id.* ¶¶ 90-91 (alleging that "Defendants fraudulently and

deceptively led Plaintiff to believe that Defendants' olive oil . . . would maintain its quality until the

'best by' date," and that the "best by" date was "essential to the analysis undertaken by Plaintiff as

to whether to purchase Defendants' olive oil").

Under settled case law, Plaintiff cannot read only *some* of the back label (the "Best By"

date) and contend to have disregarded the country-of-origin information, especially when she claims

to have been interested in the olive oil's provenance.  *See id.* ¶ 47; *see also, e.g.*, *Freeman v. Time,*

1 *Inc.*, 68 F.3d 285, 289-90 (9th Cir. 1995) (holding, where plaintiff received mailers stating in large

2 type that he had won sweepstakes, "qualified by language in smaller type" saying he would win if

3 he returned a winning prize number, that truthful statements were not misleading under UCL or

4 FAL because "[n]one of the qualifying language is hidden or unreadably small. The qualifying

5 language appears immediately next to the representations it qualifies and no reasonable reader could

6 ignore it"). As is apparent from an exemplar label (pasted below),[1] the phrase "Packed in Italy with

 

21 select extra virgin olive oils from Italy, Spain, Greece & Tunisia" appears on the back label along

22 with the "Best By" statement on which Plaintiff relies throughout her Complaint:

23 *See* Def. Req. for Jud. Not. at Ex. A.

26 _____

[1] This Court may properly consider the allegedly deceptive product labels, because "labels form the basis of the relevant causes of action." *Von Koenig v. Snapple Beverage Corp.*, 713 F. Supp. 2d 1066, 1073 (E.D. Cal. 2010); *see also* Defendant's Request for Judicial Notice.

1   The Ninth Circuit and district courts regularly grant motions to dismiss where, as here, a

2   reasonable consumer would have or should have noticed an allegedly obscured disclosure.  *See*

3   *Freeman*, 68 F.3d at 289-90; *Paduano v. Am. Honda Motor Co.*, 169 Cal. App. 4th 1453, 1469-70

4   (2009) (holding brochure advertising "51 mpg" in large yellow font was not actionable under UCL

5   and FAL where another page of brochure explained that rating referred to the manual model and the

6   automatic model would get only 48 mpg); *Carrea v. Dreyer's Grand Ice Cream*, C 10-01044 JSW,

7   2011 WL 159380, at *6 (N.D. Cal. Jan. 10, 2011) (holding that reasonable consumers could not be

8   misled if "statements on the . . . packaging [are] taken as a whole"), *aff'd,* 475 F. App'x 113 (9th

9   Cir. 2012).  SNA's "explicit[] state[ment]" of the origin of the oils used in its blend, prominently

10   located on a part of the label Plaintiff looked at, made it "impossible" for he to rely on any other

11   interpretation she thinks may have been "suggested" by the front label.  *Williams v. Gerber Prods.*,

12   552 F.3d 934, 939 (9th Cir. 2008).  Plaintiff's geographic origin claims thus should be dismissed.

13   Plaintiff similarly lacks standing to seek injunctive relief over the use of "Imported from

14   Italy."  Accepting her allegations as true, Plaintiff cannot demonstrate a "real or immediate threat"

15   that she will be harmed again.  *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1042 (9th Cir. 1999).

16   She "cannot rely on the prospect of future injury to unnamed class members if [she] cannot

17   establish [she has] standing to seek injunctive relief."  *Castagnola v. Hewlett-Packard Co.*, No. C

18   11-05772 JSW, 2012 WL 2159385, at *5 (N.D. Cal. June 13, 2012).  Plaintiff plainly knows that

19   specific country-of-origin disclosures appear on the back of the Filippo Berio label, preventing any

20   possibility that she could be deceived by the phrase "Imported from Italy" on the front of the bottle

21   in the future.  *See id.* at *6 (dismissing injunctive relief because plaintiffs had knowledge of the true

22   nature of the allegedly misleading statements); *Campion v. Old Rep. Home Protection Co.*, 861 F.

23   Supp. 2d 1139, 1150 (S.D. Cal. 2012) ("[E]ven if Plaintiff were to purchase another home warranty

24   plan from Defendant, he now has knowledge of Defendant's alleged misconduct.  Thus, Plaintiff

25   cannot show he is realistically threatened by a repetition of the alleged violation."); *Wang v. OCZ*

26   *Tech. Grp.*, 276 F.R.D. 618, 626-27 (N.D. Cal. 2011) (dismissing claim for injunctive relief,

27   reasoning that "[i]f [plaintiff] paid an inflated price for the product based on [defendant's] alleged

28

misrepresentations, he is in no danger of doing so again"); *Cattie v. Wal-Mart Stores, Inc.*, 504 F.

Supp. 2d 939, 951 (S.D. Cal. 2007) ("[I]t is unclear how prospective relief will redress [plaintiff's]

injury, since she is now fully aware of the linens' [falsely advertised] thread count.").

      **B.**    **Plaintiff has not plausibly alleged that a reasonable consumer is likely to confuse "Imported from Italy" to mean "Exclusively Italian Ingredients."**

Even without reviewing the back label prior to purchase, nothing about the front label would

mislead a reasonable consumer in the manner imagined by Plaintiff.  To state a claim under the

CLRA, FAL or UCL, a plaintiff must "show that members of the public are likely to be deceived"

and that a statement is such that "it is probable that a significant portion of the general consuming

public or of targeted consumers, acting reasonably in the circumstances, could be misled."  *Lavie v.

Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003); *see In re Tobacco II Cases*, 46 Cal. 4th

298 (2009).  Claims should be dismissed if a plaintiff "cannot first identify a plausible

misrepresentation." *Garcia v. Sony Computer Entm't Am.*, 859 F. Supp. 2d 1056, 1066 (N.D. Cal.

2012); *see Hairston v. S. Beach Bev. Co.*, No. 1429 JFW (DTBx), 2012 WL 1893818, at *4-5 (C.D.

Cal. May 18, 2012); *McKinnis v. Kellogg USA*, No. 07-2611-ABC (RCx), 2007 WL 4766060, at *3

(C.D. Cal. Sept. 19, 2007).[2]

Here, Plaintiff cannot plausibly allege that she, much less any reasonable consumer, would

construe "Imported from Italy" to mean that the contents of a bottle derive "*exclusively*" from

Italian olives.  Compl. ¶¶ 1a, 47.  Such a tortured reading of "imported" would conflict with

common usage—*i.e.*, dictionaries define "import" the mean:  "[t]o bring or carry in from an outside

source, especially to bring in (goods or materials) from a foreign country for trade or sale."

AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (4th ed. 2000); *see* OXFORD

---

[2] The reasonable consumer standard applies to the CLRA, FAL, and all prongs of the UCL, including the unlawful prong, where, as here, Plaintiff's misrepresentation theory pervades the pleading. *See Williams v. Gerber Prods. Co.*, 439 F. Supp. 2d 1112, 1116 (S.D. Cal. 2006) (applying reasonable consumer standard to UCL, FAL, and CLRA claims, including UCL claim alleging unlawful, unfair, and fraudulent conduct based on label misrepresentations), *rev'd*, 552 F.3d 934, 938 (9th Cir. 2008) (agreeing with district court that reasonable consumer standard applied to plaintiffs' claims).

ENGLISH DICTIONARY ONLINE, www.oed.com ("To bring in or cause to be brought in (goods or merchandise) from a foreign country, in international commerce. Opposed to export."); MERRIAM-WEBSTER ONLINE DICTIONARY, http://www.m-w.com (defining "imported" as "to bring (as merchandise) into a place or country from another country"); *see also Mead Johnson & Co. v. Abbott Labs.*, 201 F.3d 883, 886 (7th Cir.) (noting, in rejecting as a matter of law plaintiff's claim that a true advertisement could be misleading if interpreted different from the dictionary definition, that "philologists and others who contribute to dictionaries devote their lives to discovering usage and interpreting nuance. It would be a bad idea to replace the work of these professionals with the first impressions of people on the street"), *opinion amended on denial of reh'g*, 209 F.3d 1032 (7th Cir. 2000); *Colgan v. Leatherman Tool Grp.*, 135 Cal. App. 4th 663, 685-86 (2006) (discussing dictionary definitions to evaluate whether the statement "made in U.S.A." was false or misleading). And "importation" is precisely what Plaintiff concedes happened here:  she agrees that the products were "mixed with oil from [*Italy* and] other countries" *in Italy*, "bottled" *in Italy*, and then, in her own words, "***exported***"[3] to America, *id.* ¶ 20a (emphasis added).

It is neither plausible nor "probable" "that *a significant portion* of the general consuming public" reasonably would adopt the idiosyncratic meaning proposed by Plaintiff, which equates "Imported from Italy" with the much longer phrase "imported from Italy and made exclusively with olives grown in Italy."  *Id.* ¶ 47[4]; *Lavie*, 105 Cal. App. 4th at 508 (emphasis added); *see Pernod Ricard USA LLC v. Bacardi U.S.A. Inc.*, 702 F. Supp. 2d 238, 250 (D. Del. 2010) (dismissing with prejudice false advertising claim about misleading use of "Havana Club" label for rum produced in Puerto Rico because "labeling cannot be deceptive as to geographic origin when it contains a

---

[3] Plaintiff's own description of the product as being "exported" from Italy shows that an ordinary person would not assign a specialized meaning to the word "imported."  Compl. ¶¶ 1a, 20a.  Every product "imported" into the U.S. first must be "exported" from somewhere else.

[4] To the extent Plaintiff seeks to rely on statements allegedly made on SNA's website about their products' Italian provenance, Plaintiff has not alleged ever visiting that website, much less doing so before her purchase, and thus cannot satisfy the element of "reliance" necessary to obtain standing under the UCL, FAL or CLRA.  *See Pirozzi v. Apple Inc.*, 913 F. Supp. 2d 840, 850 (N.D. Cal. 2012) (dismissing complaint under UCL, FAL, and CLRA for failure to allege particulars of exposure to certain statements on defendants' websites that were material to purchase).

1   truthful disclosure of the product's source" (discussing *Piazza's Seafood World LLC v. Odom*, 448

2   F.3d 744 (5th Cir. 2006))); *Werbel v. PepsiCo, Inc.*, No. 09-04456 SBA, 2010 WL 2673860, at *3

3   (N.D. Cal. July 2, 2010) (dismissing false advertising case with prejudice because it is "[n]onsense"

4   to think that "Cap'n Crunch Crunch Berries" cereal "derives nutrition from actual fruit by virtue of

5   the references to 'Berries'"); *McKinnis*, 2007 WL 4766060, at *3 (dismissing false advertising case

6   with prejudice based on allegations that "Froot Loops" suggested presence of real fruit).

7        **C.      Plaintiff cannot manufacture an injury by invoking the Tariff Act.**

8        Plaintiff cannot save her claims based on purported "violation[s]" of the Tariff Act, 19

9   U.S.C. § 1304. Compl. ¶¶ 21-26. Specifically, Plaintiff alleges that, under the Act, Defendant's use

10  of the word "Italy" on their label necessitates including "in close proximity . . . and in at least a

11  comparable size," a full disclosure of the country of origin, and she contends that SNA's back-label

12  statement does not meet these requirements. *Id.* ¶ 23. Plaintiff's resort to the Tariff Act fails.

13       *First*, Plaintiff cannot avoid Article III and UCL standing requirements merely by describing

14  conduct as "unlawful." *Doe v. Nat'l Bd. of Med. Examiners*, 199 F.3d 146, 153 (3d Cir. 1999)

15  ("The proper analysis of standing focuses on whether the plaintiff suffered an actual injury, not on

16  whether a statute was violated."). She still must allege an "injury in fact" that is "fairly traceable"

17  to Defendant's alleged unlawful conduct, *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009),

18  or must show that the statute itself conferred on her an enforceable right. *Edwards v. First Am.*

19  *Corp.*, 610 F.3d 514, 518 (9th Cir. 2010).

20       *Second*, in light of the weighty foreign relations issues involved, Congress has vested

21  authority to oversee compliance with Section 304 of the Tariff Act exclusively in the U.S. Customs

22  and Border Protection agency ("CBP"), not with private litigants in the courts. *See* 19 U.S.C.

23  § 1304a; *see also Japan Line, Ltd. v. Cnty. of L.A.*, 441 U.S. 434, 448 (1979) ("Foreign commerce is

24  pre-eminently a matter of national concern."). The Tariff Act thus provides no private right of

25  action to individuals who, like Plaintiff, believe that the Act has been violated. *See, e.g.*, *Potter v.*

26  *Toei Animation Inc.*, 839 F. Supp. 2d 49, 53 (D.D.C. 2012) ("Tariff Act of 1930 . . . does not

27

28

provide for a private right of action."), *aff'd*, 12-5084, 2012 WL 3055990 (D.C. Cir. July 18, 2012), *cert. denied*, 133 S. Ct. 936 (2013).

In addition to being unable to *directly* enforce the Tariff Act, Plaintiff cannot *indirectly* litigate its meaning and requirements by basing her deceptive advertising claims on her (mis)interpretation of the Act's requirements.[5]  *See Mugworld, Inc. v. G.G. Marck & Associates*, 563 F. Supp. 2d 659, 665-66 (E.D. Tex. 2007) (holding that, even though plaintiff was "not bringing a direct claim under the Tariff Act, but merely rel[ying] on the Tariff Act in support its [false advertising] claim to show the applicable standard of care," courts must reject "any private actions which are merely efforts to predict factual determinations by administrative agencies charged with the duty of interpreting and enforcing technical laws such as the Tariff Act")), *aff'd* 351 F. App'x 885 (5th Cir. 2009); *see also York Grp. v. Horizon Casket Grp.*, 459 F. Supp. 2d 567, 579 (S.D. Tex. 2006) ("[Courts] should not allow a party under the guise of a Lanham Act claim to create a private right of action where none exists under the regulatory or statutory scheme.").

If it were otherwise—*i.e.*, if Plaintiff could use California state laws to impose her preferred interpretations of the Tariff Act's requirements—"[t]he absence of a private right to enforce the [statute] would be rendered meaningless."  *Astra USA, Inc. v. Santa Clara Cnty.*, 131 S. Ct. 1342, 1348 (2011).  In *Astra*, the Supreme Court applied this principle to California-state-law contract claims that sought to indirectly enforce perceived violations of the Medicare 340B statute, for which Congress provided no private right of action.  Here, too, allowing state law to supply the private cause of action Congress expressly declined to create would undermine Congress's choice to make CBP the sole arbiter of country-of-origin labeling practices.  *See id.* at 1345 ("no matter the clothing in which [the plaintiffs] dress their claims," suits that attempt to create a cause of action where none exists must be dismissed).  Accordingly, courts routinely reject private efforts to use the "back

---

[5] Plaintiff also does not allege how she or a reasonable consumer could even be aware of the labeling requirements of the Tariff Act, which further defeats her claims of deception.  *See Mason v. Coca-Cola Co.*, 774 F. Supp. 2d 699, 705 n.4 (D.N.J. 2011) (dismissing false advertising claim based on theory that otherwise healthy product violated arcane FDA regulations).

door" of state law claims to enforce federal statutes that Congress rendered enforceable only by federal agencies.[6]

*Third*, even if Plaintiff could use state law to enforce the Tariff Act, she is wrong that Defendant's labels violate it.  To begin with, the Tariff Act and its implementing regulations apply only where the name of a foreign country "*other than the country . . . in which the article was manufactured or produced* appear[s] on an imported article . . . ."  19 C.F.R. § 134.46 (emphasis added).  But here, SNA's olive oils are comprised, in part, of olives grown and pressed in Italy, Compl. ¶ 25, and those Italian oils are then blended with other oils, bottled, and shipped from Italy, *id.* ¶¶ 1a, 20a (admitting product is "exported" from Italy), rendering this section moot.

Plaintiff, moreover, cannot establish a violation of the Tariff Act by pointing to a CBP advice letter from 1998.  *See* Compl. ¶ 25.  CBP advice letters have no precedential value to begin with:  as Customs regulations make clear, "no other person [other than the person to whom the ruling letter was addressed] should rely on the ruling letter or assume that the principles of that ruling will be applied in connection with any transaction other than the one described in the letter." 19 C.F.R. § 177.9(c).  If such letters have any significance, it is to confirm that the United States government, not private plaintiffs, should be enforcing the Tariff Act.  In any event, the labels fully comply with the 1998 Customs advice letter and the Tariff Act because the bottles state that they are "Packed in Italy" using olive oils sourced from "Italy, Spain, Greece & Tunisia."  Compl. ¶¶ 23, 26. These markings are virtually identical to what the advice letter recommends.  *See Country of Origin*

---

[6] *See N.Y. City Health & Hosp. Corp. v. WellCare of N.Y.*, 801 F. Supp. 2d 126, 136-40 (S.D.N.Y. 2011) (holding that "plaintiffs' state law claims [were] an 'impermissible end run around' the federal statute," and that "a plaintiff may not get around the lack of a private right of action under a federal statute by artfully pleading a third-party breach of contract claim or quasi-contract claim based on a violation of the statute"); *Warner v. Wells Fargo Bank*, 11-cv-00480 DOC (PLAx), 2011 WL 2470923, at *3 (C.D. Cal. June 21, 2011) ("Allowing the Plaintiffs to enforce the SPA under a third-party beneficiary theory would open a 'backdoor' to a private right of action to enforce HAMP.  As the Supreme Court held in *Astra*, this kind of third party beneficiary theory is 'incompatible with the statutory regime.'"); *Banga v. Allstate Ins. Co.*, No. S-08-1518 LKK-EFB-PS, 2010 WL 1267841, at *3 (E.D. Cal., Mar. 31, 2010) ("violation of [a section of the Fair Credit Reporting Act] cannot serve as the predicate for a UCL claim" because that section "bar[s] private suit[s]"); *Hartless v. Clorox Co.*, No. 06CV2705 JAH (CAB), 2007 WL 3245260, at *3-4 (S.D. Cal. Nov. 2, 2007) (plaintiff may not maintain UCL claim based on FIFRA because Congress considered and rejected private actions to enforce FIFRA).

*Marking of Olive Oil*, HQ 560944 (U.S. Cust. & Border Prot. Apr. 27, 1998) (advisory opinion) (approving of phrase "Olive Oil Produced in Italy and Spain, Packed in Italy").  And other CBP advice letters have allowed origin statements to be placed on the back portion of the label, next to the "Best By" date.  *See Country of Origin Marking for Frozen Produce Packages*, HQ 731830 (U.S. Cust. & Border Prot. Nov. 21, 1988) (advisory opinion) (approving of "country of origin marking displayed in close proximity to [expiration] dates" on back label because such markings are "easily found and read without strain").  For all of these reasons, the Court should dismiss with prejudice Plaintiff's geographic origin claims.

## II.    Plaintiff's "Extra Virgin" Claims Fail as a Matter of Law.

Plaintiff's next theory of liability fares no better.  She claims that SNA supposedly deceives consumers by distributing products labeled as extra virgin olive oil despite the fact that "the oil invariably degrades [due to light exposure], and does not qualify as . . . 'extra virgin' olive oil at the time of sale" or use. Compl. ¶ 20(b).  As with her geographic origin claim, Plaintiff lacks standing to assert this claim because she has not plausibly alleged that the olive oil *she* purchased degraded to the point where it was not extra virgin at the time of consumption, *i.e.*, that it was mislabeled at all.  She thus has not alleged any injury in fact.  Her allegations also do not meet the requirements imposed by Rule 9(b)—she alleges virtually no information about the bottle she purchased, when she purchased it, how she handled it after purchase, the "Best By" date, or when she used it.  The same is true of the bottles her lawyers purchased.  Rule 9(b)'s particularity requirements exist not only to ensure defendants receive adequate notice of claims, but to ensure that plaintiffs have the facts necessary to support claims sounding in fraud.  *Vess*, 317 F.3d at 1106.  The Court thus should dismiss plaintiff's extra virgin claims under Rules 12(b)(1), 12(b)(6), and 9(b).

### A.    Plaintiff lacks standing because she has not suffered a cognizable, concrete injury in fact.

Plaintiff has no standing to assert her extra virgin claims because she has not plausibly alleged that she purchased and consumed oil that was not extra virgin.  *See Lujan*, 504 U.S. at 560-61; *Lierboe*, 350 F.3d at 1022 ("[I]f none of the named plaintiffs purporting to represent a class

1    establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf

2    of himself or any other member of the class."); *Pirozzi*, 913 F. Supp. 2d at 846.

3            Here, Plaintiff does not allege that the bottle *she* purchased fell short of her expectations for

4    taste or that it otherwise caused her any physical or economic harm (*i.e.*, she does not allege that she

5    got less than she paid for).  To the contrary, Plaintiff alleges only that she consumed (some or all of)

6    the olive oil she purchased without incident and "later learned the product she purchased was not

7    extra virgin," presumably because she believes it may have degraded due to light exposure.  Compl.

8    ¶ 49; *id*. ¶ 20(b).[7]  But Plaintiff does not allege that she noticed any defect that would render her

9    bottle mislabeled, or that she (or anyone) tested her bottle—the only allegations about testing

10   concern bottles purchased by her lawyers, and Plaintiff alleges no other method by which she could

11   establish that her bottle was mislabeled as extra virgin when she consumed it.

12           Plaintiff's failure to test *her* bottle or supply identifying information about it that might

13   show it was not extra virgin—much less that Plaintiff suffered any physical or financial injury from

14   any alleged degradation—is fatal to her standing to assert mislabeling claims.  According to

15   Plaintiff, exposure to light degrades extra virgin olive oils.  Compl. ¶ 37.  But light exposure will

16   necessarily vary from retailer to retailer, store to store, day to day, and purchaser to purchaser.  She

17   thus cannot rely on her lawyer's purchases to save her claims.  Indeed, Plaintiff has alleged no facts

18   that plausibly justify extrapolation from the bottles her lawyer purchased to her bottle.  She does not

19   allege, for instance, that the bottles her lawyer selected were even of the type of product she

20   purchased, much less that they were identical to hers (in lot code, "best by" date, color, etc.).  Nor

21   does she allege that they were selected at random, that the number of bottles was statistically

22   significant, or that the bottles were representative of the bottle she bought for any other reason.

23   Given these factors, there is no "reasonable inference[]" that can be made between the bottles she

24   purchased and the bottles her lawyers did that could "plausibly" support Plaintiff's reliance on the

25   _____

26   [7] Plaintiff provides no details about how she learned that fact, when she learned that fact, or
     whether, by "product," she is referring to her specific purchase or to her counsel's test results about

27   Defendants' olive oil brands in general. Such conclusory, nonspecific allegations should be ignored.
     *See Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

28

14

testing of other bottles purchased by her lawyers—much less bottles from different lots, and of different SNA products. *Moss*, 572 F.3d at 969 (quoting *Iqbal*, 556 U.S. at 678).

In all events, even if Plaintiff's lawyer's testing were relevant or reliable, Plaintiff cannot rely on it retrospectively to manufacture an injury-in-fact personal to her, since her lawyers purchased and consumed those bottles *after* Plaintiff already suspected them to be mislabeled and any resulting injury would be to her lawyers, not to her. *See Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1151 (2013) ("[Plaintiffs] cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending."); *Nat'l Family Planning & Reproductive Health Ass'n v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006) ("We have consistently held that self-inflicted harm doesn't . . . . amount to an 'injury' cognizable under Article III. . . . [and] would not be fairly traceable to the defendant's challenged conduct."); *Buckland v. Threshold Enters., Ltd.*, 155 Cal. App. 4th 798, 815-17 (2007) (dismissing UCL and FAL claims where plaintiff purchased defendant's product after suspecting the defendant's advertising contained false and misleading statements), *disapproved of on other grounds by Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310 (2011); *see also Lujan*, 504 U.S. at 560 n.1 ("[T]he injury must affect the plaintiff in a personal and individual way.").

Without knowing or being able to allege that her bottle did not contain extra virgin olive oil, Plaintiff cannot show an injury and lacks standing. Her claims should be dismissed with prejudice.

**B.** **Plaintiff lacks standing to assert claims on behalf of consumers who purchased other lots and other types of products.**

Even if Plaintiff had standing to assert a claim on the bottle she purchased, she does not have standing to assert claims regarding products she never bought. The only type of SNA product Plaintiff purchased is Filippo Berio Extra Virgin Olive Oil, *see* Compl. ¶ 16, yet she purports to bring claims about whether three other products qualify as extra virgin, *see id.* ¶ 17 (listing Filippo Berio Robusto Extra Virgin Olive Oil, Filippo Berio Extra Virgin Olive Oil, Filippo Berio Delicato Extra Virgin Olive Oil, and Filippo Berio Organic Extra Virgin Olive Oil). This she cannot do. Courts routinely hold that plaintiffs lack standing to proceed as to items they did not personally purchase, particularly when the products clearly contain different formulations, and, like here, the

claims relate to the differing formulation of products. *See Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 869-71 (N.D. Cal. 2012) (noting that, "[w]here the alleged misrepresentations or accused products are dissimilar, courts tend to dismiss claims to the extent they are based on products not purchased," and dismissing claims based on misleading "white chocolate" representations where plaintiff purchased chocolate chips, because the products were inherently different); *Lanovaz v. Twinings N. Am.*, No. C-12-2646-RMW, 2013 WL 675929, at *4 (N.D. Cal. Feb. 25, 2013) (plaintiff purchased green tea; all claims related to products other than green tea bearing the same alleged misrepresentation were dismissed); *Larsen v. Trader Joe's Co.*, No. 11-cv-5188–SI, 2012 WL 5458396 (N.D. Cal. June 14, 2012) (holding plaintiffs lacked standing to bring claims about a dissimilar range of Trader Joe's products, such cookies, apple juice, cinnamon rolls, biscuits, ricotta cheese, and crescent rolls, if plaintiff did not purchase each); *Carrea v. Dreyer's Grand Ice Cream*, No. 10-1044-JSW, 2011 WL 159380, at *3 (N.D. Cal. Jan. 10, 2011) (dismissing claims based on an ice cream product not purchased by named plaintiff even though it contained one of the same alleged misrepresentations as another ice cream product purchased by plaintiff).

Here, given (a) olive oil's natural variability, (b) the added variability among formulations and blends of the products Plaintiff has implicated, and (c) Plaintiff's allegation that exposure to light is merely one of several possible reasons for degradation (Compl. ¶ 34), it is clear that SNA's products are too dissimilar for Plaintiff to leverage the purchase of one product into state and nationwide class actions over three other products. *See* 64 Fed. Reg. 46,754, 46,758 (Aug. 26, 1999) ("*Unlike other oils that are relatively uniform in characteristics*, all extra virgin olive oils . . . have different flavor characteristics." (emphasis added)). These distinctions would manifest themselves even among bottles from the same lot, and certainly across unique product formulations. Trying to draw inferences between the Plaintiff's bottle and other lots or other products with different formulations (different olive oils in different proportions)—not to mention necessarily differing exposures to light—would be akin to purchasing a 2008 Cabernet Sauvignon and asserting mislabeling claims about different varietals and vintages by the same distributor because they all come from grapes. *See Miller*, 912 F. Supp. 2d at 870 (noting that the general similarities between

1  several different white chocolate products "do not establish the kind of similarity that courts find

2  persuasive in conferring standing over similar (but unpurchased) products").  At bottom, Plaintiff's

3  peculiar mislabeling theory depends on the light exposure of one bottle, from one lot, of one

4  product.  She lacks standing to assert claims regarding other products she never purchased.

5  **C.  Plaintiff has not pleaded fraud with particularity.**

6  Plaintiff's fraud-based allegations also should be dismissed because Plaintiff has failed to

7  plead her claims with the heightened particularity required by Rule 9(b).  Where a plaintiff chooses

8  to allege fraudulent conduct and relies on such conduct as the basis for UCL, FAL, or CLRA

9  claims, the claim is "grounded" in or "sound[s] in fraud" such that a complaint "must satisfy the

10  particularity requirement of [Rule] 9(b)."  *Vess*, 317 F.3d at 1103-04; *see Kearns v. Ford Motor*

11  *Co.,* 567 F.3d 1120, 1125-27 (9th Cir. 2009) (claims under the CLRA, UCL, and FAL that sound in

12  fraud must satisfy Rule 9(b)'s heightened pleading requirement); *Pirozzi v. Apple Inc.*, 913 F. Supp.

13  2d 840, 850 (N.D. Cal. 2012).  Plaintiff's causes of action for fraud and for violations of the UCL,

14  FAL, and CLRA trigger this requirement.

15  To satisfy Rule 9(b), Plaintiff must allege "the who, what, when, where, and how" of the

16  alleged fraud, *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997), and "set forth an explanation as

17  to why [a] statement or omission complained of was false and misleading," *In re GlenFed, Inc. Sec.*

18  *Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded by statute on other grounds as*

19  *stated in SEC v. Todd*, 642 F.3d 1207, 1216 (9th Cir. 2011).  "[T]he circumstances constituting the

20  alleged fraud [must] be specific enough to give defendants notice of the particular misconduct . . .

21  so that they can defend against the charge and not just deny that they have done anything wrong."

22  *Vess*, 317 F.3d at 1106 (quotations omitted); *see Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915,

23  932 (N.D. Cal. 2013).  This requires something "*more* than the neutral facts necessary to identify

24  the transaction."  *Kearns*, 567 F.3d at 1124 (emphasis added, quotation omitted).

25  Here, Plaintiff has wholly failed to explain the circumstances of both her purchase and her

26  use of the product.  As for her purchase, the Complaint is silent about key details, such as the date,

27  the particular store, the particular bottle and lot, the "Best By" date on which she supposedly relied,

28

17

1    and the precise price paid.  The Complaint is even more devoid of facts regarding Plaintiff's

2    experience after the point of sale.  Plaintiff does not allege how she handled or stored the olive oil

3    after purchase.  She does not allege for what purposes she used the product, nor whether the type of

4    olive oil used would make a difference—*e.g.*, salad dressing versus deep frying.  She also does not

5    allege when she consumed the product relative to the purchase and "Best By" dates.  And she does

6    not allege when or how or why she learned that that it was allegedly not extra virgin.  Finally, as

7    noted above, Plaintiff provides no details whatsoever of the motivation and methods for her

8    lawyer's selection of bottles for testing, such as whether the tested bottles came from the same or

9    different lots or why they might be relevant to Plaintiff's alleged injury.

10           Especially given Plaintiff's theory of the case—that extra virgin olive oil products (like all

11   olive oil products) degrade over time with exposure to light, and sometimes do so in a matter of

12   months, Compl. ¶ 37—these pleading failures are critical omissions.  Indeed, without notice of the

13   "particular product Plaintiff purchased" (or her lawyer purchased) and how and when it was used,

14   *Surzyn v. Diamond Foods, Inc.*, No. C 14-0136 SBA, 2014 WL 2212216, at *5 (N.D. Cal. May 28,

15   2014), SNA cannot prepare a defense, cannot know whether Plaintiff properly used and stored the

16   oil, and cannot conduct any investigation into whether any offending practices occurred nor can it

17   take steps to ensure that any such conduct has ceased.  *See Yumul v. Smart Balance, Inc.*, 733 F.

18   Supp. 2d 1117, 1124 (C.D. Cal. 2010) (dismissing UCL and FAL claims under Rule 9(b) because

19   plaintiff failed to identify when during the decade period she purchased the product and failed to

20   allege that the packaging remained the same during that period); *Thomas v. Costco Wholesale*

21   *Corp.*, No. C 12-02908 EJD, 2013 WL 1435292, at *9 (N.D. Cal. April 9, 2013) (granting a motion

22   to dismiss where "the Amended Complaint does not clearly and unambiguously state which

23   particular food products were purchased by which particular Plaintiff.").  Plaintiff's fraud-based

24   claims should thus be dismissed.

25   **III.    SNA's Labeling Does Not Create a Contract with Consumers.**

26           Plaintiff also claims that SNA breached an express contract with every consumer who

27   purchased its EVOO products by selling them non-extra virgin olive oil.  *See* Compl. ¶¶ 80-84.  But

28

a food label is not a contract; there thus could never be breach of an express or implied contract.[8]
Her contract-based claims thus should be dismissed.  *See Neal v. Quality Loan Serv. Corp.*, 301 F.
App'x 679, 680 (9th Cir. 2008) ("The district court properly dismissed the breach of contract claim
because [plaintiff] failed to allege specific facts supporting the necessary elements of a breach of
contract claim.").  Here, in the context of a distributor whose products are sold to a supermarket *and
then* purchased by a consumer, Plaintiff has not alleged (and cannot allege) any direct or indirect
contact with SNA.  As a matter of law, "there is no privity between the original seller and a
subsequent purchaser who is in no way a party to the original sale."  *Burr v. Sherwin Williams Co.*,
42 Cal. 2d 682, 695 (1954).  "Privity between the parties is a necessary element" to any breach of
contract claim.  *Benay v. Warner Bros. Entm't, Inc.*, 607 F.3d 620, 634 (9th Cir. 2010); *Berclain
Am. Latina v. Baan Co.*, 74 Cal. App. 4th 401, 405 (1999); *CDF Firefighters v. Maldonado*, 158
Cal. App. 4th 1226, 1239 (2008); *Just Film, Inc. v. Merchant Servs.*, No. 10-cv-1993 CW, 2010 WL
4923146, at *18 (N.D. Cal. Nov. 29, 2010).  Plaintiff also must allege the presence of consideration
for any contract to exist, and purchasing a bottle from a supermarket does not constitute
consideration to the manufacturer.  *See* CAL. CIV. CODE § 1550.

In short, there was no contract, and therefore, there was no breach.  And because there was
no express contract, Plaintiff's *implied* covenant claims necessarily fail.  *See Smith v. City & Cnty.
of S.F.*, 225 Cal. App. 3d 38, 48-49 (1990) ("The prerequisite for any action for breach of the
implied covenant of good faith and fair dealing is the existence of a contractual relationship
between the parties, since the covenant is an implied term in the contract.").

**IV.     Plaintiff Cannot Assert California-State-Law Claims on Behalf of a Nationwide Class.**

Finally, Plaintiff has not alleged facts that would enable non-resident putative class members
to assert claims under California law against a non-resident defendant for purchases made outside of
California based on representations received outside of California.  .

---

[8] Breach of warranty claims do not require privity, but Plaintiff chose not to bring such a claim,
which is understandable because food labels do not constitute warranties.  *See Jones v. ConAgra
Foods, Inc.*, 912 F. Supp. 2d 889, 903-04 (N.D. Cal. 2012).

19

1    To assert claims on behalf of non-Californian residents under California law, the class action

2    proponent must show that California has "significant contact or significant aggregation of contacts"

3    to the claims of each class member.  *Wash. Mut. Bank v. Super. Ct.*, 24 Cal. 4th 906, 921 (2001)

4    (citations omitted); *Norwest Mortgage, Inc. v. Super. Ct.*, 72 Cal. App. 4th 214 (1999).  To show

5    minimum contacts, courts look to defendants' principal place of business, headquarters, state of

6    incorporation, residences of proposed class members, locations of defendants' departments or

7    agents involved in preparing the advertising and other misrepresentations at issue in the litigation,

8    and the volume of defendants' business in the state.  *See Parkinson v. Hyundai Motor Am.*, 258

9    F.R.D. 580, 598 (C.D. Cal. 2008) (construing *Clothesrigger, Inc. v. GTE Corp.*, 191 Cal. App. 3d

10   605 (1987)).  Such a showing is necessary to ensure that application of California law is

11   constitutional.  *See Allstate Ins. Co. v. Hague*, 449 U.S. 302, 310-11 (1981).

12   Here, Plaintiff has not alleged and cannot allege that the claims by non-resident putative

13   class members arise from significant contacts with California.  The olive oil is, as Plaintiff

14   emphasizes, "bottled" and "imported from Italy."  Compl. ¶ 47.  SNA is incorporated in New York

15   and has its principal place of business in New Jersey.  *Id.* ¶ 3.  Moreover, Plaintiff has alleged no

16   facts to suggest that out-of-state purchases by persons residing in other states are in any way

17   traceable to alleged misconduct in California.  Thus, she has not met her burden to show that she

18   can plausibly pursue claims under California law on behalf of non-resident putative class members

19   against a non-resident defendant.  *See Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 589-90

20   (9th Cir. 2012) ("California has a constitutionally sufficient aggregation of contacts to the claims of

21   each putative class member in this case because Honda's corporate headquarters, the advertising

22   agency that produced the allegedly fraudulent misrepresentations, and one fifth of the proposed

23   class members are located in California.").  Accordingly, Plaintiff's nationwide class claims, for

24   harms suffered by consumers in other states, should be dismissed.  *See, e.g.*, *id.* at 590-91 (different

25   states' scienter standards for fraud claims are "material" and "make a difference" to the outcome of

26   litigation); *McGhee v. Arabian Am. Oil Co.*, 871 F.2d 1412, 1425-26 (9th Cir. 1989) (affirming that

27   different jurisdictions have a "significant interest" in regulating alleged fraud perpetrated against

28

persons within their borders); *Frezza v. Google, Inc.*, No. 5:12-cv-00237-RMW, 2013 WL 1736788, at *6 (N.D. Cal. Apr. 22, 2013) (granting motion to dismiss, citing differences in scienter as "not trivial or wholly immaterial"); *Williams v. Oberon Media, Inc.*, No. cv-09-8764-JFW (AGRx), 2010 WL 8453723, at *8 (C.D. Cal. Apr. 19, 2010) ("Each of the fifty states has an interest in the application of its law to its residents").

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's Complaint should be dismissed with prejudice.

Dated:  July 22, 2014                                          Respectfully submitted,

SIDLEY AUSTIN LLP
Mark E. Haddad
Sean A. Commons
Nitin Reddy
Collin P. Wedel


By:  /s/ Nitin Reddy
       Nitin Reddy
       Attorneys for Defendant
       SALOV NORTH AMERICA CORP.