1  **GUTRIDE SAFIER LLP**
   ADAM J. GUTRIDE (State Bar No. 181446)
2  SETH A. SAFIER (State Bar No. 197427)
   KRISTEN G. SIMPLICIO (State Bar No. 263291)
3  100 Pine Street, Suite 1250
   San Francisco, California 94111
4  Telephone: (415) 639-9090
   Facsimile: (415) 449-6469
5

6  **TYCKO & ZAVAREEI LLP**
   HASSAN A. ZAVAREEI (State Bar No. 181547)
7  JEFFREY D. KALIEL (State Bar No. 238293)
   ANDREW J. SILVER (*admitted pro hac vice*)
8  1828 L Street, N.W., Suite 1000
   Washington, DC 20036
9  Telephone: (202) 973-0900
   Facsimile: (202) 973-0950
10

11 Attorneys for Plaintiff ROHINI KUMAR

12                    UNITED STATES DISTRICT COURT

13                    NORTHERN DISTRICT OF CALIFORNIA

14                         OAKLAND DIVISION

15

16 ROHINI KUMAR, an individual, on behalf        CASE NO. 4:14-cv-02411-YGR
   of herself, the general public and those
17 similarly situated,

18     Plaintiff,                                **PLAINTIFF'S NOTICE OF MOTION AND
                                                 MOTION FOR CLASS CERTIFICATION;
19          v.                                   MEMORANDUM OF POINTS AND
                                                 AUTHORITIES IN SUPPORT THEREOF**
20
   SALOV NORTH AMERICA CORP.,                    Date: April 12, 2016
21                                               Time: 2:00 p.m.
       Defendant.                                Courtroom 1
22

23                                               Hon. Judge Yvonne Gonzalez Rogers

24

25

26

27

28

# TABLE OF CONTENTS

I.  INTRODUCTION ...................................................................................1

II. STATEMENT OF FACTS ......................................................................2

    A.  Salov Markets and Sells Filippo Berio Brand Olive Oil Products ......................2

    B.  Salov Employed Identical False and Misleading Advertising
        To Sell Its Products as "Imported from Italy" Throughout the Class Period ......2

    C.  Salov Compounded the Deception By Aggressively Promoting "Italianness"
        While Actively Hiding the Truth From Consumers ...............................5

    D.  Consumers Seek Out and Pay Premiums for Real Italian
        and Extra Virgin Olive Oil ..............................................6

    E.  Salov's False Representations Mislead Plaintiff, a Typical Consumer ...............7

III. ARGUMENT ..........................................................................................9

    A.  Legal Standards For Class Certification ...............................................9

    B.  The Class Satisfies the Requirements of Rule 23(a) ................................9

        1.  Numerosity and Ascertainability Are Satisfied ..............................9

        2.  Common Questions of Fact and Law Apply to the Class ...................12

        3.  Plaintiff is Typical of the Class ...........................................14

        4.  The Plaintiff Will Adequately Protect the Interests of the Class ..............14

    C.  The Class Satisfies the Requirements of Rule 23(b)(3) .....................15

        1.  Common Questions Predominate About Whether Salov's
            Representations Were Likely to Deceive Reasonable Consumers ............16

        2.  Materiality Predominates ....................................................18

        3.  Whether Salov's Representations Are Unlawful Predominates ...............21

        4.  Common Questions on Restitution and Damages Predominate Over
            Individual Issues ...........................................................22

        5.  A Class Action Is Superior .................................................25

IV. CONCLUSION ....................................................................................25

**CASES**

*Allen v. Hyland's Inc.*,
    300 F.R.D. 643 (C.D. Cal. 2014) .......................................................... 11, 16, 17

*American Meat Institute v. United States Department of Agriculture*,
    760 F.3d 18 (D.C. Cir. 2014) ................................................................. 20

*Armstrong v. Davis*,
    275 F.3d 849 (9th Cir. 2001)................................................................... 9

*Astiana v. Kashi Co.*,
    291 F.R.D. 493 (S.D. Cal. 2013).......................................................... 10, 13

*Belfiore v. Procter & Gamble Co.*,
    No. 14-cv-1142, 2015 WL 5781541 (E.D.N.Y. Oct. 5, 2015)
    *reconsideration denied*, 2015 WL 6448696 (E.D.N.Y. Oct. 22, 2015) ......................... 24

*Brazil v. Dole*,
    No. 12-CV-01831-LHK, 2014 WL 5794873 (N.D. Cal. Nov. 6, 2014) .......................... 25

*Brown v. Hain Celestial Grp., Inc.*,
    2014 WL 6483216 (N.D. Cal. Nov. 18, 2014).................................. 17, 21, 22, 23

*Butler v. Sears, Roebuck & Co.*,
    727 F.3d 796 (7th Cir. 2013)
    *cert. denied*, 13-430, 2014 WL 684064 (U.S. Feb. 24, 2014)........................... 24

*Byrd v. Aaron's Inc.*,
    784 F.3d 154 (3d Cir. 2015) .............................................................. 11

*Carnegie v. Household Int'l, Inc.*,
    376 F.3d 656 (7th Cir. 2004)............................................................. 25

*Carrera v. Bayer Corp.*,
    727 F.3d 300 (3d Cir. 2013)............................................................. 11

*Chabner v. United of Omaha Life Ins. Co.*,
    225 F.3d 1042 (9th Cir. 2000)........................................................... 13

*Chavez v. Blue Sky Natural Beverage Co.*,
    268 F.R.D. 365 (N.D. Cal. 2010)...................................................... 13, 23

*Comcast v. Behrend*,
    133 S. Ct. 1426 (2013) ................................................................ 22

*Delarosa v. Boiron, Inc.*,
    275 F.R.D. 582 (C.D. Cal. 2011) ........................................................ 18

*Ebin v. Kangadis Food Inc.*,
    297 F.R.D. 561 (S.D.N.Y. 2014)
    *reconsideration denied*, No. 13-cv-2311 JSR,
    2014 WL 1301857 (S.D.N.Y. Mar. 19, 2014) ................................................ 24

*Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*,
    657 F.2d 890 (7th Cir. 1981)............................................................... 15

*Forcellati v. Hyland's, Inc.*,
    2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) ...................................... 10

*General Telephone Co. of Southwest v. Falcon*,
    457 U.S. 147 (1982)....................................................................... 9, 12

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998)........................................................ 9, 14

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992)............................................................. 14

*Harris v. Palm Springs Alpine Estates, Inc.*,
    329 F.2d 909 (9th Cir. 1964)............................................................. 10

*Hinojos v. Kohl's Corp.*,
    718 F.3d 1098 (9th Cir. 2013)........................................................... 20

*In re Brazilian Blowout Litig.*,
    2011 WL 10962891 (C.D. Cal. Apr. 12, 2011) ................................. 18

*In re ConAgra Foods, Inc.*,
    90 F. Supp. 3d 919 (C.D. Cal. 2015) ................................................ 24

*In re Diasonics Sec. Litig.*,
    599 F. Supp. 447 (N.D. Cal. 1984) ................................................... 15

*In re High-Tech Employee Antitrust Litig.*,
    985 F. Supp. 2d 1167 (N.D. Cal. Oct. 24, 2013) .............................. 24

*In re POM Wonderful LLC Marketing & Sales Practices Litig.*,
    2012 WL 4490860 (C.D. Cal. Sept. 28, 2012)................................. 14

*In re Scotts EZ Seed Litig.*,
    304 F.R.D. 397 (S.D.N.Y. 2015) ...................................................... 24

*In re Visa Checks/MasterMoney Antitrust Litig.*,
    280 F.3d 124 (2d Cir. 2001)......................................................... 16, 25

*In re Whirlpool Corp. Front-Loading Washer Products Liab. Litig.*,
    722 F.3d 838 (6th Cir. 2013)
    *cert. denied*, 13-431, 2014 WL 684065 (U.S. Feb. 24, 2014).......... 24

*Jones v. ConAgra Foods, Inc.*,
    No. C 12-01633 CRB, 2014 WL 2702726 (N.D. Cal. June 13, 2014) ....................... 12, 24

*Jordan v. County of Los Angeles*,
    669 F.2d 1311 (9th Cir. 1982),
    *vacated on other grounds*, 459 U.S. 810 (1982) ......................... 10, 14

*Kosta v. Del Monte*,
    308 F.R.D. 217 (N.D. Cal. 2015) ......................................... 11, 12, 19

*Lam v. Gen. Mills, Inc.*,
    859 F. Supp. 2d 1097 (N.D. Cal. 2012) .......................................................... 16

*Levya v. Medline Industries, Inc.*,
    716 F.3d 510 (9th Cir. 2013) ..................................................................... 23

*Lilly v. Jamba Juice Co.*,
    2014 WL 4652283 (N.D. Cal. Sept. 18, 2014) ............................................. 11

*Marsu, B.V. v. Walt Disney Co.*,
    185 F.3d 932 (9th Cir. 1999) ..................................................................... 24

*Mazza v. Honda American Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) ..................................................................... 12

*McCrary v. Elations Co., LLC*,
    2014 WL 1779243 (C.D. Cal. Jan. 13, 2014) ............................................. 23

*Mullins v. Direct Digital, LLC*,
    795 F.3d 654 (7th Cir. 2015) ..................................................................... 11

*Plascencia v. Lending 1st Mortgage*,
    259 F.R.D. 437 (N.D. Cal. 2009) ............................................................... 13

*Pulaski & Middleman, LLC v. Google, Inc.*,
    __F.3d __, 2015 WL 5515617 (9th Cir. Sept. 21, 2015) ........................ 23, 24

*Rahman v. Mott's LLP*,
    No. 13-CV-03482-SI, 2014 WL 6815779 (N.D. Cal. Dec. 3, 2014) ........... 11, 20

*Ries v. Arizona Beverages USA LLC*,
    287 F.R.D. 523 (N.D. Cal. 2012) ................................................ 10, 11, 13, 14

*Rikos v. Procter & Gamble Co.*,
    799 F.3d 497 (6th Cir. 2015) ..................................................................... 11

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ..................................................................... 15

*Stearns v. Ticketmaster Corp.*,
    655 F.3d 1013 (9th Cir. 2011) ............................................................ 16, 17, 18

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ...................................................................... 9, 12, 16

*Williams v. Gerber Products Co.*,
    552 F.3d 934 (9th Cir. 2008) ............................................................... 12, 16

*Wolph v. Acer Am. Corp.*,
    2012 WL 993531 (N.D. Cal. Mar. 23, 2012) ............................................. 18

*Wolph v. Acer Am. Corp.*,
    272 F.R.D. 477 (N.D. Cal. 2011) ............................................................... 10

*Yokoyama v. Midland Nat'l Life Ins. Co.*,
    594 F.3d 1087 (9th Cir. 2010) ................................................................... 23

*Zeisel v. Diamond Foods, Inc.*,
    2011 WL 2221113 (N.D. Cal. June 7, 2011) .......................................................... 18, 23

**STATE CASES**

*Brockey v. Moore*,
    107 Cal. App. 4th 86 (2003).................................................................................... 12

*Cel–Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*,
    20 Cal. 4th 163 (1999) ..................................................................................... 13, 21

*Colgan v. Leatherman Tool Group, Inc.*,
    135 Cal. App. 4th 663 (2006).............................................................................. 22, 23

*Cortez v. Purolator Air Filtration Products Co.*,
    23 Cal. 4th 163 (2000) .......................................................................................... 22

*In re Steroid Hormone Prod. Cases*,
    181 Cal. App. 4th 145 (2010)................................................................................. 17

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (2009) ............................................................................... 12, 17, 18

*In re Vioxx Class Cases*,
    180 Cal. App. 4th 116 (2009).................................................................................. 17

*Kasky v. Nike, Inc.*,
    27 Cal. 4th 939 (2002) .......................................................................................... 12

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (2003) ........................................................................................ 22

*Kumar v. Safeway, Inc.*,
    Case No. RG14726707 (Super. Ct. of Alameda Cnty). ............................................. 9

*Kwikset Corp. v. Superior Court*,
    51 Cal. 4th 310, 246 P.3d 877 (2011) ..................................................................... 20

*Occidental Land, Inc. v. Superior Court*,
    18 Cal. 3d 355 (1976) ........................................................................................... 18

*Vasquez v. Superior Court*,
    4 Cal. 3d 800 (1971) ....................................................................................... 12, 18

**STATUTES**

Cal. Bus. & Prof.Code § 17203 .................................................................................. 22

Cal. Bus. & Prof.Code § 17535 .................................................................................. 22

Cal. Civ. Code § 1761 ............................................................................................... 22

Cal. Civ. Code § 1780 ............................................................................................... 22

Cal. Civ. Code § 3294(a).......................................................................................... 22

Cal. Health & Saf. Code § 109875 .................................................................................. 22

Cal. Health & Saf. Code § 110100(a) .......................................................................... 22

Cal. Health & Saf. Code § 110380 .................................................................................. 22

Cal. Health & Saf. Code § 110505 ........................................................................... 13, 22

**REGULATIONS**

19 C.F.R. § 134.46 ...................................................................................................... 3, 21

21 C.F.R. § 101.18 ................................................................................................... 13, 21

## <u>NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION</u>

Please take notice that on April 12, 2016, at 2:00 p.m., or as soon thereafter as this motion may be heard, Plaintiff Rohini Kumar will, and hereby does, move, pursuant to Rule 23 of the Federal Rules of Civil Procedure, to certify the following class:

> All purchasers in California of liquid Filippo Berio brand olive oil of any grade (including extra virgin, pure, or extra light), between May 23, 2010 and August 31, 2015.[1]

The Class will pursue claims under the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 et seq. ("UCL"); the California Legal Remedies Act, Cal. Civ. Code §§ 1750 et seq., ("CLRA"); the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 et seq. ("FAL"); and for common law fraud, deceit and/or misrepresentation.

Plaintiff further requests that the Court appoint (1) Plaintiff Rohini Kumar as class representative on all claims, and (2) Gutride Safier LLP and Tycko & Zavareei LLP as class counsel. Plaintiff finally requests the Court to order the parties to meet and confer and present this Court, within fifteen (15) days of an order granting class certification, a proposed notice to the certified class.

This motion follows conferences and communications between counsel and is based upon this Notice of Motion and Motion, Memorandum of Points and Authorities, and the accompanying Declarations in support of Class Certification by the following persons:

Kristen Simplicio;

Colin Weir;

Adam Gutride; and

Hassan Zavareei.

(In the Memorandum of Points and Authorities that follows, those declarations shall be referred to by the last name of the declarant, followed with the abbreviation "Decl." (For example: "Simplicio Decl.") This Motion is also based on the pleadings and papers on file in this action

---

[1] The Class excludes persons whose purchases were for purpose of resale or who returned all their purchases for a refund. By definition, neither Class includes olive oil sprays. Per the parties January 7, 2016 stipulation in which they agreed to streamline the case, Plaintiff has dismissed all claims relating to her allegations that Salov's "extra virgin" is not actually extra virgin. [Dkt. 81, 83.]

and all matters of which this Court may take notice.)

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Defendant Salov North America Corporation ("Salov") imports, distributes, markets, and sells olive oil under the Filippo Berio brand name throughout the United States. During the class period, it uniformly labeled all of its olive oil as "Imported from Italy." But Salov's olive oil was not actually "from Italy."

Salov's oil is actually produced in Tunisia, Greece, and Spain; it is there that the olives are grown, milled into a paste, and pressed, and the oil is extracted. The oil is then shipped to Italy where it is mixed together, occasionally with a small amount of Italian oil, and put in bottles. Labeling such oil as "Imported from Italy" directly violates state and federal regulations. Tunisian, Greek, and Spanish olive oil does not somehow become "from Italy" when shipped *through* Italy. Yet until after this case was filed, Salov systematically used this misrepresentation to dupe consumers into paying a premium for oil falsely labeled as Italian.

Salov's false advertising and unfair and unlawful business practices have been highly successful. The exploding popularity of healthy living, Mediterranean diets, and cooking shows featuring Italian celebrity chefs have led to widespread consumer demand for the flavor and health benefits of Italian olive oil. Relying on Salov's uniform, centrally-controlled practice of false and deceptive advertising, consumers in California purchased millions of bottles of olive oil. One such consumer was Plaintiff Rohini Kumar, who purchased and paid a premium for Defendant's olive oil during the class period, believing it to be "Imported from Italy," when it was not.

This case is ideally suited for class certification. Millions of consumers were exposed to identical misrepresentations on Salov's labels and purchased the same mislabeled oil. They all paid a premium price due to the mislabeling. That price premium can be determined on a classwide basis using common proof. These consumers' relatively small individual damages make it economically irrational for them to pursue individual suits. Thus, unless a class is certified here, Salov will not be held accountable for its misleading practices.

## II.    STATEMENT OF FACTS

### A.    Salov Markets and Sells Filippo Berio Brand Olive Oil Products.

Salov is a consumer products company based in Lyndhurst, New Jersey. It markets and sells olive oil products under the brand name Filippo Berio. (Declaration of Kristen Simplicio ("Simplicio Decl"), Ex. 1.) ███████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████ (*Id.*, Ex. 2, Defendant's Responses to Plaintiff's First Set of Interrogatories, Interrogatory No. 2; Ex. 3 Deposition of Tom Mueller ("Mueller Tr."), Vol. 1, at 20:7-18.) Among the products marketed and sold in the United States (hereinafter referred to collectively as the "Products") are liquid Filippo Berio olive oil products of grades that include extra virgin, pure, and extra light.

### B.    Salov Employed Identical False And Misleading Advertising To Sell Its Products as "Imported from Italy" Throughout the Class Period.

Salov advertised all the Products as "Imported from Italy" to deceive customers into believing that the oil is authentic Italian olive oil. For all the Products, at all times during the class period, the words "Imported from Italy" appeared on the front of the package. (Appendix A;[2] Simplicio Decl., Ex. 3, Mueller Tr., Vol. 1, at 117:3-120:24.)[3] ███████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████ (*E.g.*, Simplicio Decl., Ex. 6, SNA-0005931-53, at 11.) ███████████████████████

---

[2] Plaintiff requested that Salov produce exemplar copies of all labels used by Salov on the Products throughout the class period. (Simplicio Decl., Ex. 4, Plaintiff's First Set of Requests for the Production of Documents, Request No. 8.)  Salov identified documents submitted in Appendix A as the exemplar labels responsive to Plaintiff's request (*Id.*, Ex. 5, Letter from S. Commons, Oct. 14, 2015.), although Plaintiff removed labels that we recently changed to alter the front label "Imported from Italy" representation to say only "Imported."  *See infra* note 3.

[3] After this lawsuit was filed, Salov began changing its labels to remove the false representation. Tom Mueller, Salov's 30(b)(6) deponent and CEO, testified that the end of the third quarter of 2015 is the earliest time at which bottles not carrying the "Imported from Italy" label arrived in the United States. (Simplicio Decl. Ex 3, Mueller Tr., Vol. 1, at 118:12-19.) For this reason, Plaintiff made a conservative estimate and cut off the class period before the end of the third quarter of 2015, on August 31, 2015.

1     ████████████████████████████████ (*E.g.*, Simplicio Decl., Ex. 7, ███

2     ██████████████████████ SNA-0000804-72, at 856; Simplicio Decl., Ex. 8,

3 Deposition of David Scheiber ("Scheiber Tr."), at 62:18-25.)

4         Contrary to Salov's representations, the olive oil inside the bottles is not "from Italy."

5     ████████████████████████████████ (*Id.*, Ex. 9,

6 Mueller Tr., Vol. 2, at 341:6-11; Appendix A.)[4] ██████████████████████

7     ████████████████████ (*Id.*, Ex. 10, SNA-0008353 ███████

8 ██████████████████████████████████████

9 ██████████████████████████████████████

10 █████████████████████); *Id.*, Ex. 27, Deposition of Andrea Rodda ("Rodda Tr."),

11 at 37:8-38:10.) Although some bottles may have contained small amounts of oil from olives

12 grown and pressed in Italy, Salov has provided no evidence to suggest that any bottle of the

13 Products contained exclusively, or even a significant amount of, olive oil that was grown and

14 pressed in Italy.

15         Salov's intentional attempt to hide the truth about the origins of its olive oil violates state

16 and federal regulations, which require companies to use the product's true "country of origin" in

17 connection with any claims relating to geographic origin. For example, Title 19, § 134.46 of the

18 Code of Federal Regulations requires that:

19         In any case in which…the name of any foreign country or locality other than the
        country or locality in which the article was manufactured or produced appear on

20         an imported article or its container, and those words, letters or names may mislead
        or deceive the ultimate purchaser as to the actual country of origin of the article,

21         there shall appear legibly and permanently ***in close proximity*** to such words,
        letters or name, and in at least a comparable size, the name of the country of

22         origin preceded by "Made in," "Product of," or other words of similar meaning.

23 19 C.F.R. § 134.46 (emphasis added). The only exception is for products that are "substantially

24 transformed" from raw materials to finished goods in a particular country; there the country of

25 "substantial transformation" can be used as the country of origin. 19 C.F.R. § 134.1(b). In

26 interpreting these regulations in the context of olive oil, the United States Customs and Border

27 —————————————————

28 [4] ████████████████████████████████
    ██████ (Appendix A.)



Protection[5] ("CBP") has held that it is illegal to represent oil as "Imported from Italy" when it is composed of olives grown and pressed elsewhere. It also has rejected as inadequate the use of small print on the side panel to disclose the true source of the olives, because such a disclaimer is not "in close proximity to" the "Imported from Italy" representation. (Simplicio Decl., Ex. 11 (Letter N130295, dated November 24, 2010).) The CPB has also held that blending and bottling of oils in Italy does not amount to "substantial transformation." (*Id.*, Ex. 12 (Letter HQ560944, dated April 27, 1998).)

Salov of course knows the true countries of origin of its oil. ▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮ (Simplicio Decl., Ex. 9, Mueller Tr., Vol. 2, at 342:8-14.) ▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮ (*Id.*, Ex. 13, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, SNA-0009933, at p. 5-6.) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (*Id.*) ▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Appendix A;[6] *see also* Simplicio Decl., Ex. 8, Scheiber Tr., at 8:16-21, 106:1-107:5; Ex. 27, Rodda Tr., at 76:19-77:19.)

---

[5] The CBP was formerly known as the U.S. Customs Service under the Treasury Department. It is now part of the Department of Homeland Security.

[6] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (*Id.*) ▮▮▮



**C.** **Salov Compounded the Deception By Aggressively Promoting "Italianness" While Actively Hiding the Truth From Consumers**

Salov's mislabeling was compounded by its misleading marketing.

(Simplicio Decl., Ex. 8, Scheiber Tr., at 62:18-64:14.) As part of that strategy, Salov took a number of steps to mislead consumers.

First, in Salov's communications with its marketing partner,

(*Id.*, Ex. 14, SNA-0006167-72 at SNA-0006168-69.) Instead, the agency was told (*Id.*) At the same time,

(*Id.*, Ex. 15, SNA-0007357-59, at SNA-0007357.)[7]

Second,

(Simplicio Decl., Ex. 18, SNA-0027975-76 at SNA-0027975.)

Third, Salov also aggressively sought to hide the truth from its consumers.

. (*Id.*, Ex. 19, SNA-0006357-58.) When asked for

---

[7] (*Id.*, Ex. 16, SNA-0028912-13 (ellipsis in original).)

(*Id.*, Ex. 17, SNA-0009153-54.)

 (Simplicio Decl., Ex. 8, Scheiber Tr., at 131:6-11 (emphasis added).)

### D. Consumers Seek Out and Pay Premiums for Real Italian and Extra Virgin Olive Oil.

Salov employed its misleading advertising campaign because it was fully aware that consumers seek out Italian olive oil more than oil from any other geographic locale. In particular

For example, (Simplicio Decl., Ex. 20, at SNA-0005700.)

. (*Id.* at SNA-0005720.)[8] Moreover,

. (*Id.* at SNA-0005700, 5722; Ex. 21, SNA-0008691, at 3, 17 (finding . . .")

. (*Id.*, Ex. 22, , at SNA-0014179.)

(*Id.* at SNA-0014188).

[8] (Simplicio Decl., Ex. 9, Mueller Tr., Vol. 2, at 369:7-370:2.)



(*Id.*, Ex. 23, SNA-11094-11141, at SNA-0011123.)

(*Id.*) Likewise,

(*Id.*, Ex. 24, SNA-0025454-80, at SNA-0025464.)[9]

. (*Id.*, Ex. 23, at SNA-0011127.) And to hammer the point home,

(*Id.* at SNA-0011128.)

, it is no surprise that Salov consistently labeled its bottles as "Imported from Italy" on the front, took steps to emphasize the Italian nature of the brand, while downplaying the true country of origin by hiding it on the back label and taking other steps to hide the truth.

Because consumers want oil that is "from Italy," they also pay a higher price for it. Plaintiff's economics expert, Colin Weir, has run a preliminary regression analysis of prices paid by California consumers for olive oils since 2010, based on data from thousands of retail stores. The data shows that holding other factors constant, oils labeled "Italy" command between a ▮ and ▮ premium over oils not making such a claim (depending on the grade of the oil) (Weir Decl. ¶ 74.) Mr. Weir's findings are consistent with several published studies showing that olive oil claiming Italian origin commands a market price premium. (*Id.* ¶¶ 8-11.) His conclusions about a price premium ▮ in demonstrating that the "Italy" labeling is material to reasonable consumers.

**E.  Salov's False Representations Misled Plaintiff, a Typical Consumer.**

Plaintiff has purchased numerous bottles of Salov's olive oil over the years. Within a year

[9] ▮ (*Id.*)

prior to filing suit, Plaintiff purchased Filippo Berio Extra Virgin Olive Oil from a Safeway supermarket in Berkeley, California, for approximately six dollars. (Dkt. 1, ¶ 48.) Prior to her purchase, Plaintiff read on the front of the bottle that it oil was "Imported from Italy," which led her to conclude that the olive oil was from Italy—i.e., made of oil from olives grown and pressed in Italy. (Simplicio Decl., Ex. 25, Deposition of Rohini Kumar ("Kumar Tr."), at 149:23-150:6, 191:13-22, 191:13-193:25.) Had Salov accurately represented the true nature of the olive oil, Plaintiff would not have purchased it or, at a minimum, would have paid less. (Dkt. 1, ¶ 49.)

On May 23, 2014, after she became alerted to the deception, Plaintiff filed suit to stop Salov's deceptive practices. She pled four causes of action, all under California law: for violations of the Consumer Legal Remedies Act ("CLRA"), False Advertising Law ("FAL"), Unfair Competition Law ("UCL") and fraud, deceit and/or misrepresentation.[10] Plaintiff initially challenged not only the "Imported from Italy" labeling but also the "Extra Virgin" labeling on a subset of the bottles. A stipulation of the parties and order of the Court subsequently narrowed the case to focus on the Imported from Italy claims addressed in this motion. (Dkt. 81, 83.) Plaintiff understands her responsibilities as named plaintiff and class representative and has no conflicts that would prevent her from performing them. (Simplicio Decl., Ex. 25, Kumar Tr. at 116:12-24; 186:1-187:4)

For the past two years, Plaintiff has been a full-time homemaker, raising her now seven year-old son. For the previous five years, Plaintiff worked for Delivery Agent, Inc., an e-commerce company, beginning as an inventory control manager and receiving several promotions, serving as Director of Operations, Planning, and Customer Service in her final year. Prior to that, she worked as a Business Analyst for Target Corporation for six years. She attended Virginia Polytechnic Institute and State University. Her husband was a business school classmate with the husband of one of the attorneys at Gutride Safier LLP, which is how she became acquainted with her lawyers. When she learned that the attorney was investigating olive oil labeling issues, she sought legal information and advice about her own olive oil purchases, and

---

[10] The Court dismissed Plaintiff's claims for breach of contract and breach of the covenant of good faith and fair dealing. (Dkt. 50.)

she subsequently decided to bring these claims, as well as similar claims against Safeway for the "Safeway Select" olive oil that she had purchased.[11]

## III. ARGUMENT

### A. Legal Standards For Class Certification

Rule 23 provides district courts with broad discretion to determine whether a class should be certified. *See Armstrong v. Davis*, 275 F.3d 849, 872, n.28 (9th Cir. 2001). Class actions are favored where, like here, there is alleged wrongdoing against a large number of persons, each of whom has suffered only a small amount of damages. *See, e.g.*, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998) (class certification appropriate because litigation costs would dwarf potential recovery by class members if forced to pursue actions individually).

A class action must satisfy all four requirements in Fed. R. Civ. P. 23(a): "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." In some cases, "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question," and certification is proper only if "the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 1551 (2011) (quoting *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160-61 (1982)).

In addition, the class must also satisfy at least one subdivision of Fed. R. Civ. P. 23(b). Here, the Class satisfies Rule 23(b)(3) because "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

### B. The Class Satisfies the Requirements of Rule 23(a).

#### 1. Numerosity and Ascertainability Are Satisfied.

Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is

---

[11] Those claims are pending in Alameda County Superior Court. *See Kumar v. Safeway, Inc.*, Case No. RG14726707.

"impracticable." Fed. R. Civ. P. 23(a)(1). "Impracticable" does not mean impossible, only that it would be difficult or inconvenient to join all members of the class. *See Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964). "Where a class is large in numbers, joinder will usually be impracticable." *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810 (1982). The exact size of the class need not be known, as long as general knowledge and common sense indicate that the class is sufficiently numerous. *Id.* ███████████████████████████████████ ████████████████████████████████████ (Simplicio Decl., Ex. 26, Salov's Supplemental Responses to Plaintiff's First Set of Interrogatories, Interrogatory No. 4.)

Courts have also held that classes also "must be adequately defined and clearly ascertainable." *See Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 482 (N.D. Cal. 2011) (internal quotation omitted). The "class definition must be sufficiently definite so that it is administratively feasible to determine whether a particular person is a class member." *Id.* However, "[t]here is no requirement that 'the identity of the class members…be known at the time of certification." *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 536 (N.D. Cal. 2012). "As long as the class definition is sufficiently definite to identify putative class members, the challenges entailed in the administration of [the] class are not so burdensome as to defeat certification." *Astiana v. Kashi Co.*, 291 F.R.D. 493, 536 (S.D. Cal. 2013) (quoting *Ries*, 287 F.R.D. at 536). Here, the proposed Class meets this standard, as it is plainly and succinctly defined.

In cases where food labels are challenged for false advertising, courts have routinely found similar definitions to satisfy the ascertainability requirement. *See*, *e.g.*, *Forcellati v. Hyland's, Inc.*, 2014 WL 1410264 at *5 (C.D. Cal. Apr. 9, 2014) ("Plaintiffs have precisely defined their class based on an objective criteria: purchase of defendants' children's cold or flu products within a prescribed time frame. This is enough to satisfy Rule 23(a)'s implied ascertainability requirement."); *Astiana*, 291 F.R.D. at 500 (holding in a food labeling case that the class was sufficiently ascertainable where "the proposed class definition simply identifies purchasers of Defendant's products that included the allegedly material misrepresentations"). While Salov may dispute ascertainability on the grounds that there are no lists available of all

purchasers, class membership need not be demonstrated by documentation, provided the definition is clear enough to permit self-identification. *See Rahman v. Mott's LLP*, 2014 WL 6815779 at *5 (N.D. Cal. Dec. 3, 2014) (where class was defined to exclude long periods of time during which the challenged definition did not appear on label, class was sufficiently ascertainable because "putative class members could know whether or not the challenged statement appeared on the label when they purchased apple juice."); *see also Lilly v. Jamba Juice Co.*, 2014 WL 4652283 at *4 (N.D. Cal. Sept. 18, 2014) ("Few people retain receipts for low-priced goods, since there is little possibility they will need to later verify that they made the purchase. Yet it is precisely in circumstances like these, where the injury to any individual consumer is small, but the cumulative injury to consumers as a group is substantial, that the class action mechanism provides one of its most important social benefits.").[12]

Salov will no doubt attempt to rely on the heightened ascertainability standard adopted by the Third Circuit in *Carrera v. Bayer Corp.*, 727 F.3d 300 (3d Cir. 2013), or alternatively point to this Court's holding in *Kosta v. Del Monte*, 308 F.R.D. 217 (N.D. Cal. 2015). But after *Kosta* was decided, the Third Circuit retracted much of its reasoning in *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163-65 (3d Cir. 2015), and other appellate courts likewise disagreed with *Carrera*. *See, e.g., Mullins v. Direct Digital, LLC*, 795 F.3d 654, 661-72 (7th Cir. 2015) ("Nothing in Rule 23 mentions or implies this heightened requirement under Rule 23(b)(3), which has the effect of skewing the balance that district courts must strike when deciding whether to certify classes."); *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 524-27 (6th Cir. 2015) ("We see no reason to follow *Carrera,* particularly given the strong criticism it has attracted from other courts."). Moreover, *Kosta*'s holding with respect to ascertainability is distinguishable; in *Kosta*, there were too many lines of products, and changes were made to the labels *throughout the class*

---

[12] *Accord Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 535 (N.D. Cal. 2012) (holding, in a food labeling case, that the proposed class was ascertainable even in the absence of proofs of purchase because the class definition was objective and "[t]he challenges entailed in the administration of this class are not so burdensome as to defeat certification); *Allen v. Hyland's Inc.*, 300 F.R.D. 643, 659 (C.D. Cal. 2014) (holding in case challenging labeling of homeopathic drugs that "the Court is persuaded by . . . *Ries* and *Astiana* that the identity of class members need not be known at the time of class certification").

Plaintiff's Motion for Class Certification; MPA In Support Thereof

*period*, so, as this Court explained, "only certain products within the accused product lines actually had the allegedly misleading labeling and packaging." *Kosta*, 308 F.R.D. at 227. Accordingly, its holding should not dictate the outcome of this case, where the few challenged labels were uniform throughout the class period.[13]

### 2. Common Questions of Fact and Law Apply to the Class.

Commonality requires the plaintiff to demonstrate that the class members "have suffered the same injury." *Wal-Mart*, 131 S. Ct. at 2551 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). Otherwise put, class members' claims must depend upon a common contention that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Not all questions of fact and law need be common to satisfy the rule. *Id.*; *see also Mazza v. Honda American Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012) ("[C]ommonality only requires a single significant question of law or fact.").

Here, there are numerous legal and factual questions common to the Class that are central to the validity of the claims. The most crucial question is whether Defendant's uniform labels were likely to deceive a reasonable consumer. As many courts have explained, "the primary evidence in a false advertising case is the advertising itself." *Williams v. Gerber Products Co.*, 553 F.3d 934, 938 (9th Cir. 2008), 938 (quoting *Brockey v. Moore* 107 Cal. App. 4th 86, 100 (2003)). In cases alleging a deceptive advertising scheme under the UCL, CLRA, FAL, and common law fraud, it is well-settled that where "numerous consumers are exposed to the same dubious practice by the same seller [] proof of the prevalence of the practice as to one consumer would provide proof for all." *Vasquez v. Superior Court*, 4 Cal. 3d 800, 808 (1971). *See also In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009) (holding that questions of materiality and the likelihood a representation will mislead a reasonable consumer predominate over individual issues); *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002), *as modified* May 22, 2002 (explaining that the UCL and FAL "prohibit not only advertising which is false, but also advertising which,

---

[13] For the same reasons, the holding in *Jones v. ConAgra Foods, Inc.*, No. C 12-01633 CRB, 2014 WL 2702726 (N.D. Cal. June 13, 2014) on ascertainability is not applicable to this case.

Plaintiff's Motion for Class Certification; MPA In Support Thereof

although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public") (internal citations omitted), *cited with approval in Williams,* 552 F.3d at 938 (same for CLRA).

Another significant question is whether the "Imported from Italy" representation appearing on the front of the labels for all the Products violated state and federal labeling laws and is thus "unlawful" under the UCL. Here, Plaintiff will first prove that the representation as it appears on the packaging violates the Tariff Act of 1930, 19 U.S.C. § 1304(a) and implementing regulations, 19 C.F.R. § 134, including § 134.11 and § 134.46, which set forth specific requirements for when a company may label its products as "Imported from" any given country. Plaintiff will then prove that Salov's packaging violates regulations promulgated by the Food and Drug Administration, which provide that food is misbranded if its label expresses or implies a geographical origin of the food or any ingredient of the food except when such representation is "[a] truthful representation of geographical origin." *See* 21 C.F.R. § 101.18. *See also* Cal. Health & Saf. Code §§ 110100(a), 110380, 110505 (adopting FDA standards). The violation of any one of these regulations is sufficient to form the basis of Plaintiff's UCL claim under the "unlawful" prong. *Cel–Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) ("By proscribing 'any unlawful' business practice, section 17200 'borrows' violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable"), *quoted with approval in Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000); *Plascencia v. Lending 1st Mortgage*, 259 F.R.D. 437, 448 (N.D. Cal. 2009) ("Violation of almost any federal, state, or local law may serve as the basis for a UCL claim."), *order clarified*, 2011 WL 5914278 (N.D. Cal. Nov. 28, 2011).

Accordingly, commonality is met here as it was in *Astiani v. Kashi Company*. There, the court found that, "[b]y definition, all class members were exposed to such representations and purchased Kashi products, creating a 'common core of salient facts.'" 291 F.R.D. at 501 (citing *Ries*, 287 F.R.D. at 528). *Astiani* concluded that "[c]ourts routinely find commonality in false advertising cases." *Id.* (citing *Ries*, 287 F.R.D. at 537); *see also Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 377 (N.D. Cal. 2010); *In re POM Wonderful LLC Marketing &*

*Sales Practices Litig.*, 2012 WL 4490860 at *1 (C.D. Cal. Sept. 28, 2012). It further explained that "variation among class members in their motivation for purchasing the product, the factual circumstances behind their purchase, or the price that they paid does not defeat" commonality. 291 F.R.D. at 502 (quoting *Ries*, 287 F.R.D. at 537).

### 3. Plaintiff is Typical of the Class.

The purpose of the "typicality" requirement of Fed. R. Civ. P. 23(a)(3) is to ensure the named representative's interests "align" with those of the class. *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "[R]epresentative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical. Some degree of individuality is to be expected in all cases, but that specificity does not necessarily defeat typicality." *Hanlon*, 150 F.3d at 1020. Typicality is satisfied if the named plaintiff's claims stem from the same practice or course of conduct that forms the base of the class claims and are based upon the same legal remedial theory. *Jordan v. Los Angeles Cnty.*, 669 F.2d 1311, 1321 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810 (1982).

Here, Plaintiff's claims are typical of those of the other Class members because she, like all Class members, purchased a Product that Salov marketed as being "Imported from Italy." (Simplicio Decl., Ex. 25, Kumar Tr. at 149:23-150:6, 191:13-22, 191:13-193:25.) It is irrelevant that she did not purchase each Product covered by the class definition, because all the bottles of the Products covered by the class definition had the same false and deceptive "Imported from Italy" representation appearing on the front panel. (Appendix A.) At the time of purchase, she believed that "Imported from Italy" meant that the olive oil was made entirely of olives grown and pressed in Italy. (Simplicio Decl., Ex. 25, Kumar Tr. at 149:23-150:6, 191:13-22, 191:13-193:25.) Under these circumstances, Plaintiff's claims are, at the very least, co-extensive with those of the Class, and as such typicality is satisfied per Rule 23(a)(3).

### 4. The Plaintiff Will Adequately Protect the Interests of the Class.

Fed. R. Civ. P. 23(a)(4) requires that the class representative "fairly and adequately protect the interests of the class." The Ninth Circuit uses a two-prong test for this requirement: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other

class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).

Here, Plaintiff will fairly and adequately protect the interests of the members of the Class, because it is in her best interest to prosecute the claims alleged in the Complaint to obtain full compensation due to all members for the illegal conduct of which she complains. She has no conflict, let alone an irreconcilable conflict, with other Class members. Rather, she stands in the same shoes as all other members of the Class, seeks the same relief as other Cass members, and has a common interest in obtaining all of the relief sought.

Plaintiff's counsel have successfully represented numerous plaintiff classes, involving a variety of claims, in state and federal courts throughout the country. (Gutride Decl., Ex. A; Zavareei Decl., Ex A.) Gutride Safier LLP has been involved (and appointed class counsel) in at least fifteen class actions, including several cases relating to food and product mislabeling. (Gutride Decl., Ex. A.) Tycko & Zavareei LLP has also successfully litigated numerous class actions in state and federal courts across the nation. Plaintiff's counsel have the necessary financial resources to vigorously litigate this action. (Zavareei Decl., Ex. A.)

Salov will likely make a variety of ad hominen attacks on Plaintiff and her counsel, but these arguments should be rejected. *See In re Diasonics Sec. Litig.*, 599 F. Supp. 447, 451-52 (N.D. Cal. 1984) ("it is often the defendant, preferring not to be successfully sued by anyone, who supposedly undertakes to assist the court in determining whether a putative class should be certified. When it comes, for instance, to determining whether the "representative parties will fairly and adequately protect the interests of the class," ... it is a bit like permitting a fox, although with a pious countenance, to take charge of the chicken house.") (quoting *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 895 (7th Cir. 1981)).

### C.     The Class Satisfies the Requirements of Rule 23(b)(3).

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The predominance inquiry asks "whether proposed classes are sufficiently

cohesive to warrant adjudication by representation. The focus is on the relationship between the common and individual issues." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1019 (9th Cir. 2011) (internal quotations and citation omitted)). This criterion is normally satisfied when there is an essential common factual link between all class members and the defendant, for which the law provides a remedy. *In re Visa Checks/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001).

**1. Common Questions Predominate About Whether Salov's Representations Were Likely to Deceive Reasonable Consumers.**

The UCL's "unfairness" prong and Plaintiff's CLRA, FAL and fraud-based claims prohibit conduct likely to mislead reasonable consumers. *See Williams*, 552 F.3d at 938 (under the CLRA and UCL, the "reasonable consumer standard" applies); *Lam v. Gen. Mills, Inc.*, 859 F. Supp. 2d 1097, 1104 (N.D. Cal. 2012) (defendant's use of the word "strawberries" might lead reasonable consumers to believe product is made with strawberries, not pears from concentrate).

Here, Salov made identical representations on all of its Products throughout the class period. All Products said "Imported from Italy" on the front of the package, with substantially similar, if not identical, small print disclaimers appearing in small font on the back of the package. (Appendix A; *see also* Simpicio Decl., Ex. 3, Mueller Tr., Vol. 1, at 117:3-120:24 (Products did not start to appear in United States stores without the "Imported from Italy" label until end of third quarter of 2015).) Because the packaging will serve as "primary evidence" on all of Plaintiff's claims, common factual questions predominate—i.e., were Salov's "Imported from Italy" representations unlawful, or were they likely to mislead reasonable consumers—the answers to which also will drive resolution of the case. *See Wal-Mart*, 131 S. Ct. at 2551; *see also Allen v. Hyland's Inc.*, 300 F.R.D. 643, 667 (C.D. Cal. 2014) (finding common questions to predominate where defendants used similar representations as to the products' effectiveness on all packaging).

Salov will likely argue that consumers would have different understandings of, and concern for, the representations. It will argue that some consumers did not read or care about the "Imported from Italy" front label, or understood the true countries of origin by reading the small

print on the back. It might also argue that consumers buy its olive oil for reasons unrelated to these labeling issues; for example, because they trust the brand name, like the taste, or think the price was good. These arguments will all be misguided, because under the UCL, "relief is available *without* individualized proof of deception, reliance and injury" by absent class members. *In re Tobacco II Cases*, 46 Cal. 4th at 320 (emphasis added). "[I]n effect, California has created what amounts to a conclusive presumption that when a defendant puts out tainted bait and a person sees it and bites, the defendant has caused an injury; restitution is the remedy." *Stearns*, 655 F.3d at 1021 n.13. Here, the restitution will be valued as the difference between the price class members paid and the market price that would have existed had the products not said "from Italy." For these reasons, multiple courts have held that the presence of different motivators for purchase is an insufficient basis to deny certification. *See, e.g, id*. at 1022 (citing *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 129 (2009) ("That the defendant can establish a lack of causation as to a handful of class members does not necessarily render the issue of causation an individual, rather than a common, one.")); *Brown v. Hain Celestial Grp., Inc.*, 2014 WL 6483216 at *17 (N.D. Cal. Nov. 18, 2014) (rejecting premise that "there can be only one material trait that causes a person to buy a given product" and explaining that consumers "buy products all the time for more than one reason"); *Allen v. Hyland's Inc.*, 300 F.R.D. 643, 668 (C.D. Cal. 2014) (dismissing evidence that consumers had different primary motivators for purchasing product and finding predominance).[14]

Likewise, hypothetically different individual consumer buying experiences do not defeat certification of the CLRA or fraud-based claims. On those claims, even though there must be proof of reliance by each class member, an inference (or presumption) of reliance arises as to the entire class if the misrepresentation was uniform and material. *See In re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 156 (2010), *as modified on denial of reh'g* (Feb. 8, 2010) (plaintiff

---

[14] The UCL does require the *named plaintiff* to show that she was motivated by the mislabeling, but even in that context, "[i]t is not necessary that the plaintiff's reliance upon the truth of the fraudulent misrepresentation be the sole or even the predominant or decisive factor in influencing his conduct. It is enough that the representation has played a substantial part, and so has been a substantial factor, in influencing his decision." *In re Tobacco II Cases*, 46 Cal. 4th at 327.

entitled to show that defendant's conduct caused the same damage to the class by showing the misrepresentation was material, even if defendant could show some class members would have bought the product anyway); *Wolph v. Acer Am. Corp.*, 2012 WL 993531 at *3 (N.D. Cal. Mar. 23, 2012) ("[T]he Court found that Plaintiffs' claims are premised on misrepresentations that were made to the entire class. Therefore, common issues predominate on Plaintiffs' CLRA claim."); *Delarosa v. Boiron, Inc.*, 275 F.R.D. 582, 594 (C.D. Cal. 2011) ("A determination by the trier of fact that Coldcalm misrepresented its efficacy to Plaintiff will also resolve the common question of whether Coldcalm misrepresented its efficacy to all California consumers of Coldcalm"); *Zeisel v. Diamond Foods, Inc.*, 2011 WL 2221113 at *10 (N.D. Cal. June 7, 2011) (where plaintiff can prove representations on label were material, he could establish an inference of reliance on behalf of the class); *In re Brazilian Blowout Litig.*, 2011 WL 10962891 at *8 (C.D. Cal. Apr. 12, 2011) (on fraud and negligent misrepresentation claims "reliance may be presumed as to the entire Class if Defendant's misrepresentations or omissions were material").

### 2. Materiality Predominates.

The question of whether the misrepresentation or omission is "material" under California law is an objective one, depending on the "reasonable person" standard, and has long been so. *See Stearns,* 655 F.3d at 1022; *see also Occidental Land, Inc. v. Superior Court*, 18 Cal. 3d 355, 363 (1976) (for common-law fraud class, reliance can be proven on common basis by showing that misrepresentations were material); *Vasquez v. Superior Court*, 4 Cal. 3d 800, 814 (1971) (on fraud claim, "[i]f the court finds that a reasonable man would have relied upon the alleged misrepresentations, an inference of justifiable reliance by each class member would arise"); *In re Tobacco II Cases*, 46 Cal. 4th at 327 ("[a] misrepresentation is judged to be 'material' if 'a reasonable man would attach importance to its existence or non-existence in determining his choice of action in the transaction' and as such materiality is generally a question of fact unless the fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable man would have been influenced by it."). Because materiality is an objective standard common to all, and classwide reliance is inferred if the misrepresentations were material, the

common question of materiality predominates.[15] Here, ████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████ (Simplicio Decl., Ex. 20, at

SNA-0005700, SNA-0005720, SNA-00-5722; Ex. 21, at 17; Ex. 22, at SNA-0014179, SNA-

0014188; Ex. 23, at SNA-0011123, SNA-0011127; *see also* Section II.D *supra*.) Mr. Weir's

economic analysis also shows that the "Italy" labeling leads to a market price premium, which is

further evidence that the labeling is material. Although Plaintiff need not conclusively establish at

class certification that the "Imported from Italy" misrepresentation was, in fact, material, the

evidence at a minimum demonstrates that the question can be decided on a classwide basis.

Moreover, cases such as *Kosta* and *Jones*, in which this Court and others questioned

whether materiality could be shown by common proof, are distinguishable. First, here, as noted

above, there are surveys conducted by Defendant and third parties that show the importance of

the "country of origin" in olive oil purchasing decisions, as well as the fact that consumers

perceive Italian oil to be the best. Second, Plaintiff's expert, Colin Weir, has demonstrated a price

premium attributable to the challenged label statement, after controlling for brand, size,

packaging type, grade, flavor, and many other attributes. And Mr. Weir has cited published

studies on the issue and incorporated the findings from the consumer surveys conducted by

Defendant. These facts stand in stark difference to *Kosta*, where the Court's holding was based on

the fact that the plaintiffs' expert did not "review[] any particular labels at issue, . . . survey[] any

consumers who purchased products with these labels, or even that the particular attributes

challenged by Plaintiffs . . . would have been material to consumers." 308 F.R.D. at 230.

Second, in *Jones* and *Kosta*, there was no regulatory guidance as to the meaning of the

challenged labelling of "natural," whereas here there are clear legal standards about the phrase

"imported from…" That phrase is governed by regulations of the FDA and CBP, and Salov's use

of it in blended olive oil contravenes express CBP rulings that are directly on point. (Simplicio

---

[15] In addition, the CLRA and common law fraud claims present the further common question of whether Salov intended to deceive consumers.

Decl., Ex. 11 (Letter N130295, dated November 24, 2010); Ex. 12 (Letter HQ560944, dated April 27, 1998).) In other words, the representations here have clear, defined, and regulated meanings, which indicate that they are material. *See American Meat Institute v. United States Department of Agriculture*, 760 F.3d 18, 24 (D.C. Cir. 2014) (in analyzing country of origin regulations, explaining that the "value of this particular product information to consumers a matter of common sense" and "the 'time-tested consensus' that consumers want to know the geographical origin of potential purchases has material weight in and of itself"). Moreover, *Jones* and *Kosta* involved a wide variety of products, and consumers may have held different understandings of what "natural" means in the context of each product. Here, there is simply one product—olive oil—and Salov admits that consumers have strong positive associations between olive oil and Italy. (Simplicio Decl., Ex. 8, Scheiber Tr. at 70:9-24.)

Finally, unlike in *Kosta* and *Jones*, there is a claim here under the UCL "unlawfulness" prong that does not depend on materiality. (Dkt. 1 ¶¶ 100-111.) Under the "unlawfulness" prong, the Ninth Circuit has ruled that a plaintiff need not show that the representation was material or even that it was likely to mislead reasonable consumers, but only that it was unlawful. *See Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013), *as amended on denial of reh'g and reh'g en banc* (July 8, 2013) ("Moreover, the legislature's decision to prohibit a particular misleading advertising practice is evidence that the legislature has deemed that the practice constitutes a "material" misrepresentation, and courts must defer to that determination.") (citing *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 246 P.3d 877, 892-93. (2011)); *Rahman v. Mott's LLP*, No. 13-CV-03482-SI, 2014 WL 6815779 at *7 (N.D. Cal. Dec. 3, 2014) (in food label class action, where statement "constitutes a violation of California's Sherman Law, and is thus independently actionable under the unlawful prong of the UCL," courts will find "a presumption of materiality").[16] In other words, materiality can be shown through common proof

---

[16] Such a showing gives rise to a presumption of materiality. *See, e.g., Rahman v. Mott's LLP*, No. 13-CV-03482-SI, 2014 WL 6815779 at *7 (N.D. Cal. Dec. 3, 2014) (*citing Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013) and *Kwikset Corp. v. Superior Court*, 120 Cal. Rptr. 3d 741, 246 P.3d at 892–93 ("[T]he legislature's decision to prohibit a particular misleading advertising practice is evidence that the legislature has deemed that the practice constitutes a 'material' misrepresentation, and courts must defer to that determination.")).

by virtue of the fact that the representation was unlawful on all bottles.

### 3. Whether Salov's Representations Are Unlawful Predominates.

With respect to all of Salov's Products, common questions also predominate regarding whether Salov violated various federal and state regulations regarding country of origin, and if so, whether Salov has violated the unlawful prong of the UCL. *See Cel–Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) ("By proscribing 'any unlawful' business practice, section 17200 'borrows' violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable.").

First, the common question of whether Salov's "Imported from Italy" representation violates "country of origin" regulations will predominate over any individual questions. As set forth above, the alleged misrepresentation was identically placed on all of the Products, and the location, and relative sizing, of the purported disclaimer is also standardized across all of the Products. (Appendix A.) Title 19, § 134.46, of the Code of Federal Regulations prohibits Salov from using any name of a foreign country that "may mislead or deceive the ultimate purchaser as to the actual country of origin of the article," unless there appears "legibly and permanently *in close proximity* to such words, letters or name, and in at least a comparable size, the name of the [true] country of origin preceded by "Made in," "Product of," or other words of similar meaning." 19 C.F.R. § 134.46 (emphasis added). The U.S. Customs and Border Protection Service has ruled under this regulation that oils that are merely blended and bottled in Italy may not be labeled "Imported from Italy." (Simplicio Decl., Ex. 11 (Letter N130295, dated November 24, 2010); Ex. 12 (Letter HQ560944, dated April 27, 1998.).)[17] The United States Food and Drug Administration (the "FDA") has also promulgated regulations governing misbranding of food. The regulations provide that food is misbranded if its label expresses or implies a geographical origin of the food or any ingredient of the food except when such representation is "[a] truthful representation of geographical origin." *See* 21 CFR § 101.18; *see also* Sherman Food, Drug and

---

[17] Salov may challenge the level of deference this Court should give to that advisory letter, but that too is simply another common, predominant question. *See Brown*, 2014 WL 6483216 at *15 (holding that the impact of "an opinion expressed in an administrative agency's letter . . . can also be adjudicated at one stroke for the whole class").

Cosmetic Law, California Health and Safety Code ("Cal. Health & Saf. Code") § 109875, *et. seq.*; *see*, *e.g.*, Cal. Health & Saf. Code §§ 110100(a), 110380, 110505 (adopting FDA standards). Thus, a predominant, common question is whether Salov violated these regulations.[18]

### 4. Common Questions on Restitution and Damages Predominate Over Individual Issues.

Plaintiff seeks restitution under the UCL, as well as damages under the CLRA and for fraud, presenting further predominant common questions.[19] Salov may argue there is no classwide basis to determine monetary relief, because there is no way to determine who would have purchased had the labels differed, or how much they would have paid, as retail prices are set by retailers and differ by date and location, and there are no centralized documents establishing how much was paid by each class member. Salov may also argue that there is no way to account for the relationship between the price each class member paid and the "value" that he or she may have received. It will likely rely on the U.S. Supreme Court's decision in *Comcast v. Behrend*, 133 S. Ct. 1426 (2013), which decertified an antitrust class because plaintiffs had proposed no

---

[18] Even if Salov could prove that a portion of the Products were made exclusively from Italian olives, that would not defeat class certification. In *Brown*, 2014 WL 6483216 at *16, the plaintiff alleged that certain products were falsely advertised as "organic." *Id.* There, the defendant produced records to show that 4.3% of products within the class definition could be "non-actionable" due to the fact that they had sufficient levels of organic content. But because defendants' records could identify which products met that standard, the court held that individual issues did "not predominate over the several key shared issues that dominate this case. Nor did they create an impermissibly 'overbroad' class." *Id.* Plaintiff could simply modify the proposed class definition should Salov come forward with evidence that renders certain containers of the Products non-actionable.

[19] Under the UCL, a court may grant restitution, *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 694 (2006); Cal. Bus. & Prof. Code §§ 17203, 17535, an equitable remedy whose purpose is "to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149 (2003); *see also Cortez v. Purolator Air Filtration Products Co.*, 23 Cal. 4th 163, 177 (2000). The form of restitutionary relief has two purposes: returning money unjustly taken from the class, and deterring the defendant from engaging in future violations. *See Colgan*, 135 Cal. App. 4th at 695. If restitution is awarded, it must be a "quantifiable sum," and the award must be supported by substantial evidence. *Id.* at 698. Under the CLRA and fraud-based claims, a consumer may recover actual damages, punitive damages and attorney fees. Cal. Civ. Code § 1780(a)(1), (5), (d); *id.* § 3294(a). The CLRA also provides for statutory damages of $5,000 for each act of false advertising to a person age 65 or older. Cal. Civ. Code §§ 1761(f)-(g), 1780(a)(4).

---

theory of damages that was tied to their theory of classwide liability. *Id.* at 1433.

Salov's arguments should be rejected, as Plaintiff will be able to prove that everyone in the class paid a premium for the oil that would not have existed in the absence of the labeling misrepresentations. *See Colgan*, 135 Cal. App. 4th at 700 (plaintiffs may produce evidence that attaches a dollar value to the "consumer impact or advantage" caused by the unlawful business practices). The Ninth Circuit recently reaffirmed that such a methodology met the *Comcast* standard, explaining that the damages calculation "need not account for benefits received after purchase because the focus is on the value of the service at the time of purchase….[U]nder the UCL and FAL, the focus is on the difference between what was paid and what a reasonable consumer would have paid at the time of purchase without the fraudulent or omitted information." *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 989 (9th Cir. 2015); *see also Levya v. Medline Industries, Inc.*, 716 F.3d 510, 513–14 (9th Cir. 2013) (*citing Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010)).

At this stage, Plaintiff need only demonstrate the existence of a viable damages model that makes use of common, classwide evidence. *See Brown*, 2014 WL 6483216 at *19 ("The point for Rule 23 purposes is to determine whether there is an acceptable classwide approach, not to actually calculate under that approach before liability is established."); *McCrary v. Elations Co., LLC*, 2014 WL 1779243 at *15 (C.D. Cal. Jan. 13, 2014) (certifying consumer class because plaintiff presented a viable damages model and "it is not necessary to show that his method will work with certainty at this time") (quoting *Chavez*, 268 F.R.D. at 379 (certifying consumer class because plaintiffs were able to demonstrate one potential measure of damages based on the premium price paid by consumers)); *see also Zeisel*, 2011 WL 2221113 at *10 (accepting plaintiff's assertion for class certification purposes that "he will be able to prove the proper amount of restitution by relying on documents produced by [defendant] relating to net sales, profits, and costs, as well as retail prices of" the products at issue). Even if the amount of restitution owed to each class member differs, that is not a reason to deny certification, as the Ninth Circuit again reaffirmed in *Pulaski & Middleman*: "damage calculations alone cannot defeat class certification." 2015 WL 5515617 at *6.

To measure the price premium that resulted from the false "Imported from Italy" claims, Plaintiff's economics expert, Colin Weir, proposes a widely accepted method, hedonic regression. (Weir Decl. ¶¶ 18-38.) *See In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 1032 (C.D. Cal. 2015) (accepting Mr. Weir's proposed methodology of measuring damages in food labeling class action and concluding that plaintiffs demonstrated that "individual damages issues do not predominate over common questions");[20] *see also Pulaski & Middleman*, 2015 WL 5515617 at *8 ("In calculating damages, here restitution, California law 'requires only that some reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation.'") (quoting *Marsu, B.V. v. Walt Disney Co.*, 185 F.3d 932, 938–39 (9th Cir. 1999)).[21] Weir's regression analysis will be able to quantify classwide damages based on Salov's material "Imported from Italy" misrepresentation: Salov knew that consumers thought Italian olive oil was superior, and they were willing to pay for it. (Weir Decl. ¶¶ 64-76.) Moreover, unlike the damages model that was rejected in *Jones*, Mr. Weir's report provides the information that court found lacking. *See* 2014 WL 2702726 at *20. For example, in paragraphs 40-41, 57, and 59-63, he includes a "clearly defined list of variables;" paragraphs 54-55, 58-63, and 68-72

[20] Mr. Weir's methodology has been accepted in other class actions. *See*, *e.g.*, *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 572 (S.D.N.Y. 2014) *reconsideration denied*, No. 13 CIV. 2311 JSR, 2014 WL 1301857 (S.D.N.Y. Mar. 19, 2014) (accepting Mr. Weir's methodologies in an olive oil labeling case); *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 413 (S.D.N.Y. 2015) (finding that Mr. Weir's statistical methodologies to satisfy *Comcast*); *Belfiore v. Procter & Gamble Co.*, No. 14-CV-1142, 2015 WL 5781541 at *40 (E.D.N.Y. Oct. 5, 2015) *reconsideration denied*, No. 14-CV-1142, 2015 WL 6448696 (E.D.N.Y. Oct. 22, 2015) (noting approval of Mr. Weir's methodology).

[21] Even were the Court to conclude that there is no class wide method for determining the amount of monetary relief that should be repaid to the Class, it nonetheless still should certify the pursuant to Rule 23(b)(4) for liability only. Similar liability-only classes were certified in cases involving allegedly defectively designed washing machines, where class members might be entitled to different remedies depending on whether the defect manifested in their machine. *See In re Whirlpool Corp. Front-Loading Washer Products Liab. Litig.*, 722 F.3d 838, 858-59 (6th Cir. 2013) *cert. denied*, 13-431, 2014 WL 684065 (U.S. Feb. 24, 2014) (finding certified class "will prevail or fail in unison" and classwide liability adjudication will be "more efficient" notwithstanding differences in damages); *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 798 (7th Cir. 2013) *cert. denied*, 13-430, 2014 WL 684064 (U.S. Feb. 24, 2014) (holding *Comcast* does not impact cases where a liability only class is certified); *In re High-Tech Employee Antitrust Litig.*, 985 F. Supp. 2d 1167, 1185-86 (N.D. Cal. Oct. 24, 2013) (citing *Whirlpool* and *Butler* with approval, and certifying liability-only class).

show that he considered "whether the data related to any or all of his proposed control variables exists;" and finally, paragraphs 51-52 and 58 show "how he would determine which competing and complementary products he would use." 2014 WL 2702726 at *20. In other words, his declaration satisfies the standard set forth in *Pulaski & Middleman*.[22]

### 5. A Class Action Is Superior.

Rule 23(b)(3) enumerates four factors to consider on "superiority": "(A) the interest of members of the class in individually controlling the prosecution ... of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by ... members of the class; (C) the desirability ... of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."

Here, there is little to be gained by class members filing individual claims, because the amounts are only a few dollars per purchase. Judicial resources would be conserved by concentrating the action in a single suit. Finally, the adjudication of class claims would not be significantly more burdensome than if the matter were prosecuted individually, while the prosecution of individual remedies could establish inconsistent standards of conduct for Salov. "[A] class action has to be unwieldy indeed before it can be pronounced an inferior alternative . . . to no litigation at all." *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004); *Visa Checks/MasterMoney*, 280 F.3d at 140.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court grant her Motion for Class Certification.

---

[22] On a motion for summary judgment, the court in *Brazil v. Dole*, No. 12-CV-01831-LHK, 2014 WL 5794873 at *13 (N.D. Cal. Nov. 6, 2014), identified concerns over the expert report that were identical to those raised in *Jones* and addressed here.

Dated: January 19, 2016                    **GUTRIDE SAFIER LLP**


  /s/ Adam J. Gutride
Adam J. Gutride (State Bar No. 181446)
Seth A. Safier (State Bar No. 197427)
Kristen G. Simplicio (State Bar No. 263291)
100 Pine Street, Suite 1250
San Francisco, California 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

**TYCKO & ZAVAREEI LLP**
Hassan A. Zavareei (State Bar No. 181547)
Jeffrey D. Kaliel (State Bar No. 238293)
Andrew J. Silver (*admitted pro hac vice*)
1828 L Street, N.W., Suite 1000
Washington, DC 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950