1  Mark E. Haddad, SBN 205945
   mhaddad@sidley.com
2  Sean A. Commons, SBN 217603
   scommons@sidley.com
3  Nitin Reddy, SBN 229451
   nreddy@sidley.com
4  **SIDLEY AUSTIN LLP**
   555 West Fifth Street, Suite 4000
5  Los Angeles, California  90013
   Telephone:  (213) 896-6000
6  Facsimile:  (213) 896-6600

7  **Attorneys for SALOV NORTH AMERICA CORP., INC.**

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                   OAKLAND DIVISION

11 ROHINI KUMAR, an individual, on behalf of    ) Case No. 4:14-cv-02411-YGR
   herself, the general public and those similarly )
12 situated,                                     ) Assigned to: Hon. Yvonne Gonzalez Rogers
                                                 )
13              Plaintiff,                        ) **DECLARATION OF THOMAS MUELLER**
                                                 ) **IN SUPPORT OF DEFENDANT SALOV**
14 vs.                                           ) **NORTH AMERICA CORP., INC.'S**
                                                 ) **OPPOSITION TO PLAINTIFF KUMAR'S**
15 SALOV NORTH AMERICA CORP.,                    ) **MOTION FOR CLASS CERTIFICATION**
                                                 )
16              Defendant.                        ) Date: May 10, 2016
                                                 ) Time: 2:00 p.m.
17                                               ) Courtroom: 1
                                                 )
18                                               ) **[Memorandum Of Points And Authorities;**
                                                 ) **Declarations Of Sean A. Commons And**
19                                               ) **Keith R. Ugone Filed Concurrently]**
                                                 )
20 _____)

21                          **REDACTED**

22

23

24

25

26

27

28

I, Thomas Mueller, declare as follows:

1.      I am the president and chief executive officer of Defendant SALOV North America Corp. ("SNA"), positions which I have held for almost 29 years.  I respectfully submit this declaration in support of SNA's Opposition to Plaintiff Kumar's Motion for Class Certification.

2.      I have personal knowledge of the facts and circumstances stated herein and, if called and sworn as a witness, I could and would testify competently thereto.  SNA is a small, tightly-run organization.  It generally has had no more than 33 full-time employees, and it has been important for me to be familiar with and stay current on all aspects of SNA's Filippo Berio olive oil business. I have direct experience overseeing every aspect of SNA's business, including the Filippo Berio line of olive oil products at issue in this case.  In particular, due to the nature and extent of my responsibilities, I have responsibility for SNA's sales and its sales staff whose day-to-day activities are managed by SNA's Director of Sales, who reports to me and with whom I frequently discuss sales and competitive issues.  I am responsible for and approve all of SNA's pricing to retailers and wholesalers, and monitor retail pricing of Filippo Berio and other olive oil products sold by SNA's customers to consumers, including through discussions with and reports from SNA's sales team. Staying current on pricing and promotions by SNA, retailers, and other distributors of olive oil are important aspects of my responsibilities to ensure that Filippo Berio products are appropriately positioned and competitively priced in the marketplace.

3.      SNA is a founding member of the North American Olive Oil Association ("NAOOA"), which was formed in 1989 by the leaders of several major olive oil importing companies to adopt industry-wide standards for quality and authenticity consistent with the standards adopted by the International Olive Oil Council (now the International Olive Council (the "IOC")) for global olive oil commerce and to promote the consumption of olive oil nationally.  The NAOOA is a signatory to an IOC monitoring agreement along with trade associations of olive oil producers from most of the olive oil producing countries in the Mediterranean basin.  After participating in the formation of the NAOOA, I served many years as Chairman of its Quality Control Committee, 12 years as an officer, 13 years as a member of the Executive Committee, and have been elected on three separate occasions to serve two-year terms as NAOOA Chairman.  Since the NAOOA's

formation, I have been actively involved in establishing olive oil standards in the United States, as well as monitoring compliance with and enforcement of those standards.

### SNA's Tradition of Ensuring That Filippo Berio Remains of the Highest Quality

4.     SNA has been the exclusive distributor of Filippo Berio branded olive oil in the U.S. throughout my time with SNA.  The Filippo Berio brand is produced by SALOV S.p.A ("SALOV"), a privately owned-Italian company, which traces its history back to 1867 in Italy and a gentleman named Filippo Berio.  Throughout my decades with SNA, I have regularly visited SALOV's facilities in Massarossa, Italy, including the blending and bottling facilities.  During my visits, and as part of my work with SNA, I also have spoken with numerous SALOV personnel, including its master blenders and chief chemist.  Based on all of my observations and conversations, I know that all of its employees place the utmost importance on producing the highest quality olive oils that exceed any applicable standard in the European Union, the United States, and everywhere else in the world that Filippo Berio is sold.  My own personal philosophy as the head of SNA has likewise been to ensure that our customers receive the highest quality products and service at a fair price.

5.     The blending and bottling facilities in Massarossa, Italy are state-of-the-art and include on-site equipment to perform advanced chemical testing.  A comprehensive suite of procedures and practices are followed to protect the authenticity and quality of Filippo Berio products.  During each olive oil "campaign" (i.e., growing season), the thousands of olive oil samples received by SALOV for potential purchase undergo chemical and organoleptic (smell and taste) tests to identify those that could be used to create the unique flavor profile of Filippo Berio products.  The personnel who perform these tests do not consider price at this stage – only whether the samples meet rigorous quality standards and the desired flavor profile for the particular product line.

6.     Prior to accepting delivery of any olive oils that have been selected for use in Filippo Berio branded products, a delivery undergoes tests using multiple samples before being accepted.  If the chemical or organoleptic qualities of a shipment do not match those of the original sample, the delivery is rejected.  If there is any indication or suspicion that a supplier has intentionally tried to

substitute olive oil that is inferior to the original sample without disclosure or if any seed or nut oils are detected in any of the samples, the supplier will never be used again.

7. Once a delivery of olive oil has been accepted, it is identified and stored in covered, stainless steel tanks. Master blenders then oversee the process of creating the unique flavor profile for each Filippo Berio product line. The blends always contain olive oils sourced from Italy. The master blenders have decades of experience testing and tasting olive oils and are qualified to oversee organoleptic testing of olive oils pursuant to testing protocols, and in compliance with standards set by the IOC, whose olive oil standards are recognized world-wide for olive oil authenticity, quality, and testing. The master blenders regularly participate in what is known as IOC ring testing to confirm that their assessments of organoleptic standards is consistent with all applicable IOC standards. They and SALOV's professionally-trained chemists stay apprised of the latest scholarship and advances in olive oil testing, and participate in organizations devoted to promoting olive oil quality and improving olive oil testing.

8. Blending olive oils to achieve a desired taste profile is an art as much as a science. Olives are fruits and, like all fruits, have different tastes and characteristics based on innumerable factors (olive variety, soil, rain fall, temperature, sun exposure, ripeness at time of harvest, etc.). It would be impossible to achieve the desired taste profile for Filippo Berio products by using one variety of olive or even one variety of olive from one supplier. Environmental conditions change during each year and from year-to-year and impact the flavor of the oil extracted from the fruit. The master blenders must carefully select and balance high quality oils from multiple suppliers to maintain the unique Filippo Berio taste profile throughout each year and from campaign to campaign. As a result, Filippo Berio olive oil products are truly unique as no olive oil exists with the Filippo Berio flavor profile until multiple olive oils are blended under the guidance of the master blenders.

9. Once the master blenders have determined the right balance of olive oils to achieve the unique Filippo Berio flavor profile, the olive oils are blended, bottled, and then tested before shipment. Although the oils already have undergone two rounds of tests by this point in the production process, this testing is performed as a final safeguard. Check samples from each lot are

retained in the event any question is raised about the quality of any lot. Over the years, every time I have asked for a check sample to be sent to an independent IOC certified laboratory for testing, the independent testing has confirmed that the Filippo Berio product met or exceeded IOC standards.

**Filippo Berio Undergoes Regular Inspection by U.S. and Foreign Regulators**

10.    Before leaving the production facilities in Massarosa, Italy for export by ship to the U.S., Filippo Berio branded products are subject to random testing by Italian authorities for quality and authenticity. Throughout my decades working for SNA, the Italian authorities have always found that Filippo Berio branded products met or exceeded all applicable standards for quality and authenticity.

11.    Upon arrival in the U.S., but before being released to SNA, Filippo Berio branded products are subject to inspection by U.S. Customs and the Federal Food and Drug Administration (the "FDA"). U.S. Customs typically inspects several shipments a year at different ports of entry, whereas the FDA inspects and tests samples less frequently. U.S. Customs inspections can include product labeling. Throughout my decades of working for SNA, U.S. Customs has never rejected a shipment of Filippo Berio on the ground that it was mislabeled. In particular, U.S. Customs has never rejected a shipment of Filippo Berio on the ground that the phrase "Imported from Italy" can only be used on products containing 100% Italian olive oil, and the labeling on each bottle of Filippo Berio states "Packed in Italy with oils from Italy, Spain, Greece, and Tunisia." Filippo Berio products also have always passed all FDA testing.

**The Filippo Berio Product Lines And Labeling**

12.    During the class period, SNA has sold six distinct lines, each with its own unique flavor profile: Robusto Extra Virgin Olive Oil; Delicato Extra Virgin Olive Oil; Organic Extra Virgin Olive Oil; Extra Virgin Olive Oil; Olive Oil; and Extra Light Tasting Olive Oil. The Robusto Extra Virgin Olive Oil and Delicato Extra Virgin Olive Oil are the newest additions to the lines, first introduced in 2013, in response to the ever-changing preferences of consumers.

13.    SNA has conducted consumer preference surveys. None were limited to California consumers. The surveys confirm what I've learned from my decades in the business: consumers make purchasing decisions for numerous reasons. Many consumers "grab and go" (as marketers

say) because they know the variety, package size, or brand they want. Based on those surveys, and based on my own experience in the industry, country of origin is not a motivator for the vast majority of consumers. Very few consumers care about country of origin.

14.    The shape, design, color, and content of each Filippo Berio product label at issue has undergone several iterations during the proposed class period. For example, when cholesterol was a subject of frequent public discussion, SNA added a flag to products to highlight that olive oil is a "Heart Healthy" food (*see* paragraph 17 below for an example). One aspect of Filippo Berio that SNA has not emphasized, however, is that it should only be used when preparing an "Italian" dish, when preparing food for a special occasion, or an "Italian" meal. I and others at SNA have concluded long ago that doing so would limit the brand's appeal to many consumers. We want all consumers to try and to enjoy our product every day. We have consciously emphasized the versatility of Filippo Berio olive oil by sponsoring a broad range of "cooking show" chefs and by providing recipes and usage suggestions that are intended to attract users of all ages and from as many socio-economic categories and ethnicities as possible, especially people who have grown up in cultures in which olive oil may not have played a significant role in their cuisine.

15.    Prior to and throughout my tenure at SNA, Filippo Berio product labels have truthfully stated that the product is "Imported from Italy." The placement, size, and font size of the phrase have undergone several iterations on the various products at different times during the proposed class period, before being dropped across the entire product line. The phrase "Imported from Italy" remained on the label largely because it had always been there and, even if not easy to read, visually "balanced" the appearance of the label which has had phrases on the opposite side (*see* paragraph 17 below for examples). The phrase "Imported from Italy" was not used because I or anyone at SNA believed it had any impact on purchasing decisions. As should be evident from looking at the change in labels over time, the phrase became smaller and smaller relative to other statements on the labeling, until being dropped entirely in favor of "Imported." In fact, no one at SNA noticed for some time when a version of the Organic Extra Virgin Olive Oil label dropped all references to the product being "Imported from Italy," which resulted in products with that label

1  being sold side-by-side with products containing that phrase. The phrase "Imported from Italy" was

2  added back merely to maintain consistency across the Filippo Berio product lines.

3       16.     A copy of Filippo Berio Organic Extra Virgin Olive Oil label without the phrase

4  "Imported From Italy," which was applied to bottles for approximately eight months from early

5  2014 to late 2014, and would have remained on store shelves likely for up to a year from the time the

6  label was changed, is reproduced below:



7

8

9

10

11

12

13

14

15

16

17  //

18  //

19  //

20  //

21  //

22  //

23  //

24  //

25  //

26  //

27  //

28  //

1  　　　　17.　　Below are reproductions of three front labels used during the class period on the most

2  popular size package, the 16.9 ounce bottle, prior to removal of the words "from Italy".  The

3  reproductions are of the Filippo Berio Extra Virgin Olive Oil product and are arranged beginning

4  with the oldest label used during the class period on the left, progressing to the last label that still

5  contained the phrase "Imported from Italy" on the furthest right.  On each of these labels, black text

6  was used against a dark green field without any "spot lighting," which can be seen around the brand

7  name on the two rightmost labels.  Aside perhaps from the font size used within the graphic of the

8  bee and depicting Filippo Berio, the phrase "Imported from Italy" always was printed in one of the

9  smallest fonts used on the front label.  The font size as printed on the 16.9 ounce bottle was

10  originally 8 point, decreased to less than 8 point, and became less than 6 point (the smallest size font

11  on the front label), before the words "from Italy" were dropped entirely.

12



22  //

23  //

24  //

25  //

26  //

27  //

28  //

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

18.     The back labels for the 16.9 ounce Filippo Berio Extra Virgin olive oil illustrate how the verbiage, font size, font thickness, relative size, and placement of the "Packed in Italy" statement changed over time.  Below are three of the five back labels in use for this product and size during the class period, arranged oldest to newest from left to right.  At the start of the class period, the statement originally was printed in a black font against a white/light green background, before SNA moved to printing in "knock out" white in a heavier weight font so that it could be more easily read against the dark green background.




19.     A collection of the various Filippo Berio labels in use during the proposed class period, including those without the phrase "Imported from Italy," are collectively attached as **Exhibit A**.  Images showing the last iteration of the front labels applied to bottles prior to removal of the words "from Italy", side by side for the entire line of Filippo Berio products, are collectively attached as **Exhibit B**.

DECLARATION OF THOMAS MUELLER IN SUPPORT OF DEFENDANT'S OPPOSITION TO MOTION TO CERTIFY CLASS
CASE NO. 4:14-CV-02411-YGR

20.     Before the filing of this lawsuit, I decided to remove the phrase "Imported from Italy" from the labeling for all of the product lines and replace it with the word "Imported" for several reasons.  Fundamentally, the phrase was not significant to purchasers of Filippo Berio olive oil.  Neither I nor others within SNA believed it helped distinguish our product from other olive oils on store shelves.  Italy has long been either the largest or second largest exporter of olive oils, so being "Imported from Italy" does not effectively differentiate Filippo Berio olive oil from most products.  In addition, by this time, the phrase "Imported from Italy" was printed so small as to be illegible to consumers walking by shelves, particularly on our products with darker background colors on the labels.  Someone would need to pick up the bottle and study the label to see the phrase, and presumably a consumer who took the time to study the bottle would be equally interested in our back label, which is the only place where we can share information about how delicious and versatile our oils are, our tradition of quality, recipes, and other information intended to educate consumers.  One thing we have found to be an obstacle to purchasing decisions is that consumers do not know how to use olive oil.  As much as we have been trying to increase consumer awareness and brand recognition, consumer education also has been a very important component of our labeling and advertising.

21.     I also decided to remove the phrase "Imported from Italy" prior to this lawsuit because of a lawsuit filed against one of SNA's smaller "mom and pop" retailers in the Superior Court of D.C., which included a claim challenging the phrase "Imported from Italy."  I did not want SNA or retailers of Filippo Berio to face the risk of any additional spurious lawsuits for a phrase that served no discernible purpose.

22.     I have read plaintiff's motion for class certification, where they assert that the new labels without the phrase "Imported from Italy" did not reach store shelves until September 2015.  That is not correct.  I understood those deposition questions as asking me for the last possible date when the products without that phrase reached store shelves.  As I explained at my deposition, it is impossible to give an exact date because the roll-out of the new labeling depended on the sales velocity of a particular product line or size, as well as the particular retailer.  Retailers sell through some product lines or product sizes more rapidly than others.  SNA also has many customers, some

9

of whom operate their own distribution centers, and a customer could have received a large shipment shortly before the labeling change was implemented. After consulting with SNA's head of logistics, and looking at SNA's business records, my best estimate is that products with the new labels would have begun to appear on retail shelves in mid-2015, and no later than September 2015.

**Pricing And Labeling of Filippo Berio Compared to 100% Italian Olive Oils**

23. In all of my years pricing Filippo Berio olive oil, I have never priced Filippo Berio by assigning values to statements on the label or by treating the product as a sum of its parts. Having studied pricing of other olive oil products for years, I have never observed that others have either. SNA's pricing has always been determined by the cost of olive oil from the Mediterranean basin (which is determined by global supply and demand), product packaging and logistics, the competitive landscape, the brand positioning of Filippo Berio, and SNA's administrative costs. Ultimately, however, the highly competitive market for olive oil sold in the United States sets the prices for Filippo Berio, and SNA must respond to the market.

24. Based on everything I know from decades of real-world experience pricing Filippo Berio olive oils and monitoring the pricing of other olive oils, the market does not set or change prices whenever words are added to or removed from labels of standard products of established brands. The shape, design, color, and content of each Filippo Berio product label at issue have undergone several iterations during the proposed class period, yet SNA has never even thought about pricing, let along tried to price, our products differently because of these label changes. Furthermore, the methodology used to calculate sales pricing has never been altered because of label changes. I have never heard of a retailer or wholesaler that attempted to negotiate with SNA over pricing for Filippo Berio products because our label had changed.

25. Despite the numerous iterations of the label over the years, we have never observed that either "every day" or promotional pricing of Filippo Berio olive oils by retailers changed following the introduction of a new label. Whenever the labeling changes, there always are periods of time when products with the old and new labels are in the marketplace at the same time, and they are often side by side on store shelves. No retailer would charge different prices for the same products because the labels were different. The most we can ever hope to accomplish with a label

change is to attract new customers to our brand. But because of the competitive landscape in which SNA operates, and the fierce pricing pressures, we are not in a position to use a label change or a growth in market share to raise prices. If we did so, retailers and wholesalers would simply buy what they believe that their customers will consider to be substitutable products from someone else. Likewise, current and prospective retail consumers of Filippo Berio would switch to other brands.

26.     In addition, the theory that product pricing can be determined merely by taking the sum of various attributes of olive oils, or that changes in olive oil labeling can reliably explain changes in pricing, disregards the widespread practice in the olive oil industry of what is known as line pricing for promotions. With line pricing, all regular products for a brand are priced exactly the same for promotions of a given size, even if the products are different types with different flavors (e.g., the regular Extra Virgin, Olive Oil, and Light Tasting Olive Oil for a brand will be priced for promotions the same for any given size). During the class period, both SNA and retailers have frequently used line pricing for promotions of Filippo Berio products, even though the labeling, flavor profile, and cost to make each of the six products lines at issue is different. In SNA's experience, line pricing has been especially prevalent in California during the class period. Depending on the mix of products purchased and sold by a retailer using line pricing, this could mean that some Filippo Berio products would be more competitively priced for their type than they otherwise would be, and others will be less competitively priced than they otherwise would be. I personally disagree with the philosophy behind line pricing because I feel it does not communicate to consumers the differences in the costs of sourcing the different varieties of olive oils – Extra Virgin, Olive Oil and Extra Light Tasting. But retailer line pricing shows that at least some retailers and consumers do not assign a separate value to the different types of olive oil, even though the cost to make them is different, and they clearly are labeled and positioned for different uses (e.g., Filippo Berio recommends using Extra Virgin "For Dressing and Marinating," and Olive Oil "For Sautéing & Grilling").

27.     I understand that plaintiff believes that consumers placed a "premium" on Filippo Berio when the label said "Imported from Italy," and she believes that consumers interpreted the phrase to mean that our products contained "100% Italian olive oil." Based on my three decades in

the olive oil business, this defies the realities of the olive oil market and SNA's experience with innumerable consumers. During the time when Filippo Berio labels included the phrase "Imported from Italy," SNA never priced the products as if they contained 100% Italian olive oil or in any way pegged regular or promotion pricing to that of 100% Italian olive oil products being offered by retailers. SNA could not do so because Filippo Berio products are not positioned, labeled, or marketed in the same manner as products that contain 100% Italian olive oil. In general, single country of origin products emphasize that product characteristic and differentiator by using the phrase "100% [name of country] olive oil," or they describe themselves as a "Product of [name of country]". Single country of origin products often sell at higher prices than Filippo Berio branded products. That is particularly true of 100% Italian Extra Virgin olive oils, which can cost several multiples of what retailers often charge for Filippo Berio brand blended products. Single-sourcing from Italy is far more expensive than sourcing and blending high quality olive oils from multiple countries.

28.   Based on everything I know about the olive oil market, neither SNA nor any other brand or retailer could ever realize a premium due to consumers supposedly perceiving the phrase "Imported from Italy" to mean that a product contains 100% Italian olive oils. SNA is not aware of any product sold in California (or in the U.S.) that contains 100% Italian olive oil, but is described as merely "Imported from Italy." If a product contains 100% Italian olive oil, then any producer/marketer/retailer will emphasize that fact because it is a significant differentiator and would immediately enable consumers to understand why the product is more expensive than it otherwise would be.

29.   For similar reasons, the only olive oils sold in the U.S. with 100% Italian olive oil have been Extra Virgin olive oils. In all of my years in the business, SNA has never encountered or even heard of a non-Extra Virgin olive oil (i.e., regular Olive Oil, Light Olive Oil, or Light Tasting Olive Oil) that used 100% Italian olive oil, or was labeled, marketed, or advertised as containing 100% Italian olive oil. The market for non-Extra Virgin olive oils is especially price sensitive, and non-Extra Virgin olive oils historically have been priced lower than Extra Virgin because Extra Virgin olive oils are more expensive to source. In addition, consumers who purchase non-Extra

Virgin olive oils typically prefer less strong flavors than those found in Extra Virgin olive oils, because non-Extra Virgin olive oils are typically used for every day cooking, frying, sautéing, basting and baking. This type of usage eliminates any possible reason for creating a non-Extra Virgin olive oil using 100% Italian olive oil or for thinking that consumers of those products would want a product containing 100% Italian olive oil. On the other hand, consumers who desire 100% Italian olive oil represent a small segment of the market, and typically are very particular about and more focused on flavor, which means they would have no interest in non-Extra Virgin 100% Italian olive oils. Simply put, there is no market demand or reason to create a non-Extra Virgin 100% Italian olive oil product.

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

30.     It is helpful to see what bottles of 100% Italian olive oil look like and how they are priced to understand why the Filippo Berio brand is not positioned to compete in this segment and to see why a consumer looking at a shelf stocked with olive oils would not mistake a Filippo Berio product for a 100% Italian olive oil product.  Below are photos taken of bottles of 100% Italian olive oils recently purchased at Southern California supermarket locations, including the actual retail prices.  None use the phrase "Imported from Italy."

Price:  $19.99        Price:  $28.99        Price:  $12.99

  

1

31.     The front labels of these products contain statements such as "Italian Extra Virgin Olive Oil," "Produced by smallholders from the Olivastra olives of Seggiano in Tuscany," "100% ITALIAN OLIVES," "PRODOTTO D'ITALIA," "PRODUCE [SIC] IN ITALY FROM 100% ITALIAN OLIVES," and "Harvested, Selected, pressed and estate bottled by OLEIFICIO MASELLA ITALY." The back labels further emphasize that these products contain "ITALIAN EXTRA VIRGIN OLIVE OIL," "SINGLE VARIETY NOT BLENDED," or "OBTAINED DIRECTLY FROM ITALIAN OLIVES." None use the phrase "Imported from Italy."

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





15

32.     The labeling and pricing of the above bottles is consistent with other 100% Italian olive oils sold in California (though, like all products sold at retail, I have seen some of the above-depicted products priced much higher).  By way of example, I have seen a recent example of a 16.9 ounce bottle of 100% Italian olive oil selling for $39.99 at a major supermarket chain in California (the Badia brand), and products in this space often sell in the $12-19 range.  In contrast, a 16.9 ounce bottle of Filippo Berio Extra Virgin Olive Oil purchased from the exact same Southern California supermarket location that sold the bottle of Lucini[1] for $28.99 was priced at $8.49, while a bottle of Filippo Berio Olive Oil was priced at $8.29 at that supermarket.

33.     If plaintiff's theory that consumers understood "Imported from Italy" to mean that a product contains 100% Italian olive oil had any validity, and assuming as plaintiff apparently does that consumers were unaware of the statement that Filippo Berio products are "Packed in Italy with oils from Italy, Spain, Greece, and Tunisia," then SNA should have experienced a substantial and immediate drop in the regular and promotion prices it could charge retailers and wholesalers, and the regular and promotion prices that retailers and wholesalers could charge their customers after the "Imported from Italy" phrase was replaced with "Imported."  Neither has happened.

34.     SNA's pricing to retailers and wholesalers has not changed since SNA replaced the phrase "Imported from Italy" with "Imported."  While the switchover in labeling was occurring, SNA priced those products exactly the same as, and shipped them alongside, products with the old labels.  SNA is not aware of any instance where a retailer or wholesaler asked to pay a different or lower price due to the label change, or where a retailer or wholesaler instituted different regular or promotional pricing because of the label change.  If anything, the average retail price for Filippo Berio products has been trending (slightly) upward since the switchover in labeling, including in California.

### Promotional Pricing of Filippo Berio

35.     Several times a year during the class period, SNA ran promotional pricing programs, including in California, which substantially decreased the unit price charged to retailers and

---

[1] I understand that plaintiff's expert uses Lucini as one of the brands in his regression model.

wholesalers and, ultimately, consumers. In addition, during much of the class period, SNA regularly offered coupon programs, including in California, typically for $1.00 off a bottle. Depending on the price charged by a retailer, a coupon could provide customers with up to a 20% discount (e.g., if a retailer charged $5 for a bottle). SNA promotions and coupons could be in addition to other benefits offered directly by retailers (such as club card rebates and points).

      36.    Typically more than once a year between 2010 and 2013, SNA would run promotions using what are known as "neck collars." Neck collars completely obscure the top portion of the label, including the graphic logo and, when it appeared on the label, the phrase "Imported from Italy." Below is an example of the graphical layout of the front and back of one such neck collar. A true and correct copy of this and other hang tags are attached collectively as **Exhibit C.**




37.     SNA does not set the prices charged to consumers.  SNA's goal is for each product line of Filippo Berio olive oil to be among the most affordable high quality olive oils on a store shelf, and depending on the store, it can be the most affordable.  For instance, a 16.9 ounce Filippo Berio olive oil may often retail for somewhere between approximately $5.99 and $7.99, though just like any retail product, the price of that same bottle can vary widely in either direction depending on the particular retailer and the demand in that particular region.  The exact same bottle that sells for $4.99 at one retailer can sell for $10.99 at another retailer.  The amount one type of Filippo Berio olive oil sells for versus another also can differ widely from retailer to retailer, including depending on whether a retailer uses line pricing (which I discuss above in greater detail at paragraph 26).

38.     California historically has been one of the smallest markets for Filippo Berio olive oil.  During the class period, Filippo Berio's market share generally has ranged from 0.5% to 2% of the olive oil market, depending on the city or region within California.  Over the class period, SNA has experienced ████████████ of Filippo Berio olive oil products in California on ████ ██████████████

### SNA Stands Behind The Filippo Berio Brand

39.     SNA always has stood behind the quality of Filippo Berio olive oils and every other Filippo Berio product it sells.  Should a consumer be dissatisfied for any reason, SNA offers a full refund or exchange.  Other than plaintiff Kumar in this case, and the plaintiff in the case in D.C. litigated by one of the same law firms that represents Ms. Kumar in this case, in nearly three decades, among all consumers nationwide, SNA has received only one inquiry from a consumer who claimed to have been confused by the phrase "Imported from Italy".  Consistent with SNA's policy, the individual was offered a refund or replacement.

//
//
//
//
//
//
//

**Other Observation**

40.     Although SNA has used IRI and Nielsen data reporting services to track market activity, those services have limitations.  For instance, I understand that plaintiff's expert believes based on IRI data that SNA sold 34 ounce (one liter) bottles of Filippo Berio Olive Oil in California during the class period.  SNA, however, is not aware of any such sales in California and has sold that size bottle only to a club retailer that does not participate in IRI.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on the 15th day of March, 2016, in Lyndhurst, New Jersey.

_____
Thomas Mueller