**GUTRIDE SAFIER LLP**
ADAM J. GUTRIDE (State Bar No. 181446)
SETH A. SAFIER (State Bar No. 197427)
KRISTEN G. SIMPLICIO (State Bar No. 263291)
100 Pine Street, Suite 1250
San Francisco, California 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

**TYCKO & ZAVAREEI LLP**
HASSAN A. ZAVAREEI (State Bar No. 181547)
JEFFREY D. KALIEL (State Bar No. 238293)
ANDREW J. SILVER (*admitted pro hac vice*)
1828 L Street, N.W., Suite 1000
Washington, DC 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950

Attorneys for Plaintiff ROHINI KUMAR

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ROHINI KUMAR, an individual, on behalf of herself, the general public and those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SALOV NORTH AMERICA CORP.,<br><br>Defendant. | CASE NO. 4:14-cv-02411-YGR<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>Date: May 24, 2016<br>Time: 2:00 p.m.<br>Courtroom 1<br><br>Hon. Judge Yvonne Gonzalez Rogers |

FILE UNDER SEAL

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... ii

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 1

A. The Class Is Ascertainable .......... 1

B. Common Questions of Fact and Law Predominate. .......... 4

1. Materiality Can Be Shown on a Class-Wide Basis. .......... 4

2. Common Damages Issues Predominate. .......... 7

C. Salov's Attacks on Plaintiff And Her Counsel Do Not Undermine Her Satisfaction of the Adequacy and Typicality Requirements. .......... 10

1. Plaintiff is Typical .......... 10

2. Plaintiff is Adequate. .......... 12

D. Resolving This Case On A Classwide Basis Is Superior To All Alternatives .......... 15

# TABLE OF AUTHORITIES

## CASES

*Allen v. Similasan Corp.*, 306 F.R.D. 635 (S.D. Cal. 2015) ........................................................ 11

*also In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124 (2d Cir. 2001) ...................... 13

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) .................................................................. 4

*Astiana v. Kashi Co.*, 291 F.R.D. 493 (N.D. Cal. 2012) ................................................................. 2

*Belfiore v. Procter & Gamble Co.,* No. 14-cv-1142, 2015 WL 5781541 (E.D.N.Y. Oct. 5, 2015) ............................................................................................................................. 7, 10

*Boeing Co. v. Van Gemert,* 444 U.S. 472 (1980)............................................................................. 4

*Bohn v. Pharmavite, LLC*, No. CV 11-10430-GHK AGRX, 2013 WL 4517895 (C.D. Cal. Aug. 7, 2013)....................................................................................................... 13

*Brazil v. Dole,* 935 F. Supp. 2d 947 (N.D. Cal. 2013).................................................................. 9

*Brown v. Hain Celestial Grp., Inc.,* No. 11-CV-03082-LB, 2015 WL 3398415(N.D. Cal. May 26, 2015) ............................................................................................... 5, 9

*Carnegie v. Household Int'l, Inc.*, 376 F.3d 656 (7th Cir. 2004).................................................. 15

*Conservatorship of Link*, 158 Cal. App. 3d 138 (1984).................................................................. 2

*Drimmer v. WD-40 Co*., 343 F. App'x 219 (9th Cir. 2009)........................................................... 13

*Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890 (7th Cir. 1981) ...................................................................................................................... 14

*Ehret v. Uber Techs., Inc.*, ___ F. Supp. 3d ____, No. 14-CV-00113-EMC, 2015 WL 7759464 (N.D. Cal. Dec. 2, 2015) ............................................................................ 6

*Figy v. Amy's Kitchen, Inc.*, No. CV 13-03816 SI, 2013 WL 6169503 (N.D. Cal. Nov. 25, 2013) ........................................................................................................................ 5

*Forcellati v. Hyland's, Inc.,* No. CV 12–1983–GHK MRWX, 2014 WL 1410264 (C.D. Cal. Apr. 9, 2014)......................................................................................................... 4

*Guido v. L'Oreal, USA, Inc.,* 2014 WL 6603730 (C.D. Cal., July 24, 2014)................................ 8

*Hatamian v. Advanced Micro Devices, Inc.*, No. 14-cv-000226 YGR, 2016 WL 1042502 (N.D. Cal. Mar. 16, 2016)........................................................................ 15

*Hinojos v. Kohl's Corp.*, 718 F.3d 1098 (9th Cir. 2013) ................................................................ 4

*In re Computer Memories Sec. Litig.*, 111 F.R.D. 675 (N.D. Cal.1986) ....................................... 12

*In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919 (C.D. Cal. 2015) ................................................. 8

*In re ConAgra*, 302 F.R.D. 537 (C.D. Cal. 2014)........................................................................... 8

*In re Currency Conversion Fee Antitrust Litig.*, 230 F.R.D. 303 (S.D.N.Y. 2004) ... 13

*In re POM Wonderful LLC*, 2014 WL 1225184 (C.D. Cal. Mar. 24 2014) ... 7

*In re Steroid Hormone Product Cases,* 181 Cal. App. 4th 145 (2010) ... 6

*Jones v. ConAgra Foods, Inc.*, No. C 12-01633, 2014 WL 2702726 (N.D. Cal. June 13, 2014) ... 4

*Kesler v. Ikea U.S. Inc.*, No. SACV 07-568, 2008 WL 413268 (C.D. Cal. Feb. 4, 2008) ... 13

*Kosta v. Del Monte Foods*, 308 F.R.D. 217 (N.D. Cal. 2015) ... 2, 3, 6

*Krueger v. Wyeth, Inc.,* 310 F.R.D. 468 (S.D. Cal. 2015) ... 3

*Lanovaz v. Twinings N. Am., Inc.*, No. C-12-02646-RMW, 2014 WL 1652338 (N.D. Cal. Apr. 24, 2014), *reconsideration denied,* No. C-12-02646-RMW, 2014 WL 7204757 (N.D. Cal. Dec. 17, 2014) ... 6

*Leyva v. Medline Indus. Inc.*, 716 F.3d 510 (9th Cir. 2013) ... 15

*Lilly v. Jamba Juice Co.*, No. 13–cv–02998–JST, 2014 WL 4652283 (N.D. Cal. Sept. 18, 2014) ... 2

*Marsh v. First Bank of Delaware*, No. 11-CV-05226-WHO, 2014 WL 554553 (N.D. Cal. Feb. 7, 2014) ... 12

*Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012) ... 3

*McCrary v. Elations Co., LLC,* No. EDCV 13–00242 JGB (OPx), 2014 WL 1779243 (C.D. Cal. Jan. 13, 2014) ... 4

*Mendez v. C-Two Grp., Inc.*, No. 13-CV-05914-HSG, 2015 WL 8477487 (N.D. Cal. Dec. 10, 2015) ... 13

*Moeller v. Taco Bell Corp.*, No. C 02-5849 MJJ, 2004 WL 5669683 (N.D. Cal. Dec. 7, 2004) ... 3

*Moheb v. Nutramax Labs. Inc.*, No. CV 12-3633-JFW JCX, 2012 WL 6951904 (C.D. Cal. Sept. 4, 2012) ... 13

*Mullins v. Premier Nutrition*, 2016 WL 1535057 (N.D. Cal. Apr. 15, 2016) ... 6

*Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014) ... 10

*Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979 (9th Cir. 2015). ... 1, 7, 8, 9

*Rahman v. Mott's LLP*, No. 13–cv–03482–SI, 2014 WL 6815779 (N.D. Cal. Dec. 3, 2014) ... 2, 5

*Richardson v. Byrd,* 709 F.2d 1016 (5th Cir. 1983) ... 3

*Ries v. Arizona Beverages USA LLC,* No. 10–01139 RS, 2013 WL 1287416 (N.D. Cal. Mar. 28, 2013) ... 10

*Sethavanish v. ZonePerfect Nutrition Co.*, 2014 580696 (N.D. Cal. Feb. 13, 2014) ... 2

*Sley v. Jamaica Water & Utilities, Inc.*, 77 F.R.D. 391 (E.D. Pa. 1977) ..................................... 15

*White v. E–Loan, Inc.*, No. 5–2080, 2006 WL 2411420 (N.D. Cal. Aug. 18, 2006)..................... 12

*White v. Experian Info. Sols.*, 993 F. Supp. 2d 1154, 1176 (C.D. Cal. 2014), *as amended* (May 1, 2014), *aff'd sub nom. Radcliffe v. Hernandez*, No. 14-56101, 2016 WL 1178732 (9th Cir. Mar. 28, 2016). ..................................................................... 14

*Williams v Gerber Products Co.,* 552 F.3d 934 (9th Cir. 2008) ...................................................... 7

*Zeisel v. Diamond Foods, Inc.*, No. C 10-01192 JSW, 2011 WL 2221113 (N.D. Cal. June 7, 2011) ............................................................................................................ 13

**REGULATIONS**

19 C.F.R. § 134 .................................................................................................................... 4

19 C.F.R. § 134.46 ............................................................................................................. 5, 7

## I. INTRODUCTION

In its opposition to Plaintiff's Motion for Class Certification, Salov fails to overcome Plaintiff's evidentiary showing under Rule 23.

The class is ascertainable because it is limited to the time when the "Imported from Italy" label appeared on all bottles. There is no need for class members to remember particular flavors or types. The words "Imported from Italy" are visible even when "neck collars" are placed on the bottles, and in any event, Salov provides no evidence that it used such neck collars in California during the class period.

On predominance, Ninth Circuit authority is clear that where the legislature has made a representation unlawful, materiality is presumed. Because materiality is an objective question, judged by the reasonable consumer standard, it must be resolved by classwide proof. There is no need to show a "uniform understanding" of the phrase "Imported from Italy" but only how a "reasonable consumer" would understand the term; if the label was likely to deceive reasonable consumers, restitution of the price premium is required. *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 989 (9th Cir. 2015). Numerous labeling cases have accepted the hedonic regression analyses like the one proposed by Plaintiff's expert.

Finally, typicality and adequacy are demonstrated. Salov misquotes Plaintiff's testimony, which shows that she purchased the product believing it to be made from Italian olives, and that she is honest, informed, and actively involved. She is not precluded from representing the class because she is friendly with one associate working on it. Salov's attacks on her counsel are without foundation.

Plaintiff's Motion should be granted.

## II. ARGUMENT

### A. The Class Is Ascertainable.

Despite the evidence that the challenged representation appeared on the front of all bottles of the Products sold during the class period, Salov contends that some class members were not exposed to the misrepresentation, but none of its allegations have evidentiary support or are grounds to deny class certification. Nor does Salov have a "due process" right to individually

challenge each class member's purchase.

A class is ascertainable where it is defined based on objective criteria; there need not be documentation showing class membership. *See, e.g.*, *Rahman v. Mott's LLP*, No. 13–cv–03482–SI, 2014 WL 6815779, at *5 (N.D. Cal. Dec. 3, 2014); *Lilly v. Jamba Juice Co.*, No. 13–cv–02998–JST, 2014 WL 4652283, at *4 (N.D. Cal. Sept. 18, 2014); *Astiana v. Kashi Co.*, 291 F.R.D. 493, 536 (N.D. Cal. 2012); *see also* Mot. at 10-11. As the challenged representation appeared on all bottles of all Filippo Berio olive oil products at all times during the class period, and as consumers are likely to know how frequently they buy a staple like olive oil, certification is appropriate under *Lilly*, *Rahman*, and *Astiana.* This case is not like *Kosta v. Del Monte Foods*, 308 F.R.D. 217, 228-29 (N.D. Cal. 2015), upon which Salov relies, where the challenged representations only appeared on some products within each product line, and consumers could not be expected to remember dates or quantities of purchase of the myriad products at issue.[1]

Salov's CEO avers that "neck collars" might sometimes have impeded view of the "Imported from Italy" representation. Mueller Decl., ¶ 36. Salov provides no pictures of the neck collars on the bottles; Plaintiff's counsel provides them herewith to show that the challenged representation was still visible. Supp. Simplicio Decl., ¶ 2, Ex. 28. Further, Salov submits no evidence that neck collars were used *in California during the class period*. *See* Mueller Decl., ¶ 36. Nor does it say at how many stores neck collars were used. *See id.* Finally, it cites no law suggesting that a *potential temporary* obstruction of an otherwise common, actionable misrepresentation creates individual issues. Salov also offers no legal support for the argument that different font sizes create individual issues, especially here, where the misrepresentation appeared on all bottles.[2]

Salov next notes that it began its gradual removal of the "Imported from Italy" after this lawsuit was filed and that old and new labels may have shared the shelves for a brief time. Yet

---

[1] Salov cites a few cases imposing a heightened ascertainability requirement, but *Sethavanish v. ZonePerfect Nutrition Co.*, 2014 580696 (N.D. Cal. Feb. 13, 2014), is the only one from this District, and it relies on *Carrera*'s repudiated holding. *See* Mot. at 11.

[2] Salov cites only a 30-year-old intermediate state appellate court decision in a personal injury matter (*Conservatorship of Link*, 158 Cal. App. 3d 138 (1984)) that has nothing to do with class certification or consumer fraud.

Salov's CEO and Rule 30(b)(6) deponent testified that the end of the third quarter of 2015 was the ***earliest*** time that Filippo Berio bottles without "Imported from Italy" would have started to arrive in United States stores, so the class period was proposed to end by August 30, 2015. Simplicio Decl., Ex. 3, at 118:12-19. While the same witness now changes his testimony in a declaration to state that new labels started to appear on shelves in "mid-2015," the class period could be modified to end a month or two earlier. "The district court has broad discretion in deciding whether to modify or decertify a class, but the court 'must define, redefine, subclass and decertify as appropriate in response to the progression of the case from assertion to facts.'" *Moeller v. Taco Bell Corp.*, No. C 02-5849 MJJ, 2004 WL 5669683, at *1 (N.D. Cal. Dec. 7, 2004) (quoting *Richardson v. Byrd,* 709 F.2d 1016, 1019 (5th Cir. 1983)).[3]

Because Salov has not demonstrated that any class member was not exposed to its misrepresentation, its cases are distinguishable. In *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012), the Ninth Circuit held certification should be denied where "it is likely that many class members were never exposed to the allegedly misleading representation." *Id*. at 595. But in that lawsuit, the misrepresentation was not made near the point of sale, but in television and print advertisements that reached only a limited number of people. *Id.* at 586-87, 595. And in *Kosta*, the proposed class improperly included entire product lines with no regard for "whether every product in those lines, throughout the entire class period, contained the alleged false labeling and packaging." 308 F.R.D. at 229. Here, the misrepresentation was on the front of every bottle.

Finally, contrary to Salov's argument (Opp. at 17), it has "***no due process interest in the question of class membership.***" *Krueger v. Wyeth, Inc.* 310 F.R.D. 468, 476 (S.D. Cal. 2015) (emphasis added). That is because:

> (1) any liability is determined in the aggregate, with total sales measuring damages regardless of class size, and defendants have no claim to residual damages; (2) even assuming fraudulent or inaccurate claims result in a pro rata reduction of class members' (not defendants') relief, no case law suggests such

[3] Salov also asserts that "Imported from Italy" also was absent from Organic Extra Virgin Olive Oil bottles, Opp. at 2-3; Mueller Decl., ¶ 15, but it was only absent from approximately February to October of 2014. *Compare* Supp. Simplicio Decl., Ex. 29, SNA-0000130 (showing Feb. 2, 2014 date without "from Italy") to Appendix A at SNA-0000131 (showing Oct. 10, 2014 date with "Imported from Italy" re-inserted). The class definition can be modified to exclude bottles labeled "organic" in that period.

> dilution would undermine this Court's ability to issue a final judgment binding all class members; and (3) should manageability problems arise during the damages phase, this Court retains the flexibility to address such problems as they arise, including the ability to decertify.

*Id.; see also Boeing Co. v. Van Gemert,* 444 U.S. 472, 482 (1980) (holding that a defendant has "no cognizable interest" in how funds awarded to a class are divided).[4] While Salov relies on *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997) for a boilerplate proposition that Rule 23 must be interpreted with constitutional limitations in mind, it does not address *Boeing* or *Krueger*, nor does it cite any case suggesting that due process is implicated here.

**B. Common Questions of Fact and Law Predominate.**

Relying again on *Kosta* and on *Jones v. ConAgra Foods, Inc.*, No. C 12-01633, 2014 WL 2702726 (N.D. Cal. June 13, 2014), which is equally distinguishable, Salov makes four arguments challenging predominance.[5] First, it misstates the facts and the law to argue that Plaintiff must show that consumers had a "uniform" understanding of "Imported from Italy." Second, it wrongly asserts that the materiality of the representation cannot be proven on a classwide basis. Third, it repeats the false argument that certain class members may not have been exposed to the false representation, an assertion addressed in the prior section. Finally, it takes issue with Plaintiff's damages model by ignoring Ninth Circuit law and relying on an expert who uses the wrong legal standard. Its arguments must be rejected.

**1. Materiality Can Be Shown on a Class-Wide Basis.**

False representations of a country of origin are outlawed by 19 C.F.R. § 134, so the misrepresentation is presumed to be material to reasonable consumers. *See Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013) ("[T]he legislature's decision to prohibit a particular misleading advertising practice is evidence that the legislature has deemed that the practice

---

[4] *Accord Forcellati v. Hyland's, Inc.* No. CV 12–1983–GHK MRWX, 2014 WL 1410264, at *6–7 (C.D. Cal. Apr. 9, 2014) ("Defendants have no cognizable interest in challenging class membership because its aggregate liability is tied to a concrete, objective set of facts—its total sales—that will remain the same no matter how many claims are submitted."); *McCrary v. Elations Co., LLC,* No. EDCV 13–00242 JGB (OPx), 2014 WL 1779243, at *8 (C.D. Cal. Jan. 13, 2014) ("[T]he fact that particular persons may make false claims of membership does not invalidate the objective criteria used to determine inclusion.").

[5] Both *Kosta* and *Jones* are on appeal to the Ninth Circuit. If this Court is inclined to apply those cases as requested by Salov, Plaintiff respectfully requests that the Court defer ruling on this motion until the appeals are decided.

constitutes a 'material' misrepresentation, and courts must defer to that determination."); *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 329 (2011) (materiality of "made in USA" representation). The federal agency tasked to interpret section 134 has expressly stated in advisory letters that olive oil cannot be labeled "Imported from Italy" unless the olives are from Italy. Simplicio Decl., Ex. 11. While Salov argues that advisory letters are not persuasive, it does not dispute that the interpretation of section 134 is a class-wide issue, nor does it offer a competing interpretation of the regulation, which expressly prohibits the use of any country name unless the true country of origin "appear[s] legibly and permanently in close proximity." 19 C.F.R. § 134.46. Salov admits that Italy is not the true country of origin, Simplicio Decl., Ex. 9, Mueller Tr., Vol. 2, at 342:8-14, and that it only disclosed the true countries in a different typeface on the back of the bottle.[6]

Salov also attacks *Hinojos,* claiming its application to class certification is disfavored in this Circuit, but it cites no cases in support, and it is mistaken. *See, e.g., Brown v. Hain Celestial Grp., Inc.,* No. 11-CV-03082-LB, 2015 WL 3398415, at *7 (N.D. Cal. May 26, 2015) (granting certification; explaining that "[t]his court concludes that, under *Kwikset* and *Hinojos,* the California legislature's decision in COPA to prohibit the sale, labeling, or representation of products as "organic," . . . establishes as a matter of law that violations of COPA are "material" misrepresentations under the UCL"); *Rahman*, 2014 WL 6815779 (same for California's Sherman Law).[7] Instead of addressing *Hinojos*, Salov relies on *Kosta*, where this Court declined to hold that an unlawful representation was material. But *Kosta* did not discuss *Hinojos,* and it relied on Judge Illston's decision in *Figy v. Amy's Kitchen, Inc.*, No. CV 13-03816 SI, 2013 WL 6169503 (N.D. Cal. Nov. 25, 2013), which also failed to discuss *Hinojos.* Judge Illston later applied *Hinojos* when issuing her ruling on class-wide materiality in *Rahman*. Thus, this Court should follow *Hinojos, Rahman*, and *Brown*.

---

[6] Salov argues that the advisory letters should be discredited because the agency issues more than 10,000 such letters a year, suggesting little thought goes into the decisions. It is mistaken. The data cited is from 1999; that year, the agency issued only 305 decisions on markings. Simplicio Decl., Ex. 11, 12; Supp. Simplicio Decl., Ex. 30, at p. 15.

[7] Salov also argues that the *Hinojos* court required both reliance and but-for causation. Opp. at 15. While it is true that *Hinojos* listed reliance as an element, 718 F.3d at 1109, upon proof that the misrepresentation is material, reliance can be inferred. Mot. at 18. *See also Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1019 (9th Cir. 2011).

Even were the misrepresentation not unlawful, Plaintiff would prove materiality with objective evidence common to all class members, because the "materiality of the alleged misrepresentation generally is judged by a 'reasonable man' standard." *In re Steroid Hormone Product Cases,* 181 Cal. App. 4th 145, 157 (2010) (misrepresentation is deemed material "if a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question"). As explained in *Ehret v. Uber Techs., Inc.*, _ F. Supp. 3d _, No. 14-CV-00113-EMC, 2015 WL 7759464 (N.D. Cal. Dec. 2, 2015), "the reliance under CLRA turns on materiality which is judged by an objective reasonable person standard, [so] proof focuses on [the defendant's] conduct which applied to the entire class and can be determined relative to the class as a whole"; accordingly, there is no need for individual inquiry into the state of mind of each class member. *Id.* at *13; *accord Lanovaz v. Twinings N. Am., Inc.*, No. C-12-02646-RMW, 2014 WL 1652338, at *4 (N.D. Cal. Apr. 24, 2014), *reconsideration denied,* No. C-12-02646-RMW, 2014 WL 7204757 (N.D. Cal. Dec. 17, 2014) ("As materiality is an objective inquiry, no individualized examination of materiality is necessary.").

Unlike in *Kosta,* 308 F.R.D. at 224, common evidence of materiality exists here, [redacted] Simplicio Decl., Ex. 20, at SNA-0005700; Ex. 23, at SNA-0011127-28; Ex. 24, at SNA-0025464. In *Mullins v. Premier Nutrition*, 2016 WL 1535057 (N.D. Cal. Apr. 15, 2016), Judge Seeborg explained that a plaintiff can prove materiality and reliance for purposes of the UCL and CLRA "without a consumer survey" by making reference to the defendant's "own marketing research." *Id.* at *3, *5. While Salov urges this Court to misinterpret [redacted], its argument is better suited for trial.[8] *See id.* at *6 ("[Defendant] argues [that] these surveys show that whether a statement is

[8] Salov makes the false claim that its surveys indicate that country-of-origin is only material to fewer than 8 percent of consumers. Opp. at 14. That conclusion is not supported by the evidence. Supp. Weir Decl., ¶¶ 20-24. [redacted]

material varies from consumer to consumer. At trial, [defendant] is free to offer a different interpretation of that question, but the question of materiality remains a common one if a jury decides that a reasonable man would attach importance to the [truth or falsity of the challenged representation].").

While Salov argues that the dictionary definition of "imported from" supports it, there will still need to be a class-wide decision of whether the phrase is likely to mislead reasonable consumers.[9] And while Salov argues that Plaintiff has not shown that consumers' understanding was unmodified by its purported disclaimer on the back panel, this argument flies in the face of both the federal regulation requiring the truth in "close proximity" to the country claim, 19 C.F.R. § 134.46, and the Ninth Circuit's holding in *Williams v Gerber Products Co.,* 552 F.3d 934 (9th Cir. 2008), that "[w]e disagree with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the . . . small print on the side of the box." *Id.* at 939.

**2. Common Damages Issues Predominate.**

Salov makes a series of flawed arguments challenging Plaintiff's damages model. It is wrong on all counts.

First, Salov claims that Mr. Weir's hedonic regression model "fails as a matter of law," ignoring the numerous cases in which such models were accepted. *See, e.g., Belfiore v. Procter & Gamble Co.,* No. 14-cv-1142, 2015 WL 5781541, at *70 (E.D.N.Y. Oct. 5, 2015) (accepting Mr. Weir's proposed methodology of measuring damages in product labeling class action); *see also* Mot. at 24, n. 20. Salov instead relies heavily on *In re POM Wonderful LLC*, 2014 WL 1225184 (C.D. Cal. Mar. 24 2014), which is readily distinguishable. Unlike *POM*, Plaintiff does not propose a "fraud on the market" theory but rather a diminution in value theory, which the Ninth Circuit has approved. *Pulaski,* 802 F.3d at 989. Further, *POM* rejected the plaintiff's expert because he simply "assumed that 100% of that price difference was attributable to Pom's alleged

[9] Salov's reliance on *Colgan v. Leatherman Tool Group, Inc*. is misplaced; there, the Court used the dictionary to determine the meaning of the *statute*, not to say as a matter of law what reasonable consumers think, and in any event the case was not about class certification. 135 Cal. App. 4th 663, 685 (2006).

misrepresentations," rather than testing other product attributes. *Id.* at *4. Mr. Weir's regression measures all the possible factors in the price differential. *See* Weir Supp. Decl. at ¶ 19; *Guido v. L'Oreal, USA, Inc.,* 2014 WL 6603730 (C.D. Cal., July 24, 2014) (distinguishing *POM Wonderful* on this basis; accepting expert's regression and conjoint analysis models).

Second, Salov cites *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919 (C.D. Cal. 2015), to argue that Mr. Weir cannot isolate a price premium attributable to the misrepresentation. The *ConAgra* court was concerned with Mr. Weir's assumption that people understood "100% Natural" to mean the absence of genetically modified ingredients. *Id.* at 1024-25. No such assumption is made here. [10]

Next, Salov asserts that the model relies on aggregate sales data, instead of compiling every individual purchase decision made by retailers and consumers. Its expert Dr. Ugone further asserts that certification is unavailable because of numerous individualized issues regarding "entitlement" to restitution (e.g., was each class member misled) and the "amount" of restitution (e.g., did the consumer purchase the item on sale, or with a coupon). *See, e.g.,* Ugone Decl., ¶¶ 12, 24-25. These arguments are foreclosed by *Pulaski*, where the Ninth Circuit explained that "a court need not make individual determinations regarding entitlement to restitution. Instead, restitution is available on a classwide basis once the class representative makes the threshold showing of liability under the UCL and FAL." 802 F.3d at 986. The court continued:

> To state a claim under the UCL or the FAL based on false advertising or promotional practices, it is necessary only to show that members of the public are likely to be deceived. This inquiry does not require individualized proof of deception, reliance and injury. In effect, California has created what amounts to a conclusive presumption that when a defendant puts out tainted bait and a person

---

[10] In *ConAgra*, the plaintiff had alleged that "100% Natural" meant that the oil did not come from genetically modified sources. But plaintiff acknowledged that "100% Natural" would also mean that the product was free of artificial flavors, colors, and chemicals. Because the oil did not have artificial flavors, colors or chemicals,the court thought it could be unfair to refund the entire premium attributable to the "100% natural" claim. The court asked the plaintiff to provide evidence of what portion of the "natural" premium was attributable to the perception that the product was GMO-free. Once a conjoint study was provided to tease out the portions of the premium, a class was certified. *Compare id.* at 1023-32 *with In re ConAgra*, 302 F.R.D. 537, 549-53 (C.D. Cal. 2014). Here, there is no reason to believe that any significant portion of the "Italy" premium is attributable to the oil being bottled in Italy, as opposed to where the olive are grown and pressed, but if Court believes it to be necessary, Plaintiff can provide a similar conjoint study. See Weir Supp. Decl. ¶¶ 64-68.

sees it and bites, the defendant has caused an injury; restitution is the remedy.

*Id.* at 985-86 (internal citations, quotation marks and brackets omitted). The court further held that "damages calculations alone cannot defeat certification," *id.* at 986 (internal quotations omitted) and that that "[i]n calculating damages, here restitution, California law requires only that some reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation." *Id.* at 989 (internal citations and quotation marks omitted.) In any event, as Mr. Weir explained, using aggregate sales data leads to the same mathematical result for class wide damages because the regression determines the premium across all purchases (including discounts). *See* Supp. Weir Decl. ¶ 38.[11]

Relying again on *ConAgra* as well as *Brazil v. Dole,* 935 F. Supp.2d 947 (N.D. Cal. 2013), Salov's final arguments are that the model does not control for other variables that impact price, and that when controlling for certain things, the price premium disappears. But here, the model can be revised to account for all key product attributes, Supp. Weir Decl., ¶¶ 40-62, 90-91, and the regression will be run by culling data from a collection of historic product labels for the Products and their competitors, avoiding the problems in *ConAgra* and *Brazil*. *See Brown v. Hain Celestial Grp., Inc.*, No. C 11-03082 LB, 2014 WL 6483216, at *19 (N.D. Cal. Nov. 18, 2014) ("[T]he proposed damages model controls for other variables, will be run on a universe of known labels, is proposed by a reputable expert, and does not suggest the same problems of extrapolation from one product universe to another, given that all the products at issue are cosmetics."). Moreover, Plaintiff need not offer precise final calculations at this stage or prove definitively that a price premium exists. Rather, "[t]he point for Rule 23 purposes is to determine whether there is an acceptable classwide approach, not to actually calculate under that approach before liability is established." *Id.* at *19. Salov's expert agreed that hedonic regression is a scientifically valid methodology to isolate the price premium attributable to a label claim. Supp. Simplicio Decl. Ex. 31, Ugone Tr. 15:19-18:11. And while the expert proposes that Mr. Weir's list of variables was incomplete because the addition of other variables eliminates the premium, and that some of Mr.

[11] Dr. Ugone admitted that he was not aware of the governing law and had no opinion as to whether any of his opinions were consistent with that law. Supp. Simplicio Decl., Ex. 31, Ugone Tr. 26:19-28:14. Accordingly, this Court must disregard Dr. Ugone's conclusions in paragraphs 6-8, 21-52, and 54-85.

Weir's data was incorrect, Mr. Weir has explained in his supplemental declaration that (1) some of Ugone's proposed variables are methodologically inappropriate, (2) the other variables, if added, actually support the finding of a premium, particularly when using the correct data, which Dr. Ugone failed to do, and (3) Mr. Weir corrected the data errors identified by Dr. Ugone, and the premium still exists. *See* Supp. Weir Decl. at ¶¶ 38-92. Because there is little doubt that Mr. Weir is a recognized expert in the field using a valid methodology, *Belfiore,* WL 5781541, at *52, *70 (accepting Weir's regression methodology despite "preliminary" list of variables), Salov's challenge amounts to nothing more than a battle-of-the experts, which is a merits question for trial on the class claim, not a basis to deny certification.

Salov ends with a series of irrelevant arguments. It argues that it operated at a net loss, so restitution is unavailable or will be small. It cites no case law for this proposition, as there is none. Restitution is measured by the difference between what consumers paid and what they would have paid in the absence of the misrepresentation, *Pulaski,* 802 F.3d at 989, not the amount of the defendant's profits. It claims without elaboration that Mr. Weir has only modeled "damages" rather than "restitution," but Mr. Weir's declaration is clear that his models are attempting to measure difference between what was paid and the value of what was received. Finally, it cites *Ries v. Arizona Beverages USA LLC,* No. 10–01139 RS, 2013 WL 1287416 (N.D. Cal. Mar. 28, 2013) (Opp. at 24), which is inapposite because the plaintiffs there "offer[ed] not *a scintilla of* evidence from which a factfinder could determine the amount of restitution," and "did not even address this failure their in opposition to summary judgment." *Id.* at *8.

### C. Salov's Attacks on Plaintiff And Her Counsel Do Not Undermine Her Satisfaction of the Adequacy and Typicality Requirements.

Salov next offers a litany of ad hominem attacks against Plaintiff and her counsel under the guise of a challenge to adequacy and typicality. Each challenge is premised on false facts, irrelevant law, and a misunderstanding of the Rule 23 requirements.

#### 1. Plaintiff is Typical.

The Ninth Circuit has consistently held that Rule 23(a)'s typicality requirements present relatively "permissive standards" that do not pose a high bar to certification. *See Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014). The test is satisfied here because Plaintiff's claims arise out of

the same false statement on *every* bottle of olive oil, so her claims stem from the same practice that forms the base of the class claims and are based upon the same legal remedial theory.

Salov cherry-picks from Plaintiff's deposition answers to suggest that she may not have purchased a bottle of its olive oil. But as she testified: "I remember buying at least one bottle of Filippo Berio olive oil." Supp. Simplicio Decl., Ex. 32, Kumar Tr. 62:25-63:1. She also testified that she made the purchase at Safeway on Shattuck Avenue in Berkeley. *Id.* at 143:15-23. That she could not remember the exact date of a sub-$10 purchase several years later is typical of most consumers. *See Allen v. Similasan Corp.*, 306 F.R.D. 635, 646 (S.D. Cal. 2015) (inability to recall dates of purchase not a "striking lack of knowledge" about lawsuit).[12]

Salov next asserts that because Plaintiff read the "best by" date on the back of the bottle before purchase, she must have read the disclaimer that the oil was "Packed in Italy" with olives from various countries. But a look at the label reveals how flawed that assumption is; the "best by" date is at the bottom of the label in a large black dot matrix font, whereas the country of origin disclaimer is in small white font sandwiched between advertising copy and nutritional information. Supp. Simplicio Decl., Ex. 28. She testified she never looked at the white text:

> Q. Did you do anything to see whether there was additional information about the countries of origin of the oil on the back label of the bottle?
> A. No.
> ***
> Q. Did you ever see a statement on any Filippo Berio bottle prior to January of 2014 that the oil could be from various countries?
> A: No.
> ***
> Q. It's your general practice to look at the "best by" date on olive oil when you purchase.
> A. Yes.
> Q. And that you believe you probably would have done so when you purchased the Filippo Berio oil. Is that right?
> A. Yes.
> Q. Assuming you did that, did you look at anything else on the back of the bottle?
> A. No.

Supp. Simplicio Decl. Ex. 32 at 194:3-195:19.

---

[12] It is not required that she have the bottle or a receipt, recall with specificity the exact price beyond saying it was "around $6.99," or know exactly which other brands were available at the time of her purchase. *See Allen*, 306 F.R.D. at 646 (holding that adequacy is satisfied if a plaintiff is "aware of the identity of the defendant, the Products they purchased, and the basis for their claims."). If plaintiff did remember the exact date or had receipts, Salov would likely argue that she is atypical, and a plant by her lawyers.

Finally, Salov hypothesizes that Plaintiff will be susceptible to "unique defenses" because she was not misled. But these are not "unique" defenses; they are the heart of Salov's argument that its labeling is not misleading. In any event, the "defenses" are not supported by the evidence. Salov's counsel asked: "So what does 'imported' mean to you?" In response, Plaintiff asked "Today?" Salov's counsel said "Yes," and she stated "Shipped out of that country." *Id*. at 151:2-9. She then testified that before this case started, when she saw "Imported from Italy" on the bottle, she "assumed that it was oil that was made from olives that were grown in Italy, crushed in Italy, bottled there, and then shipped from Italy to the United States." *Id*. at 192:20-193:4. That she qualified her answer by the time period illustrates that that she was misled at purchase, but now knows (from her ongoing involvement in this case) that Salov uses the word "imported" differently from how she thought. It also is untrue that Plaintiff could not remember if the oil said "Imported from Italy" or something else. Plaintiff testified, "I did make note of the fact that it was imported from Italy on the front of the label," *id.* at 191:20-22, and "There was the brand name, the type of olive oil, and the 'Imported from Italy.'" *Id.* at 204:4-7.

**2. Plaintiff is Adequate.**

On adequacy, Salov first claims that because Plaintiff has a conviction for driving under the influence, she is not honest. But it is well settled that such a conviction does not undermine her honesty. *See, e.g., Marsh v. First Bank of Delaware*, No. 11-CV-05226-WHO, 2014 WL 554553, at *9 (N.D. Cal. Feb. 7, 2014) (finding a proposed class representative adequate despite a guilty plea to felony drug possession, stating "inadequacy only where the representative's credibility is questioned on issues directly relevant to the litigation or there are confirmed examples of dishonesty, such as a criminal conviction for fraud"); *White v. E–Loan, Inc*., No. 5–2080, 2006 WL 2411420, at *3–4 (N.D. Cal. Aug. 18, 2006) (holding that crime not involving fraud will not defeat adequacy)*; cf. In re Computer Memories Sec. Litig.*, 111 F.R.D. 675, 682 (N.D. Cal.1986) ("Character attacks made by opponents to a class certification motion and not combined with a showing of a conflict of interest have generally not been sympathetically received in this district . . .").

Next, Salov argues that Plaintiff knows nothing about this case. In truth, Plaintiff fully

comprehends the nature of this case, and her testimony is consistent with that understanding, including that she thought she was buying Italian olive oil. *See supra* page 11. The fact that she sometimes bought oil from other countries and switched to California oil after learning that oil "Imported from Italy" isn't really Italian does not disprove her testimony that when she purchased Filippo Berio, she wanted, and thought she was getting, Italian oil. Nor is anything proven by the fact that Plaintiff initially misspelled "Filippo"; class representatives need not be perfect spellers.

There is no support for Salov's contention that Plaintiff was "recruited." Plaintiff testified that at brunch with her friend, attorney Simplicio, they discussed their work. When Ms. Simplicio mentioned her work on other olive oil cases, Ms. Kumar sought her legal advice regarding her olive oil purchases. Supp. Simplicio Decl., Ex. 32, Kumar Tr. at 151-55. There is no rule prohibiting an attorney from representing a friend in a class action, particularly in cases like this one where the attorney is not a partner, and there are many other attorneys and another firm working on the case. *See, e.g, Zeisel v. Diamond Foods, Inc.*, No. C 10-01192 JSW, 2011 WL 2221113, at *9 (N.D. Cal. June 7, 2011) (no adequacy problem where the attorney friend was not the only attorney proposed to represent the class and there was no evidence that purported relationship had created an actual conflict); *Kesler v. Ikea U.S. Inc.*, No. SACV 07-568, 2008 WL 413268, at *5 (C.D. Cal. Feb. 4, 2008) (holding even where a plaintiff is "close friends with her [current] counsel," that is not a sufficient basis to create a conflict without something more).[13]

[13] *See also In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 145 (2d Cir. 2001) (speculative conflict to be disregarded at the class certification stage); *Mendez v. C-Two Grp., Inc.*, No. 13-CV-05914-HSG, 2015 WL 8477487, at *5 (N.D. Cal. Dec. 10, 2015) (finding as meritless "indictment of Plaintiff's friendship with a former attorney at her counsel's firm"); *In re Currency Conversion Fee Antitrust Litig.*, 230 F.R.D. 303, 309 (S.D.N.Y. 2004) (rejecting argument that "hypothetical conflict of interest" from close relationship with class counsel would make it difficult for him to "exercise independent judgment"), *modified on reconsideration*, No. 03 CIV. 2843 (WHP), 2005 WL 1705285 (S.D.N.Y. July 22, 2005).

Salov's cases are distinguishable. In *Drimmer v. WD-40 Co.*, 343 F. App'x 219 (9th Cir. 2009), the Ninth Circuit refused to disturb the district court's denial of certification because the plaintiff and attorney had a financial, landlord-tenant relationship, and the plaintiff had demonstrated a lack of involvement. *Id.* at 221. Similarly, in *Moheb v. Nutramax Labs. Inc.*, No. CV 12-3633-JFW JCX, 2012 WL 6951904 (C.D. Cal. Sept. 4, 2012), the plaintiff was inadequate because "she had extremely limited experience with [the product]," unlike other class members. *Id.* at *7. And in *Bohn v. Pharmavite, LLC*, No. CV 11-10430-GHK AGRX, 2013 WL 4517895 (C.D. Cal. Aug. 7, 2013), the plaintiff presented two detailed *but conflicting* narratives of her purchase, suggesting that she "tailored aspects of her memory to fit the narrative of this action," calling into question her credibility and her "commitment to vigorously prosecuting this action." *Id.* at *2-3.

Salov's assault on proposed class counsel is similarly misguided. The adequacy test for class counsel measures their *competence* and *experience* in the kind of litigation to be undertaken. Fed. R. Civ. P. 23(g). Salov does not dispute that both firms are competent and experienced in consumer class actions. Salov argues instead that Plaintiff's counsel made a misrepresentation to the Court that Plaintiff never looked at the back of the bottle. But as counsel informed Salov months ago, the representation was made in good faith based on facts provided to her counsel. Supp. Simplicio Decl., ¶ 7. *Cf. White v. Experian Info. Sols.*, 993 F. Supp. 2d 1154, 1176 (C.D. Cal. 2014), *as amended* (May 1, 2014) (finding counsel adequate despite ethical violation where violation not made in bad faith), *aff'd sub nom. Radcliffe v. Hernandez*, No. 14-56101, 2016 WL 1178732 (9th Cir. Mar. 28, 2016). Nor could the misstatement to the Court have been material, because even if Plaintiff had looked at the best by date, she did not look at the country of origin information in a different typeface and location, and because disclaimers on the back do not cure the misrepresentation on the front. *See supra* pages 7, 10.

Salov also argues that counsel "appear" to have violated rules of professional conduct by attempting to enforce subpoenas in violation of a discovery stay. No such thing occurred. Plaintiff's counsel issued subpoenas to the same set of third parties in another olive oil case, where discovery was not stayed. After the stay was entered here, Plaintiff's counsel responded to subpoenaed parties that had already contacted her. Simplicio Supp. Decl., ¶ 8. The emails reference both case names and reflect nothing more than an attempt to schedule a call to inform parties that while a stay had been entered in this case, there were continuing obligations in the other. Had Plaintiff actually violated the stay, Salov would have filed a motion. None of the cases cited by Salov support a finding of misconduct here.[14]

---

[14] In any event, Salov's attacks on adequacy of Plaintiff and her counsel are not really about trying to protect the class, but only about protecting itself. As one court explained:

> [I]t is often the defendant, preferring not to be successfully sued by anyone, who supposedly undertakes to assist the court in determining whether a putative class should be certified. When it comes, for instance, to determining whether "the representative parties will fairly and adequately protect the interests of the class," or the plaintiffs' ability to finance the litigation, it is a bit like permitting a fox, although with a pious countenance, to take charge of the chicken house.

### D. Resolving This Case On A Classwide Basis Is Superior To All Alternatives.

Salov addresses only one of the four factors enumerated by the Fed. R. Civ. P. 23(b)(3) "superiority" prong: "the likely difficulties in managing a class action" (*id.* at 23(b)(3)(D)) (Opp. at 24-25), conceding that the other three factors weigh in favor of certification. Without discussion of how it arrived at the figure, Salov claims that the average class member stands to recover only 21 cents. Opp. at 25. Even if that figure were accurate, Salov cites no case in which a court found that individual litigation was preferable where potential recovery was too small. Rather, it is well settled that where the potential for damages is low, class proceedings are superior because the alternative would be "no litigation at all." *E.g.*, *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004); *see also Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 515 (9th Cir. 2013) ("In light of the small size of the putative class members' potential individual monetary recovery, class certification may be the only feasible means for them to adjudicate their claims."); *Hatamian v. Advanced Micro Devices, Inc.*, No. 14-cv-000226 YGR, 2016 WL 1042502, at *10 (N.D. Cal. Mar. 16, 2016) ("[T]he individual damages are likely small enough to be economically prohibitive as individual claims.").[15]

## III. CONCLUSION

For all of the reasons discussed herein and in Plaintiff's Motion, the Court should grant Plaintiff's Motion for Class Certification.

Dated: May 10, 2016

**GUTRIDE SAFIER LLP**

/s/ Adam J. Gutride

---

*Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 895 (7th Cir. 1981); *see also Sley v. Jamaica Water & Utilities, Inc.*, 77 F.R.D. 391, 394 (E.D. Pa. 1977) ("Defendants who take such a position on class certification or decertification motions are realistically not concerned with the 'best' representation for the plaintiff class but rather their goal is to ensure 'no' representation.").

15 Salov also argues that its refund policy negates superiority. But the evidence indicates that when a consumer complains about the sourcing of Filippo Berio olive oil and demands a refund, Salov does not offer the refund but, instead, "begin[s] the debate." Supp. Simplicio Decl., Ex. 33 at SNA-0009588 ( email from consumer to Salov and internal Salov correspondence). Moreover, one of the cases Salov cites, *Algarin v. Maybelline, LLC,* rejected its argument. 300 F.R.D 444, 461 (S.D. Cal. 2014) ("[Defendant] argues that its out-of-court Refund Program is a superior alternative. The Court questions the appropriateness of comparing such a private method of resolution.").