1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

8

**NORTHERN DISTRICT OF CALIFORNIA**

9
10

**ROHINI KUMAR,** individually and on behalf of
11 the general public and those similarly situated,

Case No.: 14-CV-2411- YGR

12        Plaintiff,

**ORDER GRANTING MOTION FOR CLASS
CERTIFICATION**

13     vs.

**DKT. NO. 85**

14

**SALOV NORTH AMERICA CORP.,**

15

16        Defendants.

17

18        Plaintiff Rohini Kumar ("Kumar") brings this Motion for Class Certification of a proposed

19 class of purchasers of olive oil based on alleged mislabeling as "Imported from Italy."  (Dkt No. 85.)

20 Defendant Salov North America Corporation ("Salov") opposes the motion.  Having carefully

21 considered the papers submitted, the pleadings in this action, the admissible evidence,[1] and the

22 arguments of the parties, and for the reasons set forth below, the Court **GRANTS** the Motion for Class

23 Certification.

24

25        [1]  Salov filed objections to evidence submitted by Kumar with her reply.  (Dkt. No. 110.)
26 Salov's objection to Exhibit 28 of the Supplemental Simplicio Declaration is **SUSTAINED** as lacking
   foundation.  Salov's objections to portions of Weir's supplemental declaration are **OVERRULED**.  The
27 evidence is properly before the Court for purposes of the class certification analysis.  However,
   Salov is free to bring a *Daubert* challenge, and to move for a further deposition of Weir on the
28 substance of any new opinions stated in the supplemental declaration.

I.   **BACKGROUND**

Kumar seeks to certify a class defined as: "All purchasers in California of liquid Filippo Berio brand olive oil of any grade (including extra virgin, pure, or extra light), between May 23, 2010 and August 31, 2015."[2]  Kumar alleges that the class was deceived by misleading labeling stating that the products were "Imported from Italy" because the oil is actually produced in Tunisia, Greece, and Spain, then shipped to Italy, mixed with a small amount of Italian olive oil, bottled, and sold to consumers.  Kumar alleges that this conduct violates California's Unfair Competition law, Cal. Bus & Prof. Code section 17200 (Sixth Cause of Action), Consumer Legal Remedies, Cal. Bus & Prof. Code section 1750 (First Cause of Action), and False Advertising, Cal. Bus & Prof. Code section 17500 (Second Cause of Action), and entitles her to damages and restitution.[3]

II.   **APPLICABLE STANDARD**

A class action lawsuit is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki,* 442 U.S. 682, 700–01 (1979). To depart from this general rule, "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *East Tex. Motor Freight Sys., Inc. v. Rodriguez,* 431 U.S. 395, 403 (1977) (internal quotations and citation omitted).  The proponent of class treatment, usually plaintiff, bears the burden of demonstrating that class certification is appropriate.  *See In re N. Dist. of Cal., Dalkon Shield IUD Prod. Liab. Litig.,* 693 F.2d 847, 854 (9th

---

[2]  The Class excludes persons whose purchases were for purpose of resale or who returned all their purchases for a refund.  The class definition also excludes the purchase of olive oil sprays.

[3]  Causes of Action 3, 4, and 5, for breach of contract, breach of implied covenant, and fraud/ misrepresentation, were only alleged for the extra virgin olive oil (EVOO) class, which was dismissed.  (Complaint, Dkt. No. 1, at p. 20-21.) Moreover, although Kumar alleged entitlement to injunctive relief on the Italian claims, she does not seek certification for injunctive relief, acknowledging that Salov ceased making the "Imported from Italy" representation on bottles during mid-2015.

United States District Court
Northern District of California

United States District Court
Northern District of California

Cir. 1982), *abrogated on other grounds in Valentino v. Carter–Wallace, Inc.,* 97 F.3d 1227 (9th Cir. 1996).

Federal Rule of Civil Procedure 23, which governs class certification, has two distinct sets of requirements that plaintiffs must meet before the Court may certify a class.  Plaintiffs must meet all of the requirements of Rule 23(a) and must satisfy at least one of the prongs of Rule 23(b), depending upon the nature of the class they seek to certify.  *See also Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,* 559 U.S. 393, 394 (2010) (setting forth requirements of Rule 23). Here, Kumar seeks certification under Rule 23(b)(3).[4]  Within the framework of Rule 23, the Court ultimately has broad discretion over whether to certify a class.  *Zinser v. Accufix Research Inst., Inc.,* 253 F.3d 1180, 1186 (9th Cir.) *opinion amended on denial of reh'g,* 273 F.3d 1266 (9th Cir. 2001).

Under Rule 23(a), the Court may certify a class only where:

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  Courts refer to these four requirements, which must be satisfied to maintain a class action, as "numerosity, commonality, typicality[,] and adequacy of representation."  *Mazza v. Am. Honda Motor Co.,* 666 F.3d 581, 588 (9th Cir. 2012).  Although some inquiry into the substance of a case may be necessary to determine whether these requirements are satisfied, the court must not

---

[4]  Plaintiff indicates in her complaint that she is seeking to certify a class under "Rule 23 of the Federal Rules of Civil Procedure, section 382 of the California Code of Civil Procedure, and section 1781 of the California Civil Code." (Complaint ¶ 51.)  However, the motion indicates only that it is seeking to certify a class under Rule 23(b)(3) because "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  (Motion at 9:21-23.)

advance a decision on the merits to the class certification stage.  As the United States Supreme Court has stated:

> Although we have cautioned that a court's class-certification analysis must be "rigorous" and may "entail some overlap with the merits of the plaintiff's underlying claim," Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage.  Merits questions may be considered to the extent — but only to the extent —that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.

*Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013).

## A.     Rule 23(a) Threshold Requirements

### 1.     *Numerosity*

Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is "impracticable." Fed. R. Civ. P. 23(a)(1).  Salov does not dispute that the class is sufficiently numerous and would number in the thousands.

### 2.     *Adequacy*

To determine adequacy of representation under Rule 23(a)(4), the Court must consider: "(1) [whether] the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).  Salov raises several issues that it asserts establish Kumar is not an adequate class representative and class counsel are not adequate.

First, Salov suggests that Kumar is not an adequate representative because her deposition testimony shows she was not misled by the "Imported from Italy" statement on the front of the bottle.  Her testimony indicated that she read the back of the bottle to check the "best by" date. Because that information is located adjacent the bottle's disclaimer that the olive oils come from Italy, Spain, Greece and Tunisia, Salov contends that she must have known this information.

United States District Court
Northern District of California

However, Kumar has testified that, while she looks for the "Best By" date on the bottle, she did not see information about the origin of the olives or that the oil could be from various countries other than Italy.  (Supp. Simplicio Decl., Dkt. Nos. 108, 109, Exh. 32 at 194:3-195:19.)  There are differences in appearance, size, and placement of the disclaimer language compared to the "Best By" date.[5]  It is an open question whether those differences lend to or detract from the credibility of Kumar's testimony, and not a question that the Court must answer in order to find that she is an adequate representative.

Second, Salov argues that Kumar is not adequate because she is friends with one of class counsel.  The record indicates that Kumar first discussed the subject olive oil labeling with her friend Ms. Simplicio, one of the counsel in this matter, over brunch, which later led to the filing of this action.  Salov suggests this undermines Kumar's credibility and her ability to put the interests of the class above the interests of counsel.  Any suggestion of a conflict here is undermined by the fact that Simplicio is not a partner and is only one of several attorneys, from two firms, litigating the case.  *Cf. Zeisel v. Diamond Foods, Inc.*, No. C 10-01192 JSW, 2011 WL 2221113, at *9 (N.D. Cal. June 7, 2011) (fact that class representative and one class attorney were friends did not make him inadequate in the absence of evidence of an actual conflict); *Kesler v. Ikea U.S. Inc.*, No. SACV 07-568 JVS RNBX, 2008 WL 413268, at *6 (C.D. Cal. Feb. 4, 2008) ("Kesler sought legal advice from a friend who was a lawyer, and that friend, Sharpe, referred her to Sharpe's law firm.  There is little reason to think that Kesler might place the interests of the class counsel in obtaining attorney's fees above those of the absentee class members.")

---

[5]  The Court notes that the label examples provided in connection the motion and with Salov's opposition do not include any date in the "Best By" date space.  However, the exemplar bottle provided by Salov at the hearing displayed the date above the nutrition facts panel, printed in black on a white background in a font slightly larger in size than the countries of origin statement, which is printed in white text on a green background above the nutrition facts panel.  (*See* Appendix to this order.)

United States District Court
Northern District of California

Third, Salov suggests that Kumar's credibility is at issue in the litigation, especially since she has provided conflicting discovery responses. Salov argues that the fact Kumar has a felony conviction for driving under the influence means she cannot be an adequate representative. However, that conviction is not for an offense calling Kumar's honesty and integrity into question, nor is it relevant to the matters at issue in the litigation. A proposed representative's "credibility may be a relevant consideration with respect to the adequacy analysis." *Harris v. Vector Mktg. Corp.,* 753 F.Supp.2d 996, 1015 (N.D.Cal.2010). However, adequacy is only undermined "where the representative's credibility is questioned on issues directly relevant to the litigation or there are confirmed examples of dishonesty, such as a criminal conviction for fraud." *Id.; see also Marsh v. First Bank of Delaware*, No. 11-CV-05226-WHO, 2014 WL 554553, at *9 (N.D. Cal. Feb. 7, 2014). Salov has not established any basis for finding Kumar inadequate based on this conviction.

Finally, Salov's arguments that counsel are not adequate because they made a misrepresentation to the Court about whether Kumar ever looked at the back of the bottle also fail. Counsel represented orally to the Court that she had not looked at the back during the course of hearing on the motion to dismiss. Kumar testified differently in her deposition. While certainly counsel are not to be commended for this discrepancy, it does not establish a "lack of integrity" on the part of counsel, or seriously call into doubt their ability to meet their obligations to act as zealous and ethical advocates for the class.

### 3. *Typicality*

Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). That is, the named plaintiffs must "suffer the same injury as the class members." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617

6

F.3d 1168, 1175 (9th Cir. 2010) (*quoting Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th

Cir.1992)).  "The test of typicality is whether other members have the same or similar injury,

whether the action is based on conduct which is not unique to the named plaintiffs, and whether other

class members have been injured by the same course of conduct." *Id.* (internal quotation marks

omitted).

Salov's argument against the typicality of Kumar's claim is, again, that she concedes she read

the "Best By" date on the back of the bottle, and therefore must have seen the country of origin

statement as well.  Thus, Salov contends, Kumar cannot be typical of a class of consumers alleging

they were misled about the origin of the olive oil.

Kumar has testified that she did not see the country of origin statement.  The Court cannot

disregard this testimony, as Salov seems to suggest.  As above, Salov's argument is not a persuasive

basis for finding Kumar's claims and interests do not align with those of the unnamed class members

she seeks to represent.

### 4.      *Common Questions of Law and Fact*

Rule 23(a)(2) requires the party seeking certification to show that "there are questions of law

or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  To satisfy this requirement, the common

question "must be of such a nature that it is capable of classwide resolution – which means that the

determination of its truth or falsity will resolve an issue that is central to the validity of each of the

claims in one stroke." *Dukes*, 564 U.S. at 350.  "[F]or purposes of Rule 23(a)(2), even a single

common question will do." *Id.* at 359.

The central question here is whether Salov's labels were likely to deceive a reasonable

consumer.  The UCL, CLRA, and FAL, prohibit "not only advertising which is false, but also

advertising which [,] although true, is either actually misleading or which has a capacity, likelihood

or tendency to deceive or confuse the public." *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951, 45 P.3d 243

(2002), *as modified* (May 22, 2002).  To state a claim based on false labeling, "it is necessary only to show that 'members of the public are likely to be deceived.'"  *Id.*  Thus the answer to the reasonable consumer question based on common facts, that is, identical statements on the labels of the products at issue.  In cases alleging a deceptive advertising scheme under the UCL, CLRA, and FAL, it is well-settled that where "numerous consumers are exposed to the same dubious practice by the same seller…proof of the prevalence of the practice as to one consumer would provide proof for all."  *Vasquez v. Superior Court*, 4 Cal. 3d 800, 808 (1971) (concluding that if material misrepresentations were made to members of the class, an inference of reliance would arise as to the whole class); *see also In re Tobacco II Cases*, 46 Cal. 4th 298, 327 (2009) (inference of reliance arises wherever there is a showing that a misrepresentation was material, and plaintiff need not demonstrate individualized reliance on specific misrepresentations to satisfy the reliance requirement); *Williams v. Gerber Products,* 552 F.3d 934, 938 (9th Cir. 2008) (same for CLRA).

Kumar further grounds her claims on the theory that the "Imported from Italy" statement violates the Tariff Act of 1930, 19 U.S.C. § 1304(a) and implementing regulations, 19 C.F.R. § 134, including § 134.11 and § 134.46, which set forth specific requirements for when a company may label its products as "Imported from" any given country.  Kumar intends to prove that Salov's packaging violates regulations promulgated by the Food and Drug Administration, which provide that food is misbranded if its label expresses or implies a geographical origin of the food or any ingredient of the food except when such representation is "[a] truthful representation of geographical origin." *See* 21 C.F.R. § 101.18; *see also* Cal. Health & Saf. Code §§ 110100(a), 110380, 110505 (adopting FDA standards).  Kumar contends that violation of such regulations would establish a UCL claim under the "unlawful" prong.  *See Cel–Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) ("By proscribing 'any unlawful' business practice, section 17200 'borrows' violations of other laws and treats them as unlawful practices that the unfair

8

competition law makes independently actionable"), quoted with approval in *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000); *Plascencia v. Lending 1st Mortgage*, 259 F.R.D. 437, 448 (N.D. Cal. 2009) ("Violation of almost any federal, state, or local law may serve as the basis for a UCL claim."), *order clarified*, 2011 WL 5914278 (N.D. Cal. Nov. 28, 2011). Whether the label statement violates these laws, and therefore establishes a predicate for a UCL, FAL or CLRA claim, is a common question, both factually and legally.

In sum, there are sufficient common questions of fact and law to meet the threshold requirements of Rule 23(a) for the proposed class.

### 5. *Ascertainability*

Over and above the four requirements set forth in Rule 23(a), many courts have implied an additional threshold requirement: that the members of the class be readily ascertainable. *See Xavier v. Philip Morris USA, Inc.*, 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011) ("the party seeking certification must demonstrate that an identifiable and ascertainable class exists"); *Herrera v. LCS Fin. Servs. Corp.*, 274 F.R.D. 666, 672 (N.D. Cal. 2011) ("[w]hile Rule 23(a) is silent as to whether the class must be ascertainable, courts have held that the rule implies this requirement"); *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 482 (N.D. Cal. 2011) (although not expressly required by Rule 23, courts have held that the class must be well defined and ascertainable in order to proceed on a classwide basis); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 291, 299 (N.D. Cal. 2010) *abrogated on other grounds by In re ATM Fee Antitrust Litig.*, 686 F.3d 741 (9th Cir. 2012). "While Rule 23(a) does not expressly require a class to be ascertainable, courts have read the rule to imply th[e] requirement…[that] its members can be ascertained by reference to objective criteria…[and] the description of the class is definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member." *Id.* at 299 (internal citations omitted). Whether viewed through the lens of manageability, superiority, or predominance, "the party seeking class

9

certification must demonstrate that an identifiable and ascertainable class exists." *Wolph*, 272 F.R.D. at 482.

The Ninth Circuit has not yet reached the question of whether there is an ascertainability requirement implied in, or in addition to, Rule 23. *See Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1071 (9th Cir. 2014) ("we need not and do not reach the question of whether the district court abused its discretion in denying certification based on the threshold ascertainability test").  However, it has reiterated that "class certification of UCL claims is available only to those class members who were actually exposed to the business practices at issue." *Id*. at 1068; *see also Pierce v. County of Orange,* 526 F.3d 1190, 1200 (9th Cir. 2008) (district court did not abuse its discretion in decertifying a damages class because "Rule 23(b)(3) would not offer a superior method for fair and efficient adjudication in light of expected difficulties identifying class members"); *Martin v. Pac. Parking Sys. Inc.*, 583 Fed. App'x 803, 804 (9th Cir. 2014) *cert. denied,* 135 S.Ct. 962 (Jan. 12, 2015) (court did not abuse discretion in denying class certification for lack of ascertainability where plaintiff offered no plan for reliably identifying members of the class).

While the precise legal contours of ascertainability as an additional threshold requirement are in flux,[6] the Court agrees that Kumar is required to establish a means of determining class

---

[6] Several other Circuit Courts of Appeals have held that ascertainability is an implicit prerequisite to certifying a class.  *See Carrera v. Bayer Corp*., 727 F.3d 300, 303-04 (3d Cir. 2013) (quotation marks omitted); *Marcus v. BMW of North America, LLC*, 687 F.3d 583, 592–93 (3d Cir. 2012); *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014) ("Rule 23 contains an implicit threshold requirement that the members of a proposed class be 'readily identifiable.'"); *In re Deepwater Horizon*, 739 F.3d 790, 821 (5th Cir.) *cert. denied sub nom. BP Exploration & Prod. Inc. v. Lake Eugenie Land & Dev., Inc.*, 135 S.Ct. 754 (2014) (in order to maintain a class action, the class must be adequately defined and clearly ascertainable); *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015); *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 45 (2d Cir. 2006); *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015), *as amended* (Apr. 28, 2015); *cf. Mullins v. Direct Digital, LLC*, 795 F.3d 654, 672 (7th Cir. 2015), *cert. denied,* 136 S. Ct. 1161 (2016) (declining to adopt "a heightened ascertainability requirement" under Rule 23, although courts should continue to require that the class be defined clearly and with objective criteria).

United States District Court
Northern District of California

United States District Court
Northern District of California

membership by reference to objective, administratively feasible criteria.  Further, this Court is in agreement with others that a "class definition must be clear in its applicability so that it will be clear later on whose rights are merged into the judgment" in order to avoid "satellite litigation…over who was in the class in the first place."  *Xavier*, 787 F. Supp. 2d at 1089.

Here, Salov argues that Kumar has not established ascertainability because membership in the class depends upon each person proving a purchase of Filippo Berio olive oil and recalling what they paid, where they purchased it, and how many times, plus whether they saw and were deceived by the statement "Imported from Italy" on the bottle.  Salov suggests that Kumar's damages expert should have addressed these factors in his analysis.

The Court finds the class here sufficiently ascertainable.  There are only two issues that require clarification in the class definition: the closing date for the class and the varieties of Filippo Berio olive oil covered.  On the first issue, Mueller, Salov's CEO and Rule 30(b)(6) deponent, testified that the "end of" the third quarter of 2015 was the earliest time that Filippo Berio bottles without "Imported from Italy" would have started to arrive in United States stores, so the class period was proposed to end by August 30, 2015. (Simplicio Decl., Exh. 3 [Mueller Depo.], at 118:12-19.)  Mueller now declares that it is "his best estimate" that new labels started to appear on shelves in "mid-2015," or the beginning of the third quarter of 2015.  (Mueller Decl. ¶ 22.)  On the second issue, the organic variety did not contain the challenged "Imported from Italy" statement for several months during the class period.[7]  Based on this information, the Court modifies the class definition so that the time period ends as of June 30, 2015, and purchasers of the organic variety of Filippo Berio are excluded.

---

[7]  The parties agreed on the record at the hearing that the organic variety purchasers could be excluded from the class definition.  The Court does not believe exclusion of these purchasers will present any barrier to determining class membership.

Other than these modifications, the Court sees no other barriers to ascertainability. The class definition is precise and objective, and membership is readily determinable. The "Imported from Italy" language appeared on all bottles. Though it is unlikely that this class of consumers will be able to produce evidence of purchase such as receipts or store/club card data to verify a purchase, this is no impediment to their offering evidence of purchase by affidavit on a claim form.[8]  Unlike other food labeling cases that have foundered on this requirement, the labels here all contained the same challenged language for the time period. The claim involves identical statements on all products for the relevant time period, with no "memory test" for flavor, size, or time period necessary to determine whether the product purchased had the challenged statement on the label. The statement appeared on the front of the bottle. Salov's arguments—that the font size and color were too small to make the statement stand out; that consumers would not misunderstand the language the way Kumar alleges; and the presence of a hang-tag on the bottle neck or a statement on the back of the bottle would have blocked consumers' view of the statement—all go to the proof of whether a reasonable consumer would have been misled, not to determining who meets the class definition.

**B.      Rule 23(b)(3) Class Requirements**

Once the threshold requirements for certification are met, a plaintiff must establish that the class is appropriate for certification under one of the provisions in Rule 23(b). Here, Kumar moves to certify the class pursuant to Rule 23(b)(3) which requires a plaintiff to establish "that the questions

_____

[8]  Indeed, requiring consumer class members to produce receipts to demonstrate their purchases in order to recover would essentially preclude relief for most consumer injuries. As other courts rejecting similar arguments have found, "it is precisely in circumstances like these, where the injury to any individual consumer is small, but the cumulative injury to consumers as a group is substantial, that the class action mechanism provides one of its most important social benefits." *Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 238 (N.D. Cal. 2014) (*citing Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 161 (1974)).

United States District Court
Northern District of California

of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

Again, the standard for Kumar's claims is the "reasonable consumer" test, which requires a plaintiff to show that a "reasonable consumer" is likely to be deceived by the business practice or advertising at issue.  *See Williams,* 552 F.3d at 938; *see also Kasky,* 27 Cal. 4th at 951.  Kumar contends that, because the product label itself will serve as "primary evidence" on all of the class claims, common factual questions predominate.  Kumar contends the class can prove that the representations were likely to mislead reasonable consumers based on Salov's own evidence showing that the label representation was intended to create the false impression that the olive oil was Italian as well as unlawful.

Salov argues that several factors preclude a determination that common questions of fact or law predominate here, including: the materiality of the "Imported from Italy" statement to class members' purchasing decisions; class members' actual exposure to the statement; their understanding of the meaning of the statement; and individualized entitlement to relief.  The Court examines each in turn.

### A.      Materiality

Salov argues that, in order to prove the claims here, Kumar must show that the allegedly misleading statements were material in causing the alleged injury, and therefore at class certification must show how materiality can be established on a classwide basis.  Salov contends that Kumar's evidence consists only of surveys indicating that most consumers believe the best olive oil comes from Italy, which does not explain what motivates their purchasing decisions or their willingness to pay a premium for an Italian product.

13

Questions of materiality and reliance are determined based upon the reasonable consumer standard, not the subjective understandings of individual plaintiffs. *See Benson v. Kwikset Corporation*, 152 Cal.App.4th 1254, 1274 (2007) (in UCL, CLRA, and FAL claims, courts apply the reasonable consumer standard and "must view the labeling from the perspective of those consumers for whom the [challenged] designation is important").[9] A "representation is 'material'…if a reasonable consumer would attach importance to it or if 'the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action.'" *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013), *as amended on denial of reh'g and reh'g en banc* (July 8, 2013) (*quoting Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 333 (2011) and Restatement 2d Torts, section 538 (2)(b)).

Proof that statements were material to the plaintiff purchaser class, and that class members relied on those statements in making purchasing decisions, does not necessarily require individualized evidence for each class member. *In re Steroid Hormone Prod. Cases*, 181 Cal.App.4th 145, 157 (2010), *as modified on denial of reh'g* (Feb. 8, 2010) (plaintiffs satisfied materiality requirement on a classwide basis where court "assume[d] that a reasonable person would not knowingly commit a criminal act" and therefore the legality of possessing the product was material); *see also In re Tobacco II Cases*, 46 Cal.4th 298, 327 (2009) (*quoting Engalla v. Permanente Medical Group, Inc.*, 15 Cal.4th 951, 976-66 (1997) ("'a presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material… [a]

---

[9] Claims under the UCL and FAL do not required individualized proof of reliance, deception, or causation. *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 986 (9th Cir. 2015), *cert. denied,* No. 15-1101, 2016 WL 816276 (U.S. June 6, 2016). By contrast, the CLRA requires each class member to have an actual injury caused by the unlawful practice. *Steroid Hormone Prod. Cases,* 181 Cal.App.4th 145, 155–56 (2010). However "[c]ausation, on a classwide basis, may be established by *materiality.* If the trial court finds that material misrepresentations have been made to the entire class, an inference of reliance arises as to the class." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013 (9th Cir. 2011) *cert. denied*, __U.S.__, 132 S.Ct. 1970 (2012).

14

misrepresentation is judged to be 'material' if 'a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question'"). Materiality can be shown by a third party's, or defendant's own, market research showing the importance of such representations to purchasers. *See Mullins v. Premier Nutrition Corp.*, No. 13-CV-01271-RS, 2016 WL 1535057, at *3 (N.D. Cal. Apr. 15, 2016) (defendant's own "[m]arketing research suggests the overwhelming majority of Joint Juice users purchased the product to obtain these benefits, and thus there is a reason to believe the represented health benefits were material."); *In re ConAgra Foods, Inc.*, 90 F.Supp.3d 919, 1018-20 (C.D. Cal. 2015) (finding materiality could be established on classwide basis based upon third party surveys showing percentage of consumers who base purchasing decisions on representations that product was "all natural," as well as Defendant's own market research showing "all natural" was significant to consumers' interest in purchasing.) At the same time, California courts have held that proof of deception does not require expert testimony or consumer surveys. *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal.App.4th 663, 681-82 (2006), *as modified on denial of reh'g* (Jan. 31, 2006) (citing cases, and finding that statements were deceptive for purposes of CLRA, FAL, and UCL, as a matter of law, based on evidence of statements' falsity and that two named plaintiffs had been misled); *Brockey v. Moore*, 107 Cal.App.4th 86, 99-100 (2003) (rejecting argument that survey required, holding that the advertising statements, along with defendant's apparent intent to mislead consumers, were sufficient evidence of materiality).

Here, establishing materiality based on the alleged misrepresentation of the product's origin finds significant support in the case law. Misrepresentations of origin have been held to be material misrepresentations without the necessity of proof of materiality to each individual consumer. *Kwikset*, 51 Cal.4th at 333 (false labels stating "Made in U.S.A." were material misrepresentations); *cf.* Lanham Act, 15 U.S.C. § 1125(a), making false designations of origin in packaging or advertising

United States District Court
Northern District of California

unlawful.  Moreover, a "legislature's decision to prohibit a particular misleading advertising practice is evidence that the legislature has deemed that the practice constitutes a 'material' misrepresentation, and courts must defer to that determination."  *Hinojos*, 718 F.3d at 1107; *see also Kwikset*, 51 Cal.4th at 329 (the "[l]egislature has recognized the materiality of this representation by specifically outlawing deceptive and fraudulent 'Made in America' representations").  As the California Supreme Court noted in *Kwikset*, "[t]wo wines might to almost any palate taste indistinguishable—but to serious oenophiles, the difference between one year and the next, between grapes from one valley and another nearby, might be sufficient to carry with it real economic differences in how much they would pay."  *Kwikset*, 51 Cal.4th at 330.  Thus, evidence that a label that misleads a consumer about a product's origins, and the associated value of the product, establishes that the misrepresentation is material to the consumer's injury.  *Id.*

Here, Kumar offers Salov's own market research evidence, along with other industry research, to show that Italian origin is important to consumers' olive oil purchasing decisions. (*See* Simplicio Decl., Dkt. No. 84-5 *et seq.*, Exh. 20 at SNA-0005700; Exh. 22 at SNA-0014179; Exh. 23 at SNA-0011123 [pay a great deal of attention to country of origin], 11127 [preference for Italian]; Exh. 24 at SNA-0025464 [majority preferred Italian origin].)  She also offers expert opinion evidence of a price premium attributable to representations of Italian origin.  (*See* Weir Decl. ¶¶ 8-11, 74.)  To be sure, Salov offers competing market evidence, undercutting the importance of Italian origin and the existence of a price premium.  Nevertheless, the issues of materiality and reliance do not break down into individualized inquiries, but can be determined on a classwide basis.

Moreover, unlike the facts before this Court in *Kosta v Del Monte Foods, Inc.*, 308 F.R.D. 218 (N.D. Cal. 2015), here there are common questions as to whether the statements complied with labeling laws.  Kumar's claims rely on regulations and standards applicable to use of the phrase "imported from" and requirements for additional information about a product's origin.  *See* Tariff

16

Act of 1930, 19 U.S.C. § 1304(a) and implementing regulations at 19 C.F.R. § 134 *et seq.*, including §§ 134.11 and § 134.46.  Kumar contends that she can prove Salov's packaging violates regulations promulgated by the Food and Drug Administration, which provide that food is misbranded if its label expresses or implies a geographical origin of the food or any ingredient of the food except when such representation is "[a] truthful representation of geographical origin." *See* 21 C.F.R. § 101.18.  The regulations indicate that the information regulated is material to consumers' purchases.  *Hinojos*, 718 F.3d at 1107.  Thus, materiality of the representations can be determined on a classwide basis.

### B.      Reliance/Exposure to Challenged Statement

Salov next contends that there are individualized issues as to whether class members would have seen the "Imported from Italy" phrase on the bottle.  For example, during certain portions of the class period, Salov ran promotions using what are known as "neck collars" on the olive oil bottles, which Salov asserts would have obscured the consumer's view of the "Imported from Italy" phrase on the bottle. (Mueller Decl., Dkt. No. 97-17, ¶ 36.)  Thus, whether any particular class member saw the phrase would be an individual inquiry.  Salov argues that class certification should be denied where "it is likely that many class members were never exposed to the allegedly misleading" statements.  *Mazza*, 666 F.3d at 595-96.

First, Salov's evidence on the neck collars is not persuasive.  Although Mueller indicates the collars were used at various times, he does not state that they were used in California or how widely.  More importantly, Salov offers no evidence to establish that the collars actually obscured the text, or that consumers would not have moved the tag aside to view the bottle label or otherwise have seen the text.  The graphic evidence of the collar, as shown in Mueller's declaration, shows the collar in isolation, and apparently not to scale.  (*Compare* Supp. Simplicio Decl., Exh. 28, with Defendant's Objections to New Evidence Filed With Reply, Dkt. No. 110, at 2.)  Pursuant to Defendant's objections, the Court has stricken Kumar's efforts to provide a mock-up of how the hang tags might

17

have looked on the bottle.  However, the objections only serve to underscore the lack of evidence of how the collars might or might not have obscured the bottle label.

Salov's additional arguments about whether consumers were likely to notice the challenged phrase on the front of the bottle given the small font size and lack of contrast with the rest of the bottle go to the merits of the claim, not to whether a class should be certified.  Whether a reasonable consumer would have seen the phrase and been misled remains a common question.

Salov also argues that there is no evidence consumers would have misunderstood the phrase as Kumar alleges, and that some consumers would not have believed the phrase "Imported from Italy" to mean that the bottle contained 100% Italian olive oil.  Citing *Jones v. ConAgra Foods, Inc.*, No. C 12-01633 CRB, 2014 WL 2702726, at *14 (N.D. Cal. June 13, 2014), Salov argues that even if the challenged statements are uniform, consumers' understanding of those representations may not be, and thus the class would not be cohesive.

*Jones* is distinguishable for two important reasons.  First, the label phrase at issue there, "natural," is not the subject of any regulation and is inherently ambiguous.  *See Jones v. ConAgra Foods, Inc.*, No. C 12-01633 CRB, 2014 WL 2702726, at *15 (N.D. Cal. June 13, 2014) ("there is no single, controlling definition of the word 'natural'").  The challenged statement here is not.  Further, in *Jones*, the court found that the use of the statement on the various challenged product labels varied by product size, flavor variety, and time period, among other variations.  The variability in the use of the phrase, its ambiguity with reference to widely varying products, and the lack of a regulated definition of the meaning of the challenged terms created too many individualized issues for class treatment.  Again, those concerns are not present here.  Indeed, Salov does not offer evidence that consumers would *not* understand the phrase "Imported from Italy" to mean that the oil is Italian.  Moreover, as indicated in *Hinojos* and *Kwikset*, the fact that the government regulates the use of the

phrase suggests that it is one that can be used in misleading ways.  *See Hinojos*, 718 F.3d at 1107; *Kwikset*, 51 Cal. 4th at 333.

**C.      Damages/Restitution**

Finally, Salov also argues that class treatment is inappropriate because Kumar has not shown that damages (or restitution) can be determined on a classwide basis.  The Supreme Court in *Comcast* held that "a model purporting to serve as evidence of damages in [a] class action must measure only those damages attributable" to the alleged misconduct and "be consistent with [the plaintiff's] liability case[.]"  *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1433 (2013).  Under *Comcast*, it is "the court's duty to take a 'close look' at" the model and "conduct a 'rigorous analysis'" to determine whether the model is appropriate to capture damages under plaintiff's theory of liability.  *Id.* at 1432-33; *Leyva v. Medline Indus., Inc.,* 716 F.3d 510, 514 (9th Cir.2013) (under *Comcast*, "plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability.")

Salov argues that Kumar improperly relies on a "fraud on the market" theory that is inapplicable here.  Salov contends that Kumar's expert bases his opinion on a presumption that the alleged representations created a fraud on the olive oil market, and that every consumer was thereby similarly damaged.  However, Kumar counters that she is not asserting "fraud on the market" but rather a diminution in value theory, *i.e.*, the difference between what was paid and what a reasonable consumer would have paid at the time of purchase without the fraudulent or omitted information. *See Kwikset,* 51 Cal.4th at 329; *Pulaski & Middleman*, 802 F.3d at 989 (diminution in value model to calculate restitution under the UCL and FAL consistent with *Comcast*).  Kumar's expert has set forth his analysis according to a multiple regression model that purports to isolate a price premium attributable to the challenged labeling statement, while controlling for other factors affecting the price.  The model is similar to one examined in detail and approved (both under *Daubert* and for

19

purposes of establishing a classwide method of calculating damages) in *Guido v. L'Oreal, USA, Inc.*, No. 2:11-CV-01067-CAS, 2014 WL 6603730, at *10 (C.D. Cal. July 24, 2014).[10]

Indeed, Salov's own expert does not appear to challenge the validity of the methodology itself, but rather the completeness of the variable set used and correctness of the data categorizations. While the ultimate persuasiveness of the model is a matter to be decided by a trier of fact, Kumar has sufficiently established that it has a model for calculating the damages resulting from its theory of liability.

**IV.    CONCLUSION**

For the foregoing reasons, the Motion for Class Certification is **GRANTED** for a class defined as:  All purchasers in California of liquid Filippo Berio brand olive oil of any grade except "Organic" between May 23, 2010, and June 30, 2015.

**IT IS SO ORDERED**.

Dated: July 15, 2016

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

---

[10]  The Court notes that, although the court in *In re ConAgra Foods, Inc.*, cited by Salov rejected a proposed hedonic regression model proffered by this same expert in a case involving "100% Natural" labeling in a challenge to GMO-containing Wesson Oils, the same court later ruled that, based on a modified hedonic regression analysis and a conjoint analysis accounting for GMO versus other "naturalness" variables, satisfied *Comcast* and granted class certification based on classwide damages.  *See In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 1024-25 (C.D. Cal. 2015). Plaintiff has offered to add a conjoint analysis should the Court find the regression model here insufficient to account for the Italian price premium.  For purposes of class certification, the proposed regression model appears to meet *Comcast*'s requirement of measuring the damages attributable to the Italian origin statement.

United States District Court
Northern District of California

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **APPENDIX**

## **FRONT**



**BACK**

