UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROHINI KUMAR, INDIVIDUALLY  )<br>AND ON BEHALF OF THE GENERAL)<br>PUBLIC AND THOSE SIMILARLY  )<br>SITUATED,                   )<br>                            )<br>          PLAINTIFF,        )<br>                            )<br>  VS.                       )<br>                            )<br>SALOV NORTH AMERICA         )<br>CORP., ET AL.,              )<br>                            )<br>                            )<br>                            )<br>          DEFENDANTS.       )<br>_____) | NO. C-14-2411 YGR<br><br>TUESDAY, MAY 24, 2016<br><br>OAKLAND, CALIFORNIA<br><br>MOTION TO CERTIFY CLASS |

BEFORE THE HONORABLE YVONNE GONZALEZ ROGERS, JUDGE

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

**FOR PLAINTIFF:**           GUTRIDE SAFIER LLP
100 PINE STREET, SUITE 1250
SAN FRANCISCO, CALIFORNIA 94111
      BY:  ADAM GUTRIDE, ESQUIRE
          KRISTEN G. SIMPLICIO, ESQUIRE

**FOR DEFENDANT:**          SIDLEY AUSTIN, LLP
555 WEST FIFTH STREET
LOS ANGELES, CALIFORNIA 90013
      BY:  MARK E. HADDAD, ESQUIRE
          NITIN REDDY, ESQUIRE

**REPORTED BY:**          DIANE E. SKILLMAN, CSR 4909, RPR, FCRR
OFFICIAL COURT REPORTER

TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION

P R O C E E D I N G S

    **THE CLERK:**  WE WILL DO THE KUMAR VERSUS SALOV NORTH AMERICA NEXT.

  CALLING CIVIL ACTION 14-2411 KUMAR VERSUS SALOV NORTH AMERICA CORPORATION.

  COUNSEL, PLEASE COME FORWARD AND STATE YOUR APPEARANCES.

    **MR. GUTRIDE:**  GOOD AFTERNOON, YOUR HONOR.  ADAM GUTRIDE ON BEHALF OF THE PLAINTIFF.

    **MR. HADDAD:**  GOOD AFTERNOON, YOUR HONOR.  MARK HADDAD ON BEHALF OF DEFENDANT.

    **THE COURT:**  AND, MR. HADDAD, ARE YOU FROM SIDLEY AUSTIN?

    **MR. HADDAD:**  I AM, YOUR HONOR.

    **THE COURT:**  SO YOU'RE GOING TO MAKE AN APPEARANCE ON THE DOCKET FOR US GIVEN THAT YOU'RE NOT?

    **MR. HADDAD:**  YES, THEN, I WILL.  I WAS UNDER THE IMPRESSION I WAS ON THE DOCKET.  SO MY APOLOGIES FOR THAT.

    **THE COURT:**  OKAY.

  THE ORGANIC BOTTLES DIDN'T HAVE "IMPORTED FROM ITALY" ON THE LABEL.  DOESN'T THAT AFFECT THE CLASS DEFINITION THAT'S BEING PROPOSED?  AND HOW DO I ADDRESS THAT ISSUE?

    **MR. GUTRIDE:**  YOUR HONOR, THERE IS EVIDENCE FROM ONE OF THE DECLARANTS THAT FOR A LIMITED TIME PERIOD THE ORGANIC BOTTLES DID NOT HAVE THAT ON THE LABEL, YES.

1        **THE COURT:**  FROM EARLY 2014 TO LATE 2014.  IS THERE

2   ANY DISPUTE THAT IT WAS -- THAT ORGANIC DID NOT HAVE THAT ON

3   THE BOTTLES?

4        **MR. GUTRIDE:**  WE DO NOT DISPUTE THAT EVIDENCE, YOUR

5   HONOR.

6        **THE COURT:**  OKAY.  SO HOW AM I SUPPOSED TO DEAL WITH

7   THAT?

8        **MR. GUTRIDE:**  YOUR HONOR, I WOULD SUGGEST THAT WE

9   EXCLUDE THAT -- THOSE PURCHASES FROM THE CLASS.

10       **THE COURT:**  OKAY.  MR. HADDAD, DO YOU HAVE ANY

11  COMMENTS ON THAT PARTICULAR ISSUE?

12       **MR. HADDAD:**  NO, YOUR HONOR.

13       **THE COURT:**  DO I UNDERSTAND THAT THE ONLY CLAIMS LEFT

14  WITH RESPECT TO THE PROPOSED CLASS ARE THE UCL, THE FAL, AND

15  THE CLRA; THAT ALL OF THE COMMON LAW CLAIMS DO NOT RELATE TO

16  THE CURRENT CLASS AS PROPOSED?

17       **MR. GUTRIDE:**  YOUR HONOR, I BELIEVE THAT WE STILL

18  HAVE A COMMON LAW FRAUD CLAIM.  AND THAT UNDER THE CASES THAT

19  WE HAVE CITED TO YOUR HONOR, THE CLASS CERTIFICATION CASES

20  FROM THIS DISTRICT AND FROM THE STATE COURTS THAT THE COMMON

21  LAW FRAUD CLAIM AT THIS STAGE OF THE CASE IS TREATED THE SAME

22  WAY AS THE CLRA CLAIM.

23      IN OTHER WORDS, THE QUESTION OF MATERIALITY IS AN

24  OBJECTIVE QUESTION THAT CAN BE DECIDED ON A CLASS-WIDE BASIS.

25  I BELIEVE . . . I'M BLANKING ON THE NAME OF THE LEADING CASE

1    ON THAT, I THINK IT'S DELROIT (PHONETIC) OR SOMETHING.  I CAN

2    CERTAINLY LOOK THAT UP FOR YOUR HONOR IF THAT'S AN ISSUE.

3         **THE COURT:**  SO CAUSES OF ACTION THREE, FOUR AND FIVE,

4    WHICH WERE THE BREACH OF CONTRACT, BREACH OF IMPLIED COVENANT,

5    AND THE FRAUD/MISREPRESENTATION WERE ONLY ALLEGED FOR EXTRA

6    VIRGIN OLIVE OIL CLASS WHICH WAS DISMISSED.

7         **MR. GUTRIDE:**  I'M SORRY, IS THAT -- ARE YOU READING

8    FROM ANOTHER DOCUMENT, YOUR HONOR?

9         **THE COURT:**  MY OWN NOTES.

10        **MR. GUTRIDE:**  OH, OKAY.

11    SO WITH REGARD TO THE BREACH OF CONTRACT AND THE BREACH OF

12   THE COVENANT CLAIM, YOUR HONOR, I DON'T DISAGREE.

13    WITH REGARD TO THE FRAUD CLAIM, THE FRAUD, DECEIT,

14   MISREPRESENTATION CLAIM, WE HAVE PRESERVED THAT CLAIM FOR THE

15   PURPOSES OF THIS -- OF THE "IMPORTED FROM ITALY" PORTION OF

16   THE CASE IS MY UNDERSTANDING, BUT PERHAPS I SHOULD GO BACK AND

17   READ THE DISMISSAL STIPULATION JUST TO MAKE SURE I'M NOT

18   MISSPEAKING.  THAT'S MY CURRENT UNDERSTAND THOUGH.

19        **THE COURT:**  SIR.

20        **MR. HADDAD:**  THANK YOU, YOUR HONOR.

21    I HAD THIS SAME QUESTION ACTUALLY FOR MYSELF PREPARING FOR

22   THE ARGUMENT.  AND MY UNDERSTANDING COMES FROM THE SECTION OF

23   THE COMPLAINT THAT BEGINS AT PARAGRAPH 89, AND THAT DESCRIBES

24   PLAINTIFF'S FIFTH CAUSE OF ACTION FOR FRAUD, DECEIT, AND/OR

25   MISREPRESENTATION ON BEHALF OF HERSELF AND THE EVOO CLASS.

1    SO IT WAS MY IMPRESSION THAT FRAUD WAS PLEADED ONLY AS TO

2   THE EVOO CLASS, AND BY DISMISSING VIA STIPULATION THE EVOO

3   CLAIMS, THE FRAUD CLAIM WENT WITH IT.

4        **THE COURT:**  WELL, THAT WAS MY READING WHICH WAS WHY I

5   WAS SEEKING CLARIFICATION.

6        **MR. GUTRIDE:**  YOUR HONOR, I APOLOGIZE.  YOU'RE

7   CORRECT AS IS MR. HADDAD.  I HAVE JUST BEEN ADVISED BY MY

8   COLLEAGUE THAT SHE HAS CHECKED THAT DOCUMENT AND I APOLOGIZE

9   FOR MISSTATING THAT.

10       **THE COURT:**  OKAY.

11   BACK TO THE PROPOSED CLASS DEFINITION.  IT APPEARS AS IF

12   DISCOVERY HAS SHOWN THAT THE LABELS WITHOUT THE "IMPORTED FROM

13   ITALY" REFERENCE ROLLED OUT AS EARLY AS THE SECOND QUARTER OF

14   2015.  SO SHOULDN'T THE CLASS THEN END BY LET'S SAY MARCH OF

15   2015?

16       **MR. GUTRIDE:**  YOUR HONOR, THERE'S ACTUALLY A BIT OF A

17   DISCREPANCY ON THAT POINT.  WE DID DEPOSE THE WITNESS WHO MADE

18   THAT DECLARATION.  AT THE DEPOSITION, HIS TESTIMONY WAS THAT

19   THE NEW LABELS DIDN'T ARRIVE UNTIL THE THIRD QUARTER.  I

20   BELIEVE IT WAS THE END OF THE THIRD QUARTER.  WE ACTUALLY CITE

21   THAT TESTIMONY IN OUR MOTION.

22   AND THEN SUBSEQUENTLY HE SUBMITTED A DECLARATION THAT I

23   GUESS BASED ON FURTHER INVESTIGATION ON HIS PART HE HAD FOUND

24   THAT IT WAS EARLIER THAN HE THOUGHT.

25       **THE COURT:**  HE THOUGHT -- I'M SORRY.  WE HAVE BEEN IN

1  TRIAL ALL DAY, SO . . .

2          **MR. GUTRIDE:**  I AM SORRY.

3          **THE COURT:**  YOU NEED TO KEEP YOUR VOICE UP, PLEASE.

4          **MR. GUTRIDE:**  YES, YOUR HONOR.

5          **THE COURT:**  AND YOU'RE DOING A GOOD JOB IN TERMS OF

6  NOT SPEAKING VERY QUICKLY, BUT YOU DO HAVE TO KEEP YOUR VOICE

7  UP.

8          **MR. GUTRIDE:**  YES, YOUR HONOR.  I APOLOGIZE.

9      SO THE DECLARANT IS, I BELIEVE, MR. MUELLER.  HE HAS

10  CORRECTED A STATEMENT THAT WE RELIED ON FROM HIS DEPOSITION TO

11  SAY THAT THE LABELS CHANGED EARLIER.  AND AS WE STATED IN OUR

12  REPLY, THE -- ASSUMING THE TRUTH OF HIS CORRECTED STATEMENT,

13  THE REMEDY OR THE APPROPRIATE WAY TO DEAL WITH THAT IS TO CUT

14  THE CLASS PERIOD OFF A BIT EARLIER, AS YOUR HONOR HAS

15  SUGGESTED.

16      THE -- SO I THINK IF WE GO TO -- IF YOU DON'T MIND, I CAN

17  PULL UP HIS DECLARATION AND SEE EXACTLY WHAT HE SUGGESTED.

18  WHETHER MARCH IS THE RIGHT DATE, I'M NOT EXACTLY SURE.  BUT HE

19  SAYS . . .

20                  (PAUSE IN THE PROCEEDINGS.)

21          **THE COURT:**  THE REASON THAT OBVIOUSLY ISSUES LIKE THE

22  LENGTH OF THE CLASS, WHETHER SOMEONE -- WHETHER ORGANIC

23  PURCHASES ARE IN THE CLASS OR NOT, ALL OF THOSE -- THOSE

24  PARTICULAR ISSUES RELATE TO HOW YOU THINK YOU ARE GOING TO

25  HAVE COMMON PROOF.

1    GOING BACK TO THE ISSUE OF ORGANIC, IF ORGANIC PURCHASERS

2    CAN'T BE IN THE CLASS FOR A PORTION, THEN HOW DO YOU

3    ANTICIPATE COMMON PROOF IF YOU HAVE THEM IN THERE EVEN

4    UNDER -- EVEN WITH RESPECT TO THE BOTTLES THAT MAY HAVE BEEN

5    PURCHASED WHILE THEY WOULD HAVE BEEN IN THAT SUBSET OF THE

6    CLASS?

7        HAS YOUR EXPERT DEALT WITH THAT DISTINCTION?  AND HOW

8    WOULD THEY DEAL WITH THAT DISTINCTION?

9        **MR. GUTRIDE:**  I'M NOT SURE I UNDERSTAND THE QUESTION.

10   LET ME SEE IF I CAN REPHRASE IT AND GET -- SEE IF THIS IS WHAT

11   YOU ARE ASKING, YOUR HONOR.

12       ARE YOU ASKING WHETHER IN DOING THE DAMAGES ANALYSIS THE

13   EXPERT CAN DETERMINE -- CAN EXCLUDE THE PERIOD OF TIME WHEN IT

14   DIDN'T HAVE THE LABEL OR RATHER TREAT THAT AS A TIME WHEN IT

15   DIDN'T HAVE THE LABEL AND SEE WHETHER OR NOT THERE IS STILL A

16   PREMIUM FOR THE OTHER TIMES?  IS THAT THE QUESTION THAT YOUR

17   HONOR IS ASKING?

18       **THE COURT:**  I GUESS YOU CAN SAY IT THAT WAY.

19       **MR. GUTRIDE:**  OKAY.  THEN I THINK THE ANSWER IS YES,

20   YOUR HONOR, THAT IS EXACTLY WHAT THE EXPERT IS PREPARED TO DO

21   IN HIS REGRESSION ANALYSIS; TO TAKE NOT ONLY THESE PRODUCTS BY

22   THE DEFENDANT, BUT IT IS A WHOLE HOST OF COMPETITIVE OLIVE OIL

23   PRODUCTS, AND TO ASSIGN VARIABLES BASED ON WHETHER THEY SAY

24   "IMPORTED FROM ITALY" OR SOMETHING ABOUT ITALY, AND ALSO OTHER

25   THINGS.  WHETHER THEY SAY "EXTRA VIRGIN" OR SOME OTHER GRADE

1    OF OIL, WHETHER THEY SAY -- THERE ARE A WHOLE LIST OF

2    VARIABLES THAT HE SAYS HE IS GOING TO LOOK AT, THE PACKAGE

3    SIZE, THE PACKAGE TYPE, THE SALES CHANNEL, ET CETERA, ET

4    CETERA.  AND THAT THE REGRESSION BASICALLY TAKES ALL OF

5    THESE -- ALL OF THIS INFORMATION, AND THROUGH A STATISTICAL

6    COMPUTERIZED PROCESS DETERMINES WHAT FACTORS ON THE BOTTLE ARE

7    RESPONSIBLE FOR WHICH PORTIONS OF THE PRICE.

8        IT'S THE SAME TYPE OF ANALYSIS THAT COMPANIES DO ALL THE

9    TIME WHEN THEY ARE DECIDING SHOULD WE CHANGE OUR LABEL TO MAKE

10   THIS CLAIM OR THE OTHER CLAIM ON OUR LABEL TO DETERMINE HOW

11   THAT WILL AFFECT THE PRICING IN THE MARKET.  SO THAT IS

12   EXACTLY WHAT HE WILL DO.  AND THAT'S WHAT HE HAS DONE SO FAR.

13       GETTING BACK TO YOUR HONOR'S PRIOR QUESTION, I HAVE FOUND

14   THE TESTIMONY FROM MR. MUELLER.  IT IS THE VERY LAST SENTENCE

15   OF PARAGRAPH 22 OF HIS DECLARATION.  WHAT HE SAYS IS:

16           "AFTER CONSULTING WITH SNA'S HEAD OF LOGISTICS AND

17           LOOKING AT SNA'S BUSINESS RECORDS, MY BEST ESTIMATE

18           IS THAT PRODUCTS WITH THE NEW LABELS WOULD HAVE BEGUN

19           TO APPEAR ON RETAIL SHELVES IN MID-2015 AND NO LATER

20           THAN SEPTEMBER 2015."

21       SO IT'S JUST A RATHER MINOR CORRECTION TO WHAT HE SAID AT

22   DEPOSITION, WHICH IS THAT HE THOUGHT THEY WOULD HAVE ARRIVED

23   IN THE THIRD QUARTER OF 2015, BUT CERTAINLY BASED ON THAT

24   TESTIMONY WE DO NOT OBJECT TO ENDING THE CLASS PERIOD AT THE

25   END OF THE SECOND QUARTER OF 2015.

1    **THE COURT:** AND THAT IN TERMS OF -- TAKE A SEPARATE

2    TACT. MOVING TO ASCERTAINABILITY AS OPPOSED TO DAMAGES, HOW

3    IS IT THAT YOU ANTICIPATE SATISFYING THAT COMPONENT WITH

4    ORGANIC PURCHASERS GIVEN THE TIME PERIOD AS OPPOSED TO ANY

5    PURCHASER OF THE OIL WHERE WE KNOW THAT ALL THE OTHER BOTTLES

6    HAD THAT PARTICULAR PERIOD?

7    SO HOW ARE YOU GOING TO ASCERTAIN THE MEMBERS OF THE

8    CLASS?

9    **MR. GUTRIDE:** ASCERTAIN THE MEMBERS OF THE CLASS? TO

10   KNOW WHO THEY ARE, IN OTHER WORDS?

11   **THE COURT:** WITH RESPECT TO THE ORGANIC PURCHASERS.

12   **MR. GUTRIDE:** SO THE WAY THAT WE ARE GOING TO

13   ASCERTAIN THE MEMBERS OF THE CLASS IS THE SAME REGARDLESS OF

14   WHICH TYPE THEY PURCHASED.

15   TO TAKE A STEP BACK, YOUR HONOR, THIS IS A CLASS THAT'S

16   BEING ASCERTAINED BY WHAT'S CALLED SELF-IDENTIFICATION. AND

17   WE HAVE CITED SEVERAL CASES ABOUT THAT METHOD OF

18   IDENTIFICATION. CLASS MEMBERS HAVE TO READ THE DEFINITION,

19   AND DECIDE WHETHER OR NOT THEY ARE COVERED BY IT. AND IF

20   THERE IS LATER SOME REMEDY, THEN THEY WILL HAVE TO COME

21   FORWARD TO CLAIM THAT REMEDY.

22   THAT'S A VERY TRADITIONAL THING TO DO IN A CASE LIKE THIS

23   WHERE THERE AREN'T RECORDS OF CLASS MEMBERSHIP.

24   THE ORGANIC PURCHASERS PROVIDE, I WOULD SAY, ONE

25   ADDITIONAL THING THAT PEOPLE HAVE TO REMEMBER. SO IF YOU --

1  THE SIMPLEST WAY TO DEFINE THE CLASS IS ANYONE WHO PURCHASED

2  BERTOLLI -- EXCUSE ME.  ANYONE WHO PURCHASED FILIPPO BERIO

3  BRAND OLIVE OIL DURING THIS TIME PERIOD.  SO THAT'S THE ONLY

4  THING YOU HAVE TO REMEMBER, DID I PURCHASE THAT BRAND DURING

5  THAT TIME PERIOD.

6      IF YOU HAVE AN EXCLUSION FOR ORGANIC PURCHASERS DURING A

7  SPECIFIC TIME PERIOD, THEN YOU ALSO HAVE TO REMEMBER IN

8  ADDITION TO DID I PURCHASE THAT BRAND, WAS WHAT I PURCHASED

9  ORGANIC?  AND IF SO, WAS IT IN THAT EXCLUDED TIME PERIOD.  SO

10 IT MAKES AN ADDITIONAL SLIGHT COMPLICATION FOR THAT SUBGROUP

11 OF PEOPLE TO HAVE TO REMEMBER SOMETHING MORE.  BUT THE THEORY

12 UPON WHICH PEOPLE ARE BEING ASCERTAINED IS THE SAME.

13     TO MAKE IT SIMPLER, ONE THING WE COULD DO IS WE COULD SAY

14 ALL PEOPLE WHO PURCHASED FILIPPO BERIO OLIVE OIL IN THE TIME

15 PERIOD EXCEPT FOR ORGANIC.  IN OTHER WORDS, EVEN IF YOU

16 PURCHASED ORGANIC THAT WAS MISLABELED AS BEING IMPORTED FROM

17 ITALY, YOU ARE NOT GOING TO BE IN THIS CLASS.  THAT IS A

18 LITTLE BIT SIMPLER THAN HAVING TO REMEMBER WHEN DID I PURCHASE

19 THE ORGANIC.

20     BUT REALLY ANY OF THOSE POSSIBILITIES ARE APPROVABLE AS A

21 CLASS DEFINITION TO SAY ALL PURCHASES OF OIL EXCEPT FOR

22 ORGANIC OR ALL PURCHASES OF OIL EXCEPT FOR ORGANIC DURING THIS

23 2014 PERIOD.

24         **THE COURT:**  MR. HADDAD, I AM INCLINED ACTUALLY IN

25 THIS CASE TO APPROVE A NARROW CLASS.  I THINK THIS IS ONE OF

1    THOSE CASES WHERE IT IS NARROW ENOUGH THAT IT MEETS ALL OF THE

2    VARIOUS RULE 23 TESTS.  AND GIVEN THAT INITIAL INCLINATION,

3    I'LL LET YOU GO AHEAD AND ARGUE FOR A FEW MINUTES.

4            **MR. HADDAD:**  THANK YOU, YOUR HONOR.

5    OUR POSITION FOR YOUR CONSIDERATION WOULD BE THAT THERE

6    ARE TWO FUNDAMENTAL ELEMENTS ABOUT THE LABEL IN THIS CASE THAT

7    DISTINGUISH IT FROM THE OTHER CASES THAT -- CERTAINLY THAT THE

8    PLAINTIFF HAS RELIED ON HERE AND THAT WILL MEAN THAT

9    INDIVIDUAL ISSUES WILL IN THE END PREDOMINATE OVER THE COMMON

10   ISSUES.

11   THE FIRST OF THESE ATTRIBUTES IS THAT THE LABEL HAS ON THE

12   REVERSE SIDE A PLAIN STATEMENT OF THE COUNTRY OF ORIGIN FOR

13   THE CONSTITUENT OILS THAT ARE BLENDED TO MAKE THIS OLIVE OIL.

14   AND THAT'S THE CORE ISSUE THAT PLAINTIFF SAYS IS

15   MISLEADING.  SHE SAYS IF YOU LOOK AT THE BOTTLE YOU DON'T

16   KNOW, AND YOU ARE MISLED TO THINK THAT ALL OF THE CONSTITUENT

17   OILS COME FROM ITALY.  BUT HERE WE HAVE A PLAIN STATEMENT.

18   NOW, IN THE COMPLAINT IT'S CONFUSING.  BECAUSE THE

19   COMPLAINT SAYS THERE'S ONLY SMALL PRINT ON THE BACK OF THE

20   BOTTLE, CRYPTIC INFORMATION AS TO THE ACTUAL NON-ITALIAN

21   ORIGIN OF THE OLIVE OIL.

22   NOW WE HAVE SUBMITTED, THE COURT HAS ACCEPTED JUDICIAL

23   NOTICE OF A SAMPLE LABEL.  AND I ACTUALLY HAVE BROUGHT THE

24   BOTTLE THAT WE PHOTOGRAPHED, THE SAME LIGHT COAT AND THE LIKE

25   SO THE COURT COULD REVIEW THAT.

1       **THE COURT:**  HAVE YOU SEEN THAT?

2       **MR. GUTRIDE:**  I HAVEN'T SEEN THAT PARTICULAR BOTTLE,

3   BUT I HAVE SEEN A PICTURE.

4       **MR. HADDAD:**  AS I SAY, THE PHOTOGRAPH OF BOTH SIDES

5   IS IN OUR REQUEST FOR JUDICIAL NOTICE IN CONNECTION WITH THE

6   MOTION TO DISMISS.

7                  (BOTTLE HANDED TO COURT.)

8       SO ON THE BACK OF THE LABEL PRINTED IN WHITE LETTERS

9   AGAINST THE BACK LABEL IS THE STATEMENT "PACKED IN ITALY WITH

10  OLIVE OILS FROM ITALY, SPAIN, GREECE, TUNISIA."

11      THERE HAS BEEN NO CLAIM THAT THAT STATEMENT IS IN ANY WAY

12  FALSE.  THE CLAIM INSTEAD IS THAT REASONABLE CONSUMERS WOULD

13  NOT READ THAT; THAT REASONABLE CONSUMERS INSTEAD WOULD READ

14  THE FRONT OF THE LABEL ONLY.  THEY WOULD READ, AND THEY WOULD

15  SEE ON THE FRONT OF THE LABEL THE WORDS "IMPORTED FROM ITALY".

16  AND THE COMPLAINT SAYS THAT THE BOTTLES PROMINENTLY MAKE AN

17  ITALIAN ORIGIN CLAIM ON THE FRONT OF THE BOTTLE.

18      NOW I WOULD SUGGEST TO YOUR HONOR THAT THE BOTTLES, NOW

19  THAT THE COURT HAS THE ACTUAL LABELS AND THEY ARE ALL

20  CONSISTENT IN THIS REGARD, ON THE FRONT OF THE BOTTLE THE

21  WORDS "IMPORTED FROM ITALY" ARE NOT PROMINENT.  THE WORDS

22  "IMPORTED FROM ITALY" ARE, WE WOULD SUGGEST, LESS PROMINENT

23  THAN THE DESCRIPTION OF THE COUNTRY OF ORIGIN ON THE BACK.

24      SO TO OBTAIN CERTIFICATION, THE PLAINTIFF HAS TO SATISFY

25  THE OBJECTIVE REASONABLE CONSUMER TEST.

1    NOW, THEY RELY HEAVILY ON THE *WILLIAMS VERSUS GERBER*

2    DECISION.  AND WHEN THE COURT REVIEWS THAT, THE COURT WILL

3    RECALL THERE'S ACTUALLY A PHOTOGRAPH OF THE LABEL OF THE

4    GERBER FRUIT JUICE PRODUCT THAT WAS THE SUBJECT OF THAT MOTION

5    TO DISMISS AND APPEAL.  AND THE COURT HOLDS THAT FOR PURPOSES

6    OF A MOTION TO DISMISS, THE PLAINTIFFS COULD HAVE STANDING TO

7    SAY THAT THEY DIDN'T READ THE SPECIFIC INGREDIENTS AND INSTEAD

8    WERE MISLED BY THE FRONT OF THE LABEL.

9    BUT IN THAT CASE THE FRONT OF THE LABEL WAS AN ENORMOUS

10   LETTERING FRUIT JUICE SNACK AND PICTURES OF VARIOUS TYPES OF

11   FRUITS, ORANGES, GRAPEFRUITS, BERRIES, AND SO ON.  AND IT WAS

12   ONLY IN THE SMALL PRINT OF THE INGREDIENTS THAT YOU LEARNED

13   THAT THE ACTUAL CONTENTS WERE CORN SYRUP OR CANE SYRUP, SUGAR

14   AND THIRD SOME GRAPE JUICE.

15   SO THERE WAS A VERY PROMINENT STATEMENT ON THE FRONT AND A

16   VERY MODEST AND NOT ENTIRELY A DISCLAIMER.  IT WAS YOU HAD TO

17   PUT TWO AND TWO TOGETHER TO FIGURE OUT THERE WASN'T FRUIT IN

18   THERE.

19   WE HAVE THE REVERSE, I WOULD SAY, HERE.  WE ALSO THINK

20   *GERBER* IS NOT HELPFUL TO THE PLAINTIFFS BECAUSE THAT'S A

21   MOTION TO DISMISS.

22        **THE COURT:**  LET ME ASK YOU ON THAT ONE POINT THOUGH.

23   TO ME SOUNDS MORE LIKE A SUMMARY JUDGMENT ISSUE THAN IT

24   DOES A CLASS CERT ISSUE.  AT CLASS CERT JUDGES WALK A FINE

25   LINE BETWEEN MERITS ANALYSIS AND NON-MERITS ANALYSIS.  AND

1   THAT'S WHY I ALWAYS LOVE TO HAVE TRIAL JUDGES ON APPELLATE

2   COURTS SO THAT THEY CAN -- SOMEONE CAN EXPLAIN IN CONFERENCE

3   THE STRUGGLES THAT WE HAVE TRYING TO PARSE OUT HOW WE ARE

4   SUPPOSED TO DEAL WITH THE OPINIONS THAT COME DOWN.

5       BUT, YOU KNOW, WE STRUGGLE WITH HOW MUCH MERITS ANALYSIS

6   WE ARE SUPPOSED TO BE DOING.  THAT SUGGESTS TO ME THAT WHAT

7   YOU'RE SAYING IS AS A MATTER OF LAW THERE'S NO TRIABLE ISSUE

8   AS OPPOSED TO WHETHER OR NOT THERE'S A COMMON ISSUE THAT

9   SHOULD BE LITIGATED.

10              **MR. HADDAD:**  RIGHT.

11             **THE COURT:**  THERE'S A SLIGHT DIFFERENCE THERE.

12             **MR. HADDAD:**  THERE IS.  I WOULD LIKE TO ADDRESS THAT

13  STRAIGHT ON BECAUSE I WOULD -- LAST THING I WANT TO DO IS HAVE

14  THE COURT THINK I AM ARGUING A MERITS ISSUE.  I REALLY AM NOT.

15      MS. KUMAR VERY WELL MAY BE ABLE TO SIT IN FRONT OF A JURY

16  AND CREDIBLY EXPLAIN, YOU KNOW WHAT?  I LOOKED AT THIS.  I

17  FOUND THAT -- A STATEMENT ABOUT "IMPORTED FROM ITALY".  I

18  THOUGHT I HAD A HUNDRED PERCENT ITALIAN SOURCED OLIVE OIL.  I

19  CHECKED THE BEST BY DATE, IT LOOKED GOOD, AND OFF I WENT.  IF

20  THE JURY BELIEVES THAT AND ALL THE REST OF HER CLAIMS, THEY'LL

21  FIND FOR HER.

22      BUT HERE, THE COURT HAS TO ASK, WE WOULD SUBMIT, A

23  SEPARATE QUESTION.  THE COURT HAS TO ASK IS THAT WHAT

24  REASONABLE CONSUMERS, AND ALL THE PURCHASERS WOULD BE

25  REASONABLE IN THIS ASPECT, IS THAT WHAT THEY ALL WOULD DO SO

1    THAT I HAVE A COMMON COHESIVE CLASS.

2         AND THAT CONCEPT OF COHESION IS WHAT JUDGE BREYER REFERRED

3    TO IN THE *JONES* CASE.  AND IT'S VERY MUCH, TO GO TO THE COURT

4    OF APPEALS, IT'S VERY MUCH WHAT THE CALIFORNIA COURT OF APPEAL

5    WAS CONCERNED WITH IN THE *TUCKER* CASE.  AND IT'S *TUCKER VERSUS*

6    *PACIFIC BELL*, AND WE HAVE TALKED ABOUT THIS CASE.  BUT THE

7    GIST OF *TUCKER* WAS, THE PLAINTIFF SAID THE GENERAL STATEMENTS

8    THAT PHONE COMPANIES MAKE ABOUT HOW MANY MINUTES THEY'RE

9    SELLING YOU IN A PLAN ARE MISLEADING BECAUSE, IN FACT, YOU GET

10   FEWER MINUTES BECAUSE EACH CALL THAT GOES FOR A PARTIAL MINUTE

11   IS THEN ROUNDED UP SO THAT AT THE END OF THE DAY, YOU DON'T

12   GET THE FULL 200 OR WHATEVER MINUTES THERE WERE.

13        AND THE COURT SAID YOU CANNOT HAVE A CLASS ACTION ON THAT

14   BECAUSE IF YOU READ THE CONSUMER AGREEMENT, IT TELLS YOU WE

15   ROUND UP.  AND WHILE THERE MAY BE SOME INDIVIDUALS WHO DIDN'T

16   SEE THE CONSUMER AGREEMENT, WE CAN'T SAY THAT THE WHOLE CLASS

17   IS FULL OF REASONABLE CONSUMERS WHO NEVER READ THE CONSUMER

18   AGREEMENT.  SO THEY REFUSED TO CERTIFY THE CLASS.

19        I THINK THAT'S THE SITUATION WE ARE IN HERE.  WE NEED TO

20   ASK, IS THERE COMMON PROOF OF DECEPTION?  AND IN *TUCKER* THE

21   COURT SAID, YOU KNOW WHAT?  ANYBODY WHO READ THE STATEMENT

22   THAT WE DON'T ROUND UP WOULD KNOW THAT WE'RE NOT ROUNDING UP.

23        AND THE EXACT SAME THING IS TRUE HERE.  ANYONE WHO READS

24   THAT THE SOURCE OF THE OILS IS THE COUNTRIES OF ITALY, SPAIN,

25   GREECE, AND TUNISIA KNOWS THAT THAT IS THE SOURCE OF THE OILS.

1    SO UNLESS WE ARE PREPARED TO SAY THAT NO ONE REASONABLY

2   WOULD EVER READ THAT LANGUAGE, THEN WE WOULD SUBMIT WE DON'T

3   HAVE A COHESIVE CLASS BECAUSE IT'S GOING TO CONTAIN PEOPLE WHO

4   READ THAT.

5    AND WHILE WE UNDERSTAND THERE'S CONCERN ABOUT FINE PRINT

6   DISCLOSURES, THAT STATEMENT APPEARS RIGHT NEXT TO THE

7   NUTRITIONAL LABELING THAT'S REQUIRED BY LAW.  WE KNOW THAT

8   FEDERAL LAW PRESUMES THAT IT'S REASONABLE TO PLACE NUTRITIONAL

9   LABELING IN THE SAME POSITION THAT WE ARE PLACING OUR

10   STATEMENT ABOUT THE COUNTRY OF ORIGIN FOR THE BLENDED OILS.

11    AND I SUBMIT THAT I WOULD BE VERY SURPRISED IF IN THE

12   ABSENCE OF A STATEMENT, LET'S SAY THERE WAS SOME ADDITIONAL

13   STATEMENT WE NEEDED TO MAKE ABOUT OUR OIL, IF WE CAME TO A

14   COURT AND SAID YOU KNOW WHAT?  WE WOULD LIKE TO PUT IT IN

15   SMALL BLACK FONT AGAINST A GREEN BACKGROUND UP IN THIS TINY

16   CORNER OF THE FRONT OF OUR LABEL.  I WOULD BE HARD PRESSED TO

17   THINK A COURT WOULD SAY, NO, THAT'S RIGHT, THAT'S WHERE IT

18   GOES, NOT ON THE BACK WITH ALL THE OTHER PRODUCT INFORMATION

19   THAT'S REQUIRED.

20    SO I THINK IT'S, AT A MINIMUM, IT'S VERY DIFFICULT TO SAY

21   UNDER THE OBJECTIVE TEST THAT IT'S AN OBJECTIVELY UNREASONABLE

22   DISCLOSURE THAT NO ONE WOULD EVER REASONABLY LOOK AT.  SO

23   THAT'S OUR FIRST POINT.

24    I WOULD LIKE TO MAKE THE SECOND POINT, IF THE COURT HAS

25   TIME, AND THAT'S REALLY INDEPENDENT IN SOME SENSE TO THE FIRST

1    POINT.

2         ACTUALLY ONE FINAL THING.  THIS DISCLOSURE ISSUE IS NOT

3    PRESENT AT ALL IN THE *SAFEWAY* CASE WHICH MY COLLEAGUE HAS

4    ALERTED THE COURT TO THE TENTATIVE OPINION IN THE *SAFEWAY*

5    MATTERS.  THERE IS NO DISCUSSION OF THIS ISSUE THERE.

6         ALL RIGHT.  TO THE SECOND POINT --

7              **THE COURT:**  THAT'S THE ONE BY JUDGE SMITH?

8              **MR. HADDAD:**  I BELIEVE THAT'S RIGHT, IN ALAMEDA

9    COUNTY.  COUNSEL WROTE TO YOU ABOUT THAT I THINK ON FRIDAY.

10        SO THE SECOND POINT GOES TO, WELL, WHAT -- WHAT IS IT

11   ABOUT THE "IMPORTED FROM ITALY" PHRASE THAT ALLOWS US TO SAY

12   THAT THERE'S BEEN EXPOSURE TO A MISLEADING STATEMENT THAT

13   WOULD BE COMMONLY, YOU KNOW, DECEPTIVE TO ALL; THAT THERE'S

14   A -- IS THERE A GENERAL UNDERSTANDING OF WHAT "IMPORTED FROM

15   ITALY" MEANS IN THE CONTEXT OF A LABEL ON A BOTTLE OF OLIVE

16   OIL THAT WOULD MEAN THAT EVERYBODY WOULD, IF THEY READ IT,

17   EVERYBODY WOULD TAKE IT THE SAME WAY.

18        AND PLAINTIFF SIMPLY HAS NO PROOF, WE SUBMIT, THAT THERE

19   IS ANY SUCH COMMON UNDERSTANDING.  YOU KNOW, IN THE FIRST

20   PLACE, PLAINTIFF'S OWN TESTIMONY ABOUT HER UNDERSTANDING OF

21   THIS WORD IS DIFFERENT TODAY, SHE TESTIFIED, THAN IT WAS AT

22   THE TIME OF HER PURCHASE.

23        TODAY SHE UNDERSTANDS IT TO MEAN SHIPPED OUT OF ONE

24   COUNTRY INTO ANOTHER.  AND IF THE COURT WERE TO LOOK AT THE

25   DICTIONARY DEFINITION, WE CITED A COUPLE OF DICTIONARY

DEFINITIONS IN OUR BRIEF, THE COURT WOULD SEE THAT THE COMMON

DICTIONARY DEFINITION OF "IMPORTED" IS TO BE BROUGHT IN FROM.

NOW, IT DOESN'T MEAN THAT SOME CONSUMERS MIGHT NOT

UNDERSTAND IT THE WAY MS. KUMAR DID, BUT IT'S FUNDAMENTAL TO

ASK -- CAN WE REALLY SAY THAT NO OBJECTIVELY REASONABLE

CONSUMER WOULD UNDERSTAND "IMPORTED" TO BE BROUGHT IN FROM OR

SHIPPED IN FROM?

AND THERE'S NO SURVEY EVIDENCE ON THE MEANING OF "IMPORTED

FROM ITALY" SO PLAINTIFFS HAVEN'T GIVEN ANY SURVEY QUESTION OR

ANSWER ON WHAT IS "IMPORTED FROM ITALY" MEAN.  AND THE

REGULATIONS THEY CITE DON'T ANSWER THE QUESTION OF WHAT

"IMPORTED FROM ITALY" MEANS.  THERE'S NO REGULATION THAT SAYS

YOU CAN ONLY SAY "IMPORTED FROM ITALY" IN THIS, THAT, OR THE

OTHER CIRCUMSTANCE.

AND THAT'S CRITICALLY IMPORTANT.  THE CLOSEST REGULATION

THAT PROVIDES GUIDANCE HERE IS 19 CFR SECTION 134.46, WHICH

PLAINTIFFS HAVE CITED IN THEIR BRIEF, WHICH SAYS THAT -- AND I

WILL PARAPHRASE FOR SIMPLICITY, THAT IF A FOREIGN COUNTRY'S

NAME APPEARS ON A LABEL, AND NOW I WILL QUOTE, "THERE SHALL

APPEAR" ELLIPSIS, "IN CLOSE PROXIMITY TO SUCH WORDS" ELLIPSIS,

"THE NAME OF THE COUNTRY OF ORIGIN" AND THEN FURTHER ELLIPSIS.

SO IT'S THIS "CLOSE PROXIMITY" IDEA THAT IS IN THE REG.

AND THAT'S THE CLOSEST REG THERE IS.  SO LET'S COMPARE THIS TO

THE CASE -- TO THE CASES THAT THEY RELY ON SUCH AS THE *BROWN*

*VERSUS HAIN CELESTIAL*, I THINK WAS THE NAME OF THE DEFENDANT

1    CASE WHERE THE CALIFORNIA ORGANIC PRODUCTS ACT WAS AT STAKE.

2    AND THERE YOU HAD A STATUTORY DEFINITION THAT SAYS A

3    PRODUCT'S ORGANIC ONLY IF IT'S AT LEAST 70 PERCENT ORGANIC.

4    SO THERE YOU KNEW WHAT YOU WERE DEALING WITH.  IF YOU WERE

5    GOING TO PUT "ORGANIC" ON YOUR LABEL, AND THERE'S NO

6    SUGGESTION IN THAT CASE THAT ORGANIC WAS JUST A TINY LITTLE

7    BLACK LETTERING ON A DARK FONT, BUT YOU KNEW WHAT YOU HAD TO

8    DO UNDER STATE LAW TO USE THAT WORD AT ALL.  YOU HAD TO BE

9    70 PERCENT ORGANIC.

10    HERE, THERE'S NOTHING THAT SAYS YOU CAN ONLY USE THE WORD

11    "IMPORTED" FROM A COUNTRY IF A HUNDRED PERCENT OF THE

12    CONSTITUENT PARTS ARE SOURCED FROM THAT COUNTRY.

13    SO, YOU KNOW, IN THIS CASE I THINK WE ARE REALLY A LOT

14    CLOSER TO THE *JONES* DECISION THAN TO ANY OF THE OTHER

15    DECISIONS THAT HAVE BEEN CITED TO THE COURT.  IN *JONES*, THE

16    ISSUE WAS THE WORD "NATURAL".  AND THE COURT EXPLAINED THERE

17    JUST ISN'T A SINGLE CONTROLLING DEFINITION OF THE WORD

18    "NATURAL".  THE FDA HAD NO REGULATIONS, ONLY A POLICY GUIDE

19    THAT WAS ADVISORY AND THUS INSUFFICIENT TO CREATE A

20    CONTROLLING DEFINITION.

21    AND SO, AGAIN, TO BE -- TO BE CLEAR, THE SAME POINT

22    APPLIES ON THIS ARGUMENT AS TO THE PRIOR ARGUMENT ABOUT THE

23    MERITS.  WE ARE NOT SAYING THAT THEY CAN OR CAN'T, IF THEY

24    WENT TO THE MERITS -- WE DON'T THINK THEY WOULD WIN OBVIOUSLY

25    ON THE MERITS FOR THE REASONS I JUST SAID.  BUT LET'S ASSUME

1    THEY COULD.  IT DOESN'T REALLY MATTER BECAUSE THERE STILL HAS

2    TO BE, FROM THE CONSUMER PERSPECTIVE, THERE STILL HAS TO BE A

3    SATISFACTION BY THEM WITH EVIDENCE THAT THE OBJECTIVELY

4    REASONABLE CONSUMER WOULD ALL UNDERSTAND THESE WORDS IN THE

5    WAY THAT THEY SAY THE LAW REQUIRES, EVEN THOUGH THEY CANNOT

6    POINT TO A LAW THAT SAYS THAT.

7        AND SO IN THE ABSENCE OF EVIDENCE OF THAT OBJECTIVELY

8    REASONABLE UNDERSTANDING, WHAT WE HAVE GOT IS AN AMBIGUOUS

9    PHRASE THAT ONE PURCHASER MAY INTERPRET ONE WAY, ANOTHER MAY

10   INTERPRET ANOTHER, AND A THIRD MAY NEVER HAVE SEEN, THAT A

11   FOURTH MAY HAVE SEEN IN CONJUNCTION WITH THE CLEAR, EXPRESS,

12   AND TRUTHFUL STATEMENT ON THE BACK WHICH, FRANKLY, IS AT

13   LEAST, WE THINK, IS THE SAME FONT SIZE AND A LOT EASIER TO

14   READ BECAUSE OF THE WAY IT'S PRINT.

15       **THE COURT:**  DIDN'T THE FONT SIZE CHANGE OVER TIME

16   THOUGH?

17       **MR. HADDAD:**  ON THE "IMPORTED FROM ITALY", YES, YOUR

18   HONOR.  ON THE CHALLENGED PHRASE IT SHRANK DURING THE TIME

19   PERIOD.  SO IN ADDITION TO THE ORGANICS ISSUE THAT YOUR HONOR

20   RAISED, HOW DO WE DEAL WITH THAT?  I MEAN -- AND WE SHOW IN

21   MR. MUELLER'S DECLARATION, WE SHOWED EXEMPLARS OF HOW IT

22   SHRUNK.  THIS IS NOT AS SMALL AS IT GOT OVER THE TIME PERIOD.

23   I DIDN'T BRING THE SMALLEST ONE.

24       BUT THE COURT CAN LOOK AT THE PHOTOGRAPHS OF THE LABEL,

25   AND THE COURT WILL SEE THE FONT SIZE SHRINKS TO BELOW SIX

FONT.  AND, YOU KNOW, THERE ARE BOTTLES ON THE STORE AT THE
SAME TIME, THERE'S AN ORGANIC BOTTLE WITHOUT AN "IMPORTED FROM
ITALY" ON IT.

IF A STORE ALSO SELLS ANY OTHER LINE BESIDES THE ORGANIC,
THEN THE ONES, YOU KNOW, WITH IT WILL BE SIDE BY SIDE.  WHICH
ONE WILL THE CUSTOMER LOOK AT?  DID THEY SEE THE ONE WITH THE
LESS THAT SIX-POINT FONT?  WOULD YOU EVEN SEE -- YOU HAVE TO
SCRUTINIZE THESE BOTTLES, I WOULD SUBMIT.

IT'S A LITTLE BIT LIKE THE GAME WHERE THEY SAY HOW MANY,
YOU KNOW, OF THESE FIGURES CAN YOU FIND ON THE PAGE.  AND YOU
HAVE TO LOOK AROUND TO SEE THE ONE THAT YOUR EYE IS
IMMEDIATELY DRAWN TO.

I THINK WHEN THE COURT LOOKS AT THE LABEL, THE COURT WILL
SEE THE EYE IS DRAWN TO THE NAME OF THE BRAND, TO THE
DESCRIPTION OF THE PRODUCT, AND TO ITS USE FOR, IN THE CASE OF
EXTRA VIRGIN OLIVE OIL, FOR DRESSING AND MARINADES.  THAT'S
THE PRODUCT THAT'S BEING SOLD, AND THERE'S A PRICE.  AND
IT'S -- WE WOULD SUGGEST THE ISSUE OF WHETHER YOU WERE EVEN
EXPOSED, WHILE IT'S OFTEN SAID TO BE AN EXPOSURE IS A COMMON
ISSUE IN A LABELING CASE, WE WOULD SAY, YES, IF IT'S GERBER.
IF THE NAME OF YOUR PRODUCT IS FRUIT JUICE SNACK.  IF THE NAME
OF YOUR PRODUCT IN THE RECENT *MULLINS* CASE IS JOINT JUICE, IF
THE NAME OF YOUR PRODUCT IS MISLEADING, YES.  BUT HERE --

**THE COURT:**  ALL RIGHT.  I HAVE IT.

**MR. HADDAD:**  -- DIFFERENT QUESTION.

1          **THE COURT:**  RESPONSE.

2          **MR. GUTRIDE:**  THANK YOU, YOUR HONOR.

3      I THINK I WOULD HIKE TO BE START BY SAYING THAT I AGREE

4  WITH YOUR HONOR'S INCLINATION --

5          **THE COURT:**  I'M SURE YOU DO.

6          **MR. GUTRIDE:**  OF COURSE.  AND ALSO --

7          **THE COURT:**  I WOULD LIKE ACTUALLY TO HEAR PRIMARILY

8  ABOUT THE EVIDENCE.

9          **MR. GUTRIDE:**  YES, YOUR HONOR.

10      SO, FIRST OF ALL, THE MAJORITY OF THE ARGUMENT THAT'S BEEN

11  MADE TODAY IS, IN FACT, A MERITS ARGUMENT.  IT'S NOT A CLASS

12  CERT ARGUMENT.

13          **THE COURT:**  WHAT IS YOUR EVIDENCE?

14          **MR. GUTRIDE:**  THE EVIDENCE ON WHICH -- ON WHY THIS IS

15  MISLEADING, YOUR HONOR?

16          **THE COURT:**  THE EVIDENCE THAT YOU ARE GOING TO

17  PROFFER TO A JURY TO DEMONSTRATE OR EVIDENCE THAT EVERYBODY

18  HAS A CONSISTENT VIEW.

19          **MR. GUTRIDE:**  OKAY.  SO THERE'S -- I HAVE TWO

20  RESPONSES TO THAT, YOUR HONOR, OR MAYBE THREE RESPONSES.

21      FIRST IS THAT IT'S -- WE DO NOT ACTUALLY HAVE TO DO THAT

22  BECAUSE THIS IS A REPRESENTATION THAT IS UNLAWFUL UNDER THE

23  TARIFF ACT AND UNDER THE FOOD DRUG AND COSMETIC ACT.

24  MR. HADDAD DID READ A PORTION OF ONE OF THE RELEVANT

25  REGULATIONS WHICH SAYS THAT IF YOU HAVE ANYTHING ABOUT A

1    COUNTRY ON A LABEL, YOU HAVE TO SAY WHAT THE TRUE COUNTRY OF

2    ORIGIN IS IN CLOSE PROXIMITY TO THAT STATEMENT.

3        PUTTING SOMETHING ON THE BACK OF THE LABEL, THE BACK LABEL

4    OF A BOTTLE IS NOT IN CLOSE PROXIMITY TO A REPRESENTATION ON

5    THE FRONT.

6            **THE COURT:**  SO YOUR PERSPECTIVE IS THAT THE STATEMENT

7    AS A MATTER OF LAW "IMPORTED FROM ITALY" IS BY DEFINITION A

8    STATEMENT OF ORIGIN?

9        IS THAT YOUR -- IN RESPONSE TO --

10           **MR. GUTRIDE:**  NO.

11           **THE COURT:**  IN RESPONSE TO WHAT YOU SAID --

12           **MR. GUTRIDE:**  NO, YOUR HONOR.  OUR ARGUMENT IS AS

13   FOLLOWS:  THAT WHEN YOU MAKE ANY CLAIM ABOUT A COUNTRY ON A

14   LABEL, I CAN READ THE REGULATION, THAT YOU HAVE TO SAY WHAT

15   THE COUNTRY OF ORIGIN IS IN CLOSE PROXIMITY.

16       AND THE COUNTRY -- WHAT THAT TERMS QUOTE "COUNTRY OF

17   ORIGIN" UNQUOTE IS ACTUALLY A DEFINED TERM IN THE REGULATIONS,

18   AND THERE ARE MANY INTERPRETIVE DECISIONS ABOUT WHAT THAT

19   MEANS.  THIS PRODUCT DOES NOT HAVE ITALY AS IT'S QUOTE

20   "COUNTRY OF ORIGIN" UNQUOTE.  BECAUSE --

21           **THE COURT:**  COUNTRY OF ORIGIN, THOUGH, UNDER THE

22   STATUTE, REFERS TO STATEMENTS THAT ARE PRECEDED BY REFERENCES

23   TO "MADE IN" OR "PRODUCT OF".  LIKE "MADE IN THE U.S.A.,"

24   RIGHT?

25       I'M TRYING TO UNDERSTAND.  BECAUSE YOU'VE MADE -- THE

1    FIRST ARGUMENT YOU ARE MAKING HERE SOUNDS LIKE SUMMARY

2    JUDGMENT.  THAT IS, WE DON'T EVEN HAVE TO GO TO A JURY.  AS A

3    MATTER OF LAW, IT'S UNLAWFUL.  AND SO WHAT IS THERE FOR A JURY

4    TO DECIDE?

5        THAT'S WHY I AM ASKING THE QUESTION.  ARE YOU SAYING, IS

6    IT YOUR POSITION THAT "IMPORTED FROM ITALY" IS AS A MATTER OF

7    LAW A STATEMENT OF ORIGIN?  AND THE CFR ACTUALLY DOESN'T

8    SUPPORT THAT, SO I WOULD LIKE TO KNOW WHAT YOUR POSITION IS.

9        **MR. GUTRIDE:**  I WILL TRY TO -- I'M TRYING TO BE VERY

10   PRECISE, YOUR HONOR, AND I APOLOGIZE THAT IT'S CONFUSING.

11   HERE'S HOW IT GOES.

12       WE ARE NOT SAYING THAT THE WORDS "IMPORTED FROM ITALY" ARE

13   A QUOTE "STATEMENT OF THE COUNTRY OF ORIGIN."  THAT'S A

14   DEFINED TERM.

15       WHAT WE SAY IS THAT -- AND THIS IS FROM THE SAME

16   REGULATION THAT MR. HADDAD READ, 19 CFR 134.46.  WHAT THAT

17   REGULATION SAYS IS THAT IF YOU USE A COUNTRY NAME AT ALL, IT

18   DOESN'T HAVE TO SAY "MADE IN", IT DOESN'T SAY "PRODUCT OF", IT

19   JUST SAYS IF IN ANY CASE IN WHICH THE WORDS QUOTE "UNITED

20   STATES" UNQUOTE, OR QUOTE "AMERICAN" UNQUOTE, THE LETTERS

21   QUOTE "U.S.A." UNQUOTE, ANY VARIATION OF SUCH WORDS OR

22   LETTERS, OR THE NAME OF ANY CITY OR LOCATION IN THE UNITED

23   STATES, OR THE NAME OF ANY FOREIGN COUNTRY OR LOCALITY OTHER

24   THAN THE COUNTRY OR LOCALITY IN WHICH THE ARTICLE WAS

25   MANUFACTURED OR PRODUCED, APPEAR ON AN IMPORTED ARTICLE OR ITS

1   CONTAINER, AND THOSE WORDS, LETTERS, OR NAMES MAY MISLEAD OR

2   DECEIVE THE ULTIMATE PURCHASER AS TO THE ACTUAL COUNTRY OF

3   ORIGIN OF THE ARTICLE, THERE SHALL APPEAR LEGIBLY AND

4   PERMANENT IN CLOSE PROXIMITY TO SUCH WORDS, LETTERS, OR NAME

5   AND AT LEAST -- AND IN AT LEAST A COMPARABLE SIZE THE NAME OF

6   THE COUNTRY OF ORIGIN.

7       AND THAT IS WHAT IS MISSING FROM THE FRONT OF THIS LABEL.

8   THE COUNTRY OF ORIGIN DOES NOT APPEAR THERE.  BECAUSE WHAT IT

9   NEEDS TO SAY, AS IS REFLECTED IN THE CUSTOMS AND BORDER

10  PROTECTION BUREAU RULINGS ABOUT OLIVE OIL, IF IT SAYS ON

11  THE -- THAT IT CANNOT SAY QUOTE "IMPORTED FROM ITALY" ON THE

12  FRONT LABEL.  WHAT IT NEEDS TO SAY IS, AT A MINIMUM, IF IT

13  SAYS "IMPORTED FROM ITALY" IT HAS TO SAY RIGHT AFTER THAT

14  "MADE FROM OILS FROM THE FOLLOWING COUNTRIES" OR "BLENDED IN

15  ITALY FROM OILS FROM THE FOLLOWING COUNTRIES".  IT CANNOT SAY

16  THAT ON THE BACK.

17          **THE COURT:**  SO SUMMARY JUDGMENT.

18          **MR. GUTRIDE:**  THAT IS THE FIRST RESPONSE.  WE WILL BE

19  ASKING FOR SUMMARY JUDGMENT ASSUMING YOUR HONOR DENIES OUR

20  MOTION FOR SUMMARY JUDGMENT, THEN MOVING TO WHAT WE WOULD

21  ACTUALLY PRESENT EVIDENCE AT A TRIAL WOULD BE AT LEAST THE

22  FOLLOWING TWO OTHER THINGS.

23      ONE IS THAT THE DEFENDANT'S INTENTIONALLY PLACED THIS

24  INFORMATION ON THE FRONT LABEL, AND WHETHER IT'S SMALL OR NOT,

25  THESE LABELS -- THE LABELS THEMSELVES, YOUR HONOR, ARE QUITE

1    SMALL.  AND AS ANY PRODUCT LABELING PERSON CAN TELL YOU, REAL

2    ESTATE IS OF A PREMIUM WHEN YOU'RE TALKING ABOUT A CONSUMER

3    PRODUCT.  THE FACT THEY CHOSE TO TAKE UP THIS PORTION OF THE

4    LABEL WITH THIS STATEMENT IS BECAUSE THEY KNOW THAT PEOPLE

5    CARE ABOUT IT AND THAT IT AFFECTS THE PRICE OF THE PRODUCT.

6         AND WE HAVE PUT BEFORE YOUR HONOR, EVEN ON THIS CLASS

7    CERTIFICATION MOTION, SOME OF THE COLOR FROM THE DOCUMENTS,

8    FROM THE INTERNAL DOCUMENTS THAT SHOW THAT.  THEY HAVE DONE

9    STUDIES ABOUT WHAT CONSUMERS CARE ABOUT IN TERMS OF THEIR

10   OILS.  THEY HAVE INTERNAL COMMUNICATIONS WHERE THEY TALKED

11   ABOUT OFFERING A FREQUENTLY ASKED QUESTIONS ON THE WEBSITE

12   THAT WOULD HAVE MADE IT CLEARER THAT THE OIL IS NOT FROM

13   ITALY, AND THEY DECIDED NOT TO DO THAT.

14        THEY KNOW, THEY DID IT INTENTIONALLY TO MISLEAD PEOPLE.

15   THAT'S THE SECOND POINT.  THERE IS CASE LAW THAT SAYS WHEN

16   THERE IS INTENT, THAT YOU CAN INFER FROM THAT THAT THERE IS

17   MATERIALITY.

18        AND THE THIRD POINT, YOUR HONOR, WOULD BE GENERAL EVIDENCE

19   OF MATERIALITY WHICH WOULD BE IN THE NATURE OF EXPERT

20   TESTIMONY BASED ON, FOR EXAMPLE, THE SURVEYS THAT THE

21   DEFENDANT HAS COMMISSIONED AS TO WHAT PEOPLE THINK.  THE

22   SURVEYS AND THE EVIDENCE THAT MR. WEIR HAS PUT IN HIS

23   DECLARATION WHICH TALKS ABOUT HOW HISTORICALLY THERE IS, IN

24   FACT, A PRICE PREMIUM ASSOCIATED WITH OIL, OLIVE OIL THAT IS

25   LABELED AS BEING FROM ITALY.  THAT COUNTRY OF ORIGIN DO AFFECT

1    THE PRICE.

2        WE MIGHT VERY WELL PUT IN OUR OWN SURVEY EVIDENCE, HIRE

3    OUR OWN SURVEY EXPERT TO GO OUT AND FIND OUT WHAT PEOPLE THINK

4    ABOUT THIS AND WHAT THEY BELIEVE IT MEANS.

5        BUT ALL OF THAT WILL BE TO GOING TO SHOW THAT A REASONABLE

6    CONSUMER WOULD BE LIKELY TO BE MISLED BY THIS PHRASE.

7            **THE COURT:**  ALL RIGHT.

8        VERY BRIEF RESPONSE.

9            **MR. HADDAD:**  THANK YOU, YOUR HONOR.  I WILL BE BRIEF.

10        ON THE POINT ABOUT THE SUMMARY JUDGMENT ARGUMENT, WE ARE

11    NOT HERE ON AN INJUNCTION CLASS AND WE ARE NOT HERE ON A

12    MOTION TO DISMISS.  THEY NEED TO CERTIFY A CLASS OF PEOPLE WHO

13    WERE HARMED.  AND THERE'S NO HARM IF YOU'RE NOT MISLED.  SO

14    WHAT A REG SAYS, AND WHAT, YOU KNOW, CUSTOMS VIOLATION IT

15    DOESN'T MATTER.  IT DOESN'T CREATE HARM UNLESS THE CONSUMER IS

16    MISLED FOR RESTITUTION PURPOSES FOR A CLASS.

17        SECOND, HE HAS NO REGULATION THAT SAYS THAT THE BACK OF A

18    LABEL IS NOT CLOSE PROXIMITY WITH THE FRONT.  HE HAS CUSTOMS

19    OFFICIALS APPLYING IT TO AN INDIVIDUAL LABEL, WHICH IS NOT IN

20    THE RECORD.  THE PRODUCT'S NOT IN THE RECORD.  THE LETTER'S IN

21    THE RECORD, BUT WHAT'S ALSO IN THE RECORD IS CUSTOMS HAS NEVER

22    OBJECTED, EVER TO THE FILIPPO BERIO LABEL.

23        WITH RESPECT TO THE SURVEYS, THE CLOSEST HE CAME TO

24    ANSWERING THE COURT'S QUESTION AS TO WHAT'S THE EVIDENCE OF A

25    COMMON UNDERSTANDING WAS A SURVEY THEY HE SAID THEY COULD DO

1    IN THE FUTURE.  THE SURVEYS IN THE RECORD THAT THE DEFENDANT

2    HAS DONE, NONE OF THEM SURVEYS THE MEANING OF "IMPORTED FROM

3    ITALY".  THE COURT CAN LOOK AT EVERY QUESTION THAT'S HERE.

4    NONE SAYS WOULD DO YOU UNDERSTAND "IMPORTED FROM ITALY" TO

5    MEAN.  AND HE HAS NO -- THE DOCUMENTS HE SAYS FROM THE COMPANY

6    TALK ABOUT THE ISSUE OF COUNTRY OF ORIGIN OR THOSE KINDS OF

7    THINGS GENERALLY, BUT IT STILL DOESN'T ESTABLISH A COMMONALITY

8    OF KNOWLEDGE ABOUT THE CHALLENGED STATEMENT.

9        THANK YOU.

10           **MR. GUTRIDE:**  MAY I RESPOND TO JUST ONE POINT, YOUR

11   HONOR?

12           **THE COURT:**  I WOULD LIKE YOU TO RESPOND ON THE

13   HARM --

14           **MR. GUTRIDE:**  YES, YOUR HONOR.

15           **THE COURT:**  -- GIVEN THAT I AGREE WE DON'T HAVE AN

16   INJUNCTIVE CLASS HERE.

17           **MR. GUTRIDE:**  YOUR HONOR, THE REASON THAT THERE'S

18   HARM IS FOR -- IS IDENTIFIED AT LENGTH IN MR. WEIR'S

19   DECLARATION AND PARTICULARLY IN HIS REPLY DECLARATION WHERE HE

20   RESPONDS TO ALL THE OBJECTIONS THAT THE DEFENDANT HAS RAISED;

21   THAT THERE IS A STATISTICALLY SIGNIFICANT PREMIUM THAT IS

22   ATTRIBUTABLE TO THIS STATEMENT ON OLIVE OIL LABELS.  SO ALL

23   CONSUMERS PAY MORE FOR THE OLIVE OIL THAN THEY WOULD HAVE PAID

24   HAD THAT REPRESENTATION NOT BEEN ON THE BOTTLES.  THAT'S THE

25   HARM.  AND THAT IS THE SAME HARM THAT IS IDENTIFIED IN THE

1    *PULASKI* CASE FROM THE NINTH CIRCUIT RECENTLY.

2        THE ONE OTHER POINT I WANTED TO MAKE, YOUR HONOR, IS THAT,

3    IN FACT, THERE ARE MANY REGULATIONS THAT SAY THAT PUTTING

4    SOMETHING ON THE BACK LABEL IS NOT IN PROXIMITY TO THE FRONT.

5        THE FDA HAS AN ENTIRE BODY OF LAW ABOUT SOMETHING CALLED

6    THE PRIMARY -- EXCUSE ME, THE PRINCIPLE DISPLAY PANEL WHICH IS

7    KNOWN AS THE FRONT PANEL ON THE PACKAGE.  AND THAT IS WHERE --

8    IF YOU MAKE STATEMENTS ON THE PRINCIPLE DISPLAY PANEL, LIKE IN

9    *GERBER* WHERE YOU -- THE STATEMENT WAS TRUE, IT IS A FRUIT

10   JUICE SNACK; WHAT'S MISLEADING ABOUT IT IS THE PICTURES OF THE

11   SPECIFIC FRUIT, BECAUSE THOSE FRUITS WERE NOT IN THERE.  WHAT

12   WAS IN THERE WAS GRAPE JUICE.

13       AND IF YOU SAY SOMETHING OR SHOW A PICTURE OF SOMETHING ON

14   THE PRINCIPLE DISPLAY PANEL THAT IS LIKELY TO MISLEAD PEOPLE,

15   YOU ARE REQUIRED TO CORRECT THAT ON THE FRONT DISPLAY PANEL.

16   AND THERE ARE MANY EXAMPLES OF THIS, YOUR HONOR.

17       YOU MIGHT -- NEXT TIME YOU ARE IN THE SUPERMARKET, IF YOU

18   LOOK AT A PACKAGE OF CHOCOLATE CHIP COOKIES AND YOU'LL SEE A

19   PICTURE OF A COOKIE, AND IF IT'S LARGER THAN THE REAL SIZE

20   THAT IT MAKES IT SEEM LIKE THE CHOCOLATE CHIPS ARE REALLY BIG,

21   THERE WILL BE A DISCLAIMER THAT SAYS LARGER THAN ACTUAL SIZE.

22   IT WILL SAY IT RIGHT THERE NEXT TO THE PICTURE OF THE COOKIE

23   BECAUSE IT IS NOT PERMITTED TO MISLEAD PEOPLE ON THE PRINCIPLE

24   DISPLAY PANEL, WHICH IS EXACTLY WHAT THE DEFENDANTS HAVE DONE

25   HERE.

1      **THE COURT:** HOW MANY CASES HAVE YOU TRIED THAT ARE

2  CLASS ACTIONS?

3      **MR. GUTRIDE:** ME, PERSONALLY, I HAVE NOT TRIED ANY

4  CLASS ACTIONS, YOUR HONOR.

5      **THE COURT:** IS THERE ANYBODY ON THE PLAINTIFF'S SIDE

6  AT YOUR FIRM WHO HAS ACTUALLY TRIED A CLASS ACTION LAWSUIT?

7      **MR. GUTRIDE:** AT MY FIRM, NOT TO MY KNOWLEDGE. AT

8  THE -- AT MY CO-COUNSEL'S FIRM, I COULD NOT -- I CANNOT SAY

9  FOR SURE.

10     I CAN TELL YOUR HONOR THAT IT'S VERY RARE THAT THESE CASES

11  GO TO TRIAL. THIS MAY BE ONE THAT DOES. I HAVE TRIED OTHER

12  CASES AND I DO FEEL CONFIDENT THAT WE CAN TRY THESE CASES, BUT

13  IT'S QUITE RARE. IT IS FEWER THAN 1 PERCENT OF THESE TYPES OF

14  CASES THAT GO TO TRIAL.

15      **THE COURT:** I AGREE IT'S RARE. AND THE PROBLEM --

16  ONE OF THE PROBLEMS I AM SEEING IS THAT IN THOSE CIRCUMSTANCES

17  WHERE SOMEONE HAS TO GO TO TRIAL AND THEY HAVE NEVER TRIED A

18  CASE, IT ENDS UP BEING SOMEWHAT OF A DISASTER. BECAUSE IF YOU

19  HAVE NEVER TRIED A CLASS ACTION CASE AND YOU ARE GRANTED CERT

20  AND THEN YOU ACTUALLY HAVE TO TRY IT, I AM FINDING THAT CLASS

21  COUNSEL TENDS NOT TO HAVE THE SKILLS NECESSARY TO TRY THE

22  CASE.

23     AND THAT CONCERNS ME BECAUSE IT DOES NOT BEHOOVE THE CLASS

24  TO HAVE CLASS COUNSEL WHO DON'T KNOW, AT THE END OF THE DAY,

25  ULTIMATELY WHAT THEY ARE DOING. CLASS CASES ARE DIFFERENT

1    THAN OTHER KINDS OF CASES WHICH IS WHY I AM GOING TO START

2    ASKING THE QUESTION.

3         **MR. GUTRIDE:**  I THINK IT IS A VERY VALID QUESTION,

4    YOUR HONOR, AND I CAN SAY TWO THINGS.

5         THE FIRST IS THAT IF YOUR HONOR WERE TO CERTIFY THE CLASS,

6    YOU COULD REQUIRE US TO ASSOCIATE WITH TRIAL COUNSEL, IF WE

7    GET TO THAT STAGE, THAT HAS PRIOR EXPERIENCE DOING THIS.

8         THE SECOND THING THAT I WOULD SUGGEST, YOUR HONOR, IS THAT

9    ALTHOUGH I HAVE NOT TRIED A CASE, A CLASS CASE, I HAVE BEEN

10   LITIGATING THESE SORTS OF CASES FOR AS LONG -- AND WHEN I SAY

11   "THESE SORTS OF CASES", I MEAN CONSUMER PRODUCTS, LABELING

12   CASES -- FOR AS LONG AS ANYONE THAT I AM AWARE OF IN THE

13   CALIFORNIA BAR.

14        I HAVE LITIGATED THEM IN THE NINTH CIRCUIT AND IN THIS

15   COURT, AND IN STATE COURT, SEVERAL OF THE NINTH CIRCUIT

16   OPINIONS, THE EARLIER ONES, FOR EXAMPLE, THE *CHAVEZ VERSUS*

17   *BLUE SKY* CASE, THAT'S MY CASE WHICH I ARGUED IN THE NINTH

18   CIRCUIT.

19        I DO BELIEVE I AM FAMILIAR WITH THE LEGAL ISSUES THAT ARE

20   PRESENTED AND I DO HAVE TRIAL EXPERIENCE.  AND WHILE I CAN'T

21   PROMISE NOT TO MAKE A MISTAKE, I WILL CERTAINLY DO MY BEST AND

22   WILL DO WHAT'S NECESSARY, INCLUDING ASSOCIATING WITH OTHER

23   LAWYERS, IN ORDER TO PROTECT THE CLASS.

24        **THE COURT:**  HOW MANY JURY TRIALS HAVE YOU HAD?

25        **MR. GUTRIDE:**  I HAVE LITIGATED --

1    **THE COURT:** HOW MANY JURY TRIALS HAVE YOU TRIED TO

2  VERDICT?

3    **MR. GUTRIDE:** TO VERDICT? NONE.

4    AND THE MOST RECENT ONE THAT I HAD SETTLED AFTER ABOUT SIX

5  WEEKS OF TRIAL, AND THAT WAS SEVERAL YEARS AGO NOW, BUT IT WAS

6  AN INSURANCE DEFENSE CASE INVOLVING A LARGE -- IT WASN'T A

7  CLASS CASE, BUT IT WAS A LARGE CASE INVOLVING MANY, MANY

8  THOUSANDS OF INJURED PERSONS.

9    **THE COURT:** I DON'T MEAN TO PICK ON YOU. DEFENSE

10  COUNSEL THESE DAYS DON'T HAVE A LOT OF TRIAL EXPERIENCE

11  EITHER. SO MY OBLIGATION TO THE DEFENSE IS LESS, IN FACT, IS

12  NONEXISTENT AS IT IS IN COMPARISON TO THE CLASS.

13    **MR. GUTRIDE:** I CERTAINLY UNDERSTAND, YOUR HONOR.

14    **THE COURT:** ALL RIGHT. THAT'S, I THINK, ALL I NEED.

15  ANY OTHER COMMENTS?

16    IF NOT, I WILL TAKE IT UNDER SUBMISSION.

17    **MR. HADDAD:** ONE SENTENCE ON THE LAST PART OF THE

18  ARGUMENT.

19    WERE THE COURT AT ALL TEMPTED BY THE PRICE PREMIUM

20  ARGUMENT AS A THEORY OF HARM, I WOULD JUST REFER THE COURT TO

21  THREE DECISIONS WE CITED IN OUR BRIEF, THE *WERDEBAUGH*, THE

22  *BRAZIL* AND THE *IN RE POM* DECISIONS.

23    **THE COURT:** OKAY. I'M GOING TO GO BACK TO MY

24  FOUR-MONTH JURY TRIAL, AND YOU WILL HEAR FROM ME SOON.

25    **MR. GUTRIDE:** THANK YOU, YOUR HONOR.

1          **MR. HADDAD:**  THANK YOU, YOUR HONOR.

2          **THE COURT:**  OH, WAIT.  I DO HAVE SOMETHING FOR YOU.

3      I NEED A DETAILED PROPOSED FORM OF ORDER ON THE SEALING

4      ISSUES.

5          SO, FIRST OF ALL, ALWAYS READ THE LOCAL RULES.  PERHAPS IT

6      WAS AN ASSOCIATE.  I'M NOT -- I'M NOT GOING TO THROW DARTS

7      HERE.  BUT THE DEFENSE CONTACTED MY COURTROOM DEPUTY NUMEROUS

8      TIMES APPARENTLY NOT UNDERSTANDING THAT MY ORDER WHICH SAID

9      THAT THERE HAD BEEN AN INSUFFICIENT SHOWING WITH RESPECT TO

10     THE SEALING REQUEST.  JUST BECAUSE YOU DESIGNATE SOMETHING AS

11     CONFIDENTIAL DOES NOT MAKE IT SO.

12         YOUNG LAWYERS DESIGNATE ENTIRE PRODUCTIONS CONFIDENTIAL.

13     SO WHAT.  YOU HAVE TO TELL ME WHY IN A PUBLIC SETTING I NEED

14     TO SEAL SOMETHING, WHICH I TAKE QUITE SERIOUSLY.  THIS IS A

15     PUBLIC SETTING.

16         NOW, FOR PURPOSES OF CLASS CERT, THE STANDARD IS LOWER.

17     IT'S A GOOD CAUSE STANDARD AND SO WE DON'T HAVE THE SAME

18     CONCERNS AS WE DO FOR SUMMARY JUDGMENT.  BUT YOU ARE GOING TO

19     HAVE TO THINK ABOUT IF YOU'RE ASKING ME TO SEAL SOMETHING

20     BECAUSE IT'S PROPRIETARY, I DON'T KNOW HOW YOU ANTICIPATE

21     GETTING THAT EVIDENCE IN IN A PUBLIC SETTING WHERE IT ISN'T

22     GOING TO BE SEALED.  AT TRIAL AND SUMMARY JUDGMENT THE

23     STANDARD IS VERY DIFFERENT.

24         SO THAT'S JUST A LITTLE LECTURE ON SEALING.  BUT IN TERMS

25     OF THE SPECIFICS FOR THIS PARTICULAR MATTER, I DO NEED A

1    DETAILED PROPOSED ORDER GIVEN THE CURRENT REQUEST.

2       ALL RIGHT?

3             **MR. HADDAD:**  YES, YOUR HONOR.  WE WILL PROVIDE THAT.

4             **THE COURT:**  GREAT.

5             **MR. GUTRIDE:**  YOUR HONOR, THAT REMINDED ME OF ONE

6    OTHER QUESTION.

7       MAY WE HAVE PERMISSION TO SUBMIT TO YOUR HONOR THE STATE

8    COURT RULING WHEN IT BECOMES FINAL?  WITHOUT ARGUMENT OF

9    COURSE.

10            **THE COURT:**  THE JUDGE SMITH DECISION?

11            **MR. GUTRIDE:**  YES, YOUR HONOR.

12            **THE COURT:**  THE TENTATIVE RULING, I THOUGHT, WERE --

13   IT'S BEEN A FEW YEARS NOW.  MY MEMORY IS IS THAT THEY BECOME

14   FINAL UNLESS THERE IS AN OBJECTION.

15            **MR. GUTRIDE:**  THERE WAS AN OBJECTION.  AND AT THE

16   HEARING ON THE OBJECTION SHE SAID SHE WOULD TAKE IT UNDER

17   SUBMISSION.

18            **THE COURT:**  SURE.  THAT'S FINE.

19            **MR. GUTRIDE:**  THANK YOU, YOUR HONOR.

20            **THE COURT:**  OKAY.  THANK YOU.

21            **MR. HADDAD:**  THANK YOU.

22               (PROCEEDINGS CONCLUDED AT 3:35 P.M.)

23

24

25

1

2                    **CERTIFICATE OF REPORTER**

3          I, DIANE E. SKILLMAN, OFFICIAL REPORTER FOR THE

4    UNITED STATES COURT, NORTHERN DISTRICT OF CALIFORNIA, HEREBY

5    CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE

6    RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

7

8          *Diane E. Skillman*

9          DIANE E. SKILLMAN, CSR 4909, RPR, FCRR

10              WEDNESDAY, NOVEMBER 30, 2016

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25