**GUTRIDE SAFIER LLP**
ADAM J. GUTRIDE (State Bar No. 181446)
SETH A. SAFIER (State Bar No. 197427)
KRISTEN G. SIMPLICIO (State Bar No. 263291)
100 Pine Street, Suite 1250
San Francisco, California 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

**TYCKO & ZAVAREEI LLP**
HASSAN A. ZAVAREEI (State Bar No. 181547)
JEFFREY D. KALIEL (State Bar No. 238293)
ANDREW J. SILVER (*pro hac vice*)
1828 L Street, N.W., Suite 1000
Washington, DC 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950

*Counsel for Plaintiff and the Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ROHINI KUMAR, an individual, on behalf of herself, the general public and those similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> SALOV NORTH AMERICA CORP., <br><br> Defendant. | CASE NO. 4:14-cv-02411-YGR <br><br> **PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND FOR LEAVE TO FILE THIRD AMENDED COMPLAINT** <br><br> Date: February 6, 2017 <br> Time: 2:00 p.m. <br> Courtroom 5, 2nd Floor <br><br> Hon. Judge Yvonne Gonzalez Rogers |

1

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................... i

TABLE OF AUTHORITIES ........................................................................................ II

NOTICE OF MOTION AND MOTION ...................................................................... V

MEMORANDUM OF POINTS AND AUTHORITIES ................................................ 1

   I.     INTRODUCTION ........................................................................................... 1

   II.    BACKGROUND FACTS AND DETAILS OF SETTLEMENT ......................... 2

       A.  Litigation History ..................................................................................... 2

       B.  Settlement Negotiations ............................................................................ 3

       C.  The Proposed Settlement .......................................................................... 3

       D.  Monetary Relief ....................................................................................... 4

       E.  Changed Practices .................................................................................... 5

       F.  Administrative Expenses, Attorneys' Fees and Costs, Incentive Award ................... 5

       G.  Notice ...................................................................................................... 6

       H.  Amending the Complaint and Certified Class Definition ........................... 7

       I.  Plaintiff's Analysis of Settlement ............................................................ 7

   III.   ARGUMENT ................................................................................................ 10

       A.  Preliminary Approval is Warranted ......................................................... 10

       B.  The Settlement is Presumed Fair because it is the Product of Good-Faith, Informed and Arm's Length Negotiations ................................................ 12

       C.  Other Factors Also Demonstrate the Fairness of the Settlement ................ 13

          1.  The Strength of Plaintiffs' Case and the Risks of Further Litigation ................... 13

          2.  The Amount Offered in Settlement ......................................................... 15

       D.  Attorneys' Fees, Costs, and Incentive Award .......................................... 15

       E.  The Settlement Class Should Be Preliminarily Conditionally Certified ...... 16

       F.  The Proposed Settlement Is Adequate ..................................................... 17

       G.  Notice Pursuant To The Class Action Fairness Act (CAFA) ..................... 19

   IV.   DATES FOR THE FINAL APPROVAL PROCESS ....................................... 19

   V.    CONCLUSION ............................................................................................ 20

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- i -

PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT AND FOR LEAVE TO FILE THIRD AMENDED COMPLAINT

## <u>TABLE OF AUTHORITIES</u>

### CASES

*Adams v. Inter-Con Sec. Sys. Inc.*,
   No. C-06-5428 MHP, 2007 WL 3225466 (N.D. Cal. Oct. 30, 2007) .............. 13

*Amchem Products, Inc. v. Windsor*,
   521 U.S. 591 (1997) ................................................................................ 16

*Bruno v. Eckhart Corp.*,
   280 F.R.D. 540 (C.D. Cal. 2012) ........................................................... 16

*Bruno v. Quten Research Inst., LLC*,
   280 F.R.D. 524 (C.D. Cal. 2011) ........................................................... 16

*Churchill Vill., L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ...................................................... 10, 13, 17

*Dyer v. Wells Fargo Bank, N.A.*,
   No. 13-cv-02859-JST, 2014 WL 1900682 (N.D. Cal. May 12, 2014) ...... 10, 11

*Eisen v. Carlisle and Jacquelin*,
   417 U.S. 156 (1974) ................................................................................ 17

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ................................................................ 11

*In re Google Referrer Header Privacy Litig.*,
   2014 WL 1266091 (N.D. Cal. Mar. 26, 2014) ....................................... 18

*In re Netflix Privacy Litig.*,
   2012 WL 2598819 (N.D. Cal. July 5, 2012) .......................................... 18

*In re NVIDIA Corp. Derivative Litig.*,
   2008 WL 5382544 (N.D. Cal. Dec. 22, 2008) ....................................... 13

*In re Remeron End-Payor Antitrust Litig.*,
   No. 02-cv-2007 (FSH), 2005 WL 2230314 (D.N.J. Sept. 13, 2005) ................ 9

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008) ................................................................ 10

*In re Tableware Antitrust Litig.*,
   484 F. Supp. 2d 1078 (N.D. Cal. 2007) ........................................ 10-11, 18

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998) ................................................................ 15

*Lipuma v. American Express Company*,
   406 F. Supp. 2d 1298 (S.D. Fla. 2005) .................................................. 14

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) .............................................................. 1

*Officers for Justice v. Civil Service Com.*,
   688 F.2d 615 (9th Cir. 1982) .................................................................. 11, 15

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) ............................................................................. 17

*Rodriguez v. West Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ............................................................... 12

*Rodriguez v. West Publ'g Corp.*,
   No. CV05-3222, 2007 WL 2827379 (C.D. Cal. Sept. 10, 2007) ..................... 13

*Rosenburg v. I.B.M.*,
   2007 WL 128232 (N.D. Cal. 2007) ........................................................ 17

*Ross v. Trex Co., Inc.*,
   No. C 09–670 JF (PVT), 2009 U.S. Dist. LEXIS 69633
   (N.D. Cal. July 30, 2009) ..................................................................... 1

*Simpao v. Gov't of Guam*,
   369 F. App'x 837 (9th Cir. 2010) .......................................................... 18

## STATUTES

19 U.S.C. § 1304 ...................................................................................... 2

21 U.S.C. § 301 *et seq.* ............................................................................. 2

28 U.S.C. § 1715 ...................................................................................... 19

California Business and Professions Code § 17200 *et seq.* ................................. 2

California Business and Professions Code § 17500 *et seq.* ................................. 2

California Consumer Legal Remedies Act, Civil Code § 1780 *et seq.* .................... 2

California Health and Safety Code § 109875 *et. seq.* ....................................... 2

## OTHER AUTHORITIES

Bender, *Moore's Federal Practice* (3d ed.) ..................................................... 12

Conte & Newberg, Newberg on Class Actions (4th ed. 2002)........................ 10, 12

*Manual for Complex Litigation, Second* (1985).............................................. 11

*Manual for Complex Litigation, Third* (1995) ............................................... 12

Wright & Miller, Federal Practice & Procedure (3d ed. 2008).............................. 17

## RULES

Fed. R. Civ. P. 23.............................................................................passim

# REGULATIONS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

19 C.F.R. § 134.46 ...................................................................................................... 2

21 C.F.R. § 101.18 *et seq.* ....................................................................................... 2

PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT AND FOR LEAVE TO FILE THIRD AMENDED COMPLAINT

1

## NOTICE OF MOTION AND MOTION

2   **PLEASE TAKE NOTICE** that on February 6, 2017, at 2:00 p.m. or as soon as the matter

3   may be heard, in Courtroom **5**, before the Honorable Yvonne Gonzalez Rogers, Plaintiff shall and

4   hereby does move the Court for an order:

5   (1) Of preliminary approval of the settlement of this class action as set forth in the class

6   action settlement agreement dated December 30, 2016, attached as Exhibit 1 to the Declaration of

7   Adam J. Gutride filed herewith;

8   (2) Of conditional certification, for settlement purposes only, of a settlement class defined

9   as "all natural persons who, between May 23, 2010 and June 30, 2015, purchased, in the United

10   States, any Product for personal use, not resale," with Product defined as "any bottle or can of

11   Filippo Berio Robusto Extra Virgin Olive Oil, Filippo Berio Extra Virgin Olive Oil, Filippo Berio

12   Delicato Extra Virgin Olive Oil, Filippo Berio Organic Extra Virgin Olive Oil, Filippo Berio

13   Olive Oil, or Filippo Berio Light Tasting Olive Oil;"

14   (3) Directing the dissemination of notice in the form and manner set forth in the

15   settlement agreement; and

16   (5) Setting a date for a final approval hearing.

17   A copy of the [Proposed] Order for Preliminary Approval is attached to the Settlement

18   Agreement as Exhibit C and also separately submitted herewith.

19   This Motion is based on Federal Rule of Civil Procedure 23, this Notice of Motion, the

20   supporting Memorandum of Points and Authorities, the Gutride Declaration, and the pleadings

21   and papers on file in this action and any other matter of which this Court may take judicial notice.

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiff Rohini Kumar ("Class Representative") respectfully moves for preliminary approval of a proposed class action settlement with Defendant SALOV North America Corp. ("SALOV" or "Defendant"), the terms and conditions of which are set forth in the Settlement Agreement filed with the Court on December 31, 2016 ("Settlement Agreement").[1] After years of discovery and hard-fought motion practice, the parties agreed to the terms of a nationwide claims-made settlement with the assistance of a respected class action mediator. A settlement negotiated at arms-length by experienced counsel after substantial discovery and motion practice under the oversight of a mediator is entitled to a presumption of fairness. *See Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004). The presumption of fairness is particularly warranted here because the proposed settlement provides for substantial monetary and injunctive relief. Indeed, it allows individuals who submit claims to receive more monetary relief on a per-purchase basis than Plaintiff's expert opined could be recovered on a per-purchase basis through litigation. A settlement merely needs to fall "within the range of reasonableness" to receive preliminary approval, whereas this proposed settlement is more than fair, adequate, and reasonable, especially when viewed in light of the risks, uncertainties, and potential delays of litigation. *See Ross v. Trex Co., Inc.*, No. C 09–670 JF (PVT), 2009 U.S. Dist. LEXIS 69633, *9 (N.D. Cal. July 30, 2009).

All of the relevant factors therefore strongly favor preliminary and final approval. Accordingly, Plaintiff requests that the Court preliminarily approve the settlement, order that the proposed notice be disseminated, and schedule a final approval hearing.

---

[1]      The capitalized terms used herein are defined in and have the same meaning as used in the Settlement Agreement unless otherwise stated.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## II.    BACKGROUND FACTS AND DETAILS OF SETTLEMENT

### A.    Litigation History

On March 21, 2014, Plaintiff filed a complaint against Defendant in the above-captioned case, in which Plaintiff alleged that Defendant had deceptively marketed and sold its Filippo Berio brand of olive oil with the representation "Imported from Italy" on the front label, although the back label stated that most of the oil was extracted in countries other than Italy from olives grown in those other countries (herein referred to as the "Imported From Italy Allegations"). Plaintiff further alleged that, by marketing the Products as "Imported from Italy," Defendant caused people to purchase the Products who would not otherwise have done so, and that the Products were sold at a higher retail price than they would have been sold without the misstatements.

Plaintiff contended that Defendant's challenged labeling and marketing violated the Tariff Act of 1930, as amended, 19 U.S.C. § 1304, and its implementing regulations, 19 C.F.R. § 134.46; the Food Drug and Cosmetic Act, 21 U.S.C. § 301 *et seq.,* and its implementing regulations, 21 C.F.R. § 101.18 *et seq.*; and the Sherman Food, Drug and Cosmetic Law, California Health and Safety Code ("Cal. Health & Saf. Code") § 109875 *et. seq.* She alleged claims for violations of the California Consumer Legal Remedies Act, Civil Code § 1780 *et seq.* ("CLRA"), false advertising under California Business and Professions Code § 17500 *et seq.*; unfair business practices under California Business and Professions Code § 17200 *et seq.*; and misrepresentation. Plaintiff sought to pursue these claims on behalf of herself and all purchasers of the Filippo Berio olive oil in California between May 23, 2010 and the present. Plaintiff also sought to recover, on behalf of this class of all purchasers other than re-sellers, the dollar amount of the "premium" price that she contended was attributable to the alleged misrepresentations.

In her complaint, Plaintiff also alleged that, for a subset of the Products labeled "Extra Virgin," Defendant's procurement, bottling, and distribution practices failed to ensure that the oil would meet the "extra virgin" standard through the "best by" date. With respect to these allegations, Plaintiff pled the same causes of action set forth above, as well as causes of action for breach of contract and breach of the good faith and fair dealing, and she sought to represent a national class on those additional causes of action.

On July 22, 2014, Defendant filed a motion to dismiss the complaint. Defendant argued, *inter alia*, that Plaintiff lacked standing to sue and that she had failed to plead a claim for relief. Plaintiff opposed the motion. On February 3, 2015, the Court issued an order granting in part and denying in part the motion. The order allowed all the claims and causes of action to proceed except for the claims for breach of contract and breach of the duty of good faith and fair dealing, which only had been made as to the "extra virgin" labelling, and which were dismissed.

On January 7, 2016, after substantial fact and expert discovery, and as part of a stipulation entered into by the parties and approved by the Court, Plaintiff voluntarily dismissed her extra virgin allegations, allowing Plaintiff to focus on the Imported from Italy Allegations.

On January 20, 2016, Plaintiff moved to certify a class of all purchasers in California of Filippo Berio olive oil between May 30, 2010 and August 31, 2015, except purchases for purpose of resale. Defendant opposed the motion. On July 15, 2016, the Court certified a class to pursue the Imported From Italy Allegations of "All purchasers in California of liquid Filippo Berio brand olive oil of any grade except 'Organic' between May 23, 2010 and June 30, 2015" (the "Certified California Class"). Following certification, the Parties agreed to mediation, which led to the instant settlement.

### B.    Settlement Negotiations

The proposed settlement was reached following significant, hard fought litigation and several rounds of arms-length settlement discussions between competent, able counsel. (Declaration of Adam Gutride ("Gutride Decl.") ¶ 6.) After initial settlement efforts stalled, on November 8, 2016, the Parties attended an all-day mediation (10+ hours) with Randy Wulff of Wulff Quinby & Sochynsky, an independent, well respected, and experienced mediator, in Oakland, California. With the benefit of a framework for a nationwide claims-made settlement developed under the guidance of the mediator, including the relevant terms regarding monetary and injunctive relief, the Parties continued settlement discussions thereafter, which led to the terms of the settlement memorialized in the Settlement Agreement, and which are summarized herein.

### C.    The Proposed Settlement

The Settlement Class is an opt-out class under Fed. R. Civ. P. 23(b)(3) comprised of all

natural persons (other than Excluded Persons) who, between May 23, 2010 and June 30, 2015, purchased, in the United States, any Product for personal use, not resale. "Product" is defined as any bottle or can of Filippo Berio Robusto Extra Virgin Olive Oil, Filippo Berio Extra Virgin Olive Oil, Filippo Berio Delicato Extra Virgin Olive Oil, Filippo Berio Organic Extra Virgin Olive Oil, Filippo Berio Olive Oil, or Filippo Berio Light Tasting Olive Oil. Excluded Persons are the Defendant and its affiliates, the Court and immediate family members, the mediator and immediate family members, government entities, counsel for the Parties, and those who timely opt out of the class. (Gutride Decl., Ex. 1, ¶¶ 2.34, 2.39.)

**D.    Monetary Relief**

Class members can file a claim for a cash payment of fifty cents ($0.50) for each Product purchased during the Class Period (i.e., between May 23, 2010 and June 30, 2015), with a guaranteed minimum payment for any class member who submits a Valid Claim of $2.00. There is no cap on the total amount to be paid to any class member for claimed purchases that are corroborated by proof of purchase. Moreover, unlike under many settlement structures, the amount paid to individual claimants does not depend on the number of claims submitted, the cost of notice or administration, the amount paid in cost or fees, or any amounts paid to Plaintiff—all of which are borne by Defendant. The sole limitation on individual claims is that a maximum of $5.00 (i.e., up to 10 purchases) shall be paid to any Household for claimed purchases that are not corroborated by proof of purchase. "Proof of Purchase" means an itemized retail sales receipt or retail store club or loyalty card record showing, at a minimum, the date and place of purchase of a Product, or an original front label panel from a Product. (*Id.*, Ex. 1, ¶ 4.4.) "Household" means any number of natural persons occupying the same dwelling unit.

The claim form is simple. The form can be completed online or downloaded and submitted by mail, and is designed to be completed in minutes. It requires only essential information, namely the date of purchase (to confirm that a purchase falls within the Class Period), the number of Products purchased (to determine the amount of settlement benefits to be paid), contact information (to be able to communicate with and send settlement payments to class members), and an averment above the signature line that the class member purchased or paid more for the

1  Product(s) for personal use, not resale, based on the phrase "Imported from Italy." The claim form

2  also requests information about the store of purchase as a further way to validate claims, although

3  it also expressly and clearly notes that this information is optional, as the parties recognize that

4  individuals may have difficulty recalling the specific store(s) where a purchase may have occurred.

5  There is no cap on the total number of claims that can be submitted. However, given the

6  simplicity of the claim form and the fact that claims can be submitted with no proof of purchase,

7  the settlement agreement permits Defendant the right to evaluate whether to terminate the

8  settlement should the projected cost of claims—combined with notice and administration—exceed

9  $5 million. The proposed settlement notices will inform class members that if the settlement does

10  not become final or is terminated, then the litigation will continue on behalf of the certified

11  California class.

12  **E.    Changed Practices**

13  During the pendency, and in part as a result, of this Litigation, Defendant removed the

14  phrase "Imported from Italy" from all Products imported into the United States, and it replaced

15  that phrase with the word "Imported." As part of the Settlement Agreement, Defendant agrees to

16  maintain its current practices in this regard for at least three years after the Effective Date.

17  Specifically, Defendant agrees not to use the phrases "Imported from Italy," "Made in Italy,"

18  "Product of Italy," or any other phrase on the label panel of a Product sold in the United States

19  suggesting that olive oils in a Product originate from olives grown in Italy, and instead to use the

20  designation "Imported" on the front panel, unless the Product so labeled is 100% Italian olive oil

21  (i.e., composed entirely of oil extracted in Italy from olives grown in Italy).

22  **F.    Administrative Expenses, Attorneys' Fees and Costs, Incentive Award**

23  As noted above, all costs of notice and administration of the settlement will be paid by

24  Defendant, which is itself a substantial settlement benefit in light of the nature of the claims

25  asserted in this case. (*Id.*, Ex. 1, ¶ 4.12.) In addition, Plaintiff's counsel will apply to the Court for

26  an Incentive Award from Defendant of $2,500 for the Class Representative. Plaintiff provided

27  assistance that enabled Class Counsel to successfully prosecute this Litigation and reach a

28  settlement, including locating and forwarding responsive documents and information, responding

–5–

PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT AND FOR LEAVE TO FILE THIRD AMENDED COMPLAINT

to written discovery, sitting for a full-day deposition, and producing her spouse for deposition. The Incentive Award is designed to compensate her for (1) the time and effort undertaken in and risks of pursuing this action (including the risk of liability for the costs of suit) and (2) because she is agreeing to a release broader than the one that will bind settlement class members. (*Id.*, Ex. 1, ¶ 6.2.)

Class Counsel also will apply to the Court for an award from Defendant of Attorneys' Fees and Costs in a total amount not to exceed $982,500, which is an amount less than their present lodestar and unreimbursed expenses. These amounts are disclosed in the proposed notices. In addition, Plaintiff will file a separate motion for fees, costs and an incentive award and supporting declarations and will post copies on the settlement website, at least 42 days before the final approval hearing, which is two weeks before the deadline for class member objections. (*Id.*, Ex. 1, ¶¶ 5.1, 6.1.)

**G.     Notice**

The Notice Plan is designed to provide the best notice practicable, is sufficient notice to all persons entitled to notice, and satisfies all applicable requirements of law, including, but not limited to, Rule 23 and constitutional due process. The claim administrator (Heffler Claims Group) will establish a settlement website, which shall contain the settlement notices, a contact information page that includes address and telephone numbers for the claim administrator and the parties, the settlement agreement, the signed order of preliminary approval, online and printable versions of the claim form and the opt out forms, answers to frequently asked questions, and (when it becomes available) Class Counsel's application for attorneys' fees, costs, expenses and incentive award.  The claim administrator will also operate a toll-free number for class member inquiries.

Notice will be published in several places, all of which will refer class members to the settlement website. (*Id.*, Ex. 1 at Sub-Ex. B.) One large ad will be taken out in two nationally distributed magazines, *People* and *Good Housekeeping*. A press release will also be issued through PR News Wire's USA 1 network. Online notice will be targeted to Filippo Berio shoppers, those who have an affinity to purchase olive oil, and persons over the age of 45. A total of 152.7 million

impressions of the Online Notice will be served across three internet networks (AOL, Conversant and Yahoo), each comprised of many hundreds of individual website partners, as well as via two types of online advertising formats on Facebook (newsfeed and banners). (*Id.*)

### H.    Amending the Complaint and Certified Class Definition

To effectuate the proposed settlement, Defendant does not object to Plaintiff being granted leave to file an amended complaint for purposes of amending the class definition to correspond with the definition of the proposed national Settlement Class and adding claims on behalf the Settlement Class under New Jersey law, where Defendant is headquartered.

In addition, the parties have stipulated to a technical amendment of the class definition certified by the Court on July 15, 2016, to specify that the class is limited to natural persons (rather than entities) and excludes purchasers for purpose of resale.  The reason for the change is that businesses and persons who purchased the Products for purposes of resale were not intended to be included in the certified class and that different facts and legal rights may apply to them. Accordingly, upon order of this Court, the California Litigation Class will be defined as follows: "All natural persons who purchased, in California, liquid Filippo Berio brand olive oil of any grade except 'Organic' between May 23, 2010 and June 30, 2015, except for purposes of resale." The Litigation will continue on behalf of this class only if the settlement is not approved, or if the Effective Date does not occur for any other reason.

### I.    Plaintiff's Analysis of Settlement

Based on their reasoned judgment, experience litigating cases involving olive oil and other consumer food products, the information learned through extensive fact and expert discovery, and legal research for briefing in this and similar cases, Plaintiff's counsel believes the proposed Settlement is more than fair and reasonable and exceeds the standards required for preliminary and final approval. (Gutride Decl. ¶¶ 9-13, 20-21.)

Although Plaintiff believes the evidence obtained in discovery showed that Defendant's labeling was likely to (and did) deceive consumers, Defendant continues vigorously to deny those allegations, creating substantial uncertainty of obtaining a successful verdict after trial and appeal. Among other things, Defendant disputed that consumers would have even noticed the phrase

"Imported from Italy" due to its font size and placement, much less understood the phrase to be equivalent to saying "100% Italian Olive Oil." Defendant also offered evidence that many consumers look for the "best by" date, which was printed on the back label of these Products, where information about the countries of origin was printed. Defendant contended that all such consumers (as much as 80%) were aware that the Products contained oils from countries other than Italy. For these and other reasons, Defendant argued and continues to assert that consumers were not misled or deceived. Similarly, while Plaintiff maintains that Defendant's conduct violated federal and state country-of-origin marking regulations, Defendant has offered testimony that for decades its products have passed regular customs inspections, which Defendant contends proves that it has complied with applicable regulation, foreclosing liability under federal or state law.

On the subject of damages, Plaintiff's expert economist Colin Weir submitted a declaration in support of class certification opining that, based on a regression analysis of prices of Products, use of the phrase "Imported from Italy" on Defendant's Products caused purchasers in California to pay roughly $1.2 million more during the Class Period. This equates to an average of approximately $0.34 per purchase. Defendant, however, has asserted that pricing and sales of the Products have not materially changed—indeed, that average pricing has increased—since it implemented revised labeling as of mid-2015 that says "Imported" instead of "Imported from Italy." Defendant contends that this proves not only that the phrase "Imported from Italy" was not material to consumers, but also that consumers did not interpret the phrase "Imported from Italy" to mean "100% Italian Olive Oil."

Plaintiff disputes and adduced evidence to challenge Defendant's various arguments designed to defeat her individual claims and those of the class, but it was unclear how the arguments would be resolved at summary judgment or trial, including whether Defendant would succeed in moving to decertify a litigation class prior to entry of a judgment. (*Id.*, ¶¶ 14, 18.) Thus, there was a substantial risk that class members would recover nothing or perhaps only nominal damages. Finally, any judgment in Plaintiff's favor on the merits or class certification would likely be appealed. Thus, even in the best case, it could take years to secure any meaningful relief for class members. (*Id.*, ¶ 19.)

In the face of such risks and uncertainties, the settlement payment of $0.50 per purchase made available to Settlement Class Members represents a considerable achievement on behalf of the class. That amount exceeds the $0.34 per purchase that plaintiff's expert opined could be recovered on average by class members even assuming a complete victory at trial. In other words, for each purchase, class members on average stand to receive greater benefits under the proposed settlement than if they were to submit a claim in connection with litigation.

Furthermore, the settlement represents a significant achievement on behalf of consumers because it expands the case nationwide. Plaintiff had not previously asserted—and this Court thus has not certified—a nationwide class, nor are the parties aware of any such pending claims, meaning that the statute of limitations has been running and is continuing to run. (As of mid-2015, Defendant's Products sold in the U.S. were labeled "Imported," not "Imported from Italy."). According to information provided by Defendant, sales in California represent approximately three percent of nationwide sales during the Class Period, so if this case were to proceed on a nationwide basis, and assuming that claims from 2012 were not time-barred, the maximum total nationwide damages figure would be approximately $41 million (using the same average $0.34 premium per bottle). Defendant's agreement to pay nearly $6 million under the settlement ($5 million for notice, administration, and claims, plus just under $1 million for attorneys' fees, costs, and the incentive award) represents approximately 15% of this estimated nationwide damages figure, a figure far in excess of amounts found fair and reasonable in comparable settings. *See, e.g.*, *In re Remeron End-Payor Antitrust Litig.*, No. 02-cv-2007 (FSH), 2005 WL 2230314, at *24 (D.N.J. Sept. 13, 2005) (citations omitted) (noting that as long as a settlement "is reasonable relative to other factors, such as the risk of no recovery," it may be approved, even if it may "amount to a hundredth or even a thousandth of a single percent of the potential recovery").

As a result, Plaintiff and Class Counsel, after taking into account the foregoing, along with the risks and costs of further litigation, are satisfied that the terms and conditions of the Settlement Agreement are more than fair, reasonable, adequate, and equitable, and that a settlement of the Litigation and the prompt provision of effective relief to the Settlement Class are in the best interests of the Settlement Class Members. In particular, Plaintiff and counsel believe that a refund

to claimants of fifty cents ($0.50) per Product purchase, with (1) a minimum guaranteed amount of $2.00; (2) a payment of up to $5.00 without Proof of Purchase; and (3) no cap with Proof of Purchase, is a good result—considerably better than the anticipated per purchase recovery in the event of trial. (Gutride Decl. ¶ 9.) Indeed, in a contested proceeding, class members who lacked proof of purchase—which is likely the majority of class members—might get nothing at all. Having a claim process also directs available funds to those who most care about the alleged practice at issue and is consistent with the claims process contemplated by the Court in its order certifying the California class. Further, in addition to the monetary relief, Plaintiff believes that Defendant's continued changed practices will benefit class members and other consumers. (*Id.*, ¶¶ 8-9, 13.)

Defendant continues to deny all allegations of wrongdoing, but also believes the settlement is in its interest to avoid further expense, inconvenience, and interference with its ongoing business operations.

## III.   ARGUMENT

### A.   Preliminary Approval is Warranted

Although Rule 23(e) requires court approval of a class settlement, "[t]he Ninth Circuit maintains a 'strong judicial policy' that favors the settlement of class actions." *Dyer v. Wells Fargo Bank, N.A.*, No. 13-cv-02859-JST, 2014 WL 1900682, at \*5 (N.D. Cal. May 12, 2014) (quoting *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir.1992)); *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004). "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *DIRECTV*, 221 F.R.D. at 526, citing 4 Conte & Newberg, NEWBERG ON CLASS ACTIONS ("Newberg") § 11.50 at 155 (4th ed. 2002). At the preliminary approval stage, the Court's role is to determine, on a preliminary basis, whether the settlement is within the range of what might be considered "fair, reasonable, and adequate" to allow notice to the proposed settlement class to be given and a hearing for final approval to be set. *See Ross*, 2009 U.S. Dist. LEXIS 69633 at \*9; *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079-80 (N.D. Cal. 2007).

"Preliminary approval of a settlement is appropriate if 'the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval.'" *Dyer*, 2014 WL 1900682 at *6 (quoting *In re Tableware*, 484 F. Supp. 2d at 1079) (internal citation omitted)); *see also Manual for Complex Litigation*, *Second* § 30.44 (FJC 1985). "The proposed settlement need not be ideal, but it must be fair and free of collusion, consistent with a plaintiff's fiduciary obligations to the class." *Dyer*, 2014 WL 1900682 at *6 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) ("Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion.")). The Ninth Circuit has adopted the following eight-factor test for determining whether a settlement is fair, reasonable, and adequate:

> the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Dyer*, 2014 WL 1900682 at *6 (quoting *Hanlon*, 150 F.3d at 1026); *see also Officers for Justice v. Civil Service Com.*, 688 F.2d 615, 625 (9th Cir. 1982). "The proposed settlement must be 'taken as a whole, rather than the individual component parts' in the examination for overall fairness." *Dyer*, 2014 WL 1900682 at *6 (quoting *Hanlon*, 150 F.3d at 1026). "Courts do not have the ability to 'delete, modify, or substitute certain provisions' because the settlement 'must stand or fall in its entirety.'" *Dyer*, 2014 WL 1900682 at *6 (quoting *Hanlon*, 150 F.3d at 1026).

Each of the relevant factors weighs in favor of preliminary approval of the Settlement Agreement. First, the settlement is the product of good-faith, informed and arm's length negotiations by competent counsel, with active assistance of an experienced mediator, and thus was reached in the absence of collusion. Furthermore, a preliminary review of the factors related to the fairness, adequacy, and reasonableness of the settlement demonstrates that preliminary approval is warranted. Any settlement requires the parties to balance the merits of the claims and defenses asserted against the attendant risks of continued litigation and delay. Plaintiff believes

–11–

PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT AND FOR LEAVE TO FILE THIRD AMENDED COMPLAINT

1   that the claims asserted are meritorious and that she would prevail if this matter proceeded to trial.

2   Defendant argues that Plaintiff's claims are unfounded, denies any potential liability, and is

3   prepared to litigate the case vigorously should this matter not resolve via settlement. The parties

4   concluded that the benefits of settlement in this case outweigh the myriad risks and uncertainties

5   of continued litigation, as well as the attendant time and expenses associated with pretrial motion

6   practice, trial, and appellate review. (Gutride Decl. ¶ 20.)

7           **B.      The Settlement is Presumed Fair because it is the Product of Good-
8                     Faith, Informed and Arm's Length Negotiations**

9           The Ninth Circuit "put[s] a good deal of stock in the product of an arm's-length, non-

10  collusive, negotiated resolution" in approving a class action settlement. *Rodriguez v. West Publ'g*

11  *Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). Class settlements are presumed fair when they are

12  reached "following sufficient discovery and genuine arms-length negotiation," both of which

13  occurred here. *See DIRECTV*, 221 F.R.D. at 528; 4 Newberg at § 11.24. "The extent of discovery

14  [also] may be relevant in determining the adequacy of the parties' knowledge of the case."

15  *DIRECTV*, 221 F.R.D. at 527 (quoting *Manual for Complex Litigation, Third* § 30.42 (1995)).  "A

16  court is more likely to approve a settlement if most of the discovery is completed because it

17  suggests that the parties arrived at a compromise based on a full understanding of the legal and

18  factual issues surrounding the case." *DIRECTV.*, 221 F.R.D. at 527 (quoting 5 *Moore's Federal*

19  *Practice*, §23.85[2][e] (Matthew Bender 3d ed.)).

20          Here, before agreeing upon the terms of the settlement, the parties engaged in extensive

21  factual investigation, which included numerous fact and expert depositions, document production

22  of over 30,000 pages of documents, interrogatories and requests for admission, and third-party

23  discovery. (Gutride Decl. ¶ 4.) The parties also had undertaken extensive briefing and argument on

24  various significant legal issues, including in connection with a motion to dismiss and class

25  certification. In addition, Plaintiff and her counsel have experience in other olive oil litigation,

26  which has further informed their views about the claims in this case. The record was thus

27  sufficiently developed that the parties were fully informed as to the viability of the claims and able

28  to adequate evaluate the strengths and weaknesses of their respective positions and risks to both

1    sides if the case did not settle. (*Id.*)

2       Counsel for each side, who are experienced class action attorneys, have fully evaluated the

3 strengths, weaknesses, and equities of the parties' respective positions and believe that the

4 proposed settlement fairly resolves their respective differences. (*Id.*, ¶ 3.) "Great weight is

5 accorded to the recommendation of counsel, who are the most closely acquainted with the facts of

6 the underling litigation." *DIRECTV*, 221 F.R.D. at 528 (internal citation omitted); *see also In re*

7 *NVIDIA Corp. Derivative Litig.*, 2008 WL 5382544 at *4 (N.D. Cal. Dec. 22, 2008) ("[S]ignificant

8 weight should be attributed to counsel's belief that settlement is in the best interest of those

9 affected by the settlement.").

10       In addition, the parties negotiated the proposed settlement in good faith with the assistance

11 of an independent, experienced mediator. (Gutride Decl. ¶ 6.) "The assistance of an experienced

12 mediator in the settlement process confirms that the settlement is non-collusive." *Adams v. Inter-*

13 *Con Sec. Sys. Inc.*, No. C-06-5428 MHP, 2007 WL 3225466, at *3 (N.D. Cal. Oct. 30, 2007).

14      **C.**     **Other Factors Also Demonstrate the Fairness of the Settlement**

15       In addition to being presumptively valid, the settlement is likely to meet the "fairness"

16 criteria that will be applied under Rule 23(e) at final approval. Some of these final settlement

17 approval criteria are discussed below. *See Churchill*, 361 F.3d at 575.

18        ***1.***   ***The Strength of Plaintiffs' Case and the Risks of Further Litigation***

19       These factors survey the potential risks and rewards of proceeding with litigation, to weigh

20 the likelihood of success against the benefits of an immediate settlement. Plaintiff and Class

21 Counsel are confident in the strength of their case, but are also pragmatic in their awareness of the

22 various defenses available to Defendant, and the risks inherent to litigation. At the time the

23 settlement was reached, Plaintiff had recently won class certification of a California class, but the

24 litigation had been highly contentious, and the parties continued to strongly disagree on Plaintiff's

25 ability to prove liability and damages. Defendant, for example, had given notice of intent to move

26 to decertify the class. *Cf. Rodriguez v. West Publ'g Corp.*, No. CV05-3222, 2007 WL 2827379, at

27 *8 (C.D. Cal. Sept. 10, 2007) (finding that the likelihood that a certification decision would be

28 appealed meant this factor weighed in favor of approval), *rev'd on other grounds*, 563 F.3d 948

−13−

PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT AND FOR LEAVE TO FILE THIRD AMENDED COMPLAINT

1   (9th Cir. 2009).

2       On the merits, Defendant continued to argue that Plaintiff's testimony about her purchasing

3   decision was unreliable. In addition, Defendant has maintained that Plaintiff would have difficulty

4   establishing that the phrase "Imported from Italy" was misleading or material to a reasonable

5   consumer in that the phrase was literally true and appeared in a small font such that it would only

6   have been noticeable to a consumer who actually picked up the bottle, and thus who also may have

7   seen the countries of origin for the oil on the back label. Finally, Defendant repeatedly emphasized

8   the challenges inherent in proving damages, including due to the fact that the average retail price

9   of Defendant's Products either did not change or slightly increased since the company changed the

10  front label to read "Imported" instead of "Imported from Italy." (Gutride Decl. ¶¶ 15-17.)

11      While Class Counsel are confident in their positions and believe Plaintiff's claims are

12  strong, Class Counsel are also experienced and realistic enough to know that the recovery and

13  certainty achieved through settlement, as opposed to the uncertainty inherent at the summary

14  judgment stage and in the trial and appellate process, weighs heavily in favor of settlement,

15  particularly given the above risks, which could easily have impeded Plaintiff's successful

16  prosecution at trial and in an eventual appeal. (*Id.*, ¶¶ 18-21.) Under the circumstances, Plaintiff

17  and Class Counsel appropriately determined that the instant settlement outweighs the gamble of

18  continued litigation. Moreover, even if Plaintiff prevailed at trial, any recovery could be delayed

19  for years by an appeal. *Lipuma v. American Express Company*, 406 F. Supp. 2d 1298, 1322 (S.D.

20  Fla. 2005) (likelihood that appellate proceedings could delay class recovery "strongly favor[s]"

21  approval of a settlement). The Settlement Agreement provides substantial relief to Settlement

22  Class Members without further delay.

23      The settlement also provides nationwide relief notwithstanding that Plaintiff did not assert

24  nationwide claims against Defendant based on her Imported From Italy Allegations, the parties are

25  not aware of any such claims pending, and, as the class definition certified by the Court

26  recognizes, Defendant ceased its practice of packaging Filippo Berio olive oil with the phrase

27  "Imported from Italy" after the initiation of this Litigation, meaning that the statute of limitations

28  on these claims has been running for some time.

### 2.   *The Amount Offered in Settlement*

This factor "assess[es] the consideration obtained by the class members in a class action settlement." *DIRECTV*, 221 F.R.D. at 527. "[I]t is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Officers for Justice*, 688 F.2d at 628. "In this regard, it is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *DIRECTV*, 221 F.R.D. at 527, *citing Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998).

Plaintiff believes that a "best case" recovery at trial assuming nationwide claims were being litigated (in other words, ignoring for the moment that no such claims have been certified or even asserted in this Court or elsewhere) would be approximately $41 million. This is based on Plaintiff's expert analysis opining that price premium damages total approximately $1.2 million in California and Defendant's representation that California reflects roughly 3% of Product sales nationwide. (Gutride Decl. ¶¶ 10, 12.) The settlement amount of roughly $6 million is approximately 15% of this best-case recovery. Moreover, that settlement amount does not include the value of Defendant's changed practices (i.e. removing the "Imported from Italy" phrase from its Filippo Berio labeling) starting in 2015 and continuing for at least three years after the Effective Date. Plaintiff thus believes this recovery to be more than fair in light of the risks discussed above. (*Id.*, ¶¶ 21-22.) Further, the per-purchase refund of fifty cents ($0.50) per Product, with no cap on claims with proof of purchase, a $5.00 cap on claims without proof of purchase (i.e., for up to 10 purchases), and a $2.00 minimum payout, represent an excellent result compared to the possible result in a contested proceeding, as discussed above, where the best case average payment per purchase is only $0.34 per bottle. (*Id.*, ¶¶ 9-13, 21.)

### D.    Attorneys' Fees, Costs, and Incentive Award

In a separate motion to be filed along with the motion for final approval and posted on the settlement website, Plaintiff will ask the Court to approve payment of no more than $982,500 from Defendant for reasonable attorneys' fees and costs, as well as an incentive award of $2,500 for the Class Representative. As of the filing of this motion, Class Counsel has already spent over 2,000

hours working on this litigation, resulting in a lodestar that is greater than the amount Plaintiff will seek in attorneys' fees. Counsel has additionally incurred more than $100,000 in unreimbursed expenses. (*Id.*, ¶ 5.) The Court need not consider these issues at present; rather it is appropriate to defer them until the final approval hearing, after class members have had an opportunity to comment, as the settlement is not conditioned on the amount awarded in fees or costs or paid to plaintiff.

**E.      The Settlement Class Should Be Preliminarily Conditionally Certified**

Although this Court certified a California class in this case on July 15, 2016, Plaintiff seeks preliminary approval, for settlement purposes only, of an expanded Settlement Class so that nationwide relief can be afforded. For the same reasons already briefed by Plaintiff and outlined in this Court's July 15, 2016 class certification order, the Settlement Class meets the requirements of Fed. R. Civ. P. 23.[2]

---

[2]      The only additional issue possibly presented by the expanded settlement class is one of choice-of-law. The amended complaint, however, alleges that New Jersey law applies to all claims because the defendant is headquartered there. For purposes of settlement, Defendant does not oppose application of New Jersey law. This is sufficient to satisfy the minimal due process requirements that Plaintiff and the Court must ensure are met for purposes of certification and obviates any individual issues related to differences in state law. *See, e.g.*, *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 538-40 (C.D. Cal. 2011). For other state laws to apply, Defendant would bear the burden of identifying material differences in the law applied to the particular facts of this case that would defeat the requirement of predominance, which the Court already found was satisfied here. *See, e.g.*, *Bruno v. Eckhart Corp.*, 280 F.R.D. 540, 545-48 (C.D. Cal. 2012) (distinguishing *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 596 (9th Cir. 2012) and holding that it did not bar contested certification of a nationwide labeling class). But even if other state laws were to apply, this case turns on a practice common to all class members, and there are no manageability issues that would arise in the context of settlement approval to prevent the certification of a nationwide settlement class. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Of note, the recently released proposed amendments to Rule 23 recognize that a predominance inquiry has no productive role in evaluating the settlement of class actions and accordingly eliminates the requirement in the settlement context. Preliminary Draft of Proposed Amendments to the Federal Rules of Appellate, Bankruptcy, Civil, and Criminal Procedure (August 2016), at 211, *available at* http://www.uscourts.gov/sites/default/files/2016-08-preliminary_draft_of_rules_forms_published_for_public_comment_0.pdf.

**F.      The Proposed Settlement Is Adequate**

The proposed notice plan and claim form comports with the procedural and substantive requirements of Rule 23. Under Rule 23, due process requires that class members receive notice of the settlement and an opportunity to be heard and participate in the litigation. *See* Fed. R. Civ. P. 23(c)(2)(B); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985); *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 175-76 (1974) ("individual notice must be provided to those class members who are identifiable through reasonable effort"). The mechanics of the notice process are left to the discretion of the Court, subject only to the broad "reasonableness" standards imposed by due process. *See* 7A Wright & Miller, FEDERAL PRACTICE & PROCEDURE § 1786 (3d ed. 2008)*; see also Rosenburg v. I.B.M.*, 2007 WL 128232 at *5 (N.D. Cal. 2007) (notice should inform class members of essential terms of settlement including claims procedure and their rights to accept, object or opt-out of settlement). In this Circuit, it has long been the case that a notice of settlement will be adjudged satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill*, 361 F.3d 566, 575 (9th Cir. 2004) (citing *Mendoza v. Tucson Sch. Dist. No.1*, 623 F.3d 1338, 1352 (9th Cir. 1980)). The proposed Notice Plan satisfies these content requirements and is designed to reach a high percentage of the Settlement Class.

Notice of the settlement is to be provided to the class as follows: (1) via publication of a one-third page ad in *People* magazine (circulation of 3,452,000 with approximately 40,010,000 readers of the print edition) and a half page ad in *Good Housekeeping* magazine (circulation of 4,300,000 with approximately 19,651,000 readers of the print edition); (2) a press release issued through PR News Wire's USA 1 network; and (3) a total of 152.7 million impressions of the Online Notice targeted at likely class members that are served across three internet networks (AOL, Conversant and Yahoo), each comprised of many hundreds of individual website partners, and via two types of online advertising formats (newsfeed and banners) on Facebook. (Gutride Decl., Ex. 1 at Sub-Ex. B.) In addition, the claim administrator will establish the settlement website, which shall contain the settlement notices, a contact information page that will include address and telephone numbers for the claim administrator and the parties, the Settlement

Agreement, the signed order of preliminary approval, online and printable versions of the claim form and the opt out forms, answers to frequently asked questions, and (when it becomes available) Class Counsel's application for attorneys' fees, costs, expenses and incentive awards. (*Id.*, Ex. 1 at ¶ 5.1.) Further, the administrator will provide a toll-free telephone number at which class members can obtain information.

As explained in the declaration from the claim administrator filed herewith, this multi-communication method is expected to reach at least 70% of the settlement class members an estimated average of 2.6 times each, and it is the best notice practicable. (Declaration of Jeanne C. Finegan ¶ 32.)  *See, e.g.*, *Simpao v. Gov't of Guam*, 369 F. App'x 837, 838 (9th Cir. 2010) (notice plan was "best notice practicable" where direct notice was mailed to class members and supplemented by published notice); *In re Google Referrer Header Privacy Litig.*, 2014 WL 1266091, *7 (N.D. Cal. Mar. 26, 2014) (where direct individual notice not practical, "publication or something similar is sufficient to provide notice to the individuals that will be bound by the judgment"); *see also In re Tableware*, 484 F. Supp. 2d at 1080 (approving settlement; holding that where defendants do not maintain complete lists of all class members, notice via publication is "reasonable"); *In re Netflix Privacy Litig.*, 2012 WL 2598819, *5 (N.D. Cal. July 5, 2012) (approving notice procedure that included emailing customers at last known email address, publication in *People* magazine, and advertising on Facebook.com).

The proposed notices inform class members about the proposed settlement; their right to opt out or object; the need to file a claim; a summary of settlement benefits; the prospective request for attorneys' fees, costs and incentives; and the fact that they will be bound by the judgment if they do not opt out. The published notices refer class members to the settlement website where they can obtain the long-form notice, which provides more details about the case and the settlement, the procedures for opting out or objecting, a fuller discussion of the release, and methods to obtain additional information. The settlement website also contains a copy of the full Settlement Agreement and will contain the motion for final approval and fee application more than two weeks prior to the deadline to file a claim, object, or opt out. (Gutride Decl., Ex. 1, ¶ 5.1; Sub-Exs. B1, B2.)

Settlement Cass Members who seek benefits under the settlement can complete a simple claim form online. They also have the option to print, complete, and mail the claim form to the claim administrator. The claim form requires them to sign claim forms, under penalty of perjury, in the same way that claimants would need to aver to the accuracy of information in connection with claims submitted in litigation, including to confirm that purchases were for personal use, not resale, because of the phrase "Imported from Italy." The claim form itself seeks basic information, namely contact information, the number of Products purchased, and the date of purchases. Information about the store from which purchases were made is merely optional. (*Id.*, Ex. 1, ¶ 4.3; Sub-Ex A.)

**G.    Notice Pursuant To The Class Action Fairness Act (CAFA)**

CAFA requires that settling defendants give notice of a proposed class action settlement to appropriate state and federal officials and supply all of the information and documents set forth in 28 U.S.C. § 1715 (b)(1)-(8). Defendant will serve CAFA Notice, in compliance with 28 U.S.C. § 1715.

**IV.    DATES FOR THE FINAL APPROVAL PROCESS**

Plaintiff requests that in connection with preliminary approval, this Court set a date for a final approval hearing to consider the fairness of the settlement and to hear any comments from the settlement class members, as well as dates for mailing and publishing notice and deadlines for objections and opting out of the Settlement Class. Subject to preliminary approval being entered by January 23, 2017, Plaintiffs propose the following schedule:

| Item | Proposed Due Date (if Preliminary Approval Hearing on 1/23/17) |
| --- | --- |
| Press Release | February 27, 2017 |
| Online Banner Ads, Facebook Ads | February 27-March 29, 2017 |
| Magazine Publications | March 10, 2017 (People Magazine March 20 issue); March 14, 2017 (Good Housekeeping April issue) |
| Motion for final approval; Plaintiffs' Motion for Attorneys' Fees, Costs and Incentive Award | April 17, 2017 |

–19–

| | | |
|---|---|---|
| 1 | Objections, Claims, opt-outs | May 1, 2017 |
| 2 | Replies in support of final approval and motion | May 15, 2017 |
| 3 | for attorneys' fees, costs and incentive awards; response to objections | |
| 4 | Final approval Hearing | May 29, 2017, 2:00 p.m. |

**V.    CONCLUSION**

For the reasons stated above, Plaintiff respectfully requests that this Court grant preliminary approval to the proposed class action settlement.

Dated: December 30, 2016

**GUTRIDE SAFIER LLP**
 /s/ Adam J. Gutride
Adam J. Gutride (State Bar No. 181446)
Seth A. Safier (State Bar No. 197427)
Kristen G. Simplicio (State Bar No. 263291)
100 Pine Street, Suite 1250
San Francisco, California 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

**TYCKO & ZAVAREEI LLP**
Hassan A. Zavareei (State Bar No. 181547)
Jeffrey D. Kaliel (State Bar No. 238293)
Andrew J. Silver (*admitted pro hac vice*)
1828 L Street, N.W., Suite 1000
Washington, DC 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950