**GUTRIDE SAFIER LLP**
ADAM J. GUTRIDE (State Bar No. 181446)
SETH A. SAFIER (State Bar No. 197427)
MARIE MCCRARY (State Bar No. 262670)
KRISTEN G. SIMPLICIO (State Bar No. 263291)
100 Pine Street, Suite 1250
San Francisco, California 94111
Telephone: (415) 639-9090
Facsimile:  (415) 449-6469

**TYCKO & ZAVAREEI LLP**
HASSAN A. ZAVAREEI (State Bar No. 181547)
JEFFREY D. KALIEL (State Bar No. 238293)
ANDREW J. SILVER (*pro hac vice*)
1828 L Street, N.W., Suite 1000
Washington, DC 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950

Attorneys for Plaintiff, ROHINI KUMAR

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROHINI KUMAR, an individual, on behalf of herself, the general public and those similarly situated,<br><br>    Plaintiff,<br><br>      v.<br><br>SALOV NORTH AMERICA CORP.,<br><br>    Defendant. | CASE NO.  4:14-cv-02411<br><br>FIRST AMENDED CLASS ACTION COMPLAINT FOR FALSE ADVERTISING; FRAUD, DECEIT, AND/OR MISREPRESENTATION; AND UNFAIR BUSINESS PRACTICES<br><br>JURY TRIAL DEMANDED |

Rohini Kumar, by and through her counsel, brings this First Amended Class Action Complaint against Defendant SALOV North America Corp. on behalf of herself and those similarly situated, for false advertising, unfair trade practices, and fraud, deceit and/or misrepresentation. The following allegations are based upon information and belief, including the investigation of Plaintiff's counsel, unless stated otherwise.

**INTRODUCTION**

1. This case concerns Defendant's false and deceptive marketing and sale of olive oil. At the time this litigation was initiated, Defendant represented on the front label that all of its olive oil products were "**IMPORTED FROM ITALY**." The statement on the front label led consumers to reasonably believe that Defendant's olive oil products are made exclusively from 100% Italian oil from olives exclusively grown, or at a minimum exclusively pressed, in Italy. In truth, Defendant's olive oil is comprised primarily of olives that are not grown or pressed in Italy. Rather, many of the olive oils in Defendant's products are pressed from olives grown in other countries, and trucked or shipped to Italy, bottled, and then exported.

**PARTIES**

2. Rohini Kumar ("Plaintiff") is an individual. During the class period, she was a a resident of El Cerrito or Berkeley, California.

3. Defendant Salov North America Corp. ("SNA" or "Defendant") is a corporation incorporated under the laws of the State of New York, having its principal place of business in Lyndhurst, New Jersey. SNA is a wholly owned subsidiary of Salov S.p.A.

4. On information and belief, all or substantially all, of the advertising and marketing decisions complained of in this Complaint were made in New Jersey where Defendant resides and has its principal place of business.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2), because the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action in which at least one member of the class (Plaintiff) is a citizen of a State different from at least one Defendant (SNA).

6.      This Court has subject matter jurisdiction over the Defendant because it regularly conducts and/or solicits business in, engages in other persistent courses of conduct in, and/or derives substantial revenue from products and/or services provided to persons in this District and in this State.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff resides in this District and a substantial part of the events or omissions giving rise to the claims occurred in this District.

8.      Plaintiff accordingly alleges that jurisdiction and venue are proper in this Court.

## SUBSTANTIVE ALLEGATIONS

**A.      The Defendant**

9.      Defendant is an importer, marketer, distributor, and seller of Mediterranean food products in the United States.

10.     Defendant imports, markets, distributes, and sells, in the United States, the Filippo Berio brand of olive oil.

**B.      Defendant's False and Deceptive Product Packaging**

11.     This case concerns Defendant's marketing and sale of Filippo Berio brand olive oil products.  The specific products as issue in this case are:

    a.  Filippo Berio Robusto Extra Virgin Olive Oil;

    b.  Filippo Berio Extra Virgin Olive Oil;

    c.  Filippo Berio Delicato Extra Virgin Olive Oil;

    d.  Filippo Berio Organic Extra Virgin Olive Oil;

    e.  Filippo Berio Olive Oil; and

    f.  Filippo Berio Extra Light Tasting Olive Oil.

These products are collectively referred to as the "Products."

12.     This case focuses on Defendant's representations that the oil is "**IMPORTED FROM ITALY.**"

    a.  Through Defendant's use of intentional misrepresentations and selective omission, the above representation deceives and misleads consumers.  By stating "IMPORTED FROM

ITALY" on the front label, Defendant led consumers to believe that these Products are made exclusively from Italian olives or, at a minimum, exclusively from olives pressed in Italy. This is false and deceptive. In fact, none of the Products is made exclusively from olives grown or pressed in Italy. Rather, the Products are made from oil pressed in many different countries, not just Italy, and trucked or shipped to Italy, bottled and then exported.

13. Part 134, Chapter 1 of Title 19 of the Code of Federal Regulations sets forth regulations implementing the country of origin marking requirements and exceptions of section 304 of the Tariff Act of 1930, as amended (19 U.S.C. 1304), together with certain marking provisions of the Harmonized Tariff Schedule of the United States (19 U.S.C. 1202).

14. 19 C.F.R. § 134.46 requires that:
In any case in which…the name of any foreign country or locality other than the country or locality in which the article was manufactured or produced appear on an imported article or its container, and those words, letters or names may mislead or deceive the ultimate purchaser as to the actual country of origin of the article, there shall appear legibly and permanently in close proximity to such words, letters or name, and in at least a comparable size, the name of the country of origin preceded by "Made in," "Product of," or other words of similar meaning.

15. All of the front labels of Defendant's Products were marketed with labels that state "IMPORTED FROM ITALY," when the oil, in fact, originates from several countries, not just Italy. Yet, Defendant, in violation of 19 C.F.R. § 134.46, did not include on the Products, "in close proximity" to the "IMPORTED FROM ITALY" representation, any indication of the true country of origin of the olive oil preceded by "Made in," "Product of," or other words of similar meaning. Instead, Defendant stated on the back of the Products: "Packed in Italy with select extra virgin olive oils from Italy, Spain, Greece & Tunisia."

16. The United States Food and Drug Administration (the "FDA") has also promulgated regulations governing misbranding of food and providing that food is misbranded if its label expresses or implies a geographical origin of the food or any ingredient of the food except when such representation is "[a] truthful representation of geographical origin." *See* 21 CFR § 101.18. Because the "IMPORTED FROM ITALY" representation is not truthful, Defendant's labels violate 21 CFR § 101.18.

17. Although Defendant contends that the Products always contain some olive oil from

Italy, U.S. Customs and Border Protection ("CBP"), Department of Homeland Security, has stated in advisory letters that a manufacturer cannot claim that a product is "from" a particular country if it merely blends some product from that country with the same product from another country, as that process does not constitute a "substantial transformation" of the product from the other country which would justify a "country of origin" claim based on the manufacturing location. With specific regard to olive oil, in HQ 560944, dated April 27, 1998, CBP advised that the blending of Spanish olive oil with Italian olive oil in Italy does not result in a "substantial transformation" of the Spanish product that would allow it to become an Italian product.

18.     The country of origin claims Defendant made on the Product bottles misled consumers, as they misled Plaintiff, by making an Italian origin claim on the front of the bottle. The disclosure on the back of the bottle does not lessen Defendant's deception because, as the Ninth Circuit has stated, "reasonable consumers…should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the…small print on the side of the box." *Williams v. Gerber Products Co.,* 552 F.3d 934, 939 (9th Cir. 2008).

**C.     Defendant Compound Its Deception With Targeted Marketing and Advertising Campaigns**

19.     Over the past twenty years, extra virgin olive oil has become increasingly popular among consumers. Its popularity surged over the last two decades, in part, because of the popularity of the Food Network channel, and the fact that many chefs appearing on that channel recommend it. Many of the Food Network chefs make a point of especially recommending Italian extra virgin olive oils. For example, Giada De Laurentiis, a popular Food Network host and celebrity chef, uses Italian extra virgin olive oil in her recipes, and regularly advises viewers and home cooks to buy *Italian extra virgin olive oil* in order to recreate her Italian dishes at home. Mario Batali, a former Food Network chef, cookbook author, and current host of a popular daytime talk show, The Chew, has stated in his cookbooks and in numerous television programs that the best olive oil in the world comes from Italy. He accordingly counsels consumers to only use extra virgin olive oil from Italy when cooking.

20.     Defendant unfairly and unlawfully attempts to capitalize on consumers' desire for

Italian olive oil. Defendant, in fact, has employed a variety of long-term marketing and advertising campaigns and strategies to deceive consumers into believing that that Products are Italian. For example, Defendant has a partnership with a popular Italian celebrity chef Mary Ann Esposito. Esposito has designed recipes and cooking videos for Defendant's consumers to encourage them to use the (more expensive) "Extra Virgin Olive Oil" in recipes, particularly those for Italian food.

21. Defendant also relies on its website to further its deception. For example, its website has included a tab titled "Our Olive Grove." The page informed consumers, falsely or misleadingly, that Defendant's Products come from an olive grove in Italy.



The largest olive grove in Italy, La Traversagna is located at the foot of the Tuscan hills in the Lucca Province near Pisa. Nestled in this picturesque, sun-drenched valley, La Traversagna is the site of our family's century-old farmhouse, the epicenter of the Filippo Berio® tradition.

A walk through La Traversagna is like a step back in time, when olives were grown and hand picked in much the same way they are today. Our trees enjoy full and prosperous flowering due to year-round care, which allows the olives to reach optimal size and maturity just before harvesting.

With 45,000 olive trees planted across 250 acres of beautiful green meadows, La Traversagna is truly an olive oil paradise.

**D. Defendant's Conduct Differs From That Of Its Competitors**

22. Unlike Defendant, who claims its Products are "IMPORTED FROM ITALY," certain of its competitors state that their olive oil products are "PACKED IN ITALY" or "BOTTLED IN ITALY" or make no claim on the front of the package about the place of manufacture. For example, one of Defendant's competitors in the olive oil market is Violi brand olive oil. Violi sells its olive oil for lower prices than Defendant's comparable products. It states "PACKED IN ITALY" on its bottles. Trader Joe's bottles of olive oil, which the company also sells for a lower cost than Defendant's olive oils, too state "PACKED IN ITALY." Other of Defendant's olive oil competitors, including Rizzoli, state on bottles that the olive oil is

"BOTTLED IN ITALY." Other companies, such as Star brand olive oil, make no reference on the front of the package of the geographic origin of their olive oil, unless the oil is, in fact, made from olives that are grown and pressed in that country, state or region. Other of Defendant's competitors, like Pompeian olive oil, simply state, on the primary label panel, that the olive oil is "IMPORTED" without reference to any geographical region.

## PLAINTIFF'S EXPERIENCE

23.     Plaintiff regularly purchases extra virgin olive oil for home use. At various times throughout the class period, she purchased Defendant's Filippo Berio Extra Virgin Olive Oil at a Safeway in Berkeley, California.

24.     Prior to purchasing Defendant's Filippo Berio brand extra virgin olive oil, Plaintiff reviewed the packaging to satisfy herself that she was purchasing extra virgin olive oil from Italy. Plaintiff specifically reviewed Defendant's statements on the package that the product was "Imported from Italy." Plaintiff relied on Defendant's affirmative disclosures to believe she was purchasing olive oil that was 100% Italian olive oil made from olives that were exclusively grown and pressed in Italy. Plaintiff also relied on Defendant's failure to adequately disclose that by "Imported from Italy" it meant that it was "packed" or "bottled" in Italy and that it was not either pressed in or made (exclusively) from olives that had been grown in Italy.

25.     Plaintiff purchased Defendant's Filippo Berio extra virgin olive oil from a Safeway supermarket in Berkeley, California for approximately $6 a bottle.

26.     Plaintiff later learned that the product she purchased was not made exclusively from olives grown and pressed in Italy. Had Defendant not misrepresented (by omission and commission) the true nature of the olive oil on the front label, Plaintiff would not have purchased Defendant's product or, at a very minimum, she would have paid less for the product that she purchased.

27.     Plaintiff intends to make additional purchases of olive oil, including brands that are or may be owned by Defendant. Thus, in the absence of the injunctive relief requested in this Complaint, Plaintiff is likely to be deceived in the future and to suffer additional harm.

First Amended Class Action Complaint

## CLASS ALLEGATIONS

28.    Plaintiff brings this action against Defendant on behalf of herself and all others similarly situated, as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiff seeks to represent the following groups of similarly situated persons, defined as follows:

> All natural persons in the United States who purchased Filippo Berio brand olive oil of any grade except 'Organic' between May 23, 2010 and June 30, 2015, except for purposes of resale.

29.    This action has been brought and may properly be maintained as a class action against Defendant pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable.

30.    Numerosity:  Plaintiff does not know the exact size of the class, but it is estimated that each is composed of more than 10,000 persons.  The persons are so numerous that the joinder of all such persons is impracticable and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the courts.

31.    Common Questions Predominate:  This action involves common questions of law and fact to the potential class because each class and subclass member's claim derives from the deceptive, unlawful and/or unfair statements and omissions that led Defendant's customers to believe that the Products were (or at a minimum contained olives) from Italy, and/or extra virgin. The common questions of law and fact predominate over individual questions, as proof of a common or single set of facts will establish the right of each member of the class to recover. Among the common questions of law and fact are:

a)    Whether Defendant's Products were exclusively pressed in Italy and/or made exclusively from Italian olives;

b)    Whether Defendant misled class members by, *inter alia*, representing that its Products were "Imported from Italy";

c)    Whether Defendant's advertising and marketing regarding its Products sold to class members was likely to deceive class members or was unfair;

d)    Whether Defendant engaged in the alleged conduct knowingly, recklessly, or

negligently;

e)     The amount of revenues and profits Defendant received and/or the amount of monies or other obligations lost by class members as a result of such wrongdoing;

f)     Whether class members are entitled to injunctive and other equitable relief and, if so, what is the nature of such relief; and

g)     Whether class members are entitled to payment of actual, incidental, consequential, exemplary and/or statutory damages plus interest thereon, and if so, what is the nature of such relief.

32.     Typicality:  Plaintiff's claims are typical of the class members because, throughout the class period, she purchased at least one of Defendant's Products, in reliance on Defendant's misrepresentations and omissions that it was "Imported from Italy."  Thus, Plaintiff and the class members sustained the same injuries and damages arising out of Defendant's conduct in violation of the law.  The injuries and damages of each class member were caused directly by Defendant's wrongful conduct in violation of law as alleged.

33.     Adequacy:  Plaintiff will fairly and adequately protect the interests of all class members because it is in her best interests to prosecute the claims alleged herein to obtain full compensation due to her for the unfair and illegal conduct of which she complains.  Plaintiff also has no interests that are in conflict with or antagonistic to the interests of class members.  Plaintiff has retained highly competent and experienced class action attorneys to represent her interests and that of the classes.  By prevailing on her own claim, Plaintiff will establish Defendant's liability to all class members.  Plaintiff and her counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiff and counsel are aware of their fiduciary responsibilities to the class members and are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for class members.

34.     Superiority:  There is no plain, speedy, or adequate remedy other than by maintenance of this class action.  The prosecution of individual remedies by members of the class will tend to establish inconsistent standards of conduct for the Defendant and result in the impairment of class members' rights and the disposition of their interests through actions to

which they were not parties.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions world engender.  Furthermore, as the damages suffered by each individual member of the class may be relatively small, the expenses and burden of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.

35.     Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

36.     Plaintiff does not plead, and hereby disclaims, causes of action under the Food Drug and Cosmetic Act ("FDCA") and regulations promulgated thereunder by the FDA.  If failure to do so would cause any of her claims to be preempted, Plaintiff also disclaims causes of action under the Tariff Act and regulations promulgated by the USDA, IOC and/or CBP. Plaintiff relies on these regulations only to the extent such laws and regulations have been separately enacted as state law or regulations or provide a predicate basis of liability under the state and common laws cited in the following causes of action.

## PLAINTIFF'S FIRST CAUSE OF ACTION
### (False Advertising, New Jersey Consumer Fraud Act, N.J.S.A. 56:8–1 *et. seq.* On Behalf Of Herself and the Class

37.     Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

38.     Beginning at an exact date unknown to Plaintiff, but within four (4) years preceding the filing of her initial Class Action Complaint, Defendant made untrue, false, deceptive and/or misleading statements in connection with the advertising and marketing of its Products.

39.     Defendant made representations and statements (by omission and commission) that led reasonable customers to believe that they were purchasing olive oil that orginated in Italy. Defendant deceptively failed to inform Plaintiff, and those similarly situated, that its Products did

not actually originate in Italy.

40.    Plaintiff and those similarly situated relied to their detriment on Defendant's false, misleading and deceptive advertising and marketing practices, including without limitation each of the misrepresentations and omissions set forth in paragraphs 1, 12-24, above. Had Plaintiff and those similarly situated been adequately informed and not intentionally deceived by Defendant, they would have acted differently by, without limitation, refraining from purchasing Defendant's Products, paying less for them or purchasing smaller quantities.

41.    Defendant's acts and omissions are likely to deceive the general public.

42.    Defendant engaged in these false, misleading and deceptive advertising and marketing practices to increase its profits. On information and belief, all or substantially all, of the advertising and marketing decisions complained of in this Complaint were made in New Jersey where Defendant resides and has its principal place of business, and thereafter such advertisements and marketing materials were disseminated nationwide. Accordingly, Defendant have engaged in false advertising, as defined and prohibited by section 56:8-1, *et. seq.*, of the New Jersey Consumer Fraud Act.

43.    The aforementioned practices, which Defendant used, and some of which it continues to use, to its significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendant's competitors as well as injury to the general public.

44.    Plaintiff seeks, on behalf of those similarly situated, full restitution of monies, as necessary and according to proof, to restore any and all monies acquired by Defendant from Plaintiff, the general public, or those similarly situated by means of the false, misleading and deceptive advertising and marketing practices complained of herein, plus interest thereon.

45.    Plaintiff seeks, on behalf of those similarly situated, an injunction to prohibit Defendant from continuing to engage in the false, misleading and deceptive advertising and marketing practices complained of herein. The acts complained of herein occurred, at least in part, within four (4) years preceding the filing of the initial Class Action Complaint.

46.    Plaintiff and those similarly situated are further entitled to and do seek both a declaration that the above-described practices constitute false, misleading and deceptive

advertising, and injunctive relief restraining Defendant from engaging in any such advertising and marketing practices in the future. In the absence of such equitable relief, Defendant could renew the misconduct alleged herein, and such misconduct by Defendant, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to Plaintiff and the general public and the loss of money and property in that the Defendant will continue to violate the laws of New Jersey. This expectation of future violations will require current and future customers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendant to which Defendant is not entitled. Plaintiff, those similarly situated and/or other consumers nationwide have no other adequate remedy at law to ensure future compliance with the New Jersey Consumer Fraud Act alleged to have been violated herein.

47. As a direct and proximate result of such actions, Plaintiff and the other members of the Class have suffered, and continue to suffer, injury in fact and have lost money and/or property as a result of such false, deceptive and misleading advertising in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

**PLAINTIFF'S SECOND CAUSE OF ACTION**

**(Fraud, Deceit and/or Misrepresentation)**
**On Behalf of Herself and the Class**

48. Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

49. At various times throughout the class period, Defendant fraudulently and deceptively led Plaintiff to believe that Defendant's olive oil was "Imported from Italy" when it did not consist exclusively of oil pressed in Italy from olives grown in Italy.

50. These omissions were material at the time they were made. They concerned material facts that were essential to the analysis undertaken by Plaintiff as to whether to purchase Defendant's olive oil.

51. Defendant made identical misrepresentations and omissions to members of the Class regarding Defendant's Products.

52. In not so informing Plaintiff and the members of the Class, Defendant breached its

duty to them. Defendant also gained financially from, and as a result of, its breach.

53. Plaintiff and those similarly situated relied to their detriment on Defendant's fraudulent omissions. Had Plaintiff and those similarly situated been adequately informed and not intentionally deceived by Defendant, they would have acted differently by, without limitation, not purchasing (or paying less for) Defendant's Products.

54. Defendant had a duty to inform class members at the time of their purchases of that the Products that the product they were purchasing were not made exclusively from Italian olive oil in close proximity to the "Imported from Italy" statement on the front label of the Products. Defendant failed to provide this information to class members. Class members relied to their detriment on Defendant's omissions. These omissions were material to the decisions of the class members to purchase Defendant's Products. In making these omissions, Defendant breached its duty to class members. Defendant also gained financially from, and as a result of, its breach.

55. By and through such fraud, deceit, misrepresentations and/or omissions, Defendant intended to induce Plaintiff and those similarly situated to alter their position to their detriment. Specifically, Defendant fraudulently and deceptively induced Plaintiff and those similarly situated to, without limitation, to purchase its Products.

56. Plaintiff and those similarly situated justifiably and reasonably relied on Defendant's omissions, and, accordingly, were damaged by Defendant.

57. As a direct and proximate result of Defendant's misrepresentations, Plaintiff and those similarly situated have suffered damages, including, without limitation, the amount they paid for the Products.

58. Defendant's conduct as described herein was willful and malicious and was designed to maximize Defendant's profits even though Defendant knew that it would cause loss and harm to Plaintiff and those similarly situated.

**PLAINTIFF'S THIRD CAUSE OF ACTION**
**(New Jersey Truth in Consumer Contract, Warranty and Notice Act,**
**N.J.S.A. 56:12-14, *et. seq.*)**
**On Behalf of Herself and the Class**

59.     Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

60.     Within four (4) years preceding the filing of this Class Action Complaint, and at all times mentioned herein, Defendant has engaged, and continues to engage, in unfair, unlawful and deceptive trade practices in New Jersey (and nationwide) by engaging in the unfair, deceptive and unlawful business practices outlined in this Class Action Complaint.   In particular, Defendant has engaged, and continue to engage, in unfair, unlawful and deceptive trade practices by, without limitation, the following:

a.     deceptively representing to Plaintiff, and those similarly situated, the Products were "Imported From Italy," thereby implying that they contained Italian olive oil and/or were pressed in Italy;

b.     failing to adequately inform Plaintiff, and those similarly situated, that the Products were not and did not exclusively contain oil from Italian olives;

c.     failing to adequately inform Plaintiff, and those similarly situated, that the Products were not and did not exclusively contain oil that was pressed in Italy;

d.     failing to adequately inform Plaintiff, and those similarly situated, that the Products were merely bottled or packed in Italy;

e.     engaging in fraud, deceit, and misrepresentation as described herein;

f.     violating the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et. seq.*

g.     Plaintiff and those similarly situated relied to their detriment on Defendant's unfair, deceptive and unlawful business practices.  Had Plaintiff and those similarly situated been adequately informed and not deceived by Defendant, they would have acted differently by not purchasing (or paying less for) Defendant's Products.

61.     Defendant's acts and omissions are likely to deceive the general public.

62.     Defendant engaged in these unfair practices to increase its profits.  On information and belief, all or substantially all, of the advertising and marketing decisions complained of in this Complaint were made in New Jersey where Defendant resides and has its principal place of business and thereafter such advertisements and marketing materials were disseminated

nationwide. Accordingly, Defendant has engaged in unlawful trade practices, as defined and prohibited by section 56:12-14, *et. seq.* of the New Jersey Truth in Consumer Contract, Warranty and Notice Act.

63. The aforementioned practices, which Defendant has used to its significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendant's competitors as well as injury to the general public.

64. Plaintiff seeks, on behalf of those similarly situated, full restitution of monies, as necessary and according to proof, to restore any and all monies acquired by Defendant from Plaintiff, the general public, or those similarly situated by means of the unfair and/or deceptive trade practices complained of herein, plus interest thereon.

65. Plaintiff seeks, on behalf of those similarly situated, an injunction to prohibit Defendant from continuing to engage in the unfair trade practices complained of herein.

66. The acts complained of herein occurred, at least in part, within four (4) years preceding the filing of this Class Action Complaint.

67. Plaintiff and those similarly situated are further entitled to and do seek both a declaration that the above-described trade practices are unfair, unlawful and/or fraudulent, and injunctive relief restraining Defendant from engaging in any of such deceptive, unfair and/or unlawful trade practices in the future. In the absence of such equitable relief, Defendant could renew the misconduct alleged herein, and such misconduct by Defendant, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendant will continue to violate the laws of New Jersey, unless specifically ordered to comply with the same. This expectation of future violations will require current and future customers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendant to which Defendant is not entitled. Plaintiff, those similarly situated and/or other consumers nationwide have no other adequate remedy at law to ensure future compliance with the New Jersey Consumer Fraud Act and the New Jersey Truth in Consumer Contract, Warranty and Notice Act alleged to have been violated herein.

68. As a direct and proximate result of such actions, Plaintiff and the other members of

the Class have suffered and continue to suffer injury in fact and have lost money and/or property as a result of such deceptive, unfair and/or unlawful trade practices and unfair competition in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.  Among other things, Plaintiff and the Class a lost the amount they paid for the Products.

69.	As a direct and proximate result of such actions, Defendant have enjoyed, and continue to enjoy, significant financial gain in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

1.	for restitution, the amount of which is to be determined at trial;

2.	for compensatory and enhanced damages, the amount of which is to be determined at trial;

3.	for declaratory and injunctive relief;

4.	for reasonable attorneys' fees according to proof;

5.	for costs of suit incurred; and

6.	for such further relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated:  January 27, 2017	**GUTRIDE SAFIER LLP**


/s/ Kristen G. Simplicio
Adam J. Gutride, Esq.
Seth A. Safier, Esq.
Marie McCrary, Esq.
Kristen G. Simplicio, Esq.
100 Pine Street, Suite 1250
San Francisco, California 94111

Attorneys for Plaintiff

First Amended Class Action Complaint