ADAM J. GUTRIDE (State Bar No. 181446)
adam@gutridesafier.com
SETH A. SAFIER (State Bar No. 197427)
seth@gutridesafier.com
KRISTEN G. SIMPLICIO (State Bar No. 263291)
kristen@gutridesafier.com
**GUTRIDE SAFIER LLP**
100 Pine Street, Suite 1250
San Francisco, California 94111
Telephone: 415.271.6469
Facsimile: 415.449.6469

HASSAN A. ZAVAREEI (State Bar No. 181547)
hzavareei@tzlegal.com
JEFFREY D. KALIEL (State Bar No. 238293)
jkaliel@tzlegal.com
ANDREW J. SILVER (*pro hac vice*)
asilver@tzlegal.com
**TYCKO & ZAVAREEI LLP**
1828 L Street, N.W., Suite 1000
Washington, DC 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950

Attorneys for Plaintiff and the Class

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ROHINI KUMAR, individual, on behalf of herself, the general public and those similarly situated<br><br>    Plaintiff,<br><br>        v.<br><br>SALOV NORTH AMERICA CORPORATION,<br><br>        Defendant. | CASE NO. 4:14-cv-02411-YGR<br><br>**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPLICATION FOR ATTORNEYS' FEES, COSTS AND INCENTIVE AWARDS**<br><br>Date: May 30, 2017<br>Time: 2:00 p.m.<br>Courtroom 1, Fourth Floor<br>Judge: Hon. Yvonne Gonzalez Rogers |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................... iii

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................1

    **A.**    INTRODUCTION ................................................................................1

    **B.**    BACKGROUND FACTS AND DETAILS OF SETTLEMENT ............................2

    **C.**    Litigation History .............................................................................2

    **D.**    Settlement Negotiations ......................................................................4

    **E.**    The Proposed Settlement ....................................................................4

        1.    Direct Monetary Relief ............................................................4

        2.    Changed Practices ..................................................................5

        3.    Administrative Expenses, Attorneys' Fees and Costs, Incentive Awards........6

        4.    Notice...................................................................................7

II.    ARGUMENT ...........................................................................................8

    **A.**    Final Approval Is Warranted...............................................................8

        1.    The Settlement Agreement Resulted from Arm's-Length Negotiations. ..........9

        2.    Substantial Benefits Are Provided To The Class. .............................9

        3.    There are Serious Risks of Further Litigation .................................11

        4.    The Experience And Views Of Counsel Favor Final Approval. ...................12

        5.    The Reaction Of The Settlement Class Has Been Overwhelmingly Positive. 13

    **B.**    Plaintiff's Counsel Should Be Awarded Attorneys' Fees And Expenses In The Amount of $982,500. .....................................................................15

        1.    Plaintiff's Counsel's Requested Fee Is Reasonable When Using The Lodestar Approach. ...........................................................................15

        2.    Plaintiff's Counsel's Requested Fee Is A Reasonable Percentage of The Total Benefit Made Available To The Class. ..........................................20

        3.    Plaintiff's Counsel Should Be Awarded Costs...............................22

    **C.**    An Incentive Award To The Representative Plaintiff Is Reasonable. ...................22

III.    CONCLUSION .................................................................**Error! Bookmark not defined.**

**<u>TABLE OF AUTHORITIES</u>**

# CASES

*Beasley v. Wells Fargo Bank*, 235 Cal. App. 3d 1407 (1991) ................................................. 19

*Brinker v. Normandin's*, No. 14CV03007EJDHRL, 2017 WL 713554 (N.D. Cal. Feb. 23, 2017) (citing *Theme Promotions, Inc. v. News America Marketing FSI, Inc.,* 731 F. Supp. 2d 937 (N.D. Cal. 2010) ................................................. 22

*Browning v. Yahoo! Inc.*, No. C04-01463 HRL, 2007 WL 4105971 (N.D. Cal. Nov. 16, 2007) ................................................................................................. 18, 25

*Class Plaintiffs v. City of Seattle,* 955 F.2d 1268 (9th Cir. 1992) ................................. 8

*Cobell v. Norton*, 231 F. Supp. 2d 295 (D.D.C. 2002) ................................................. 22

*Covillo v. Specialtys Café*, No. C-11-00594 DMR, 2014 WL 954516 (N.D. Cal. Mar. 6, 2014) ............................................................................................................... 24

*Dennings v. Clearwire Corp.*, No. C10-1859JLR, 2013 WL 1858797 (W.D. Wash. May 3, 2013) .................................................................................................................. 26

*Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15 (N.D. Cal. 1980), *aff'd,* 661 F.2d 939 (9th Cir. 1981) ......................................................................................................... 11

*Embry v. Acer America Corp.*, C 09-01808 JW, Dkt.# 218 (N.D. Cal. Feb. 14, 2012) ............................................................................................................................... 29

*Evans v. Linden Research, Inc.*, No. C-11-01078 DMR, 2014 WL 1724891 (N.D. Cal. April 29, 2014) ................................................................................................. 16

*Galvez v. Americlean Servs. Corp.*, No. 1:11CV1351 JCC/TCB, 2012 WL 2522814 (E.D. Va. June 29, 2012) ............................................................................... 22

*Gibson & Co. Ins. Brokers, Inc. v. Jackson Nat. Life Ins. Co.*, CV06-5342 DSF (SHX), 2008 WL 618893 (C.D. Cal. Feb. 27, 2008) ................................................. 29

*Girsh v. Jepson,* 521 F.2d 153 (3rd Cir. 1975) ........................................................... 14

*Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) ...................................................................................................... 25, 26

*Gutierrez v. Wells Fargo Bank, N.A.*, No. C 07-05923 WHA, 2015 WL 2438274 (N.D. Cal. May 21, 2015) .............................................................................................. 21

*Hall v. Bank of Am.*, No. 1:12-cv-22700-FAM, 2014 WL 7184039 (S.D. Fla. Dec. 17, 2014) ..................................................................................................................... 16

*Hanlon v. Chrysler Corp.*, 150 F.3d 1101 (9th Cir. 1998) ..................................... 9, 10

*Hartless v. Clorox Co.,* 273 F.R.D. 630 (S.D. Cal. 2011), *aff'd,* 473 F. App'x. 716 (9th Cir. 2012) ............................................................................................................. 25

*In re Apple iPhone 4 Prods. Liab. Litig.*, No. 5:10-md-2188 RMW, 2012 WL 3283432 (N.D. Cal. Aug. 10, 2012).................................................................17

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, MDL Docket No. 901 All Cases, 1992 U.S. Dist. LEXIS 14337 (C.D. Cal. June 10, 1992) ...................15

*In re Mego Fin. Corp Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000)................................28

*In re Mego Financial Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) ...........9, 10, 13

*In re NVIDIA Corp. Derivative Litig.*, 2008 WL 5382544 (N.D. Cal. 2008) ............15

*In re Online DVD–Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir.2015)...................17

*In re Optical Disk Drive Prod. Antitrust Litig.*, No. 3:10-MD-2143 RS, 2016 WL 7364803 (N.D. Cal. Dec. 19, 2016) ......................................................................21

*In re Pacific Enterprises Securities Litig.*, 47 F.3d 373 (9th Cir. 1995)......................8

*In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007).................................................................................24

*In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291 (9th Cir. 1994)...............23

*Johnson v. Triple Leaf Tea Inc.,* (N.D. Cal. Nov. 16, 2015).......................................23

*Kelly v. Wengler*, 822 F.3d 108 (9th Cir. 2016).........................................................18

*Kirkorian v. Borelli*, 695 F. Supp. 446 (N.D. Cal. 1988).............................................15

*Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th (2000)...................................18

*LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748 (2nd Cir. 1998)...................................23

*Linney v. Cellular Alaska Partnership*, 151 F.3d 1234 (9th Cir. 1998)......................11

*Lopez v. Youngblood*, No. CV-F-07-0474 DLB, 2011 WL 10483569 (E.D. Cal. Sept. 2, 2011) ..................................................................................................18

*Lusby v. GameStop Inc.*, No. C12-03783 HRL, 2015 WL 1501095 (N.D. Cal. Mar. 31, 2015) ....................................................................................................24

*Lymburner v. U.S. Fin. Funding, Inc.*, No. C-08-00325 EDL, 2012 WL 398816 (N.D. Cal. Feb. 7, 2012)......................................................................................24

*Mancini v. Dan P. Plute, Inc.*, 358 F. App'x 886 (9th Cir. 2009) ............................22

*Marshall v. Holiday Magic, Inc.* 550 F.2d 1173 (9th Cir. 1977) ................................14

*McLaughlin v. Wells Fargo Bank, N.A.*, No. C 15-02904 WHA, 2017 WL 994969 (N.D. Cal. Mar. 15, 2017) ............................................................................21

*Missouri v. Jenkins*, 491 U.S. 274 (1989) ..................................................................23

*Nwabueze v. AT&T, Inc.*, No. C 09-01529 SI, 2014 WL 324262 (N.D. Cal. Jan. 29, 2014) ..................................................................................................................18, 25

*Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615 (9th Cir. 1982), *cert. denied*, 459 U.S. 1217 (1983)......................................8, 9, 10, 13

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982) .................10, 11

*Poertner v. Gillette Co.*, 618 Fed. Appx 624 (11th Cir. July 16, 2015)....................................17

*Pollard v. Remington Arms Co.*, LLC, --- F.R.D. ---, 2017 WL 991071 (W.D. Mo. Mar. 14, 2017).......................................................................................................16

*Ramos v. Countrywide Home Loans, Inc.*, 82 Cal.App.4th 615 (2000)....................................19

*Rodriguez v. West Publ'g Corp.*, No. CV05-3222 WL 2827379 (C.D. Cal. Sept. 10, 2007) ......................................................................................................................13

*Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673 (N.D. Cal. 2016) ......................23

*Six Mexican Workers v. Arizona Citrus Workers*, 904 F.2d 1301 (9th Cir. 1990) ...................26

*Smith v. CRST Van Expedited, Inc.,* 10-CV-1116- IEG WMC, 2013 WL 163293 (S.D. Cal. Jan. 14, 2013) ...........................................................................................28

*Spann v. J.C. Penney Corp.*, ___ F. Supp. 3d ____, 2016 WL 5844606 (C.D. Cal. Sept. 30, 2016) ...........................................................................................................17

*Staton v. Boeing Co.,* 327 F.3d 938 (9th Cir. 2003)..................................................................25

*Stern v. Gambello,* 480 F. App'x 867 (9th Cir.2012)) *aff'd* (Sept. 9, 2013) ............................26

*Texas v. U.S.*, No. CV 11-1303 (RMC), 2017 WL 1194159 (D.D.C. Mar. 30, 2017) .................................................................................................................22

*Torrisi v. Tucson Elec. Power Co*., 8 F.3d 1370 (9th Cir. 1993), *cert. denied*, 512 U.S. 1220 (1994).......................................................................................9, 10, 13

*Touhey v. U.S.*, No. EDCV 08-01418-VAP (RCx), 2011 WL 3179036 (C.D. Cal. July 25, 2011)........................................................................................................17

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995)....................................26

*Vincent v. Hughes Air West*, 557 F.2d 759 (9th Cir. 1977) ......................................................27

*Walsh v. Kindred Healthcare*, No. C 11-00050 JSW, 2013 WL 6623224 (N.D. Cal. Dec. 16, 2013) .................................................................................................24

*Wehlage v. Evergreen at Arvin LLC*, No. 4:10-CV-05839-CW, 2012 WL 4755371 (N.D. Cal. Oct. 4, 2012) ...........................................................................................24

*Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026 (9th Cir. 1997)...........................25, 26

*Williams v. Vukovich*, 720 F.2d 909 (6th Cir. 1983).................................................................10

*Young v. Katz* 447 F.2d 431 (5th Cir. 1971) .............................................................14

*Young v. Polo Retail, LLC*, 2007 U.S. Dist. LEXIS 27269 (N.D. Cal. Mar. 28, 2007) .............................................................................................................................25

# STATUTES

21 U.S.C. § 301 *et seq.* ........................................................................................................2

California Business and Professions Code § 17200 *et seq.* .........................................3

California Business and Professions Code § 17500 *et seq.* .........................................3

California Consumer Legal Remedies Act, Civil Code § 1780 *et seq.* ......................3

Sherman Food, Drug and Cosmetic Law, California Health and Safety Code § 109875 *et. seq.* ................................................................................................................3

# OTHER AUTHORITIES

*Manual For Complex Litigation (Third)* §30.42 .........................................................9

Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 UCLA L. Rev. 1303, 1333 (2006) ................................23

# RULES

Fed. R. Civ. P. 23 ..............................................................................................................4, 8

Rule 23 .......................................................................................................................................7

# NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on May 30, 2017, at 2:00 p.m., or as soon thereafter as the matter may be heard, in Courtroom 1, Fourth Floor, before the Honorable Yvonne Gonzalez Rogers, Plaintiff shall and hereby does move the Court for an order of:

(1) Final approval of the settlement of this class action as set forth in the class action settlement agreement dated December 30, 2016 (Dkt. # 140-1 at 8-97);

(2) Final certification of the proposed Settlement Class as defined in the Settlement Agreement;

(3) Entry of final judgment;

(4) An award of $982,500.00 in attorneys' fees and in expenses; and

(5) An incentive award of $2,500 for Plaintiff Rohini Kumar.

This Motion is based on Federal Rule of Civil Procedure 23, this notice, the supporting Memorandum of Points and Authorities; the Declarations of Adam Gutride ("Gutride Decl."), Hassan Zavareei ("Zavareei Decl."), Jeanne C. Finegan ("Finegan Decl.") and Colin Weir ("Weir Decl.") filed in support of this motion; the declarations and exhibits submitted in support of Plaintiff's Motion for Preliminary Approval; and the pleadings and papers on file in this action and any other matter of which this Court may take notice.

## MEMORANDUM OF POINTS AND AUTHORITIES

### A.    INTRODUCTION

On January 27, 2017, this Court preliminarily approved this class action settlement between Plaintiff Rohini Kumar, the certified class and Defendant Salov North America Corporation ("Salov"). The Court scheduled a final approval hearing for May 30, 2017 to determine: (a) whether the proposed settlement should be finally approved as fair, reasonable, and adequate, and whether the Final Approval Order should be entered, and (b) whether Class Counsel's application for attorneys' fees, costs, and a payment to the Class Representative should be approved. (Dkt.# 151.)

Under the Settlement Agreement,[1] class members can file a claim for each bottle or can of Filippo Berio Robusto Extra Virgin Olive Oil, Filippo Berio Extra Virgin Olive Oil, Filippo Berio Delicato Extra Virgin Olive Oil, Filippo Berio Organic Extra Virgin Olive Oil, Filippo Berio Olive Oil, or Filippo Berio Light Tasting Olive Oil (collectively, the "Products") purchased during the Class Period (i.e., between May 23, 2010 and June 30, 2015).  Class members receive a cash payment of $0.50 for each Product purchase during the class period, with a guaranteed minimum payment of $2.00 for any class member who submits a Valid Claim.  This is an excellent settlement in light of the fact that Plaintiff's expert calculated the average damages to be approximately $0.34 per bottle.  Unlike under many settlement structures, the amount paid to individual claimants does not depend on the number of claims submitted, the cost of notice or administration, the amount paid in cost or fees, or any amounts paid to Plaintiff—all of which are borne by Defendant.  There is no cap on the total amount paid to the class member for claimed purchases that are corroborated by Proof of Purchase.  However, a maximum of $5.00 shall be paid to any Household for claimed purchases that are not corroborated by Proof of Purchase. (Dkt. # 140-1 ("Settlement Agreement") at 8-97.)

During the pendency and as a result of this Litigation, Defendant removed the phrase "Imported from Italy" from all Products imported into the United States, and it replaced that

---

[1] The capitalized terms used herein are defined in and have the same meaning as used in the Settlement Agreement unless otherwise stated.

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FEE APPLICATION

phrase with the word "Imported." As part of the Settlement Agreement, Salov has agreed to maintain these practices for at least three years after the Effective Date. (Id.) Plaintiff's economics expert has determined the value of these practice changes to be $19,906,123.

Plaintiff seeks an award of $982,500.00 in attorneys' fees and in costs, and a $2,500 incentive award to Plaintiff. (*Id.*) None of these sums comes at the expense of any amount of money set aside for the class. Plaintiff and her counsel have not yet received any compensation for their work on this case or for the out-of-pocket expenses they have incurred. Over the two years, they collectively expended more than 2100 hours to reach successful settlement of the case, equating to more than $1.4 million in fees if calculated using the lodestar method, and they incurred more than $108,000 in out-of-pocket expenses. Thus, the requested amount is significantly less than Class Counsel's present lodestar and unreimbursed expenses.

As the fair, reasonable and adequate Settlement is the product of a non-collusive, adversarial negotiation, and Plaintiff's Counsel's request for fees and costs is fair and reasonable, Plaintiff respectfully requests that this motion be granted.

### B.     BACKGROUND FACTS AND DETAILS OF SETTLEMENT

### C.     Litigation History

On March 21, 2014, Plaintiff filed a complaint against Defendant in the above-captioned case, in which Plaintiff alleged that Defendant had deceptively marketed and sold its Filippo Berio brand of olive oil with the representation "Imported from Italy" on the front label, although the back label stated that most of the oil was extracted in countries other than Italy from olives grown in those other countries (herein referred to as the "Imported From Italy Allegations"). Plaintiff further alleged that, by marketing the Products as "Imported from Italy," Defendant caused people to purchase the Products who would not otherwise have done so, and that the Products were sold at a higher retail price than they would have been sold without the misstatements.

Plaintiff contended that Defendant's challenged labeling and marketing violated the Tariff Act of 1930, as amended, 19 U.S.C. § 1304, and its implementing regulations, 19 C.F.R. § 134.46; the Food Drug and Cosmetic Act, 21 U.S.C. § 301 *et seq.,* and its implementing regulations, 21 C.F.R. § 101.18 *et seq.*; and the Sherman Food, Drug and Cosmetic Law, California Health and

Safety Code ("Cal. Health & Saf. Code") § 109875 *et. seq.* She alleged claims for violations of the California Consumer Legal Remedies Act, Civil Code § 1780 *et seq.* ("CLRA"), false advertising under California Business and Professions Code § 17500 *et seq.*; unfair business practices under California Business and Professions Code § 17200 *et seq.*; and misrepresentation. Plaintiff sought to pursue these claims on behalf of herself and all purchasers of the Filippo Berio olive oil in California between May 23, 2010 and the present. Plaintiff also sought to recover, on behalf of this class of all purchasers other than re-sellers, the dollar amount of the "premium" price that she contended was attributable to the alleged misrepresentations.

In her complaint, Plaintiff also alleged that, for a subset of the Products labeled "Extra Virgin," Defendant's procurement, bottling, and distribution practices failed to ensure that the oil would meet the "extra virgin" standard through the "best by" date. With respect to these allegations, Plaintiff pled the same causes of action set forth above, as well as causes of action for breach of contract and breach of the good faith and fair dealing, and she sought to represent a national class on those additional causes of action.

On July 22, 2014, Defendant filed a motion to dismiss the complaint. Defendant argued, *inter alia*, that Plaintiff lacked standing to sue and that she had failed to plead a claim for relief. Plaintiff opposed the motion. On February 3, 2015, the Court issued an order granting in part and denying in part the motion. The order allowed all the claims and causes of action to proceed except for the claims for breach of contract and breach of the duty of good faith and fair dealing, which only had been made as to the "extra virgin" labelling, and which were dismissed.

On January 7, 2016, after substantial fact and expert discovery, and as part of a stipulation entered into by the parties and approved by the Court, Plaintiff voluntarily dismissed her remaining extra virgin allegations, allowing Plaintiff to focus on the Imported from Italy Allegations.

On January 20, 2016, Plaintiff moved to certify a class of all purchasers in California of Filippo Berio olive oil between May 30, 2010 and August 31, 2015, except purchases for purpose of resale. Defendant opposed the motion. On July 15, 2016, the Court certified a class to pursue the Imported From Italy Allegations of "All purchasers in California of liquid Filippo Berio brand

olive oil of any grade except 'Organic' between May 23, 2010 and June 30, 2015" (the "Certified California Class"). Following certification, the Parties agreed to mediation, which ultimately led to the instant settlement.

### D.    Settlement Negotiations

The proposed settlement was reached following significant, hard fought litigation and several rounds of document and deposition discovery, as well as arms-length settlement discussions between competent, able counsel. (Dkt. 140-1, ¶ 6.) After initial settlement efforts stalled, on November 8, 2016, the Parties attended an all-day mediation (10+ hours) with Randy Wulff of Wulff Quinby & Sochynsky, an independent, well respected, and experienced mediator, in Oakland, California. With the benefit of a framework for a nationwide claims-made settlement developed under the guidance of the mediator, including the relevant terms regarding monetary and injunctive relief, the Parties continued settlement discussions thereafter, which led to the terms of the settlement memorialized in the Settlement Agreement, and which are summarized herein. The parties did not negotiate payment of attorneys' fees and expenses until all other terms of the Settlement Agreement were reached.

### E.    The Proposed Settlement

The Settlement Class is an opt-out class under Fed. R. Civ. P. 23(b)(3) comprised of all natural persons (other than Excluded Persons) who, between May 23, 2010 and June 30, 2015, purchased, in the United States, any Product for personal use, not resale. "Product" is defined as any bottle or can of Filippo Berio Robusto Extra Virgin Olive Oil, Filippo Berio Extra Virgin Olive Oil, Filippo Berio Delicato Extra Virgin Olive Oil, Filippo Berio Organic Extra Virgin Olive Oil, Filippo Berio Olive Oil, or Filippo Berio Light Tasting Olive Oil. Excluded Persons are the Defendant and its affiliates, the Court and immediate family members, the mediator and immediate family members, government entities, counsel for the Parties, and those who timely opt out of the class. (Settlement Agreement, ¶¶ 2.34, 2.39.)

#### 1.    Direct Monetary Relief

Class members can file a claim for a cash payment of fifty cents ($0.50) for each Product purchased during the Class Period (i.e., between May 23, 2010 and June 30, 2015), with a

guaranteed minimum payment for any class member who submits a Valid Claim of $2.00. There is no cap on the total amount to be paid to any class member for claimed purchases that are corroborated by proof of purchase. Moreover, unlike under many settlement structures, the amount paid to individual claimants does not depend on the number of claims submitted, the cost of notice or administration, the amount paid in cost or fees, or any amounts paid to Plaintiff—all of which are borne by Defendant. The sole limitation on individual claims is that a maximum of $5.00 (i.e., up to 10 purchases) shall be paid to any Household for claimed purchases that are not corroborated by proof of purchase. "Proof of Purchase" means an itemized retail sales receipt or retail store club or loyalty card record showing, at a minimum, the date and place of purchase of a Product, or an original front label panel from a Product. (*Id*. ¶ 4.4.) "Household" means any number of natural persons occupying the same dwelling unit.

The claim form is simple. The form can be completed online or downloaded and submitted by mail, and is designed to be completed in minutes. It requires only essential information, namely the date of purchase (to confirm that a purchase falls within the Class Period), the number of Products purchased (to determine the amount of settlement benefits to be paid), contact information (to be able to communicate with and send settlement payments to class members), and an averment above the signature line that the class member purchased or paid more for the Product(s) for personal use, not resale, based on the phrase "Imported from Italy." The claim form also requests information about the store of purchase as a further way to validate claims, although it also expressly and clearly notes that this information is optional, as the parties recognize that individuals may have difficulty recalling the specific store(s) where a purchase may have occurred.

There is no cap on the total number of claims that can be submitted.

## 2. Changed Practices

During the Litigation, Defendant removed the phrase "Imported from Italy" from all Products imported into the United States, and it replaced that phrase with the word "Imported." This change was due, at least in part, to this litigation. As part of the Settlement Agreement, Defendant agrees to maintain its current practices in this regard for at least three years after the Effective Date. Specifically, Defendant agrees not to use the phrases "Imported from Italy,"

"Made in Italy," "Product of Italy," or any other phrase on the label panel of a Product sold in the United States suggesting that olive oils in a Product originate from olives grown in Italy, and instead to use the designation "Imported" on the front panel, unless the Product so labeled is 100% Italian olive oil (i.e., composed entirely of oil extracted in Italy from olives grown in Italy).

These changes provide substantial value to the class. As explained by expert Colin Weir, a well-recognized expert on the analysis of pricing differences arising from various consumer label claims, olive oil products labeled "Imported from Italy" typically command a premium of as much as 20.4% percent over those merely advertised as "Imported." (*See* Declaration of Colin Weir, ¶ 9, Table 1.)  Given the large sales volume of these products (more than $345 million per year in retail sales), the changes to packaging and marketing materials can be predicted to save class members at least $19 million over the three years that the changes are required to be in effect. (*Id.* ¶ 17, Table 2.)

### 3.    Administrative Expenses, Attorneys' Fees and Costs, Incentive Awards

As noted above, all costs of notice and administration of the settlement will be paid by Defendant, which is itself a substantial settlement benefit in light of the nature of the claims asserted in this case. (Settlement Agreement, ¶ 4.12.) In addition, Plaintiff's counsel requests that the Court make an Incentive Award from Defendant of $2,500 to the Class Representative. Plaintiff provided assistance that enabled Class Counsel to successfully prosecute this Litigation and reach a settlement, including locating and forwarding responsive documents and information, responding to written discovery, sitting for a full-day deposition, and producing her spouse for deposition. The Incentive Award is designed to compensate her for (1) the time and effort undertaken in and risks of pursuing this action (including the risk of liability for the costs of suit) and (2) because she is agreeing to a release broader than the one that will bind settlement class members. (*Id.* 6.2.)

Class Counsel also requests that the Court enter an award of Attorneys' Fees and Costs in a total amount not to exceed $982,500, which is an amount less than their present lodestar and unreimbursed expenses. These amounts are disclosed in the proposed notices.  The reasonableness of this request is discussed in more detail in Section III.B.

## 4.     Notice

The Notice Plan was designed to provide the best notice practicable, was sufficient notice to all persons entitled to notice, and satisfies all applicable requirements of law, including, but not limited to, Rule 23 and constitutional due process.

The claim administrator (Heffler Claims Group) established a settlement website at http://http://www.snaoliveoilsettlement.com/, which contained the settlement notices, a contact information page that includes address and telephone numbers for the claim administrator and the parties, the settlement agreement, the signed order of preliminary approval, online and printable versions of the claim form and the opt out forms, answers to frequently asked questions, and a Product list. In addition, this motion for final approval and application for attorneys' fees, costs, and incentive awards will be placed on the website upon filing.  The claim administrator is also operating a toll-free number for class member inquiries.

Notice was published in several places, all of which refered class members to the settlement website. (Finegan Decl. ¶¶ 7-17 & Ex. A-E.)  Large ads were published in the March 17, 2017 print version of *People* magazine and the print version of *Good Housekeeping* that went on the market on March 14, 2017. (*Id.* ¶¶ 8-9, Ex. A.)  A press release was also issued through PR News Wire's USA 1 network.  (*Id.* ¶ 17, Ex. D.)[2]  Online Notice was published for a total of 165.5 million impressions on various websites, including the Yahoo!, AOL, and Conversant networks—each comprised of many hundreds of individual website partners—as well as via both newsfeed and banner advertising on Facebook.  (*Id.* ¶¶ 12-13.) The claims administrator additionally tailored its efforts by having the "Top Class Actions" website highlight the settlement,[3] retargeting advertisements to demographics that were most responsive to the advertisements and making claims, and directly targeting the IP addresses of individuals who visited the settlement website but had not yet filed a claim.  (*Id.* ¶ 15.)  In total, notice is estimated to have reached at least 71% of the settlement class members an estimated average of 2.6 times each.  (*Id.* ¶ 25.)

---

[2] The claim administrator actually issued two press releases through this network to create additional visibility.  (*Id.* ¶ 17.)

[3] *See* https://topclassactions.com/lawsuit-settlements/open-lawsuit-settlements/499494-filippo-berio-olive-oil-class-action-settlement/.

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FEE APPLICATION

To date, notice and administration costs have amounted to $450,000, which are borne by Salov, separate and apart from all settlement claim payments.

## II.  ARGUMENT

### A.  Final Approval Is Warranted

Settlement is a strongly favored method for resolving disputes, particularly "where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992); 4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* (4th ed. 2002) § 11:41 ("*Newberg*"); *In re Pacific Enterprises Securities Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982), *cert. denied*, 459 U.S. 1217 (1983). Under Fed. R. Civ. P. 23(e), a court should approve a settlement if it is fair, reasonable, and adequate. *See In re Mego Financial Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993), *cert. denied*, 512 U.S. 1220 (1994).

As the Ninth Circuit has explained, a decision "to approve or reject a settlement is committed to the sound discretion of the trial judge because [s]he is exposed to the litigants, and their strategies, positions, and proof." *In re Mego Financial Corp,* 213 F. 3d at 458. The Court must consider whether the settlement as a whole is reasonable; it stands or falls in its entirety. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1101, 1026 (9th Cir. 1998) ("*Hanlon*"); *Class Plaintiffs*, 955 F.2d at 1276; *Officers for Justice*, 688 F.2d at 628.

"The settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits." *Officers for Justice*, 688 F.2d at 625. Instead, the Court should explore and balance "all the relevant factors" bearing on approval of a class action settlement, including:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon,* 150 F.3d at 1026. *Accord Mego*, 213 F.3d at 458; *Torrisi*, 8 F.3d at 1375; *Officers for Justice*, 688 F.2d at 625. "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief

sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625. Due regard should be given to what is otherwise a private consensual agreement between the parties. *Id*. The inquiry "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Id*. "Ultimately, the [trial] court's determination is nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice." *Id* (citation omitted). Here, all the relevant factors support final approval.

### 1. The Settlement Agreement Resulted from Arm's-Length Negotiations.

This Settlement is the product of arm's-length negotiations over the course of many months between counsel for Plaintiff and counsel for Defendant, including a full-day mediation before a very experienced, well-respected private mediator, Randy Wulff. (Dkt. 140-1, ¶ 6.) There is an initial presumption that a proposed settlement is fair and reasonable when it is the result of arm's-length negotiations between experienced counsel. *See Williams v. Vukovich*, 720 F.2d 909, 922-923 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs"); *see also 4 Herbert Newberg & Alba Conte, Newberg on Class Actions* §11.41; *Manual For Complex Litigation (Third)* § 30.42. The non-collusive nature of the negotiations and the stature of counsel have often been recognized as important factors in the final approval of class action settlements. *See Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) ("the fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight").

### 2. Substantial Benefits Are Provided To The Class.

The Court should next "assess the consideration obtained by the class members in a class action settlement." *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004). "[I]t is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Officers for Justice v. Civil Serv. Comm'n*, 688

F.2d 615, 628 (9th Cir. 1982) . "In this regard, it is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *DIRECTV*, 221 F.R.D. at 527, (citing *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1242 (9th Cir. 1998)).

Here, the benefits to Settlement Class Members are clear, demonstrable, and immediate. Separate from the requested attorneys' fees and expenses (discussed in Section III.B.2), Salov has agreed to make at least $5 million available for payments to class members, for use to pay for claims and settlement notice and administration. Plaintiff believes that a "best case" recovery at trial assuming nationwide claims were being litigated (in other words, ignoring for the moment that no such claims have been certified or even asserted in this Court or elsewhere) would be approximately $41 million. This is based on Plaintiff's expert analysis opining that price premium damages total approximately $1.2 million in California and Defendant's representation that California reflects roughly 3% of Product sales nationwide. (Dkt. 140-1 ¶¶ 10, 12.) Thus, the settlement amount of nearly $6 million ($5 million for notice, administration, and claims, plus just under $1 million for attorneys' fees, costs, and the incentive award) is approximately 15% of this best-case recovery.

Moreover, the $6 million settlement amount does not include the value of Defendant's changed practices (i.e. removing the "Imported from Italy" phrase from its Filippo Berio labeling) starting in 2015 and continuing for at least three years after the Effective Date. Plaintiff's expert, Colin Weir, has estimated the value of those practice changes to be $19.9 million (Weir Decl., ¶ 17, Table 3.) Mr. Weir performed this calculation using the same regression model accepted by the Court in its order granting Plaintiff's class certification motion to measure the price premium between labels reading "Imported from Italy" versus simply "Imported." Plaintiff thus believes this recovery to be more than fair in light of the risks discussed above. (Dkt. 140-1 ¶¶ 21-22.)

Furthermore, the per-purchase refund of fifty cents ($0.50) per Product, with no cap on claims with proof of purchase, a $5.00 cap on claims without proof of purchase (i.e., for up to 10 purchases), and a $2.00 minimum payout, represent an excellent result compared to the possible result in a contested proceeding, as discussed above, where the best case average payment per

purchase is only $0.34 per bottle. (*Id.*, ¶¶ 9-13, 21.) Courts have approved settlements where class members can recover only a small fraction of their alleged damages, and this settlement enables class members to be made whole.

### 3. There are Serious Risks of Further Litigation

The Court must next assess the risks of continued litigation. Generally, the principal risks to be assessed are the difficulties and complexities of proving liability and damages. *See, e.g., Mego*, 213 F.3d at 458-59 (assessing risk of inability to prove fraudulent scheme in affirming settlement); *Linney*, 151 F.3d at 1240-1241 (assessing risks involving fraudulent concealment and ability to obtain damages in affirming settlement); *Torrisi*, 8 F.3d at 1376 (approving settlement based in part on "inherent risks of litigation"); *Class Plaintiffs*, 955 F.2d at 1292 (approving settlement based on uncertainty of claims and avoidance of summary judgment); *Officers for Justice*, 688 F.2d at 625 (approving settlement based in part on the possibility that a judgment after a trial, when discounted, might not reward class members for their patience and the likely delay reflected in the "track record" for large class actions).

Here, there are numerous risks in continuing with this Litigation. First, at the time the settlement was reached, Plaintiff had recently won class certification of a California class, but the litigation had been highly contentious, and the parties continued to strongly disagree on Plaintiff's ability to prove liability and damages. Defendant, for example, had given notice of intent to move to decertify the class. *Cf. Rodriguez v. West Publ'g Corp.*, No. CV05-3222, 2007 WL 2827379, at *8 (C.D. Cal. Sept. 10, 2007) (finding that the likelihood that a certification decision would be appealed meant this factor weighed in favor of approval), *rev'd on other grounds*, 563 F.3d 948 (9th Cir. 2009).

On the merits, Defendant continued to argue that Plaintiff's testimony about her purchasing decision was unreliable. In addition, Defendant has maintained that Plaintiff would have difficulty establishing that the phrase "Imported from Italy" was misleading or material to a reasonable consumer in that the phrase was literally true and appeared in a small font such that it would only have been noticeable to a consumer who actually picked up the bottle, and thus who also may have seen the countries of origin for the oil on the back label.

While Class Counsel are confident in their positions and believe Plaintiff's claims are strong, Class Counsel are also experienced and realistic enough to know that the recovery and certainty achieved through settlement, as opposed to the uncertainty inherent at the summary judgment stage and in the trial and appellate process, weighs heavily in favor of settlement, particularly given the above risks, which could easily have impeded Plaintiff's successful prosecution at trial. (*Id.*, ¶¶ 18-21.) Under the circumstances, Plaintiff and Class Counsel appropriately determined that the instant settlement outweighs the gamble of continued litigation.

Finally, any judgment in Plaintiff's favor would likely be appealed. Thus, even in the best case, it could take years to get relief for class members. (*Id.*) There is a significant advantage of receiving a benefit now as opposed to later, including to avoid potentially adverse changes in the law.[4] *See Officers for Justice*, 688 F.2d at 625; *Marshall v. Holiday Magic, Inc.,* 550 F.2d 1173, 1178 (9th Cir. 1977); *Girsh v. Jepson,* 521 F.2d 153, 157 (3rd Cir. 1975); *Young v. Katz* , 447 F.2d 431, 434 (5th Cir. 1971).

The settlement also provides nationwide relief notwithstanding that Plaintiff did not assert nationwide claims against Defendant based on her Imported From Italy Allegations, the parties are not aware of any such claims pending, and, as the class definition certified by the Court recognizes, Defendant ceased its practice of packaging Filippo Berio olive oil with the phrase "Imported from Italy" after the initiation of this Litigation, meaning that the statute of limitations on these claims has been running for some time.

### 4. The Experience And Views Of Counsel Favor Final Approval.

Plaintiff's Counsel, who are experienced class action litigators, support the settlement as fair, reasonable, adequate and in the best interests of the Class as a whole. (Dkt. 140-1, ¶¶ 3-21.) Salov is represented by seasoned, class-action litigators at Sidley Austin LLP. It too supports the settlement.

---

[4] Class Counsel notes, for instance, that the House of Representatives recently passed a bill that, according to commentators, would substantially and retroactively increase the burden on parties seeking to certify consumer class actions. H.R.985 - Fairness in Class Action Litigation and Furthering Asbestos Claim Transparency Act of 2017. This is just one example of the types of risks and uncertainty inherent in continued litigation eliminated by settlement.

Plaintiff's Counsel came to recommend this Settlement after over two years of hard-fought litigation, during which it expended over 2,100 hours. Class Counsel's work included extensive briefing on a variety of significant legal issues, such as a contested class certification motion. Plaintiff's Counsel also took numerous fact and expert depositions and reviewed more than 30,000 pages of documents, interrogatories, requests for admission, and third-party discovery. (*Id.* ¶ 4-5.)

In this context, "[s]ignificant weight should be attributed to counsel's belief that settlement is in the best interest of those affected by the settlement." *In re NVIDIA Corp. Derivative Litig.*, 2008 WL 5382544 at *4 (N.D. Cal. 2008); *see also In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, 1992 U.S. Dist. LEXIS 14337 at *8 (C.D. Cal. June 10, 1992) (finding belief of counsel that the proposed settlement represented the most beneficial result for the class to be a compelling factor in approving settlement); *Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988) (opinion of experienced counsel is entitled to considerable weight).

### 5. The Reaction Of The Settlement Class Has Been Overwhelmingly Positive.

Although the claims, opt-out, and objection periods are still open, the initial reaction to the Settlement has been positive. Notice was effectuated according to the proposed plan and more than 164.5 million impressions of the settlement notice were delivered in a variety of methods (i.e., print, online, mobile) (Finegan Decl., ¶¶ 7-17, Ex. A-D.) To date, the settlement website has received over 227,477 unique visits, and the claims administrator has responded to hundreds of inquiries regarding the settlement made via electronic mail, e-mail, and via the toll-free number. (*Id.* ¶ 18.) To date, there have been no requests for exclusion or objections to the settlement. (*Id.* ¶ 21-22.) And as of April 6, 2017, 38,797 class members have submitted claims. (*Id.* ¶ 20.)

"A court may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it", as is the case here, notwithstanding a low percentage of claims. *Evans v. Linden Research, Inc.*, No. C-11-01078 DMR, 2014 WL 1724891, at *4 (N.D. Cal. April 29, 2014). Where, as here, notice satisfies due process, "the number of claims submitted at any particular time is not a relevant factor in evaluating the fairness,

reasonableness, or adequacy of the settlement." *Hall v. Bank of Am.*, No. 1:12-cv-22700-FAM, 2014 WL 7184039, at *8 (S.D. Fla. Dec. 17, 2014). Importantly, in claims-made settlements like this one, "Courts around the country have approved settlements where the claims rate was less than one percent" because "the claims rate does not dictate whether the notice provided was the best notice practicable under the circumstances" and "does not govern whether the settlement is fair, reasonable, or adequate." *Pollard v. Remington Arms Co.*, LLC, --- F.R.D. ---, 2017 WL 991071, at *13 (W.D. Mo. Mar. 14, 2017) (collecting cases); *id.* at *10-13 (final approval of claims-made settlement with 0.29% claims rate (22,000 claims / 7.5 million potential members), where most members' personal information unknown and notice utilized several types of mediums, including targeted social media and magazine campaigns, resulting in several hundred thousands visits to settlement website); *Poertner v. Gillette Co.*, 618 Fed. Appx 624, 625-26, 628 (11th Cir. July 16, 2015) (affirming final approval of claims-made settlement with 0.76% claims rate (55,346 claims / 7.26 million members) where members' personal information unknown and notice reasonably provided via publication through national periodicals and popular internet outlets); *In re Apple iPhone 4 Prods. Liab. Litig.*, No. 5:10-md-2188 RMW, 2012 WL 3283432, at *1 (N.D. Cal. Aug. 10, 2012) (final approval of claims-made settlement with claims rate between 0.16% and 0.28% (44,000 claims / 15.7-27.1 million members)).[5] As in these cases, the identity of putative class members is unknown here and notice was reasonably delivered via publication through national periodicals and popular internet outlets. The notice program employed for the settlement is the same type of program that would have been employed had this been litigated and, arguably broader, because Plaintiff was able to negotiate to place the cost of notice on Defendant under the terms of the settlement. Moreover, the claims rate will continue to increase as the claims

---

[5] *See also Spann v. J.C. Penney Corp.*, ___ F. Supp. 3d ____, 2016 WL 5844606, at *8 (C.D. Cal. Sept. 30, 2016) (holding 2.75% claim rate to be reasonable where "direct notice could not be provided to more than half of the class"); *Touhey v. U.S.*, No. EDCV 08-01418-VAP (RCx), 2011 WL 3179036, at *7-8 (C.D. Cal. July 25, 2011) (finding response rate of 2% "weighs slightly in favor of settlement"); *see also In re Online DVD–Rental Antitrust Litig.*, 779 F.3d 934, 941 (9th Cir.2015) (upholding settlement in which the parties sent direct notice to 35,000,000 class members and received 1,183,444 claims, which represents a 3.4% claim rate).

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FEE APPLICATION

period continues.[6]

**B.    Plaintiff's Counsel Should Be Awarded Attorneys' Fees And Expenses In The Amount of $982,500.**

The Settlement Agreement provides for the payment of attorneys' fees and expenses in the amount of $982,500, separate and apart from the money made available to the class for purposes of claims payment and notice and administration expenses.  Under Ninth Circuit standards, in cases such as this, it is appropriate for a District Court to analyze an attorneys' fee request and issue an award either based on (1) the "lodestar" method or (2) by making an award as a percentage of the total benefit made available to the settlement class, including costs, fees, and injunctive relief.  *See e.g.*, *Nwabueze v. AT&T, Inc.*, No. C 09-01529 SI, 2014 WL 324262, at *2-3 (N.D. Cal. Jan. 29, 2014); *Lopez v. Youngblood*, No. CV-F-07-0474 DLB, 2011 WL 10483569, at *11-12 (E.D. Cal. Sept. 2, 2011); *Browning v. Yahoo! Inc.*, No. C04-01463 HRL, 2007 WL 4105971, at *13-14 (N.D. Cal. Nov. 16, 2007).  Plaintiff's fee request is reasonable under either of these approaches.

**1.    Plaintiff's Counsel's Requested Fee Is Reasonable When Using The Lodestar Approach.**

Under the lodestar approach, "[t]he lodestar (or touchstone) is produced by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate." *Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19, 26 (2000); *see also Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016) ("[A] court calculates the lodestar figure by multiplying the number of hours reasonably expended on a case by a reasonable hourly rate. A reasonable hourly rate is ordinarily the 'prevailing market rate [] in the relevant community.'") (alteration in original) (internal citation omitted) (quoting *Perdue v/ Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010)). Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative "multiplier to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained and the contingent risk presented." *Id.*; *see also Serrano v. Priest ("Serrano III")*, 20 Cal. 3d 25, 48-49

---

[6] No later than May 16, declarations regarding dissemination of notice, number of claims, dollar value of claims, opt-outs, and objections will be provided to the Court.

(1977); *Ramos v. Countrywide Home Loans, Inc.* 82 Cal. App. 4th 615, 622 (2000); *Beasley v. Wells Fargo Bank,* 235 Cal. App. 3d 1407, 1418 (1991) (multipliers are used to compensate counsel for the risk of loss, and to encourage counsel to undertake actions that benefit the public interest).

Plaintiff's Counsel's lodestar through the date of this application is approximately $1,470,507.50.[7] (Gutride Decl., ¶ 30; Zavareei Decl., ¶ 24 (tables showing hours worked by timekeeper); *see also* Gutride Decl., Exs. 1 & 2 ; Zavareei Decl., Ex. A (contemporaneous billing records)) Plaintiff's Counsel's efforts to date included, without limitation:

- Pre-filing investigation;

- Drafting and filing a class action complaint and an amended complaint;

- Drafting and filing oppositions to Defendant's motion to dismiss;

- Drafting and filing numerous case management conference statements and case management stipulations;

- Meeting-and-conferring with Defendant's counsel regarding the scope of discovery, the sufficiency of discovery responses and production, the retention of electronic documents, Defendant's searches for electronically stored information, the terms and scope of a stipulated protective order, and the timing of production;

- Briefing numerous discovery disputes to this Court, a letter brief regarding the timing of discovery (Dkt. 24), and motions by both parties for issuance of letters of request for foreign discovery (Dkts. 66, 78, 89);

- Reviewing in excess of 30,000 pages of documents produced by Defendant;

- Subpoenaing and reviewing documents from third party witnesses;

- Taking six depositions;

- Defending the deposition of Plaintiff;

- Appearing at the deposition of Plaintiff's expert witness;

---

[7] Gutride Safier LLP's hourly rates are higher than those for Tycko & Zavareei, given the higher cost of living in the San Francisco Bay Area. Were Gutride Safier LLP to use the rates set forth in the Laffey Matrix, the total lodestar would be $1,289,366.10.

- Briefing the motion for class certification, the reply in support thereof, and attending a hearing on that motion;

- Drafting a comprehensive mediation statement and participating in an all-day mediations before Mr. Wulff;

- Negotiating and drafting the Settlement Agreement along with corresponding documents, including claim forms, summary notice, and long form notice;

- Filing the motion for preliminary approval and supporting documents, including a proposed preliminary approval order and a proposed final judgment, and appearing at a hearing thereon;

- Reviewing and responding to correspondence from Settlement Class Members;

- Supervising the work of the Claims Administrator; and

- Preparing this Motion and supporting documentation.

(Gutride Decl., ¶¶ 5-19; Zavareei Decl., ¶¶ 5-16.)

Before the final approval hearing, Plaintiff's Counsel's efforts will also include, without limitation:

- Continued correspondence with Settlement Class Members and supervision of the work of the Claims Administrator; and

- Researching and drafting a reply memorandum and opposing objections, if any.

(Gutride Decl., ¶ 21; Zavareei Decl., ¶ 18.)

Plaintiff's Counsel calculated their lodestar using Plaintiff's Counsel's regular billing rates, which for the attorneys involved range from $343 to $950 per hour. (Gutride Decl., ¶ 30; Zavareei Decl., ¶ 24.)

For attorneys and staff at the Gutride Safier firm, these hourly rates are equal to market rates in San Francisco for attorneys of Plaintiff's Counsel's background and experience. (Id., ¶¶ 72); *see also In re Optical Disk Drive Prod. Antitrust Litig.,* No. 3:10-MD-2143 RS, 2016 WL 7364803, at *8 (N.D. Cal. Dec. 19, 2016) (approving hourly rates of $205 to $950); *McLaughlin v. Wells Fargo Bank, N.A.*, No. C 15-02904 WHA, 2017 WL 994969, at *2 (N.D. Cal. Mar. 15, 2017) (approving an $850 hourly rate for partners); *Gutierrez v. Wells Fargo Bank, N.A.*, No. C

07-05923 WHA, 2015 WL 2438274, at *5 (N.D. Cal. May 21, 2015), *appeal dismissed* (Oct. 30, 2015) (approving hourly rates of $475 to $975). Plaintiff's Counsel Adam Gutride and Seth Safier are, respectively, graduates from Yale Law School 1994 and Harvard Law School 1998, with 23 and 19 years of litigation experience. (Gutride Decl., ¶ 34.) Kristen Simplicio is 2007 graduate of American University, Washington College of Law (10 years of experience). (*Id.*)[8]

For attorneys and staff from the Washington, D.C. office of Tycko & Zavareei LLP, the hourly rates are calculated using the Laffey Matrix.[9] "The *Laffey* Matrix is the most commonly used fee matrix in determining fees for complex federal litigation in the D.C. Circuit." *E.g.*, *Texas v. U.S.*, No. CV 11-1303 (RMC), 2017 WL 1194159, at *4 (D.D.C. Mar. 30, 2017); *see also Galvez v. Americlean Servs. Corp.*, No. 1:11CV1351 JCC/TCB, 2012 WL 2522814, at *5 n.6 (E.D. Va. June 29, 2012) ("The Laffey Matrix is used as a guideline for reasonable attorneys' fees in the Washington/ Baltimore area."); *Cobell v. Norton*, 231 F. Supp. 2d 295, 301-02 (D.D.C. 2002) (referring to Laffey Matrix as containing "standard hourly rate for attorneys in the Baltimore–Washington area"). The Ninth Circuit has accepted the Laffey Matrix as evidence of reasonable hourly rates charged by Washington, D.C. attorneys. *Mancini v. Dan P. Plute, Inc.*, 358 F. App'x 886 (9th Cir. 2009). And a court in this District recently awarded Bay Area attorneys Laffey Matrix fees adjusted *upwardly* by nine percent, so, if anything, the Laffey Matrix comes in *below* the market rate for attorneys in this District. *See Brinker v. Normandin's*, No. 14CV03007EJDHRL, 2017 WL 713554 (N.D. Cal. Feb. 23, 2017) (citing *Theme Promotions, Inc. v. News America Marketing FSI, Inc.,* 731 F. Supp. 2d 937, (N.D. Cal. 2010)). Hassan Zavareei graduated from University of California, Berkeley School of Law and has 22 years of litigation

---

[8] Adam Gutride and Seth Safier were previously attorneys at the San Francisco office of the law firm of Orrick Herrington & Sutcliffe, where litigators who graduated in 1994 and 1998 respectively currently bill at hourly rates of in excess of $900. (Gutride Decl., ¶ 35.) Furthermore, it is almost certain the rates paid by the Defendant to its firms in this case far exceed the rates requested for Class Counsel. *See Managing Class Action Litigation: A Pocket Guide For Judges* § IV(F) (suggesting an examination of the defendant's attorney fee records as a measure of what might be reasonable.) Finally, the Gutride Safier firm's billing rates were recently approved by other judges in this District as well as those in the Central District of California, Northern District of Illinois, and San Francisco Superior Court. (Gutride Decl., ¶ 33.)

[9] *See* http://www.laffeymatrix.com/.

experience. (Zavareei Decl., ¶ 27.) Jeffrey Kaliel is a 2005 graduate of Yale Law School (12 years of experience); Anna Haac is a 2006 graduate of University of Michigan Law School (11 years of experience); and Andrew Silver is a 2012 graduate of Boston College Law School (five years of experience). (*Id.*)[10]

These rates are the current rates charged by Class Counsel, which is appropriate given the deferred and contingent nature of counsel's compensation. *See LeBlanc-Sternberg v. Fletcher,* 143 F.3d 748, 764 (2nd Cir. 1998) ("[C]urrent rates, rather than historical rates, should be applied in order to compensate for the delay in payment....") (citing *Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989)); *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994) ("The district court has discretion to compensate delay in payment in one of two ways: (1) by applying the attorneys' current rates to all hours billed during the course of litigation; or (2) by using the attorneys' historical rates and adding a prime rate enhancement.").

In any event, Class Counsel's attorneys' fee request of $874,231.80 ($982,500 minus costs and expenses of $108,268.20, discussed in Section III.B3, *infra*), comes in well *below* the fee amount of $1,470,507.50 calculated using the lodestar method. Thus, far from any "upward" multiplier, Class Counsel's requested fee actually results in a negative multiplier of .59. Therefore, it is eminently appropriate to award Class Counsel attorneys' fees of $874,231.80. *See, e.g.*, *Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 690-91 (N.D. Cal. 2016) (holding negative lodestar multiplier to be indication of reasonableness of fee request); *Johnson v. Triple Leaf Tea Inc.*, at *6 (N.D. Cal. Nov. 16, 2015) (finding where "Class Counsel's lodestar exceeded the negotiated award" to be "well within the range courts have allowed in the Ninth Circuit"); *Lusby v. GameStop Inc.*, No. C12-03783 HRL, 2015 WL 1501095, at *4 (N.D. Cal. Mar. 31, 2015) ("Class Counsel's lodestar . . . result[s] in a negative multiplier of approximately .54. This is below the range found reasonable by other courts in California."); *Covillo v. Specialtys Café*, No. C-11-00594 DMR, 2014 WL 954516, at *7 (N.D. Cal. Mar. 6, 2014) ("Plaintiffs'

---

[10] Hassan Zavareei was previously an attorney at the Washington, D.C. office of the law firm of Gibson Dunn & Crutcher, where litigators who graduated in 1995 bill at hourly rates in excess of $1,000. (Zavareei Decl., ¶ 28.) The Tycko & Zavareei firm's rates have been approved by courts throughout the country. (*Id.* ¶ 26.)

requested fee award is approximately 65% of the lodestar, which means that the requested fee award results in a so-called negative multiplier, suggesting that the percentage of the fund is reasonable and fair."); *Walsh v. Kindred Healthcare*, No. C 11-00050 JSW, 2013 WL 6623224, at *3 (N.D. Cal. Dec. 16, 2013) ("The Court concludes that, on the facts of this case, the lodestar is reasonable, especially in light of the fact that Settlement Class Counsel have applied a negative multiplier, and seek an award that is less than their base lodestar."); *Wehlage v. Evergreen at Arvin LLC*, No. 4:10-CV-05839-CW, 2012 WL 4755371, at *1 (N.D. Cal. Oct. 4, 2012) ("Class Counsel do not seek a multiplier on their lodestar, and in fact the requested fee is a negative multiplier (-.79). The Court finds that this award is appropriate here."); *Lymburner v. U.S. Fin. Funding, Inc.*, No. C-08-00325 EDL, 2012 WL 398816, at *6 (N.D. Cal. Feb. 7, 2012) ("[T]he negative multiplier in this case supports the reasonableness of the fee request."); *In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 4171201, at *16 (N.D. Cal. Nov. 26, 2007) ("Even if the court accepted the unadjusted lodestar from plaintiffs' counsel ($922,884.75), the correlating multiplier of 0.74 would still reflect a negative multiplier, further suggesting that the requested percentage based fee is fair and reasonable.").

### 2. Plaintiff's Counsel's Requested Fee Is A Reasonable Percentage of The Total Benefit Made Available To The Class.

Whether as a cross-check or as an independent methodology, the Court can utilize the percentage-of-recovery method to verify that Plaintiff's attorneys fee request of $874,231.80 is likewise reasonable. *See e.g.*, *Nwabueze*, 2014 WL 324262, at *2-3. When determining the value of the settlement, courts consider the non-monetary benefits conferred under the settlement terms. *See, e.g.*, *Staton v. Boeing Co.*, 327 F.3d 938, 972-74 (9th Cir. 2003); *Hartless v. Clorox Co.*, 273 F.R.D. 630, 645 (S.D. Cal. 2011), *aff'd,* 473 F. App'x. 716 (9th Cir. 2012); *Browning*, 2007 WL 4105971, at *14. Finally, Ninth Circuit precedent requires courts to award class counsel fees based on the total benefits being made available to class members rather than the amount actually claimed. *Young v. Polo Retail, LLC*, No, C-02-4546 WRW, 2007 WL 951821, at *8 (N.D. Cal. Mar. 28, 2007) (citing *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026 (9th Cir. 1997) ("district court abused its discretion in basing attorney fee award on actual distribution to class"

instead of amount being made available)); *see also Nwabueze*, 2014 WL 324262, at *3 (calculating overall value of settlement to be $100 million if all class members requested billing summaries provided in settlement); *Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *16 (N.D. Cal. Jan. 26, 2007) ("The Ninth Circuit has held, however, that the district court must award fees as a percentage of the entire fund, or pursuant to the lodestar method, not on the basis of the amount of the fund actually claimed by the class.") (citing *Williams*), *aff'd,* 331 F. App'x 452 (9th Cir. 2009); *Dennings v. Clearwire Corp.*, No. C10-1859JLR, 2013 WL 1858797, at *7 (W.D. Wash. May 3, 2013) ("Under Ninth Circuit law, there is strong support that, when a court conducts a percentage fee analysis, it is the amount or value made available to the class, not the amount actually claimed, that is relevant.") (citing *Williams* and *Stern v. Gambello,* 480 F. App'x 867, 870 (9th Cir.2012)) *aff'd* (Sept. 9, 2013).

In the Ninth Circuit, the benchmark for an attorney fee is 25% of the total settlement value, including the monetary and non-monetary recovery. *See Six Mexican Workers v. Arizona Citrus Workers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *see also Glass*, 2007 WL 221862, at *14 ("The Ninth Circuit has repeatedly held that 25% of the gross settlement amount is the benchmark for attorneys' fees awarded under the percentage method . . ."). However, many cases have found that between 30% and 50% of the common fund is an appropriate range when the settlement fund is less than ten million. *See Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 297-98 (N.D. Cal. 1995) (collecting cases); *see also Johnson v. Gen. Mills, Inc.*, 2013 WL 3213832, at *6 (C.D. Cal. June 17, 2013) (awarding a fee award of 30% of the settlement fund in a food labeling class action).

Here, the requested fee of $874,231.80 is only 3.38% of the total settlement value when including the $19,906,123 value of the practice changes as calculated by Plaintiff's expert Colin Weir, far below the Ninth Circuit benchmark. And even examining solely the potential monetary relief available to the class of $5,982,500, the requested fee still comes in well below the benchmark, at 14.61%. As courts have awarded fees in excess of the 25% benchmark where attorneys, as is the case here, seek a "so-called negative [lodestar] multiplier," *e.g.*, *Young*, 2007 WL 951821, at *8, it is entirely appropriate to award the requested fess where, as here, Class

Counsel is seeking less that its lodestar, and the requested fees come in well below the 25%

benchmark, no matter how it is calculated.

### 3.     Plaintiff's Counsel Should Be Awarded Costs.

Class Counsel requests that, in addition to reasonable attorneys' fees, the Court grant its

application for reimbursement of $108,268.20 in costs and expenses incurred by it in connection

with the prosecution of this Litigation. The expenses incurred are itemized in the Gutride and

Zavareei Declarations.  (Gutride Decl., ¶ 36, Ex. 3; Zavareei Decl., ¶ 29, Ex. B.) Plaintiff's

Counsel is typically entitled to reimbursement of all reasonable out-of-pocket expenses and costs

in prosecution of the claims and in obtaining a settlement. *See Vincent v. Hughes Air West*, 557

F.2d 759, 769 (9th Cir. 1977).  Here, since the requested sum of $982,500 is inclusive of both

attorneys' fees *and* costs, should the Court choose to calculate the two totals separately, it should

subtract the $108,268.20 in costs from that number and award $874,231.80 in attorneys' fees.[11]

### C.     An Incentive Award To The Representative Plaintiff Is Reasonable.

This Court should also approve a $2,500 incentive award to Plaintiff as it is just, fair and

reasonable. In deciding whether to approve an incentive award, a court should consider: "(1) the

risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety

and personal difficulty encountered by the class representative; (3) the amount of time and effort

spent by the class representative; (4) the duration of the litigation and; (5) the personal benefit (of

lack thereof) enjoyed by the class representative as a result of the litigation." *Van Vranken,* 901 F.

Supp. at 299. Further, as a matter of public policy, incentive awards are necessary to encourage

consumers to formally challenge perceived false advertising and unfair business practices.

Plaintiff took on substantial risk, most importantly the risk of bearing Defendant's costs.

(Gutride Decl., ¶ 24.) Plaintiff also worked with counsel throughout the two and a half year

litigation. (*Id.*) Plaintiff responded to interrogatories and requests for production, and attended her

---

[11] Should the Court deem any of the requested costs to not be reimbursable, Plaintiff requests that
the Court increase the attorneys' fee award such that the net amount of $982,500 provided via the
Settlement Agreement is awarded, as any increase to the attorneys' fee award would still result in
a significant negative lodestar multiplier and, therefore, be reasonable.

deposition, which lasted almost seven hours. (*Id.*) She conducted searches of her personal records. (*Id.*) Plaintiff also remained actively involved in the litigation prior to and after settlement. (*Id.*)

Plaintiff's Counsel respectfully requests that the Court approve the incentive award, which is reasonable in light of the Plaintiff's efforts and the relief to the Settlement Class resulting from this Litigation. *See* Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 UCLA L. Rev. 1303, 1333 (2006) (an empirical study of incentive awards to class action plaintiffs has determined that the average aggregate incentive award within a consumer class action case is $29,055.20, and that the average individual award is $6,358.80.); *see also In re Mego Fin. Corp Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (awarding the named plaintiff $5,000 involving a class of 5,400 people and a total recovery of $1.725 million); *Smith v. CRST Van Expedited, Inc.,* 2013 WL 163293, *6 (S.D. Cal. Jan. 14, 2013) (finding the amount of the incentive payments requested, $15,000, is well within the range awarded in similar cases); *Embry v. Acer America Corp.*, Dkt.# 218 (N.D. Cal. Feb. 14, 2012) (awarding $15,000 incentive award); *Gibson & Co. Ins. Brokers, Inc. v. Jackson Nat. Life Ins. Co.*, 2008 WL 618893 (C.D. Cal. Feb. 27, 2008) (awarding $5,000 incentive fee).

## III.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff request that the Court enter final judgment certifying the settlement class and approving the settlement, granting her application for an incentive awards of $2,500, and awarding Class Counsel $982,500 in attorneys' fees and costs.

Dated: April 11, 2017

Respectfully submitted,

**GUTRIDE SAFIER LLP**
 _/s/ Adam J. Gutride_____
Adam J. Gutride (State Bar No. 181446)
Seth A. Safier (State Bar No. 197427)
Kristen G. Simplicio (State Bar No. 263291)
100 Pine Street, Suite 1250
San Francisco, California 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

**TYCKO & ZAVAREEI LLP**
Hassan A. Zavareei (State Bar No. 181547)
Jeffrey D. Kaliel (State Bar No. 238293)
Andrew J. Silver (*admitted pro hac vice*)
1828 L Street, N.W., Suite 1000
Washington, DC 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FEE APPLICATION