ADAM J. GUTRIDE (State Bar No. 181446)
adam@gutridesafier.com
SETH A. SAFIER (State Bar No. 197427)
seth@gutridesafier.com
KRISTEN G. SIMPLICIO (State Bar No. 263291)
kristen@gutridesafier.com
**GUTRIDE SAFIER LLP**
100 Pine Street, Suite 1250
San Francisco, California 94111
Telephone: 415.271.6469
Facsimile: 415.449.6469

HASSAN A. ZAVAREEI (State Bar No. 181547)
hzavareei@tzlegal.com
JEFFREY D. KALIEL (State Bar No. 238293)
jkaliel@tzlegal.com
ANDREW J. SILVER (*pro hac vice*)
asilver@tzlegal.com
**TYCKO & ZAVAREEI LLP**
1828 L Street, N.W., Suite 1000
Washington, DC 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950

Attorneys for Plaintiff and the Class

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ROHINI KUMAR, individual, on behalf of herself, the general public and those similarly situated<br><br>Plaintiff,<br><br>v.<br><br>SALOV NORTH AMERICA CORPORATION,<br><br>Defendant. | CASE NO. 14-cv-2411 (YGR)<br><br>**DECLARATION OF ADAM J. GUTRIDE MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPLICATION FOR ATTORNEYS' FEES, COSTS AND INCENTIVE AWARDS**<br><br>Date: May 30, 2017<br>Time: 2:00 p.m.<br>Courtroom 1, Fourth Floor<br>Judge: Hon. Yvonne Gonzalez Rogers |

I, Adam Gutride, declare as follows:

1. I am a member of this Court and attorney of record for Plaintiff Rohini Kumar in this action.

2. I am a partner in Gutride Safier LLP ("GSLLP" or "Firm"), which has been appointed Class Counsel in the above-captioned matter. The information below is stated based on personal knowledge. I am competent to testify to the facts set forth below, and if called as a witness and placed under oath, I would testify to those facts.

3. I make this Declaration in support of Plaintiff' motion for final approval and attorneys' fees and costs and incentive awards ("Motion"). In that regard, I discuss, in the following order: (a) the history of this litigation, which includes a summary description of the legal services provided by GSLLP in this litigation to date; (b) the risks borne by GSLLP; (c) the time, rate, expenses, and other data underlying the Motion; and (d) GSLLP's continuing obligations in this litigation and under the Settlement Agreement.

**A.   History of the Litigation.**

4. On March 21, 2014, Plaintiff filed a complaint against Defendant in the above-captioned case, in which Plaintiff alleged that Defendant had deceptively marketed and sold its Filippo Berio brand of olive oil with the representation "Imported from Italy" on the front label, although the back label stated that most of the oil was extracted in countries other than Italy from olives grown in those other countries. Plaintiff further alleged that, by marketing the Products as "Imported from Italy," Defendant caused people to purchase the Products who would not otherwise have done so, and that the Products were sold at a higher retail price than they would have been sold without the misstatements.

5. GSLLP drafted and filed the Complaint and caused it to be served. Prior to doing so, GSLLP spent time communicating with Plaintiff Kumar concerning her claims, gathering her documentation, and negotiating with her a retainer agreement. GSLLP also undertook extensive pre-filing investigation, including without limitation, researching, tracking, and analyzing Defendant's marketing, advertising, and product packaging, and reviewing Defendant's websites, press releases, public filings, and online documents. GSLLP spent additional time analyzing Food

and Drug Administration ("FDA") regulations and Customs and Border Patrol ("CBP") regulations, and the California Health and Safety Code. GSLLP also researched and analyzed related state regulations. GSLLP also conducted research regarding potential federal preemption of Plaintiff's claims. Throughout this litigation, GSLLP has continued to monitor, research, and review such materials.

6. GSLLP also negotiated a co-counsel arrangement with Tycko & Zavareei ("TZ"), which had experience prosecuting similar olive oil litigation in the District of Columbia. Throughout the litigation, GSLLP worked closely with TZ to formulate case strategy. Work was divided between the firms to avoid duplication—for example, the TZ firm was assigned to be lead on taking depositions of fact witnesses, while my firm was lead for dealing with the expert witnesses. Document review was apportioned bewteen the firms and only documents identified as by a reviewer as "hot documents" were shared. Similarly, in connection with legal research and brief writing, one firm was assigned to draft all (or certain sections) of a brief, while the other provided only suggestions and edits.

7. After filing the Complaint, Defendant filed a motion to dismiss. GSLLP reviewed Defendant's arguments and researched to draft the opposition to that motion, which was filed in August of 2014. I appeared and argued at the hearing on the motion to dismiss.

8. In November of 2015, Defendant filed a motion to stay the proceedings in this case pending the resolution of purportedly related matters pending on appeal in the Ninth Circuit. GSLLP reviewed Defendant's arguments on that motion and participated in the drafting and filing of Plaintiff's opposition in December of 2015.

9. GSLLP drafted and filed numerous case management statements in this case, including in August 2014, November 2014, January 2015, and February 2015. GSLLP additionally participated in the filing of case management-related stipulations in September 2015, October 2015, December 2015, February 2016, May 2016, July 2016, August 2016, September 2016, and November 2016. GSLLP also attended case management conferences in this case.

10. Throughout this case, GSLLP participated in the discovery efforts, including drafting and serving requests on Defendant and third parties. GSLLP also met-and-conferred with

Defendant's counsel regarding the scope of discovery, the sufficiency of discovery responses and production, the retention of electronic documents, Defendant's searches for electronically stored information, the terms and scope of a stipulated protective order, and the timing of production.

11.     GSLLP also took part in briefing discovery disputes in this matter regarding the timing of discovery, Defendant's request to take foreign discovery from an Australian olive oil testing laboratory, and Plaintiff's request to take foreign discovery from Defendant's Italian parent company.

12.     In total, over 30,000 pages of documents were produced in this case, and GSLLP assisted in the document review efforts in this case.

13.     GSLLP also took the deposition of Defendant's expert economics witness, defended the deposition of Plaintiff, and defended the deposition of Plaintiff's expert economics witness.

14.     After obtaining significant discovery from Defendant in this case, GSLLP participated in conducting research for, drafting, and filing Plaintiff's Motion for Class Certification, which was filed in January of 2016.  Upon receiving Defendant's opposition to that motion, GSLLP participated in the research and drafting of Plaintiff's reply memorandum, which was filed in May of 2016.  I appeared and argued at the hearing on this motion on May 24, 2016. After the class certification motion was submitted, the Court asked for further declarations regarding Class Counsel's qualifications and on the pending motions to seal portions of the briefing, on which GSLLP participated in the drafting and filing.

15.     After the Court granted Plaintiff's Motion for Class Certification, the parties started to discuss the possibilities of mediation and settlement in August 2016 (Dkt. 130).  I drafted the initial proposals, and then on November 8, 2016, GSLLP participated in the drafting of a comprehensive mediation statement and attended an all-day mediation (10+ hours) with Randy Wulff of Wulff Quinby & Sochynsky, an independent, well respected, and experienced mediator, in Oakland, California.  The parties made significant progress during the mediation, and following it, GSLLP took the lead on negotiating and drafting the Settlement Agreement along with corresponding documents, including claim forms, summary notice, and long form notice.

16.  Because the parties were able to arrive at a nationwide settlement, GSLLP participated in the drafting and filing of an Amended Complaint in this matter, asserted nationwide claims consistent with the nationwide settlement class contemplated by the Settlement Agreement.

17.  After the parties entered into the Settlement Agreement, GSLLP participated in the drafting and filing of the motion for preliminary approval of the settlement and its supporting documents.  I appeared and argued at the hearing on this motion.

18.  After filing the motion for preliminary approval of the settlement, GSLLP supervised the work of the claims administrator in this matter.  For example, I tested the operation of the settlement website, and I and my colleagues at GSLLP have corresponded with the claims administrator regarding the notice and claims process, including regarding inquiries from class members.  GSLLP will continue to participate in these efforts throughout and following the claims process.

19.  GSLLP also participated in the drafting and filing of the instant motion for final approval of the settlement, and I will appear at the hearing on that motion.  Among other things, I worked with Plaintiff's economics expert regarding his declaration in support of final approval.

20.  GSLLP's work in this case is delineated in even greater detail in the contemporaneous time entries attached to this Declaration, as discussed in Section C.

21.  Should any objections to the settlement be filed prior to the hearing on final approval, GSLLP will research and respond to those objections by, if necessary, filing oppositions to them and/or a reply memorandum in support of the motion for final approval of the settlement.

22.  After engaging in all of the aforementioned tasks, as a partner with GSLLP, I am in a unique position to evaluate this Settlement. Indeed, in advising the Representative Plaintiff whether or not to enter into the Settlement Agreement, I was very cognizant of the risks involved in protracted litigation. I was also cognizant of Defendant's size and financial resources.

23.  When considering the risks and costs associated with proceeding to trial against the nature of the benefit that was being offered by Defendant, it was clear that the Settlement is in the best interests of the class. Indeed, with this Settlement, Plaintiff has achieved her desired goal in this litigation—i.e., obtaining for class members cash refunds and changes to Defendant's labeling

practices. Based on my evaluation of the facts and legal issues presented, I believe that the settlement is fair, adequate, and reasonable. Indeed, I believe this is an excellent settlement.

24. Plaintiff Kumar is requesting an incentive award of $2,500. Plaintiff Kumar took on the risk of the possibility of bearing Defendant's costs in a losing effort. She worked with counsel to provide information and respond to discovery throughout the litigation. As many of Defendant's arguments centered on the standing and typicality of Ms. Kumar, the amount of her work in this case was greater than in the average consumer case. Kumar conducted lengthy searches of her personal records. She also spent a good deal of time preparing for and being deposed.

25. Plaintiff has been actively involved in the litigation prior to and after this Settlement. In my opinion, Plaintiff's participation in this litigation has been exemplary.

**B.   The Risks Borne By GSLLP.**

26. In accepting this case, GSLLP bore considerable risk. GSLLP took this case on a fully contingent basis, meaning that we were not paid for any of our time, and that we paid all costs and out of pocket expenses without any reimbursement to date. From the outset, GSLLP recognized that it would be contributing a substantial amount of time and advancing significant costs in prosecuting a nationwide class action, with no guarantee of compensation or recovery, in the hopes of prevailing against a well-funded defense. During the course of the litigation, GSLLP turned away other cases due to its involvement with this matter. Among these were cases that were subsequently filed by other firms.

27. Because Defendant was represented by a large, highly-skilled and well-resourced litigation firm, there was increased risk that Plaintiffs would receive a verdict for the Defense after a prolonged trial.

**C.   Lodestar and Expenses for GSLLP**

28. A true and correct copy of the firm resume of GSLLP was submitted as part of the class certification briefing the Court reviewed in certifying a California class. (Dkt. 85-9.)

29. GSLLP has worked on two other matters related to olive oil marketing practices that contain allegations similar to those in this case.  GSLLP has maintained separate billing

records for this case under the case name "Salov" and for each of the two other cases. In addition, because certain tasks in the three matters have sometimes overlapped, GSLLP has maintained separate billing records under the case name "OliveOil" for general work performed related to all three matters. Attached hereto as Exhibit 1 is a true and correct copy of the contemporaneous billing records entered and maintained by GSLLP under the case name "Salov" for the work specific to this case. Attached hereto as Exhibit 2 is a true and correct copy of the contemporaneous billing records entered and maintained by GSLLP under the case name "OliveOil" for the work that more generally applies to all three olive oil cases. With respect to the "OliveOil" work (Exhibit 2), GSLLP is only seeking to recover for one-third of the hours, or 123 hours of time.

30. Based on the time records of GSLLP as described in the preceding paragraph, GSLLP has spent approximately 1103.5 hours prosecuting this litigation through February 28, 2017.[1] The total number of hours, as well as the lodestar computed at our 2017 rates, is as shown in the following table:

| **Attorney (Position)** | **Hours** | **Rate** | **Total** |
| --- | --- | --- | --- |
| Adam J. Gutride | 460.6 | $950 | 437,570 |
| Seth A. Safier | 258.4 | $925 | $239,020 |
| Todd Kennedy | 19 | $850 | $16,150 |
| Kristen Simplicio | 311.8 | $775 | $241,645 |
| Marie McCrary | 20.9 | $750 | $15,675 |
| Matt McCrary | 32.8 | $725 | $23,780 |
| **TOTAL** | 1103.5 | | $973,840.00 |

31. The hourly rates shown for the attorneys at GSLLP are the same as the regular rates charged in 2017 for their services in other litigation.

32. I understand my co-counsel utilizes the Laffey Matrix, which provides market rates for attorneys working in the Washington, D.C., and Baltimore areas, and is discussed in Paragraph

---

[1] Time for March 2017 has not yet been entered by some timekeepers, so March time is omitted from these totals. GSLLP will update its lodestar and costs in a reply declaration, as necessary.

–6–
DECLARATION OF ADAM GUTRIDE IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT AND FEE APPLICATION

26 of the declaration of Hassan Zavareii.  Utilizing that matrix, GSLLP's lodestar computed using the matrix's 2017 rates, is shown in the following table:

| Attorney (Position) | Hours | Rate | Total |
|---|---|---|---|
| Adam J. Gutride | 460.6 | $826 | 380,455.60 |
| Seth A. Safier | 258.4 | $685 | 177,004.00 |
| Todd Kennedy | 19 | $685 | 13,105.00 |
| Kristen Simplicio | 311.8 | $608 | 189,574.40 |
| Marie McCrary | 20.9 | $608 | 12,707.20 |
| Matt McCrary | 32.8 | $608 | 19,942.40 |
| **TOTAL** | 1103.5 | | $792,698.60 |

33.     On February 24, 2016, Judge Peter Kirwan of the Santa Clara Superior Court approved rates GSLLP's 2015 rates of $825 for me, $800 for Seth Safier, and $700 for Todd Kennedy, in *Mackinnon v. IMVU, Inc*. Case No. 111 CV 193767 (County of Santa Clara). On February 20, 2015, Magistrate Judge Beeler, approved GSLLP's 2014 rates of $725 per hour for Seth Safier and $750 for me, and $700 for Jay Kuo, in *Miller v. Ghirardelli Chocolate Company*, Case No. 12-cv-4936 (N.D. Cal.). On February 20, 2014, Judge Ernest Goldsmith of the San Francisco Superior Court approved GSLLP's 2013 rates of $700 per hour for me and $675 for Seth Safier in *Haven v. Betz & Sons, Inc., et al*, Case No. 438719. On December 11, 2013, Judge Claudia Wilken approved GSLLP's 2013 rates of $700 per hour for me, $675 for Seth Safier, $625 for Jay Kuo and $450 for Kristen Simplicio, in *Rainbow Business Solutions, et al v. Merchant Services, et al*, Case No. CV 10-01993 CW (N.D. Cal). On August 1, 2013, Judge Dale S. Fischer approved GSLLP's 2013 rates of $700 per hour for me, $675 for Seth Safier, and $450 for Kristen Simplicio, in *Mancini, et al v Ticketmaster, et al*, Case No. 07-cv-01459-DSF-JTL (C.D. Cal). On June 1, 2012, Judge Jeffrey White approved GSLLP's 2012 rates of $650 per hour for me, $625 for Seth Safier and $400 for Kristen Simplicio, in *Chavez v. Blue Sky Beverage, et al*, Case No. 06-cv-6609 (N.D. Cal.). On February 14, 2012, Chief Judge James Ware approved GSLLP's 2011

1 rates of $625 per hour for me, $600 for Seth Safier, and $375 for Kristen Simplicio, in *Embry v.*
2 *Acer America Corporation*, Case No. 5:09-cv-1808 (ND. Cal.). On November 30, 2011, Judge
3 James F. Holderman approved GSLLP's 2010 rates of $600 per hour for me and $575 per hour for
4 Seth Safier in *In Re: Kentucky Grilled Chicken Coupon Marketing & Sales Practices Litigation*,
5 Case No. 1:09-cv-07670 (ND. Ill.). On November 22, 2011, Judge John Munter approved
6 GSLLP's 2011 rates of $625 per hour for me, $600 per hour for Seth Safier, and $375 per hour for
7 Kristen Simplicio in *Gauss v. Millennium Products, Inc*., Case No. CGC-10-503347. On
8 December 24, 2009, GSLLP's 2009 rates of $550 for me and $525 for Seth Safier were approved
9 by Judge Richard A. Kramer in *Deaton et al v. Hotwire*, Case Number CGC-05- 437631. On
10 August 20, 2008, rates of $525 for me $500 for Seth Safier were approved by Judge Charlotte
11 Walter Woolard in *Nelsen v. PeoplePC*, Case Number 07-460240. On April 30, 2008, rates of
12 $475 for me and $450 for Seth Safier were approved by Judge Charlotte Walter Woolard in
13 *Howard et al. v. Betz & Sons*, Case Number CGC-03-422529. On April 14, 2008, rates of $450 for
14 me and $425 for Seth Safier were approved by Judge Mary E. Wiss in *Cho v. Seagate*, Case
15 Number CGC-06-453195. On February 5, 2008, rates of $475 for me and $450 for Seth Safier
16 were approved in by Judge William Alsup in *Siemers v. Wells Fargo*, Case No. 3:05-cv-04518-
17 WHA (N.D. Cal.). On November 20, 2006, rates of $450 for me and $425 for Seth Safier were
18 approved by Judge Richard A Kramer in *Vroegh v. Dane Electric et al*., Case No. CGC-04-
19 428953.

20    34.   I am a 1994 graduate from Yale Law School. Seth Safier is a 1998 graduate from
21 Harvard Law School. Ms. Simplicio is 2007 graduate of the American University, Washington
22 College of Law. Ms. McCrary is a 2008 graduate of New York University Law School.

23    35.   Mr. Gutride and Mr. Safier were previously attorneys at the law firm of Orrick
24 Herrington & Sutcliffe. It is my understanding that attorneys at that firms in the litigation
25 departments, with the same number of years of experience as myself and Mr. Safier are currently
26 billing at hourly rates in excess of $1000 for law school graduates from 1994 and 1998. I also
27 believe the rates paid by Defendant to its firm in this case meets or exceeds the rates requested for
28 GSLLP. I believe that my firm's hourly rates are below market for attorneys with similar

backgrounds and experience.

36.     Expenses are accounted for and billed separately and are not duplicated in my professional billing rate. GSLLP has not received reimbursement for expenses incurred in connection with this litigation. As of April 10, 2017, my firm incurred a total of $65,902.06 in unreimbursed actual third-party expenses in connection with the prosecution of these cases. The actual expenses incurred in the prosecution of these cases are reflected on the computerized accounting records of my firm prepared by bookkeeping staff, based on receipts and check records, and accurately reflect all actual expenses incurred. Some of the expenses included below are known to us but yet to be invoiced or have been invoiced but not yet paid. The expenses that have yet to be invoiced, for example, include expenses for courtesy copies of this Motion and expenses associated with traveling to the final approval hearing and are estimated based on my experience. The expenses are as follows:

| **Expense Category** | **Amount** |
|---|---|
| Copying, Duplication, Printing (E101) | |
| Arbitrators/Mediators (E121) | $8,500 |
| Court Fees (E112) | $400 |
| Delivery Svcs & Msgrs (E107) | 3,013.50 |
| Deposition Transcripts (E115) | 4,269.05 |
| Experts (E119) | 39,296.30 |
| Litigation Sup Vendors (E118)[2] | 8,098.34 |
| Local Travel (E109)[3] | 81.40 |
| Meals (E111) | 221.40 |
| Online Research (E106) | 191.64 |
| Other (E124)[4] | 86.18 |

---

[2] Logik Systems is a document review platform.

[3] Includes taxis, and parking, tolls, and mileage for automobiles owned by GSLLP timekeepers.

[4] Includes costs attributable to this case for the purchase of the product for testing, the purchase of a book about the olive oil industry, bookeeping services, online fax, and data hosting.

| | |
|---|---:|
| Out-of-Town Travel (E110) | 1,162.58 |
| Outside Printing (E102) | 261.60 |
| Postage (E108) | 220.07 |
| **TOTAL** | **$65,902.06** |

### D.  Plaintiffs' Counsel Continuing Obligations to Class Members

37. Following this Court granting preliminary approval to the Settlement, Class Counsel established standardized procedures to ensure that all inquiries from Class Members were timely and accurately handled. I am not aware of any feedback from class members that would suggest that the process is onerous or complicated. Class Counsel also worked the Claim Administrator to assure that settlement website functioned properly, was easy to use and properly designed. Class Counsel also worked with the Claims Administrator to assure that notice was disseminated in accordance with the terms of the Settlement Agreement. I received weekly updates from the Claims Administrator regarding the administration of the settlement. GSLLP will continue in this capacity should the settlement be finally approved. GSLLP will prepare for and appear at the fairness hearing. If the settlement is approved and fees awarded, GSLLP also will oppose any appeals that may be filed. Based on my experience with class actions, I additionally anticipate that there will be another 50-75 hours of work before this Litigation is entirely complete and an estimated 175-250 hours if this Court's judgment is appealed.

This declaration was executed this 11th day of April, 2017, at Berkeley, California. I state the foregoing under penalty of perjury under the laws of the United States.

/s/ Adam Gutride
Adam Gutride, Esq.

–10–
DECLARATION OF ADAM GUTRIDE IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FEE APPLICATION