UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROHINI KUMAR, an individual, on behalf of herself, the general public and those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SALOV NORTH AMERICA CORP.; and ITALFOODS, INC.,<br><br>Defendants. | Case No. 4:14-cv-02411-YGR |

Declaration

of

**COLIN B. WEIR**

April 11, 2017

REFERENCES MATERIALS DESIGNATED "CONFIDENTIAL" AND "CONFIDENTIAL ATTORNEYS' EYES ONLY" UNDER PROTECTIVE ORDER

I, Colin B. Weir, declare as follows:

I am Vice President at Economics and Technology, Inc. ("ETI"), One Washington Mall, 15th Floor, Boston, Massachusetts 02108. ETI is a research and consulting firm specializing in economics, statistics, regulation and public policy.

## I. QUALIFICATIONS, BACKGROUND, AND EXPERIENCE

1.  I hold a Masters of Business Administration, with honors, from the High Technology program at Northeastern University, Boston, Massachusetts. I hold a Bachelor of Arts degree cum laude in Business Economics from The College of Wooster, Wooster, Ohio. I have provided expert testimony before federal and state courts, the Federal Communications Commission, and state regulatory commissions, and have contributed research and analysis to numerous ETI publications and expert testimony at the state, federal, and international levels. I have consulted on a variety of consumer and wholesale products cases, calculating damages relating to food products, household appliances, herbal remedies, health/beauty care products, electronics, furniture, and computers. My Statement of Qualifications, which outlines my professional experience, publications, and record of expert testimony, is annexed hereto as Exhibit 1. This includes a list of all cases in which, during the previous four years, I have testified as an expert at trial or by deposition. Prior to joining ETI, I worked at Stop and Shop Supermarkets for a period of seven years, working as a cash department head, grocery/receiving clerk, and price-file maintenance head.

2.  I am the same Colin B. Weir who has previously submitted testimony in this litigation. I reference the contents of my January 19, 2016 Declaration ("Weir Declaration") and May 10, 2016 Declaration ("Weir Reply Declaration") throughout this report.



## II. ENGAGEMENT

3. I was previously advised by Counsel for Plaintiff that individuals purchased certain Salov brand Products[1] which were labeled as being "Imported From Italy" ("the Claim") and that Plaintiff alleges that this Claim is false or misleading to reasonable consumers.[2] In the Weir Declaration and subsequent Weir Reply Declaration, I proposed "Price Premium Damages" as a method to determine damages on a Class-wide basis, and provided a preliminary estimate of damages to a Class of California consumers using hedonic regression. As I outlined in my first report, hedonic regression is an econometric model commonly used by economists to quantify the relationship between the price of a product and its attributes, and the technique has a long history in use for determining damages in class action litigation.[3] This Court too recognized that Price Premium Damages can be calculated on a Class-wide basis using hedonic regression.[4]

4. I have since been advised by Counsel for Plaintiff that Plaintiff and Defendants have reached a Settlement Agreement[5] for a nationwide Class, which amongst other things, provides for certain ongoing relief -- i.e., changed practices.

5. Following Final Approval, Defendants agree to the following with regard to the packaging of the Products:

- "Defendant agrees not to use the phrases 'Imported from Italy,' 'Made in Italy,' 'Product of Italy,' or any other phrase on the label of a Product sold in the United

---

[1] "The Products."

[2] *See, generally,* Class Action Complaint, filed May 22, 2014 ("Complaint").

[3] *See,* Weir Declaration, at 6-12; *Hedonic Prices and Implicit Markets: Product Differentiation in Pure Competition.* Rosen, Sherwin, The Journal of Political Economy, Vol. 82, No. 1. (Jan. - Feb., 1974); *The Use of Hedonic Analysis for Certification and Damage Calculations in Class Action Complaints*, Doane, Michael (Analysis Group) and Hartman, Raymond, Journal of Law, Economics, & Organization, Vol. 3, No. 2 (Autumn, 1987), pp. 351-372.

[4] *Rohini Kumar v. Salov North America Corp.*, 2016 WL 3844334, Case No.: 14-CV-2411-YGR, (N.D. Cal July 15, 2016).

[5] Settlement Agreement between Plaintiff Rohini Kumar and Defendant Salov North America Corp. ("Settlement Agreement").



>   States suggesting that olive oils in a Product originate from olives grown in Italy, and instead to use the designation 'Imported' on the front panel, until at least three years after the Effective Date, unless the Product so labeled is composed entirely of oil extracted in Italy from olives grown in Italy."[6]

I have been asked by Counsel for Plaintiff to analyze the changed practices provided by the Settlement Agreement, and to estimate the value of that ongoing relief to the Settlement Class (above and beyond the direct monetary relief provided in the Settlement Benefits) using hedonic regression.

6. ETI is being compensated at the rate of $600 per hour for my ongoing work on this case. The opinions expressed in this declaration are my own, and my compensation is not dependent upon the substance of these opinions or the outcome of the litigation.

7. The documents, data and other materials that I relied upon in forming my opinions are identified throughout my report and in Exhibit 1, attached hereto. In addition, I have relied upon my educational background and more than 13 years of experience.

### III. THE "IMPORTED FROM ITALY" CLAIM

8. My understanding of the Settlement Agreement is that certain Salov Products were sold with a label claiming to be "Imported from Italy," and that for a period of three years following Final Approval, the Products will not be sold with such a claim but instead will be sold with an "Imported" label. Furthermore, I have been advised that Defendants have not included the "Imported from Italy" Claim on the Product labels since August 31, 2015, therefore, Plaintiff's Counsel has advised that the relevant time frame for calculating the value of the changed practices prescribed by the Settlement is August 31, 2015 to August 31, 2020.

9. In order to calculate the value of the Settlement to the nationwide Class of consumers it is necessary to establish the Price Premium differential between the "Imported from Italy" Claim and Defendants' proposed replacement label: "Imported." As I have stated in

---

[6] Settlement Agreement, at para 3.2.



previous testimony and as this Court has already recognized, hedonic regression can be used to calculate Price Premium Damages on a Class-wide basis: "Kumar has sufficiently established that it has a model for calculating the damages resulting from its theory of liability."[7] In the Weir Declaration and Weir Reply Declaration, I established the existence and magnitude of an "Imported from Italy" Price Premium over oils which make no claim about geographical origin across the three common categories of olive oil ("Extra Virgin," "Extra Light," and "Olive Oil").[8] I have used the same hedonic regression technique (as well as the same IRI data and product label information) to estimate the magnitude of the Price Premium associated with the "Imported from Italy" Claim over oils which claim to be "Imported."[9] Once again, I have isolated this Price Premium across the three common categories of olive oil: "Extra Virgin," "Extra Light," and "Olive Oil" using interaction terms.[10] The results of this analysis are presented in Table 1 below. The complete results of the model are reproduced in Exhibit 2.

---

[7] *See generally,* Weir Declaration; *Rohini Kumar v. Salov North America Corp.*, 2016 WL 3844334, Case No.: 14-CV-2411-YGR, (N.D. Cal July 15, 2016), at 20.

[8] Weir Declaration, at 20; Weir Reply Declaration, at 43.

[9] IRI_OliveOil_0001; Product labels.

[10] *See,* Weir Declaration, at para 72 for discussion of interaction terms; *See also,* Stock, J. H. & W. W. Watson, *Introduction to Econometrics* (3rd ed.), Boston: Addison-Wesley, 2011 ("Stock & Watson"), at 274-278.


ECONOMICS AND TECHNOLOGY, INC.

| Table 1. Hedonic Regression Results "Imported from Italy" vs. "Imported" | | | |
|---|---|---|---|
| **Premium Type** | **Claim Coefficient** | **Claim Price Premium** | **Claim Price Premium Factor**[11] |
| Extra Virgin/Italy (vs. Extra Virgin/Imported) | 0.008196 | 0.8229% | 0.8162% |
| Extra Light/Italy (vs. Extra Light/Imported) | 0.120761 | 12.8355% | 11.3754% |
| Olive Oil/Italy (vs. Olive Oil/Imported) | 0.228312 | 25.6477% | 20.4124% |
| F-statistic = 445.71, Adjusted R-squared = 0.8046 | | | |

10. I believe that these results are reliable and can suitably be applied to nationwide sales figures for purposes of estimating the value of the Settlement relief in this litigation.

### IV. VALUE OF THE ONGOING SETTLEMENT RELIEF

11. I have reviewed documents indicating total California sales of the Products at issue in this case.[12] The available IRI scanner data consists of weekly sales transactions of Salov Products from January 2009 through May 2015 in California. I have been asked to assume by Counsel for Plaintiff that the changed practices prescribed by the Settlement Agreement span a time period of five years from August 31, 2015 to August 31, 2020. In order to forecast likely

---

[11] To interpret a coefficient in this log-linear regression, it must first be exponentiated to undo the log transformation. This is done by taking the mathematical constant e (roughly 2.71828), and raising it to the exponent of the coefficient, and then subtracting 1 from the result. This result can then be interpreted as the percentage price premium or discount for that attribute, when all other attributes are held constant. When interpreting the effects of more than one coefficient at a time, one must understand that the model coefficients in total are relative to a base price without any attributes at all. The price premium calculated here is the extra amount consumers would have paid above a base amount had the claim not been made. The actual available sales data in this case are sales dollars that occurred *with* the claim. To determine damages, you need the corresponding price premium factor, which is calculated as, e.g. $[premium] \div [1 + premium] = .1877 \div 1.1877 = .1580$ or 15.80%.

[12] IRI_OliveOil_0001


ECONOMICS AND TECHNOLOGY, INC.

sales of Salov Products for a nationwide settlement for this period using California IRI data, Defendants have provided the following assumptions:

- Since the label change in 2015, sales of Salov Products in California have continued to make up approximately 3% of Defendant's nationwide sales.

- Since the label change in 2015, sales have essentially remained flat or slightly decreased.

- Of the three types of oil at issue in this case: "Extra Virgin," "Extra Light," and "Olive Oil," the mix of Product sales in California is slightly more weighted towards "Extra Virgin" oil.

12. Using these assumptions I estimated Defendants' nationwide sales for the relevant period. First, using the California IRI data, I estimated a linear trend for each individual Product over 2015 in order to forecast sales for the period May 2015 to August 2015 (since the California IRI data ends during May). With this forecast and existing IRI transaction data, I calculated total sales of each Product in California for the period September 1, 2014 to August 31, 2015. Then, for each Product, I divided this total by 3% to approximate nationwide sales of the Products from September 1, 2014 to August 31, 2015. Using these figures I forecasted total annual sales of the Products (beginning Sep. and ending Aug.) for the next five years, assuming a 1% annual decrease in total sales across all Products. Finally, I did not make any adjustment to the mix of "Extra Virgin," "Extra Light," and "Olive Oil," sales given that Price Premium damages for sales of "Extra Light" and "Olive Oil" are substantially higher than damages for sales of "Extra Virgin," making the final estimate of total nationwide settlement relief conservative.

13. Total nationwide retail sales figures for Settlement relief (September 1, 2015 through August 31, 2020) are presented below in Table 2.



| Table 2. Nationwide Estimated Retail Sales: (September 1, 2015 - August 31, 2020) ||
|---|---|
| **Salov Product** | **Nationwide Retail Sales** |
| FILIPPO BERIO EXTRA VIRGIN | $ 244,208,232 |
| FILIPPO BERIO EXTRA LIGHT | $ 31,239,491 |
| FILIPPO BERIO OLIVE OIL | $ 70,305,686 |
| TOTAL | $ 345,753,408 |

14. The sales figures presented in Table 2 correspond to 49,384,523 unit sales of the Products.

15. With the total nationwide sales figures in hand, calculating the value of the Settlement relief using Price Premium Damages is simple and straightforward.

16. With the price difference due to the removal of the Claim determined on a percentage basis, the calculation of Class-wide damages for any Product will be:

$$\% Price\ Premium\ Factor: Claim \times \$Units\ Sold = Settlement\ Relief$$

17. These calculations can be performed on a Class-wide basis, for any defined time period and/or geographic location, including the period and geography defined by the Settlement Agreement in this litigation.

18. Total nationwide retail sales during the period September 1, 2015 - August 31, 2020 are present below in Table 3, along with a calculation of the estimated value of relief on a per oil basis, given the oil-specific Price Premium.



| Table 3. Value of the Settlement Relief Nationwide: (September 1, 2015 - August 31, 2020) | | | |
|---|---|---|---|
| **Salov Product** | **Nationwide Retail Sales** | **Price Premium Factor** | **Settlement Relief** |
| FILIPPO BERIO EXTRA VIRGIN | $ 244,208,232 | 0.8162% | $ 2,001,436 |
| FILIPPO BERIO EXTRA LIGHT | $ 31,239,491 | 11.3754% | $ 3,553,625 |
| FILIPPO BERIO OLIVE OIL | $ 70,305,686 | 20.4124% | $ 14,351,062 |
| TOTAL | $ 345,753,408 | | $ 19,906,123 |

19. This means that, all else being equal, one would expect that after the labeling changes, the total amount that will be paid by consumers for the Products during the period of changed practices will be at least $19.91 million less than it would have been in the absence of the changes.

## V. BEFORE AND AFTER PRICING COMPARISONS

20. As I have discussed in the past, a so-called "Before and After" comparison of shelf prices is inappropriate in this litigation and provides no information about the effect of removing the "Imported from Italy" Claim, holding all else constant.

21. It is often suggested that a comparison of prices (such as for Filippo Berio Olive Oil) before and after a change to a product label (such as the removal of the "Imported from Italy" Claim) is a sufficient method by which to determine the effect of the Claim on the price of the price of the Products. However, just as Courts have generally rejected the concept of determining damages by comparing two products side-by-side without controlling for other factors, it would be inappropriate to compare a product side-by-side "before and after" a change without controlling for other elements of the product or circumstances that may have changed at the same time. Defendant's expert Ugone noted "wide variations" in price across a number of Product dimensions such as Sales Channel and Promotional Activity. Additional factors such as


ECONOMICS AND TECHNOLOGY, INC.

geography and advertising/marketing efforts should also be considered for a "before and after" price comparison.

22. Other variables that may impact a "before and after" analysis in this litigation include the price of competitive olive oil products and the market share of other competitive olive oil products. My hedonic regression controls for both the price and market share of competitors' olive oils.

23. In this litigation, any direct comparison of shelf prices without effectuating such controls should be afforded little weight.

## VI. RETAILERS CONTROL THE PRICE OF THE SALOV PRODUCTS

24. Defendant has asserted that its prices for the Products have remained unchanged since the removal of the "Imported from Italy" Claim. Even if true, this dubious assertion is not material to a valuation of the ongoing benefits of the Settlement agreement, because Defendant only sets the *wholesale price*, which is charged to distributors or retailers. The price paid by consumers for the Products is set by the retailers in response to competitive market conditions, and these prices are anything but constant.

25. Retailers, and especially grocers, change their prices on a regular basis in response to competitive conditions in the marketplace. For example, Safeway, a grocer with a strong presence in California, describes the competitive conditions it faces, and its typical responses, as follows:

> *Competitive Industry Conditions*: We face strong competition from traditional grocery retailers, non-traditional competitors such as supercenters and club stores, as well as from specialty and niche supermarkets, drug stores, dollar stores, convenience stores and restaurants. Increased competition may have an adverse effect on profitability as the result of lower sales, lower gross profits and/or greater operating costs.



>Our ability to attract customers is dependent, in large part, upon a combination of location, quality, price, service, selection and condition of assets. In each of these areas, traditional and non-traditional competitors compete with us and may successfully attract our customers to their stores by aggressively matching or exceeding what we offer. In recent years, many of our competitors have increased their presence in our markets. ***Our responses to competitive pressure, such as additional promotions and increased advertising***, could adversely affect our profitability. We cannot guarantee that our actions will succeed in gaining or maintaining market share. Additionally, we cannot predict how our customers will react to the entrance of certain non-traditional competitors into the grocery retailing business.
>
>Because we face intense competition, ***we need to anticipate and respond to changing consumer demands more effectively than our competitors***. We strive to achieve and maintain favorable recognition of our unique private-label brands, effectively market our products to consumers, ***competitively price our products*** and maintain and enhance a perception of value for consumers.[13]

26. Another grocer, Whole Foods, states that it faces similar conditions:

>Increased competition may adversely affect our revenues and profitability. [...]As competition in certain areas intensifies, our operating results may be negatively impacted through a loss of sales, ***reduction in margin from competitive price changes***, and/or greater operating costs such as marketing. [...]Our operating results may be materially impacted by changes in overall economic conditions that impact consumer confidence and spending, including discretionary spending.[14]

27. Defendant itself has noted that competition in the olive oil market is strong enough to have had adverse effects on the sales of the Products. "Sales volume has essentially remained flat since the label change, aside from a s*light decrease due to aggressive promotional activities by key competitors*."[15]

---

[13] Safeway 2015 10-K Annual Report filed with the US Securities and Exchange Commission. [emphasis supplied]

[14] Whole Foods 2016 10-K Annual Report filed with the US Securities and Exchange Commission. [emphasis supplied]

[15] March 13, 2017 email from Sean Commons (Counsel for Defendant) to Adam Gutride. [emphasis supplied]


ECONOMICS AND TECHNOLOGY, INC.

28. My hedonic regression model accounts for such competitive factors by analyzing actual retail prices -- those set in the market as a result of all of the then extant competitive forces -- paid by consumers, as opposed to the wholesale price set by Defendant that is not the actual price being paid by consumers at retail.

## VII. RESERVATION OF RIGHTS

My testimony is based upon the information and data presently available to me. Additional, different and/or updated data including market research data may be obtained in advance of trial. I therefore reserve the right to amend or modify my testimony.

## VERIFICATION

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief, and that this declaration was executed at Boston, Massachusetts, this 11th day of April, 2017.

_____

Colin B. Weir



# Exhibit 1

# Documents Reviewed

- Class Action Complaint, filed May 22, 2014

- Declaration of Colin B. Weir, filed January 19, 2016

- Declaration of Colin B. Weir, filed May 10, 2016

- *Rohini Kumar v. Salov North America Corp.*, 2016 WL 3844334, Case No.: 14-CV-2411-YGR, (N.D. Cal July 15, 2016)

- *Hedonic Prices and Implicit Markets: Product Differentiation in Pure Competition.* Rosen, Sherwin, The Journal of Political Economy, Vol. 82, No. 1. (Jan. - Feb., 1974)

- *The Use of Hedonic Analysis for Certification and Damage Calculations in Class Action Complaints*, Doane, Michael (Analysis Group) and Hartman, Raymond, Journal of Law, Economics, & Organization, Vol. 3, No. 2 (Autumn, 1987), pp. 351-372

- *See, e.g.*, *In re: Scotts EZ Seed Litigation,* Case No. 12-cv-4727-VB, Dkt No. 127 (S.D.N.Y. January 26, 2015)

- *In re: ConAgra Foods Inc.*, Case No. 11-cv-05379-MMM, Dkt No 545 (C.D. Cal February 23, 2015)

- *Dei Rossi vs. Whirlpool*, Case No. 12-cv-00125-TLN, Dkt No. 160 (E.D. Cal April 28, 2015)

- *Developing a Hedonic Regression Model For Refrigerators in the U.S. CPI*, Shepler, Nicole, October 16, 2001, available at http://data.bls.gov/cgi-bin/print.pl/cpi/cpirfr.htm (last accessed February 24, 2015)

- Bates No. IRI_OliveOil_0001

- Product labels

- Stock, J. H. & W. W. Watson, *Introduction to Econometrics* (3rd ed.), Boston: Addison-Wesley, 2011

# Exhibit 2

# Regression Results

**Salov: Regression Results**

| Independent Variables | Coefficients | T-Statistics | Exponentiated Coefficients |
|---|---|---|---|
| Imported | -0.0344 | (-0.75) | -0.0338 |
| Italy | 0.194*** | (5.70) | 0.2141 |
| Other | -0.0443** | (-2.10) | 0.6210 |
| Extra Virgin | 0.157*** | (8.73) | 0.0134 |
| Extra Light | 0.0136 | (0.53) | 0.2183 |
| Imported x Extra Virgin | 0.0668 | (1.52) | 0.0691 |
| Imported x Extra Light | 0.0604 | (1.22) | 0.0623 |
| Italy x Extra Virgin | -0.153*** | (-7.23) | -0.1419 |
| Italy x Extra Light | -0.0472 | (-1.62) | -0.0461 |
| Promo | -0.198*** | (-29.79) | -0.1796 |
| Total Ounces | -0.0184*** | (-22.66) | -0.0182 |
| Total Ounces Squared | 0.0000631*** | (9.74) | 0.0001 |
| Glass Bottle | 0.00924 | (0.64) | 0.0093 |
| Plastic Jug | 0.199*** | (9.95) | 0.2202 |
| Tin | 0.244*** | (9.48) | 0.2763 |
| Natural/All Natural | 0.0879*** | (4.74) | 0.0919 |
| Organic | 0.0922** | (2.56) | 0.0966 |
| Butter | -0.176*** | (-2.76) | -0.1614 |
| Fruity | -0.122*** | (-4.13) | -0.1149 |
| Garlic | -0.0138 | (-0.48) | -0.0137 |
| No Cholesterol | -0.184*** | (-10.63) | -0.1681 |
| Cholesterol Free | -0.0395* | (-1.70) | -0.0387 |
| California Olive Ranch | 0.131*** | (3.64) | 0.1400 |
| Carapelli | 0.00300 | (0.12) | 0.0030 |
| Colavita | 0.447*** | (35.64) | 0.5636 |
| Crisco | -0.329*** | (-7.56) | -0.2804 |
| Filippo Berio | -0.310*** | (-14.16) | -0.2666 |
| Goya | -0.00962 | (-0.27) | -0.0096 |
| Lucini Italia | 0.787*** | (55.84) | 1.1968 |
| Mazola | -0.372*** | (-12.08) | -0.3106 |
| Omaggio | -0.558*** | (-14.10) | -0.4276 |
| Pompeian | -0.193*** | (-4.78) | -0.1755 |
| Star | 0.0671** | (2.21) | 0.0694 |
| Quarter: 2010q3 | -0.0231 | (-1.32) | -0.0228 |
| Quarter: 2010q4 | -0.00612 | (-0.37) | -0.0061 |
| Quarter: 2011q1 | -0.0117 | (-0.60) | -0.0116 |
| Quarter: 2011q2 | 0.00915 | (0.51) | 0.0092 |
| Quarter: 2011q3 | -0.00630 | (-0.33) | -0.0063 |
| Quarter: 2011q4 | -0.00125 | (-0.07) | -0.0012 |
| Quarter: 2012q1 | -0.0124 | (-0.68) | -0.0123 |
| Quarter: 2012q2 | -0.0391** | (-2.06) | -0.0383 |
| Quarter: 2012q3 | -0.0547*** | (-2.76) | -0.0532 |
| Quarter: 2012q4 | -0.0723*** | (-3.87) | -0.0697 |
| Quarter: 2013q1 | -0.0443** | (-2.13) | -0.0433 |
| Quarter: 2013q2 | -0.0244 | (-1.23) | -0.0241 |
| Quarter: 2013q3 | -0.00346 | (-0.18) | -0.0035 |
| Quarter: 2013q4 | 0.00387 | (0.20) | 0.0039 |
| Quarter: 2014q1 | -0.00948 | (-0.47) | -0.0094 |
| Quarter: 2014q2 | -0.0191 | (-0.96) | -0.0189 |
| Constant | -0.665*** | (-18.30) | -0.4857 |
| Observations | | 2,930 | |
| Number of Units | | 24,746,989 | |
| Adjusted R-squared | | 0.805 | |
| F-Statistic | | 445.71 | |
| RMSE | | 0.133 | |
| F-Test of Italy/Category of Olive Oil Coefficients | | 32.46 | |
| F-Test p-value | | 0.000 | |
| Extra Virgin/Italy (vs. Extra Virgin/Imported) | | 0.0082 | |
| Extra Light/Italy (vs. Extra Light/Imported) | | 0.1208 | |
| Olive Oil/Italy (vs. Olive Oil/Imported) | | 0.2283 | |

Note (1): Significance levels: * p<0.10; ** p<0.05; *** p<0.01
Note (2): T-Statistics displayed in parenthesis are calculated using robust standard errors.
Note (3): Regression model is weighted by number of units sold.
Source: IRI Scanner Data.