**GUTRIDE SAFIER LLP**
ADAM J. GUTRIDE (State Bar No. 181446)
SETH A. SAFIER (State Bar No. 197427)
KRISTEN G. SIMPLICIO (State Bar No. 263291)
100 Pine Street, Suite 1250
San Francisco, California 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

**TYCKO & ZAVAREEI LLP**
HASSAN A. ZAVAREEI (State Bar No. 181547)
JEFFREY D. KALIEL (State Bar No. 238293)
ANDREW J. SILVER (*pro hac vice*)
1828 L Street, N.W., Suite 1000
Washington, DC 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950

*Counsel for Plaintiff and the Class*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| ROHINI KUMAR, an individual, on behalf of herself, the general public and those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SALOV NORTH AMERICA CORP.,<br><br>Defendant. | CASE NO. 4:14-cv-02411-YGR<br><br>**DECLARATION OF JEANNE C. FINEGAN CONCERNING IMPLEMENTATION OF CLASS MEMBER NOTIFICATION**<br><br>Date: May 30, 2017<br>Time: 2:00 p.m.<br>Courtroom 1, Fourth Floor<br><br>Hon. Judge Yvonne Gonzalez Rogers |

I, JEANNE C. FINEGAN declare as follows:

## INTRODUCTION

1. I am President and Chief Media Officer of HF Media, LLC, a division of Heffler Claims Group which specializes in the design and implementation of court approved legal notice plans. This Declaration is based upon my personal knowledge as well as information provided to me by my associates and staff, including information reasonably relied upon in the fields of

–1–
DECLARATION OF JEANNE C. FINEGAN
CONCERNING IMPLEMENTAATION OF CLASS MEMBER NOTIFICATION

1  advertising media and communications.

2      2.    Pursuant to the Order Granting Preliminary Approval of Class Settlement, dated January 27, 2017 ("Order") Heffler Claims was appointed as the Claim Administrator. (See Dkt. 151, page 4, paragraph 5.)

    3.    I submit this Declaration in order to provide the Court and the parties to the action a report regarding the successful implementation of the Notice Program, including the overall reach of the Notice Program.

    4.    As described more fully below, the Notice Plan was successfully and timely implemented. In compliance with the Court's Order, the Notice Plan commenced on February 27, 2017, and was substantially completed by March 28, 2017. Combined, the media, including print and Internet banner ads and social media, reached an estimated 71 percent (exceeding our original projection) of the Class, as defined in the Settlement Agreement, with an estimated average frequency of 2.6 times.

## QUALIFICATIONS

    5.    A comprehensive description of my credentials and experience that qualify me to provide expert opinions on the adequacy of class action notice programs was previously filed with this Court on December 29, 2016. In summary, I have served as an expert, directly responsible for the design and implementation of hundreds of notice programs for class action and Federal Trade Commission Enforcement actions, some of which are the largest and most complex programs ever filed in both the United States and in Canada.

## NOTICE PROGRAM SUMMARY

    6.    In compliance with the Court's Order, this Notice Program included the following components:

- Publication of a short-form notice ("Publication Notice") in two nationally circulated consumer magazines;
- Online display banner advertising specifically targeted to reach Class Members;
- Social Media on Facebook;
- A national press release;

- An informational website (www.snaoliveoilsettlement.com) on which the notices and other important Court documents are posted; and

- A toll-free information line 1-844-702-2783 where Class Members can call 24/7 for more information about the Settlement, including, but not limited to, requesting copies of the Long Form Notice, Claim Form or Opt-Out Request Form.

## NOTICE PLAN

7. The Notice Program described and detailed below has was designed to specifically target Filippo Berio purchasers along with those who, more generally, purchase olive oil through a combination of targeted magazine, online media, and social media.

## MAGAZINE

8. *People Magazine* has a circulation of 3,452,000 with approximately 40,010,000 readers of the print edition. A one-half page, black and white ad was published once in the national edition of this magazine, which was available on newsstands March 17, 2017.

9. *Good Housekeeping* has a circulation of 4,300,000 with approximately 19,651,000 readers of the print edition. A one-half page, black and white ad was published once in the national edition of this magazine, which was available on newsstands March 14, 2017.

10. Attached as **Exhibit A** are tear sheets from the magazines.

## INTERNET AND SOCIAL MEDIA

11. According to GfK Mediamark Research and Intelligence LLC ("MRI") data, nearly 86 percent of Filippo Berio consumers are online, which made online notice in this case particularly important.

12. In compliance with the Court's Order, this program served over 164,569,276 impressions of banner ads and social media ads. Impressions were served with specific targeting to known Filippo Berio brand shoppers, along with those who have an affinity to purchase olive oil. Additionally, according to MRI data, over 65 percent of Fillipo Berio purchasers are over the age of 45, therefore, this program cast a slightly broader demographic net by serving impressions to consumers who are over the age of 45.

13. The banner ads were served across three internet networks, Aol, Conversant, and

Yahoo, each comprised of many hundreds of individual website partners. In total, banner ads were served across more than 3,057 websites for this Notice Program.  Attached as **Exhibit B** are screen shots of the banner ads from various web properties.

14. The display banners provided information for visitors to self-identify as potential Class Members, where they may "click" on the banner and then link directly to the official website for more information and where they may register online, file a claim, or seek additional information including frequently asked questions and important court deadlines and documents.

15. Banners also retargeted (served again as reminders) people who previously visited the website but did not file a claim, or abandoned the claim prior to submission. Retargeted ads were served, for a short time, to those individuals as a reminder.  As part of our retargeting effort, we are also mindful of privacy considerations. Therefore, an *AdChoices*[1]  (privacy) icon was placed on all ads for those who choose not to be provided with continued reminders.

16. Further, the social media platform Facebook was included as part of the outreach. Facebook ads targeted users who have liked or expressed an interest in Olive Oil purchases and those who are over the age of 45. Attached as **Exhibit C** are screen shots of the Facebook ads.

### PRESS RELEASE

17. In compliance with the Order, a press release was issued across PR Newswire's US1 network on February 27, 2017. My staff and I monitored various media channels for subsequent news articles and identified 142 various media pick-ups. To create additional visibility the press release was issued a second time on March 20, 2017. Attached, as **Exhibit D** is a copy of the Press Release and pick up report.

### OFFICIAL SETTLEMENT WEBSITE

18. In compliance with the Court's Order, an official website, www.snaoliveoilsettlement.com, was established and optimized for mobile visitors so that information loads on their mobile device quickly. The website served as a landing page for the banner and social media advertising, where Class Members may continue to obtain further

---

[1] The AdChoices Icon is a sign for consumer information and control for interest-based advertising (which is also referred to as "online behavioral advertising."  The AdChoices Icon gives browsers the ability to control whether they receive interest-based advertising and from which companies.

information about the class action, their rights, and related information, including the Settlement Agreement, Court Orders, and Plaintiffs' Motion for Approval of Fees, Expenses, and Incentive Awards and online filing of claims. The website address was prominently displayed in the publication notice and is accessible 24-hours a day, 7-days a week. Evidence for the success of this notice program is found in the impressive amount of visitor traffic to this website. As of April 6, 2017, 227,477 users[2] have visited the website with, 256,247 total sessions[3]. Attached as **Exhibit E** are copies of all pages of the settlement website (excluding the documents that are posted on the website as downloadable PDF documents).

## TOLL FREE HELP LINE

19. In compliance with the Court's Order, a toll free telephone helpline, 1-844-702-2783, was established and continues to be maintained by Heffler. It is available 24-hours a day where callers may obtain information about the class action. To date, 214 calls have been made to the IVR.

## CLAIMS

20. The Settlement Website includes a method for Class Members to submit claims online. Class Members also may choose to download, print and mail a claim form. As of April 6, 2017, Heffler had received 38,842 claims for settlement benefits. Of these 38,768 claims were for 10 bottles or less with an average of 7.7 bottles. Heffler received 74 claims for more than 10 bottles with an average of 28.5 bottles. At this time, 45 of those 74 claims for greater than 10 bottles lack proper proof of purchase and therefore, have been deemed deficient until further documentation is provided.

## EXCLUSION REQUESTS

21. The Settlement Website includes a method for Class Members to submit online a

---

[2] User: The first time a device (desktop, laptop, smart phone etc.) or a browser (like chrome, internet explorer) loads website content, Google Analytics ("GA") tracking code creates a random, unique id called the **client id** and sends it the GA server. This unique ID is counted as a new unique user in GA. Every time a new ID is detected, GA counts a new user. When GA detects an existing client ID in a new session, it recognizes it as a returning user. However, if the user deletes the browser cookies, the ID will be deleted or reset. If the user switches devices or browsers on a return visit to your website, a new unique client ID is created and the returning user is counted as a new user, as **client ID exist only on the device/browser where it has been set.** While GA attempts to count users as unique traffic, duplication can occur due to cookie deletion and change of device.

[3] Sessions are a combination of all new and returning visitors.

request for exclusion from the class. Class Members also may choose to download, print and mail an exclusion form, or to submit any other written request to be excluded.

22. As of April 6, 2017, Heffler had not received any requests for exclusion.

**OBJECTIONS**

23. As of April 6, 2017, Heffler had not received any objections to final approval of the settlement.

**CONCLUSION**

24. Heffler has agreed to provide the notice and administration in this matter for a fixed fee of $450,000.

25. In my opinion, the outreach efforts described above reflect a particularly appropriate, highly targeted and contemporary way to provide notice to this class, which is reasonably calculated to provide notice that is consistent with best practicable court-approved notice plans in similar matters and is consistent with the Federal Judicial Center's guidelines concerning appropriate reach. In total, the program exceeded our original projection to reach an estimated 71 percent of the class with an average frequency of 2.6 times.

26. I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on April 11th, 2016, in Tigard, Oregon.

*Jeanne C. Finegan*

Jeanne C. Finegan, APR

DECLARATION OF JEANNE C. FINEGAN
CONCERNING IMPLEMENTAATION OF CLASS MEMBER NOTIFICATION