WILLIAM I. CHAMBERLAIN (SBN 306046)
COMPETITIVE ENTERPRISE INSTITUTE
  CENTER FOR CLASS ACTION FAIRNESS
1310 L Street NW 7th Floor
Washington, DC 20005
Voice: 202-331-2255
Email: will.chamberlain@cei.org
Admitted only in California; supervision by members of the D.C. Bar.

*Attorney for Objector Theodore H. Frank*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| Kumar v. Salov North America Corp. | Case No. 4:14-cv-02411-YGR  **SUPPLEMENTAL DECLARATION OF THEODORE H. FRANK**  Judge:      Hon. Yvonne Gonzalez Rogers  Courtroom: 1  Date:       May 30, 2017  Time:       2:00 P.M. |
| Theodore H. Frank,  *Objector.* | |

Theodore H. Frank declares as follows:

1. I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.

2. I understand from Frank Bednarz that class counsel telephoned Frank Bednarz and suggested they will accuse me of "hiding" my alleged animus to Mr. Zavareei in an attempt to personalize the issues and distract the court from the legality of the settlement. This declaration is entirely about the irrelevant issue of my alleged "animus" to Mr. Zavareei, so that there is no question that we are not "hiding" anything from the Court, and the Court need not waste time on it if it chooses to focus on the merits instead of the collateral issues class counsel apparently intends to raise.

3. I am objecting because this settlement violates Ninth Circuit law, and I am genuinely offended at class counsel abusing the class-action system to obtain a fee several times what the class will collect. As my earlier declaration shows, I have successfully objected to many such settlements, and this one is no different. I have no animus to Mr. Zavareei beyond that, and would not object to a settlement of his I found legal.

4. I dislike losing far more than I dislike any individual attorney. I have no interest in bringing a non-meritorious objection, because we have to turn down meritorious objections all the time, and the opportunity cost of bringing a meritless objection would be being unable to have the resources to bring a meritorious objection.

5. In 2011, as I documented in my earlier declaration in this case, I represented an objector to a Zavareei class-action settlement, *National City*, where he was charging the class a blended rate of $3,000/hour for partners, associates, and paralegals in a case that was not litigated at all; moreover, the settlement had Rule 23(a)(4) problems.

6. Mr. Zavareei responded to my objection with abusive *ad hominem* attacks. The district court indicated that it did not want the parties to litigate collateral issues unrelated to the merits. The district court responded to our objection by demanding the settling parties provide more information supporting the settlement, and then eventually approving the settlement fee request in full.

*Kumar v. Salov North America Corp.*, Case No. 4:14-cv-02411-YGR     2

FRANK DECLARATION

7. In 2011, my non-profit was short-staffed and had several appeals pending. We decided as a matter of triage not to pursue an appeal of *National City*. If my time and resources had been unlimited, we would have appealed. In 2012, my non-profit won a similar Rule 23(a)(4) issue in the Third Circuit. In 2014, my non-profit won similar issues relating to attorneys' fees in two cases in the Seventh Circuit.

8. Mr. Zavareei asked to meet with me as we were deciding whether to appeal, and made a presentation to me at his office on or about December 22, 2011, arguing against the decision to appeal. I found the presentation unpersuasive, that the windfall realized by his firm was larger than I had thought when I objected, and I walked away from the meeting feeling that an injustice would be done if we did not appeal, and the decision ended up being closer than it would have been had there not been a presentation. Still, we did not appeal because of the lack of resources and for other internal reasons unrelated to our valuation of the merits of the appeal.

9. Mr. Zavareei e-mailed me on December 23, 2011, noting he "was pleased to learn that you are acting out of sincere motives, many of which I share with you. From what I've seen, you not only talk the talk, but you walk the walk." On December 27, 2011, I responded and let him know that we would not appeal, and congratulated him on his windfall. A true and correct copy of that email exchange is attached as Exhibit 1.

10. Another appellant appealed in 2012, contrary to Mr. Zavareei's representation to me that no other objector was appealing. I thought their objection meritless, and offered the possibility of an *amicus* brief against the appeal. We exchanged emails over the subject, and a true and correct copy of that email thread is attached as Exhibit 2.

11. Exhibit 2 also contains a true and correct copy of an email Mr. Zavareei sent to me in November 2014 congratulating me on our victory in *Pearson v. NBTY*.

12. At 10:26 p.m. on June 24, 2016, Mr. Zavareei, responding to a tweet by Bloomberg News reporter Perry Cooper, without any provocation from me, accusing me of being "the furthest thing from a legitimate objector."

13. I discovered the tweet the next morning, and was surprised, and tweeted a question mark in response?

14. Zavareei proceeded to attack my good faith in objecting and accused me of "disrupting good settlements." I defended myself and my track record in response. Zavareei responded by gloating of a "beat down" in the *National City* case, and called the objection their illegitimate. I defended our arguments in that case, noted the constraints we were under when we decided not to appeal, noted our successes in winning similar issues on appeal in later cases and that he "lucked out" we hadn't appealed in his case and gotten those victories against him, and said jokingly, "But we'll keep a closer eye on your shenanigans from now on." A copy of this tweet thread of June 24 and June 25, 2016, is attached as Exhibit 3, and seems to me to exhibit more animus by Mr. Zavareei than by me. I had completely forgotten about that tweet until one of my attorneys reminded me about it.

15. Mr. Zavareei tweeted at me against in November 2016, suggesting I object to the Trump University settlement. I ignored his tweet.

16. From June through September 2016, my project investigated an abusive fee request in *Bodnar v. Bank of America, N.A.*, No. 14-cv-3224 (E.D. Pa.) that was apparently made by Mr. Zavareei's firm, and considered whether to file amicus or ask the court to investigate whether he had paid objectors to drop their appeals at the expense of the class. I asked for recommendations from my team. One of my attorneys wanted to pursue the case, and one didn't, and we chose not to get involved in the absence of consensus.

17. In November 2016, we had a class member who could object to Mr. Zavareei's firm's settlement in *Raporport-Hecht v. Seventh Generation Inc.*, No. 14-cv-9087-KMK (S.D.N.Y.). For triage reasons, no one pursued investigation of the settlement to see if we wanted to object.

18. On February 27, 2017, one of my attorneys informed me of the pending Berio settlement, and I confirmed with my team that I was a class member if they felt an objection was worthwhile. On April 12, 2017, I agreed to object after one of my attorneys recommended that we pursue the objection after he reviewed the filings in this case. As I did not have much time to work on the objection because of three pending Ninth Circuit appeals and because of speaking and travel obligations, I would have not pursued the objection without the independent enthusiasm of my attorneys to work on the case.

19. I did not have any twitter exchanges with Mr. Zavareei in 2017 to my knowledge. I do not follow his twitter feed, and would not have any reason to contact him on Twitter unless he contacted me first. I can find no tweets by Mr. Zavareei that mention me after November 2016.

20. Even if I did have unusual animus to Mr. Zavareei, it would be legally irrelevant. Nothing in Rule 23(e) precludes an objecting class member from having animus against class counsel that insulted him as "illegitimate," and any animus I might have does not make the settlement more compliant with Ninth Circuit law or the fee-to-recovery ratio less disproportionate.

21. I believe that the phone call to Mr. Bednarz was an attempt to intimidate me from trying to object to this abusive settlement.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 2, 2017, in Washington, DC.

Theodore H. Frank

<u>PROOF OF SERVICE</u>

I hereby certify that on this day I electronically filed the foregoing Declaration using the CM/ECF filing system thus effectuating service of such filing on all ECF registered attorneys in this case.

DATED this 2nd day of May, 2017.

                                                   */s/William I. Chamberlain*
                                                   William I. Chamberlain

Pursuant to the Preliminary Approval Order (Dkt. 151) and the long-form notice to the class, I hereby certify that on this day I caused service of the forgoing on the following party by first class mail, postmarked as of this date:

                Kumar v. Salov Claim Administer
                c/o Heffler Claims Group
                P.O. Box 58476
                Philadelphia, PA 19102-8476

DATED this 2nd day of May, 2017.

                                                   */s/William I. Chamberlain*
                                                  William I. Chamberlain