**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ROHINI KUMAR,** individually and on behalf of the general public and those similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>**SALOV NORTH AMERICA CORP.**,<br><br>Defendants. | Case No.: 14-CV-2411- YGR<br><br>**ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND AWARDING ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS** |

Plaintiff Rohini Kumar ("Plaintiff") has moved the Court for final approval of a proposed class action settlement with defendant Salov North America Corporation ("Salov"), the terms and conditions of which are set forth in the Settlement Agreement filed with the Court on December 30, 2016.[1] On January 18, 2017, the Court granted Kumar's motion to approve the settlement preliminarily, conditionally certify the settlement class, appoint Kumar as class representative and her attorneys as class counsel, and direct that notice of the proposed settlement be disseminated to class members. (Dkt. No. 151.) Kumar thereafter filed the instant motion for final approval of the settlement, along with an award of attorneys' fees, costs, and an incentive payment to the class representative. (Dkt. No. 154.)

Three individuals filed objections to the settlement: Pamela Sweeney and Bradley Griffin, both self-represented, and Theodore Frank, represented by William Chamberlain of the Competitive Enterprise Institute's Center for Class Action Fairness. (Dkt. No. 155, 157, 160.) The parties responded to the objections. (Dkt. No. 161, 162.)

---

[1] Capitalized terms herein have the same meaning as set forth in the Settlement Agreement. (*See* Dkt. No. 140-1 ["Settlement Agreement"].)

The Court held a hearing on May 30, 2017, and heard arguments from the parties and from Objector Theodore Frank, through his counsel.

Having considered the briefing, the terms of the settlement agreement, the objections and response thereto, the arguments of counsel, and the other matters on file in this action, the Court **GRANTS** the motion for final approval. The Court finds the settlement fair, adequate, and reasonable. The provisional appointments of the class representative and class counsel are confirmed.

The Application for Attorneys' Fees, Costs, and Incentive Awards is **GRANTED**. The Court **ORDERS** that Salov shall pay $874,231.80 in attorneys' fees and $108,268.20 in litigation costs to class counsel, and a $2,500.00 incentive award to the class representative and named plaintiff, Rohini Kumar.

## I. PROCEDURAL HISTORY

### A. Complaint and Class Certification

On March 21, 2014, Kumar filed a complaint against Salov, in which Kumar alleged that Salov had deceptively marketed and sold its Filippo Berio brand of olive oil with the representation "Imported from Italy" on the front label, although the back label stated that most of the oil was extracted in countries other than Italy from olives grown in those other countries. Kumar further alleged that, by marketing the Products as "Imported from Italy," Salov caused people to purchase the Products who would not otherwise have done so, and that the Products were sold at a higher retail price than they would have been sold without the misstatements.

On January 20, 2016, Kumar moved to certify a class of all purchasers in California of Filippo Berio olive oil between May 30, 2010 and August 31, 2015, except purchases for purpose of resale, which Salov opposed.[2] On July 15, 2016, the Court certified a class of "All purchasers in California of liquid Filippo Berio brand olive oil of any grade except 'Organic' between May 23, 2010 and June 30, 2015" (the "Certified California Class"). (Dkt. No. 127.)

---

[2] In the original complaint, Plaintiff alleged claims for violations of the California Consumer Legal Remedies Act, Civil Code § 1780 *et seq* ("CLRA"), false advertising under California Business and Professions Code § 17500 *et seq.*; unfair business practices under California Business and Professions Code § 17200 *et seq.*; and misrepresentation.

2

### B.      Settlement Agreement

Following certification of the California Class, the Parties agreed to mediation before an experienced mediator, Randall Wulff, which ultimately led to the instant settlement.

Pursuant to the terms of the Settlement Agreement, and with leave of this Court, Kumar filed the operative first amended complaint, amending the claims to be stated as claims for false advertising under the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et. seq*.; common law fraud, deceit, and misrepresentation; and violations of the New Jersey Truth in Consumer Contract, Warranty, and Notice Act, N.J.S.A. 56:12-14, *et seq*., and amending the class definition to include "All natural persons in the United States who purchased Filippo Berio brand olive oil of any grade except 'Organic' between May 23, 2010, and June 30, 2015, except for purposes of resale" ("Nationwide Class").  Kumar sought to recover, on behalf of the Nationwide Class, the dollar amount of the "premium" price that she contended was attributable to the alleged misrepresentations.

Under the Settlement Agreement, members of the Nationwide Class may file a claim for each bottle or can of Filippo Berio Robusto Extra Virgin Olive Oil, Filippo Berio Extra Virgin Olive Oil, Filippo Berio Delicato Extra Virgin Olive Oil, Filippo Berio Organic Extra Virgin Olive Oil, Filippo Berio Olive Oil, or Filippo Berio Light Tasting Olive Oil (collectively, the "Products") purchased between May 23, 2010 and June 30, 2015.  Class members who file a timely claim receive a cash payment of $0.50 for each Product purchase during the class period, with a guaranteed minimum payment of $2.00 for any Household that submits a Valid Claim.  There is no cap on the total amount paid to the class member for claimed purchases that are corroborated by Proof of Purchase.  However, a maximum of $5.00 shall be paid to any Household for claimed purchases that are not corroborated by Proof of Purchase.  Salov had the right to terminate the settlement if the total costs of notice, administration, and payment of valid claims exceeded $5 million.  In addition, and as a result of the instant Litigation, Salov removed the phrase "Imported from Italy" from all Products imported into the United States, and it replaced that phrase with the word "Imported."  As part of the Settlement Agreement, Salov agreed to maintain these practices for at least three years after the

Effective Date of the Settlement Agreement. Kumar's economics expert, Colin Weir, estimated the value of these practice changes to be approximately $19.9 million using a hedonic regression model.

Finally, the Settlement Agreement provides that Kumar may seek an award of up to $982,500.00 in attorneys' fees and costs, and up to $2,500 as an incentive award.

### C. Class Notice and Claims Administration

The Settlement Agreement is being administered by Heffler Claims Group ("Heffler"). Following the Court's preliminary approval and conditional certification of the nationwide settlement, Heffler established a settlement website (the "Settlement Website") at http://www.snaoliveoilsettlement.com/, including the settlement notices, the procedures for class members to submit claims or exclude themselves, a contact information page that includes address and telephone numbers for the claim administrator and the parties, the Settlement Agreement, the signed order of preliminary approval, online and printable versions of the claim form and the opt out forms, answers to frequently asked questions, and a Product list. In addition, the motion for final approval and the application for attorneys' fees, costs, and incentive awards were placed on the website after they were filed. The claim administrator also operated a toll-free number for class member inquiries.

Notice was published in multiple media, all of which referred class members to the settlement website. (Dkt. No. 154-9, Finegan Decl. ¶¶ 7-17 & Exh. A-E; Dkt. No. 161-5, Supp. Finegan Decl. ¶¶ 3-6.) Half-page ads were published in the March 17, 2017 print version of *People* magazine and the print version of *Good Housekeeping* that went on the market on March 14, 2017. (Dkt. No. 154-9, Finegan Decl. ¶¶ 8-9, Exh. A.) In addition, notice was published in two press releases issued through PR Newswire's USA 1 network, which distributes broadly to thousands of media outlets including newspapers, national wire services, television and radio station media websites. (*Id.* ¶ 17, Exh. D.) Online Notice comprised of 165.5 million impressions that were displayed on a variety of websites (both mobile and desktop) targeted at likely members of the Settlement Class based on demographic data, including to persons believed to have purchased Filippo Berio olive oil products, likely purchasers of olive oil in general, and adults over the age of 45, who are a primary

demographic among Settlement Class Members. These ads were displayed on Facebook, Yahoo, AOL, and multiple other websites known to reach those demographic groups. The published notices pointed to, and all the online notices hyperlinked to, the Settlement Website. Kumar's counsel additionally made efforts to publicize the settlement by having the "Top Class Actions" website highlight the settlement, and by working with the claim administrator to retarget advertisements to demographics that were most responsive to the advertisements and making claims, and to direct targeting the IP addresses of individuals who visited the settlement website but had not yet filed a claim. (*Id.* ¶ 15.) In total, the notice program is estimated to have reached at least 71% of the settlement class members, and 76% of Filippo Berio principal shoppers, an estimated average of 2.6 times each. (*Id*. ¶¶ 12-13, 25.)

Class members were given until May 2, 2017, to object to or exclude themselves from the Proposed Settlement. Out of millions of class members, a total of 20 persons filed timely requests to opt out of the Settlement Class. A total of 65,048 claims were received by the administrator, of which 53,030 were not duplicative (*i.e.*, from unique households) and accepted as valid. The valid claims represented purchases of 406,947 bottles of the Products, and the total value of the distribution to claimants will be $210,985.00.

## II. APPLICABLE STANDARDS

A certified class action may not be settled without court approval. Fed. R. Civ. P. 23(e). In order for approval to be granted, the court must find that the settlement is "fair, reasonable, and adequate," after holding a hearing on the matter. Fed. R. Civ. P. 23(e)(2). The parties seeking approval must file identify the details of any agreement made in connection with the proposed settlement. Fed. R. Civ. P. 23(e)(3). The Court must afford any person the opportunity to request exclusion from the class and to object to the terms of the settlement. Fed. R. Civ. P. 23(e)(4), (5).

Attorneys' fees and costs may be awarded in a certified class action under Federal Rule of Civil Procedure 23(h). Such fees must be found "fair, reasonable, and adequate" in order to be approved. Fed. R. Civ. P. 23(e); *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003). To "avoid abdicating its responsibility to review the agreement for the protection of the class, a district court

5

must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement." *Id.* at 963.  "[T]he members of the class retain an interest in assuring that the fees to be paid class counsel are not unreasonably high," since unreasonably high fees are a likely indicator that the class has obtained less monetary or injunctive relief than they might otherwise. *Id.* at 964.

**III.    OBJECTIONS TO FINAL APPROVAL OF CLASS SETTLEMENT**

Three individuals submitted objections – Bradley Griffin, Pamela Sweeney and Theodore Frank.  (Dkt. Nos. 155, 157, 160.)  The Court has considered all of objections and overrules them for the reasons stated on the record at oral argument, and as further explained below.  The Court addresses each objector's arguments in turn.

Objector Bradley Griffin filed a one-page objection indicating that he did not believe any harm was done and that he finds Salov's products to be superior to its competitors.  As his objection does not speak to the substance of the settlement agreement terms, the Court does not find it relevant to the fairness determination here.

Objector Pamela Sweeney offered a number of objections.[3]  Sweeney contends that the class notice is defective because it says objections must be received *or* postmarked by May 2, 2017.  At the same time, she contends that the date for filing objections is "impossible to determine."  The Court has reviewed the notice carefully, as well as the absence of evidence of confusion from other class members, and finds the instructions to be clear and straightforward.  *Cf. Larsen v. Trader Joe's Co.*, 2014 WL 3404531, at *7, 11-cv-5188-WHO (N.D. Cal. July 11, 2014) ("Ms. Sweeney claims to be among those who did not receive [adequate] notice of the settlement, yet made a timely objection.").  Sweeney also contends that a portion of the fees should be held back to ensure counsel delivers what was promised in the claims process.  The Court has already found counsel to be adequate and will maintain jurisdiction to enforce the terms of the agreement as necessary.  Should any concerns arise that class members are not receiving the benefits of the agreement here, the Court maintains continuing jurisdiction to address them.  Finally, Sweeney joins in the arguments of

---

[3] Sweeney's objections are nearly identical to those raised by Patrick Sweeney in connection with a different class action settlement, which this Court recently considered and overruled. *See In re Lithium Ion Batteries Antitrust Litig.*, 2017 WL 1086331, at *3 (N.D. Cal. Mar. 20, 2017).

6

objector Theodore Frank in arguing that the requested attorneys' fees are excessive. Sweeney contends that the fees are not proportionate to the recovery for the class members and that counsel engage in only limited litigation in this case. The Court finds that the litigation here—pleading motions and class certification, along with its concomitant discovery—was vigorous and full-fledged. The Court addresses the proportionality objections below.

Objector Theodore Frank[4] raises a number of arguments falling roughly into the categories of: (1) failure to comply with the standards of *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011), particularly due to disproportionate attorneys' fees; (2) creation of a "zero-recovery subclass;" (3) conflicts between counsel and the class due to the termination provision; and (4) defects in the class notice.

First, as to the *Bluetooth*/proportionality objection, Frank's contends that the settlement should be held to the higher *Bluetooth* standards for settlement approval, which normally apply only to agreements negotiated prior to class certification. *See Allen v. Bedolla,* 787 F.3d 1218, 1224 (9th Cir. 2015) (noting that *Bluetooth*'s "more strict" standards apply only "when a settlement is negotiated absent class certification"). Nevertheless, Frank argues that the expansion of the class scope in the context of the agreement means that it is "essentially a pre-certification settlement." The Court does not agree. Here, the settlement agreement was negotiated after the Court heard and decided the class certification motion. The Court undertook a thorough analysis of the evidence and claims in the context of the class certification motion. The nature of the claims and class

---

[4] Frank is an attorney employed by, and represented by, the Competitive Enterprise Institute ("CEI"), Center for Class Action Fairness ("CCAF"). Frank has personally objected to class action settlements at least eleven times, and CEI has done so dozens of times. The arguments he makes here are similar to those rejected by other courts. *See, e.g., City of Livonia Employees' Ret. Sys. v. Wyeth*, No. 07 CIV. 10329 RJS, 2013 WL 4399015, at *5 (S.D.N.Y. Aug. 7, 2013) ("Petri's objection on this count does not seem grounded in the facts of this case, but in her and her attorney's [Ted Frank] objection to class actions generally."); *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 785 (N.D. Ohio 2010) (criticizing CEI's objections as "long on ideology and short on law."); *cf. Dennis v. Kellogg Co.*, 2013 WL 6055326, at *4 n.2 (S.D. Cal. Nov. 14, 2013) ("when assessing the merits of an objection to a class action settlement, courts consider the background and intent of objectors and their counsel, particularly when indicative of a motive other than putting the interest of the class members first") (citations and quotes omitted).

certification factors does not differ significantly as between the California Class certified and the Nationwide Class in the settlement.

Even if the settlement here was subject to the *Bluetooth* standards, the record contains no indicia of collusion or unfairness to the class.  Under the terms of the settlement, the amount paid to the class, individually or in the aggregate, is not impacted by the amount paid to class counsel.  In this claims-made settlement, class counsel's fees do not depend upon the number of valid claims submitted.  The Court looks to the entire value of the settlement, rather than just the amount of the claims made by class members.  *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) ("district court abused its discretion by basing the fee on the class members' claims against the fund rather than on a percentage of the entire fund or on the lodestar").  Looking to the lodestar for counsel's hours on the case, the amount sought is both lower than the lodestar and proportionate to the benefit obtained for the class.

Because the settlement includes injunctive relief, the Court must take into consideration the value of that relief as well when considering proportionality.  *Allen*, 787 F.3d at 1224-25.  Though Frank contends that Salov's change to its product labels occurred before the settlement was negotiated, there is no question that it occurred after this litigation was initiated, and that the old labeling could be revived absent Salov's agreement not to do so.  *See Lane v. Facebook, Inc.*, 696 F.3d 811, 825 (9th Cir. 2012) ("Even assuming Objectors' premise that Beacon was already effectively terminated, absent a judicially-enforceable agreement, Facebook would be free to revive the program whenever it wanted. It is thus false to say that Facebook's promise never to do so was illusory.")  The Court finds the litigation was a catalyst for the label changes that occurred.  For claims brought under California law, the Ninth Circuit continues to recognize a catalyst theory for entitlement to fees.  *See Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 560–61 (2004) (affirming plaintiff's right to recover attorneys' fees under California Civil Code § 1021.5, where the plaintiff was a "catalyst to defendant's changed behavior"); *Klein v. City of Laguna Beach*, 810 F.3d 693, 701 (9th Cir. Jan. 14, 2016) ("When California plaintiffs prevail in federal court on California claims, they may obtain attorneys' fees under section 1021.5."); *Tipton-Whittingham v. City of Los Angeles*, 316 F.3d 1058, 1062 (9th Cir. 2003), *certified question answered,* 34 Cal. 4th 604, 101 P.3d

8

174 (2004). Similarly, the New Jersey Supreme Court has endorsed the continuing viability of a catalyst theory for claims under state law. *Mason v. City of Hoboken*, 196 N.J. 51, 72-73, 76, 951 A.2d 1017 (2008) (holding that "New Jersey law has long recognized the catalyst theory" such that catalyst theory will be permitted for purposes of determining prevailing party under state law, despite U.S. Supreme Court's rejection of it in *Buckhannon Board & Care Home v. West Virginia Dept. of Health & Human Resrcs.*, 532 U.S. 598 (2001)). Here, Kumar's expert valued the injunctive relief at $19.6 million dollars in savings to class members based upon his calculation of a price premium resulting from the prior product labeling. Even if Kumar's estimate is overstated, and the valuation is some fraction of that amount, class counsel's fees remain proportionate to the value of the relief obtained.

Second, Frank contends that the settlement creates a zero-recovery subclass because, under New Jersey law, class members would not need to establish reliance in order to recover, yet the settlement claim form requires an averment of reliance in order to obtain relief. Frank extrapolates from this contention to further argue that the claim form requirement throttles the number of claims unfairly, creates intra-class conflicts, and indicates that the class representative is not adequate. The Court finds no merit in these contentions. The claim form simply requires class members to attest that Salov's labeling caused them damage, *i.e.*, that "[i]f the Products had not included the phrase 'Imported from Italy' on the label, [they] would not have made the purchase(s) or paid the price(s) charged." (Dkt. No. 154-4 at 5.) This is consistent with New Jersey law, which requires a showing that the alleged conduct caused plaintiff a loss. *Dabush v. Mercedes-Benz USA, LLC*, 378 N.J. Super. 105, 122 (N.J. App. Div. 2005) (under N.J. consumer fraud law, plaintiff need to prove traditional reliance but must still establish a causal nexus between the alleged misrepresentation and their loss). The record indicates that none of the inquiries to the claims administrator on the toll-free helpline, by email, or by regular mail (270 calls to the toll-free help line and 125 letters and emails) expressed concerns about the text in question. (Dkt. No. 161-5, Finegan Decl. ¶¶ 10-11.) The notion that a *de facto* subclass was created by the inclusion of the averment language on the claim form lacks foundation.

9

Third, Frank contends that the termination provision in the settlement agreement creates incentives for counsel to depress the number of claims in order to ensure that they do not lose their attorneys' fees. The Settlement Agreement gives Salov the right to cancel the settlement if the value of class members' claims plus administrative costs exceeds $5 million. (Dkt. No. 140-1 ¶ 9.5.) The record is, in fact, to the contrary. Kumar's counsel took steps to extend the claims deadline an extra week, targeted the notices to publications most likely to reach olive oil purchasers, worked with the claims administrator to re-target notices and to issue a second press release not required by the Settlement Agreement, and arranged for topclassactions.com to feature and promote the Settlement to potential class members. (Dkt. No. 161-1, Supp. Gutride Decl. ¶ 4; Dkt. No. 161-2, Zavareei Decl. ¶ 4; Dkt. No. 161-5, Supp. Finegan Decl. ¶¶ 3-8.) Given the facts and the class here, the likelihood of claims approaching the termination limit was exceedingly remote. And because the settlement was on a claims made basis, with attorneys' fees negotiated separately, the apparent incentives were for counsel to maximize the number of claimants here, not minimize.

Fourth, Frank raises several issues as to the formatting and phraseology of the class notice and claim form, suggesting they are ambiguous, confusing, or inconsistent. As stated above, the Court considered the notice carefully and finds that it is relatively clear and straightforward, not "incomprehensible" as Frank contends. Specifically, Frank notes numbering issues in the list of requirements for objectors, and use of an "or" rather than an "and" in describing the manner in which objections could be submitted. There is no evidence of actual confusion. The two objections submitted by mail were considered by the Court. Neither Class counsel nor Salov sought to strike or dispute an objection based on how or when it was submitted. Frank also identifies an inconsistency between the Settlement Agreement's statement that class members "would not have paid the price charged and/or made the purchase(s) in the absence of the phrase 'Imported from Italy'" (*see* Settlement Agreement, ¶ 4.3(e)), and the claim form's statement that "[i]f the products had not included the phrase 'Imported from Italy' on the label, I would not have made the purchase(s) or paid the price(s) charged." There is no material difference between those two phrases. There is, in short, no basis for Frank's concern that these minor errors or inconsistencies undermined the fairness of the

10

settlement process.

## IV. FINAL APPROVAL OF CLASS SETTLEMENT

A court may approve a proposed class action settlement of a certified class only "after a hearing and on finding that it is fair, reasonable, and adequate," and that it meets the requirements for class certification. Fed. R. Civ. P. 23(e)(2). In reviewing the proposed settlement, the Court need not address whether the settlement is ideal or the best outcome, but determines only whether the settlement is fair, free of collusion, and consistent with plaintiff's fiduciary obligations to the class. *See Hanlon v. Chrysler Corp.*, 150 F.3d at 1027. The *Hanlon* court identified the following factors relevant to assessing a settlement proposal: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceeding; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of class members to the proposed settlement. *Id.* at 1026 (citation omitted).

For the reasons detailed herein and discussed at oral argument, the Court finds that the settlement class is properly certified, and the proposed settlement is fair and appropriate under the *Hanlon* factors.

First, the Court finds that the prerequisites of Rule 23 of the Federal Rules of Civil Procedure have been satisfied for certification of the Settlement Class for settlement purposes. A class was previously certified by the Court after a motion by Kumar. The Settlement Class expanded the scope of the class from a California only to a nationwide class, and alleged essentially identical claims under New Jersey rather than California law. With respect to numerosity under Rule 23(a)(1), there are were millions of bottles sold, making the class so numerous that joinder of all members is impracticable. Rule 23(a)(2) commonality requires "questions of fact or law common to the class," though all questions of fact and law need not be in common. *Hanlon,* 150 F.3d at 1026. The focus of this action—whether the "Imported from Italy" representation misled reasonable consumers – is common to all class members. Rule 23(a)(3) requires that the Kumar show that that "the claims or

defenses of the representative parties are typical of the claims or defenses of the class." As this Court previously found, Kumar and other consumers around the country were all exposed to the same product and the same alleged misrepresentations, making her typical of class members nationwide. With respect to Rule 23(a)(4), the Court found that Kumar does not possess any conflicts with the class and Class Counsel is adequate. The Court is aware of no reason that the determination should be any different for a nationwide class. The class further satisfies Rule 23(b)(3) in that common issues predominate and "a class action is superior to other available methods for fairly and efficiently adjudicating" the claims here, on which members of the class could expect to recover only a dollar or so, on average.

As to the *Hanlon* factors, the Court finds that they favor a finding that the settlement is fair and reasonable. Salov maintains that its products were not mislabeled or likely to mislead, because the oil was blended by skilled artisans in Italy to attain the appropriate flavor profile. There would be a battle of the experts regarding the materiality of the representation and the computation of damages. Proceeding to trial would have been costly; recovery was not guaranteed; and there was the possibility of protracted appeals. Even if Kumar succeeded, the best-case recovery per bottle after trial was less than the amount offered in settlement, and a claims process would be required even after trial, because class members could not otherwise be identified. The settlement occurred only after extensive litigation including a contested motion for class certification, numerous fact and expert depositions and review of more than 30,000 pages of documents, interrogatories, requests for admission, and third-party discovery. Counsel for both parties are highly experienced. The record does not indicate collusion or self-dealing.

Therefore, for purposes of the settlement and this Order and Judgment, the Court hereby finally certifies the following Settlement Class:

> "All natural persons who, between May 23, 2010 and June 30, 2015, purchased, in the United States, any Product for personal use, not resale." "Product" means any bottle or can of Filippo Berio Robusto Extra Virgin Olive Oil, Filippo Berio Extra Virgin Olive Oil, Filippo Berio Delicato Extra Virgin Olive Oil, Filippo Berio Organic Extra Virgin Olive Oil, Filippo Berio Olive Oil, or Filippo Berio Light Tasting Olive Oil."

The following persons are excluded from the Settlement Class: (1) the Honorable Judge Yvonne Gonzalez Rogers; (2) Randall Wulff; (3) any member of their immediate families; (4) any government entity; (5) Salov; (6) any entity in which Salov has a controlling interest; (7) any of Salov's subsidiaries, parents, affiliates, and officers, directors, employees, legal representatives, heirs, successors, or assigns; (8) counsel for the Parties; and (9) the persons who timely excluded themselves from the Settlement Class, as identified in Exhibit A hereto.

## V. ATTORNEY'S FEES, COSTS, AND INCENTIVE PAYMENTS

### A. Attorneys' Fees

Class counsel requests a fee award of $982,500 in attorneys' fees and costs. (Dkt. No. 151.) Class counsel requests a fee award of $874,231.80 ($982,500.00, less costs and expenses of $108,268.20), which equals approximately 59% of its lodestar. Salov does not oppose the fee request.

The Court analyzes an attorneys' fee request based on either the "lodestar" method or a percentage of the total benefit made available to the settlement class, including costs, fees, and injunctive relief. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Under the lodestar approach, a court simply multiplies the number of hours reasonably expended by the reasonable hourly rate. *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016) ("[A] court calculates the lodestar figure by multiplying the number of hours reasonably expended on a case by a reasonable hourly rate. A reasonable hourly rate is ordinarily the 'prevailing market rate [] in the relevant community.'"). In the Ninth Circuit, the benchmark percentage for an attorney fee award is 25% of the total settlement value, including both monetary and non-monetary recovery. *See Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).

Utilizing the lodestar method, the Court finds that class counsel has provided detailed daily time records supporting a lodestar of $1,470,507.50. No objector has challenged any of counsel's hour or rates. The Court finds that the hours claimed were reasonably incurred and that the rates charged are reasonable and commensurate with those charged by attorneys with similar experience in the market. The Court also finds that Kumar's counsel represented their clients with skill and

13

diligence and obtained an excellent result for the class, taking into account the possible outcomes at, and risks of proceeding to, trial.

Whether as a cross-check or as an independent methodology, the Court can utilize the percentage-of-recovery method to verify that Kumar's attorneys' fee request of $874,231.80 is likewise reasonable. Here, the parties estimated the total settlement value to be $25,888,623—the sum of the estimated value of the injunctive relief ($19,906,123), plus the amount allotted for claims and administration ($5,000,000) plus the fees and costs ($982,500). The attorneys' fees portion of request is $874,231.80, or 3.4% of this total. Even if the Court were to discount the value the settlement from the estimates provided, the attorneys' fees sought here would still be at or below this 25% benchmark, since the Court finds that it appropriate to include some value for the injunctive relief obtained here.[5] In sum, the Court finds an award of attorneys' fees in the amount of $874,231.80 to be fair, reasonable, and adequate.

### B.      Costs Award

Class counsel is entitled to reimbursement of reasonable out-of-pocket expenses. Fed. R. Civ. P. 23(h); *see Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (holding that attorneys may recover reasonable expenses that would typically be billed to paying clients in non-contingency matters). Costs compensable under Rule 23(h) include "nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Here, class counsel seeks reimbursement of $108,268.20 in litigation expenses and provide records that document their claim. The Court finds an award $108,268.20 in costs reasonable, fair, and adequate.

### C.      Incentive Award

The district court must evaluate named Kumars' awards individually, using relevant factors including "the actions the plaintiff has taken to protect the interests of the class, the degree to which

---

[5] For example, if the valuation of the injunctive relief were decreased to only 20% of the estimate provided by Kumar's expert, the calculation would still render a total settlement value of approximately $5 million: actual claims ($210,985) + administrative costs ($450,000) + 20% of injunctive relief valuation ($3.98 million) + fees ($874,231.80) + costs ($108,268.20)= $5,174,710. The fee award would represent of 16.9% of this total. And even if the injunctive relief value is eliminated entirely, the attorneys' fees remain below the 25% benchmark.

14

the class has benefitted from those actions . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton*, 327 F.3d at 977. "Such awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-959 (9th Cir. 2009). The Ninth Circuit recently emphasized that district courts must "scrutiniz[e] all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1163 (9th Cir. 2013).

Here, the plaintiff came forward to represent the interests of millions of others, with very little personally to gain, as her individual alleged damages were only a few dollars.  She and her spouse were deposed, compiled documents, and answered interrogatories in response to discovery requests, regularly corresponded with counsel telephonically and by email, and took the substantial risk of litigation which, at a minimum, involves a risk of losing and paying the other side's costs. (Dkt. No. 154-1, Gutride Decl. ¶ 24.)  Because false advertising laws depend on private enforcement, it is appropriate to give incentives to those who come forward with little to gain and at personal risk and who work to achieve a settlement that confers substantial benefits on others.  Thus, the Court approves the $2,500 incentive award for Kumar.

## VI. ADDITIONAL ORDERS CONSISTENT WITH SETTLEMENT AGREEMENT

**1. CAFA Compliance**: The record establishes that counsel served the required notices under the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, with the documentation required by 28 U.S.C. § 1715(b)(1-8).

**2. Injunction**: Pursuant to the terms of the Settlement Agreement, Salov shall be enjoined, for a period beginning on the Effective Date and continuing for three years thereafter, from using the phrases "Imported from Italy," "Made in Italy," "Product of Italy," or any other phrase on the label of a Product sold in the United States suggesting that olive oils in a Product originate from olives grown in Italy, and instead to use the designation "Imported" on the front panel, unless the Product so labeled is composed entirely of oil extracted in Italy from olives grown in Italy.  For

avoidance of doubt, the distribution or sales by third parties of residual Products provided to such third parties by Defendant prior to the date of this Order shall not constitute a violation of the Settlement Agreement or this injunction.  Neither the Settlement Agreement nor the injunction issued pursuant hereto shall be interpreted to impose any limitations on the future marketing or sale of the Products except as expressly set forth in this section.  Similarly, neither the Settlement Agreement nor the injunction issued pursuant hereto shall be interpreted to impose any limitations on the composition, manufacture, marketing, labeling, advertising, and/or sale of any product or products other than those falling within the definition of "Products" set forth in this Order.  Nothing in this paragraph shall be interpreted to interfere with Salov's obligations to comply with all applicable state and federal laws, including, without limitation, the Federal Trade Act, or to respond to any enforcement actions issued thereunder by the Federal Trade Commission.

   **3.**  **Releases**:  By operation of this Order, Kumar on the one hand, and the Released Parties on the other hand, shall have unconditionally, completely, and irrevocably released and forever discharged each other from and shall be forever barred from instituting, maintaining, or prosecuting (1) any and all claims, liens, demands, actions, causes of action, rights, duties, obligations, damages or liabilities of any nature whatsoever, whether legal or equitable or otherwise, known or unknown, that actually were, or could have been, asserted in the Litigation, whether based upon any violation of any state or federal statute or common law or regulation or otherwise, or arise directly or indirectly out of, or in any way relate to, the allegations, claims, or contentions that Plaintiff, on the one hand, and Defendant, on the other hand, have had in the past, or now have, related in any manner to the Released Parties' products, services or business affairs; and (2) any and all other claims, liens, demands, actions, causes of action, rights, duties, obligations, damages or liabilities of any nature whatsoever, whether legal or equitable or otherwise, known or unknown, that Kumar, on the one hand, and Salov, on the other hand, have had in the past or now have, related in any manner to any and all Released Parties' products, services or business affairs, or otherwise.

   By operation of this Order and Judgment, Settlement Class Members shall have unconditionally, completely, and irrevocably released and discharged the Released Parties from the

Released Claims, including any and all claims, liens, demands, actions, causes of action, rights, duties, obligations, damages or liabilities of any nature whatsoever, whether legal or equitable or otherwise, known or unknown, whether arising under any international, federal, state or local statute, ordinance, common law, regulation, principle of equity or otherwise, that that were, or could have been, asserted in the Litigation and that arise out of or relate to the allegations or claims that the Products were marketed or labeled as "Imported From Italy," except that there shall be no release of (1) claims for personal injury allegedly arising out of use of the Products or (2) any defense, cross-claim or counter-claim in any action initiated by any of the Released Parties against any Settlement Class Member.

"Released Parties" means Salov and each and all of its predecessors in interest, former, present and future direct and indirect subsidiaries, divisions, parents, owners, successors, and affiliated companies and each and all of its present and former officers, directors, shareholders, partners, employees, agents, representatives, suppliers, resellers, retailers, wholesalers, distributors, customers, insurers, assigns, servants, attorneys, assignees, heirs, and executors, whether specifically named and whether or not participating in the settlement by payment or otherwise.

Plaintiff and Defendant shall, by operation of this Order, be deemed to have waived the provisions, rights and benefits of California Civil Code § 1542, and any similar law of any state or territory of the United States or principle of common law.  In addition, Settlement Class Members shall, by operation of this Order and Judgment, be deemed to have waived the provisions, rights and benefits of California Civil Code § 1542, and any similar law of any state or territory of the United States or principle of common law, but only with respect to the matters released as set forth in paragraph 12 of this Order. Section 1542 provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Nothing herein shall bar any action or claim to enforce the terms of the Settlement Agreement.

### 4.     **Effect of this Litigation and Order**:

Nothing herein shall bar any action or claim to enforce the terms of the Settlement

17

Agreement.

No action taken by the Parties, either previously or in connection with the negotiations or proceedings connected with the Settlement Agreement, shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made or an acknowledgment or admission by any Party of any fault, liability or wrongdoing of any kind whatsoever to any other Party. Neither the Settlement Agreement nor any act performed or document executed pursuant to or in furtherance of the settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any claim made by the Settlement Class Members or Class Counsel, or of any wrongdoing or liability of the persons or entities released under this Order and the Settlement Agreement, or (b) is or may be deemed to be, or may be used as an admission of, or evidence of, any fault or omission of any of the persons or entities released under this Order and the Settlement Agreement, in any proceeding in any court, administrative agency, or other tribunal. Defendant's agreement not to oppose the entry of this Order shall not be construed as an admission or concession by Defendant that class certification was appropriate in the Litigation or would be appropriate in any other action.

Except as provided in this Order, Kumar shall take nothing against Salov by her Complaint. A final judgment, binding the Parties and Settlement Class Members with respect to this Litigation, shall enter forthwith.

The Litigation is dismissed on the merits and with prejudice, and final judgment shall be entered thereon.

Without affecting the finality of the judgment to be entered, the Court reserves jurisdiction over the implementation of the Settlement Agreement.

**VI. CONCLUSION**

Based upon the foregoing, the Court **GRANTS** the Motion for Final Approval of Class Action settlement and **GRANTS** the Application for Attorneys' Fees, Costs, and Incentive Awards.  Salov shall pay $874,231.80 in attorneys' fees and $108,268.20 in litigation costs to class counsel, and a $2,500.00 incentive award to the class representative and named plaintiff, Rohini Kumar.  Judgment

shall be entered by separate document.

**IT IS SO ORDERED.**

Dated: July 7, 2017

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**